**\*\* E-filed June 2, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, et al.,<br><br>           Plaintiffs,<br>   v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>           Defendant.<br>_____/ | No. C10-02856 EJD (HRL)<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS TO COMPEL FURTHER DEPOSITION TESTIMONY AND FURTHER RESPONSES TO RFPs AND INTERROGATORIES**<br><br>[Re: Docket Nos. 26, 27, 31, 35] |

**BACKGROUND**

A. <u>The Underlying Aldrich Construction Defect Action in California State Court</u>

Kaufman & Broad Monterey Bay and KB Home South Bay, Inc. (collectively, the "KB Developers"), along with other companies, developed and constructed residential properties in Monterey County, California (the "Properties"). In October 2008, many of the owners of these properties (collectively, the "Homeowners") sued the developers of the Properties, including the KB Developers, for damages arising out of a variety of alleged defects in the construction of the Properties. See <u>Aldrich v. KB Home</u>, No. M94490 (Monterey County Sup. Ct. 2008) (the "Underlying <u>Aldrich</u> Action"). The KB Developers then filed cross-claims against numerous subcontractors who were involved with the construction of the Properties, including the cabinet subcontractor Norcraft Companies, Inc. ("Norcraft"), for indemnification of any expenses the KB

1  Developers may incur with respect to the Underlying <u>Aldrich</u> Action. The Underlying <u>Aldrich</u>
2  Action is currently pending in Monterey County Superior Court.
3      B.  <u>The Instant Bad Faith Insurance Action by KB against Travelers</u>
4      In developing and constructing the Properties, the KB Developers contracted with Norcraft
5  to construct cabinets. In so contracting, the KB Developers required Norcraft to provide them with
6  certificates of insurance, endorsements, and/or other documents for the purpose of assuring the KB
7  Developers that Norcraft had obtained policies of comprehensive general liability insurance and that
8  the KB Developers had been named as additional insureds under those policies. Norcraft obtained
9  four such policies (the "Insurance Policies") from insurer Travelers Property Casualty Company of
10  America ("Travelers").
11      Once the KB Developers cross-claimed against Norcraft in the Underlying <u>Aldrich</u> Action,
12  Travelers agreed to defend Norcraft, under reservation of rights, per its obligations under the
13  Insurance Policies. Travelers also initially agreed to defend the KB Developers since they are
14  additional insureds under the Insurance Policies. In March 2010, however, Travelers withdrew its
15  agreement to defend the KB Developers.[1]
16      The KB Developers then filed the instant suit against Travelers for its alleged bad faith
17  refusal to defend the KB Developers in the Underlying <u>Aldrich</u> Action. Docket No. 1 ("Notice of
18  Removal"), Ex. A ("Complaint"). The KB Developers allege that Travelers breached the Insurance
19  Policies and the implied covenant of good faith and fair dealing, and they seek declaratory relief,
20  damages, attorney fees, and costs. <u>See</u> <u>id</u>.
21      Several disputes have arisen with respect to the KB Developers' attempts to discover
22  information about Travelers's decision to defend Norcraft but not to defend the KB Developers.
23  Specifically, upon advice of counsel, two Travelers employees refused to answer any questions
24  related to Norcraft during their depositions, and Travelers also objected to five requests for
25  production of documents ("RFP") and three interrogatories seeking similar information. The KB
26  Developers moved for orders compelling the Travelers employees to provide the requested

---

[1] Travelers later reconsidered its March 2010 withdrawal of defense and again agreed to defend the KB Developers as of August 2010, subject to a reservation of rights. <u>See</u> Docket No. 57 ("Marvin Decl."), Ex. H.

2

1  testimony and compelling Travelers to respond to the RFPs and interrogatories. Docket Nos. 26
2  ("MTC RFPs"); 27 ("MTC Carrillo Depo"); 31 ("MTC Taylor Depo"); 35 ("MTC Interrogatories").
3  Travelers opposed the motions. Docket Nos. 50 ("Opp'n at Interrogatories"); 52 ("Opp'n to RFPs");
4  54 ("Opp'n to Taylor Depo"); 56 ("Opp'n to Carrillo Depo"). Oral argument was heard on May 17,
5  2011.

## LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

## DISCUSSION

A. <u>Depositions of Richard Carrillo and Debra Ann Taylor</u>

During his deposition, Richard Carrillo, Travelers's Western Regional Manager, refused to answer the KB Developers' questions about Norcraft's insurance claim and files and Norcraft's request that Travelers defend it in the Underlying <u>Aldrich</u> Action. And during her deposition, Debra Ann Taylor, a senior technical specialist for Travelers who worked on Norcraft's insurance claim, refused to answer questions about Travelers's internal policies and procedures for responding to a claim, Norcraft's insurance claim and file, Norcraft's request that Travelers defend it in the Underlying <u>Aldrich</u> Action, and the identity of the attorney representing Norcraft in that action.

3

The KB Developers argue that these questions are relevant because they relate to the KB Developer's contention that Travelers acted in bad faith by defending Norcraft (as the named insured) under the Insurance Policies but by not defending the KB Defendants (as the additional insureds) under the same policies. Travelers argues that the deponents should not have to answer questions related to Norcraft because the information is not relevant, and even if it is, it is private and is privileged.

1. Relevance

Travelers's relevance argument is this: (a) the Homeowner's claims against the KB Developers relate to construction defects while the KB Developers' claims against Norcraft relate to contractual indemnity; (b) so, the KB Developers' and Norcraft's tenders of defense to Travelers under the Insurance Policies related to two different types of claims; (c) as a result, Travelers had to go through different analyses to determine whether it was required to defend either or both of them; and (d) this means that Travelers's decision to defend Norcraft (the subject of the discovery) is irrelevant to Travelers's decision not to defend the KB Developers (the subject of the instant bad faith action). See Opp'n to Carrillo Depo at 14-15.

A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Moreover, discovery is not limited to only those specific issues raised in the pleadings since it is designed to define and clarify the issues in the case. Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (citing Oppenheimer, 437 U.S. at 351). As such, the question of relevancy should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. Id.

This is close call. While the tenders of defense made by Norcraft and the KB Developers did indeed involve different types of claims, the facts underlying those claims are the same. As the KB Developers note, Travelers's "obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts." Docket No. 60 at 2. Relevance should be construed "liberally and with common sense," and the Court cannot say that the particular deposition questions and discovery requests concerning Norcraft have "no bearing

4

1 on the case." Accordingly, the Court finds that the testimony sought by the KB Developers is
2 relevant to this case.

3     2. <u>Privacy</u>

4 Next, Travelers argues that its Norcraft-related information is private and cannot be
5 disclosed. "In a federal action based on diversity of citizenship jurisdiction, state law governs
6 privilege claims." <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D. 281, 284 (C.D. Cal. 1998) (citing
7 FED. R. EVID. 501; <u>Upjohn Co. v. Hygieia Biological Labs.</u>, 151 F.R.D. 355, 358 (E.D. Cal. 1993)).
8 "To the extent privacy is a matter of privilege under state law, federal courts will honor the privilege
9 and protect the responding party from discovery." SCHWARZER, TASHIMA & WAGSTAFFE, CAL.
10 PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL, § 11:77 (The Rutter Group 1996). "In California, the
11 right to privacy is set forth in Article I, Section I of the California Constitution. It is not an absolute
12 right, but a right subject to invasion depending upon the circumstances." <u>Oakes</u>, 179 F.R.D. at 284
13 (citing <u>Hill v. National Collegiate Athletic Ass'n</u>, 7 Cal.4th 1, 37 (1994)).

14 In this state, it is unclear whether a business entity can claim a right of privacy to limit
15 disclosure in civil litigation. <u>See</u> <u>Cobb v. Sup. Ct.</u>, 99 Cal.App.3d 543, 547, 564 n.3 (1979); <u>see also</u>
16 SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL, § 8:2706
17 (The Rutter Group 2010). On one hand, the "'right to privacy is guaranteed and protected by state
18 and federal Constitutions.'" <u>Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.</u>, 42 Cal.App.4th
19 1260, 1287 (1996) (quoting <u>Palay v. Sup. Ct.</u>, 18 Cal.App.4th 919, 931 (1993)). "A 1974
20 amendment to the California Constitution added article I, section 1, which states: 'All people are by
21 nature free and independent and have inalienable rights. Among these are enjoying and defending
22 life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety,
23 happiness, and privacy.'" <u>Id</u>. (quoting <u>Board of Trustees v. Sup. Ct.</u>, 119 Cal.App.3d 516, 524
24 (1981)) (italics omitted). However, "'[t]he constitutional provision simply does not apply to
25 corporations. The provision protects the privacy rights of people.'" <u>Id</u>. (quoting <u>Roberts v. Gulf Oil
26 Corp.</u>, 147 Cal.App.3d 770, 791 (1983)) (italics in original).

27 On the other hand, at least one California court has stated that "regardless of their legal form,
28 [businesses] have zones of privacy which may not be legitimately invaded." <u>H&M Associates v.</u>

1    City of El Centro, 109 Cal.App.3d 399, 410 (1980). That case involved a limited partnership that
2    claimed only economic loss, and the court held that the partnership could state a tort claim for
3    invasion of privacy. Id at 410-11. In so ruling, the court explained that California's constitutional
4    privacy provision "is concerned with four principal 'mischiefs': '(1) Government snooping and the
5    secret gathering of personal information; (2) the overbroad collection and retention of unnecessary
6    personal information by government and business interests; (3) the improper use of information
7    properly obtained for a specific purpose, for example, the use of it for another purpose or the
8    disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of
9    existing records. " Id. at 411 (quoting Porten v. Univ. of San Francisco, 64 Cal.App.3d 825, 830
10   (1976)) (internal quotation marks and citation omitted).

11   Travelers argues that the information sought is private because, "[t]o the extent that
12   Travelers compiled information regarding Norcraft, presumably it did so for the purpose of issuing
13   [the Insurance Policies] to Norcraft. Further, presumably upon receiving Norcraft's tender regarding
14   the Aldrich Action, Travelers obtained information for the purposes of analyzing and responding to
15   Norcraft's tender." Opp'n to Carrillo Depo at 10.

16   Based on the above, this Court does not believe that Travelers can make a privacy objection,
17   either on behalf of itself or on behalf of Norcraft. Even if it could, it has not even shown that the
18   information is especially private. As the KB Developers note, they want to know what information
19   Travelers received from Norcraft "that raised a potential for coverage" under the Insurance Policies,
20   and that information is not much of a secret since the KB Developers had access to such information
21   (and in fact shared it with Travelers when they tendered their own defense). This information would
22   go directly to the heart of the KB developers' claims.

23       3.   Privilege

24   Travelers's also asserts that the information is protected from disclosure under a variety of
25   privileges. First, it argues that the deponents, as Travelers employees, are prohibited from disclosing
26   information about Norcroft under California Insurance Code § 791.13. However, as the KB
27   Developers correctly point out, this provision does not apply to business entities. It provides that
28   "[a]n insurance institution, agent, or insurance-support organization shall not disclose any personal

6

or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure" meets certain restrictions. Cal. Ins. Code § 791.13. And "individual" is defined as "any natural person" who fits within a number of categories. Cal. Ins. Code 791.02(i). This argument clearly fails.

Travelers also argues that the deposition questions seek information protected by the attorney-client privilege and the attorney work-product doctrine. Because this Court's subject-matter jurisdiction over this case is based on diversity of citizenship, California law governs disposition of issues about the attorney-client privilege. FED. R. EVID. 501. But federal law governs disposition of issues about the work product doctrine. Great American Surplus Lines, Inc. v. Ace Oil Co., 120 F.R.D. 533, 539 (E.D. Cal. 1988); Connolly Data Systems, Inc. v. Victor Technologies, Inc., 114 F.R.D. 89 (S.D. Cal. 1987).

In California, "[t]he attorney-client privilege, set forth at [California] Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . .'" Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 732 (2009) (quoting Cal. Evid. Code § 954). A "confidential communication" between the attorney and the client, in turn, is defined as "information transmitted between a client and his or her lawyer in the course of that relationship . . . ." Cal. Evid. Code § 952.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." Costco, 47 Cal.4th at 733 (citing D.I. Chadbourne, Inc. v. Superior Court, 60 Cal.2d 723, 729 (1964); Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal.App.4th 110, 123 (1997)). In this regard, Travelers simply says that its Norcraft-related files (about which the deponents would have to testify) "are comprised of attorney-client communications as they include correspondence between Travelers and Norcraft and between Norcraft and it's [sic] counsel, regarding KB Home's allegations, defenses thereto, litigation strategy, fees and the explanations regarding the fees, etc." Opp'n to Carrillo MTC at 8.

Travelers's showing is insufficient. Most obviously, its statement does not mention anything about whether any communications were meant to be kept in confidence, nor does it distinguish

7

between communications that were made in order to secure legal representation as opposed to communications that were made in order to give or receive legal advice. In addition, during the depositions, Travelers's counsel objected to any discussions about Norcraft without even waiting for the questions to be asked to determine whether responsive testimony would require divulging privileged communications. In short, Travelers has not met its burden to establish that the existence of the attorney-client privilege.[2]

As for the attorney work-product, the work-product doctrine is not a privilege, but rather a qualified protection limiting discovery of "documents and tangible things" prepared by an attorney or its representative in anticipation of litigation or trial. Admiral Ins. Co. v. United States Dist. Ct., 881 F.2d 1486, 1494 (9th Cir. 1989) (citing FED. R. CIV. P. 26(b)(3)). The party claiming work-product protection bears the burden of demonstrating that the doctrine applies. Heath v. F/V Zolotoi, 221 F.R.D. 545, 549 (W.D. Wash. 2004).

Travelers's does not meet its burden. It simply states that all of its Norcraft-related files were created in anticipation of litigation and that the deponents would have to testify about them. There is no indication what types of documents were created, who created them, or when or why. In addition, during the depositions, Travelers's counsel objected to any discussions about Norcraft without even

---

[2] Even if Travelers had made a better showing, the privilege may not apply in this situation. Travelers cites a few old cases for the point that communications between an insurer and an insured are privileged. See Heffron v. Los Angeles Transit Lines, 170 Cal. App. 2d 709, 718 (1959); see also Travelers Ins. Companies v. Superior Court, 143 Cal.App.3d 436 (1983); Gene Compton's Corp. v. Sup. Ct., 205 Cal.App.2d 365 (1962). But as Magistrate Judge Brazil previously pointed out, those cases involved the situation in which the insurer had accepted responsibility both for defense and indemnification without a reservation of rights and had hired one lawyer who simultaneously represented both the insured and the insurer. See First Pac. Networks, Inc. v. Atlantic Mut. Ins. Co., 163 F.R.D. 574, 578 (N.D. Cal. 1995). In such a situation — which is the case here — there exists a tension between the insured (Norcraft) and the insurer (Travelers) because the insurer essentially makes it clear that it has reserved the right to later deny coverage as to both indemnity and defense if facts support it. See id. And, "[t]he presence of that tension is fundamentally inconsistent with a basic requirement of all attorney-client relationships: the requirement that the client have a reasonably based expectation that the communications will not be used against the client." Id. at 579 (citing Employers Ins. of Wausau v. Albert D. Seeno Const. Co., 692 F.Supp. 1150, 1158 (N.D. Cal. 1988); Assurance Co. of America v. Haven, 32 Cal.App.4th 78, 87-88 (1995); San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc., 162 Cal.App.3d 358, 366 (1984)).

waiting for the questions to be asked to determine whether responsive testimony would require revealing attorney work-product.[3]

*  *  *

Because all of Travelers's arguments are unconvincing, the KB Developers' motions to compel further depositions of Carrillo and Taylor is GRANTED. Travelers states (and the KB Developers do not challenge) that the KB Developers have only one more hour left for Carrillo and only five more hours left for Taylor. These time limits shall apply.[4]

B. <u>RFP Nos. 33, 34, 50, 51, and 67</u>

The KB Developers also propounded the following five RFPs on Travelers:

- RFP No. 33, which seeks "[a]ll DOCUMENTS RELATING TO actual loss reserves set aside for NORCRAFT for the ALDRICH ACTION";

- RFP No. 34, which seeks "[a]ll DOCUMENTS RELATING TO potential loss reserves set aside for NORCRAFT for the ALDRICH ACTION";

- RFP No. 50, which seeks "[a]ll DOCUMENTS RELATING TO any payments that YOU made to any other insurer, or insured arising out of the ALDRICH ACTION, including, but not limited to, payments made to NORCRAFT";

---

[3] Regardless, the Court is not convinced that anything would be protected as attorney work-product. "[A] document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated." <u>Harper v. Auto-Owners Ins. Co.</u>, 138 F.R.D. 655, 663 (S.D. Ind. 1991). Thus, it "is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product." <u>Id.</u>; see also <u>Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.</u>, No. 03-1224, 2005 WL 3690565, at *7 (C.D. Ill. Jan. 31, 2005) ("Documents created before the insured is notified [of the denial of its claim] simply reflect the business that insurance companies do, namely investigating facts and determining whether those facts fall within policy coverage. Until the decision to deny coverage is made and that decision is communicated to the insured, documents and communications are not protected by work product privilege."). To overcome this presumption, "the insurer must demonstrate, by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision." <u>Harper</u>, 138 F.R.D. at 663-64. Moreover, "an insurer cannot delegate its obligation to make a coverage determination, which is after all its business, to an attorney and then claim 'work product privilege.'" <u>Country Life</u>, 2005 WL 3690565, at *7.

[4] The KB Developers also request that the Court appoint a "discovery referee" "to sit through [the depositions of Carrillo and Taylor] to prevent further obstruction," but they cite no authority in support of this request, nor does the Court see any reason for it. Their request is DENIED.

9

- RFP No. 51, which seeks "[a]ll DOCUMENTS RELATING TO whether any payments made by YOU to any other insurer, or insured arising out of the ALDRICH ACTION reduced policy limits of the NORCRAFT POLICIES"; and

- RFP No. 67, which seeks "[a]ll DOCUMENTS RELATING TO any limitations of authority that YOU placed on those handling NORCRAFT'S CLAIM."

Travelers objected to all them on the following grounds:

- The RFPs are vague, ambiguous, overbroad, and unintelligible
- The RFPs lack foundation
- The RFPs seek documents that are protected by the attorney-client privilege
- The RFPs seek documents that are protected by the attorney work-product doctrine
- The RFPs seek documents that are protected by privacy rights
- The RFPs seek information that is protected from disclosure by California Insurance Code § 791.13
- The RFPs are not sufficiently definite and fail to describe with reasonable particularity the items to be inspected
- Any disclosure of the information sought would severely prejudice Norcraft in its defense in the Underlying Aldrich Action.

Many of these objections can be rejected outright. For instance, Travelers's objections for vagueness, ambiguity, overbreadth, and unintelligibility, for a lack of foundation, and for insufficient definiteness are boilerplate. Travelers set forth no real basis for them, nor did it address them in its opposition brief. In addition, as explained above, California Insurance Code § 791.13 does not apply to business entities, so that objection lacks merit.

As for Travelers's privacy objection, as explained above, Travelers cannot make a privacy objection. Nevertheless, Travelers argues that disclosing these documents would disadvantage Norcraft in its defense in the Underlying Aldrich Action, but the KB Developers have retained separate counsel for its bad faith action against Travelers, so a protective order can be used to keep the documents away from the KB Developers' counsel in that case.

As for Travelers's attorney-client privilege objection, it fails for the same reasons as described above with respect to the depositions. Travelers has made no showing that documents setting loss reserves, documents evidencing payments, and documents related to policy limits are

10

privileged. Instead, it simply says that "[a]ll of the requests for production of documents at issue . . . were the subject of communications between Travelers' [sic] and its insured and legal counsel." Travelers's attorney work-product objection fails for the same reasons as well.

And, although it did not do so previously, Travelers argues in its opposition brief that these RFPs are not relevant to this action, just as it did with respect to the depositions discussed above. As previously explained, the Court believes this information is relevant, so this objection fails.

* * *

In sum, the Court does not find any of Travelers's arguments to be persuasive.[5] The KB Developers' motion to compel further responses to RFP Nos. 33, 34, 50, 41, and 67 is GRANTED.

C. <u>Interrogatory Nos. 12, 16, 18</u>

The KB Developers also propounded the following three interrogatories on Travelers:

- Interrogatory No. 12: "SET FORTH IN FULL THE BASIS FOR TRAVELERS'[S] decision to accept NORCRAFT'S tender for defense of the ALDRICH ACTION under the NORCRAFT POLICIES."

- Interrogatory No. 16: "In what amount did YOU set reserves for defense of NORCRAFT?"

- Interrogatory No. 18: "In what amount did YOU set reserves for indemnity of NORCRAFT?"

Travelers objected to all of them on the following grounds:

- The interrogatories are vague, ambiguous, argumentative, and overbroad
- The interrogatories seek information that is protected as trade secrets
- The interrogatories seek documents that are protected by the attorney-client privilege
- The interrogatories seek documents that are protected by the attorney work-product doctrine
- The interrogatories seek documents that are protected by privacy rights

---

[5] Travelers also contends for the first time in its opposition brief that RFP No. 67 seeks its trade secrets. It says that "[t]he limitations of authority Travelers'[s] placed on those handling Norcrafts's claim constitutes information that derives actual independent economic value from not being generally known to KB Home specifically because KB Home can obtain economic value from its disclosure given the fact that KB Home has asserted claims against Norcraft in the currently pending Aldrich action. If KB Home obtains this information, it will know exactly how Travelers' [sic] has analyzed KB Home's allegations against Norcraft." Opp'n to RFPs at 17-18. This argument fails. First, this is not the type of information normally protected as a trade secret. Second, as the KB Developers point out, if this type of information is a trade secret, then how did Carrillo testify during his deposition as to the limitations of authority placed upon its claims representatives who handled <u>the KB Developers'</u> tender of defense? <u>See</u> Docket No. 61-1, Ex. 7.

- The interrogatories seek information that is protected from disclosure by Cal. Ins. Code § 791.13
- The interrogatories seek information that is irrelevant to the instant litigation
- Any disclosure of the information sought would severely prejudice Norcraft in its defense in the Underlying Aldrich Action.

These interrogatories essentially are analogues to the RFPs at issue, and the analysis set forth above with respect to those RFPs, and Travelers's identical objections, applies equally well here. Accordingly, the KB Developers' motion to compel further responses to Interrogatory Nos. 12, 16, and 18 is GRANTED.

D. Travelers's Privilege Log

The KB Developers also requested an order requiring Travelers to submit a revised privilege log. MTC RFPs at 22-23. They say that Travelers has only submitted a two-page privilege log that fails to provide basic identifying information. Id. At oral argument, the Court stated that such a privilege log is insufficient. Accordingly, Travelers shall provide the KB Developers with a revised privilege log within 14 days from the date of this order.

**CONCLUSION**

Based on the foregoing, the Court GRANTS the KB Developers' motions to compel. Travelers shall make Richard Carrillo and Debra Ann Taylor available for further deposition within 14 days from the date of this order. Travelers also shall provide further responses to RFP Nos. 33, 34, 50, 41, and 67 and Interrogatory Nos. 12, 16, and 18 within 14 days from the date of this order. Travelers also shall provide the KB Developers with a revised privilege log within 14 days from the date of this order.

However, any further testimony and any further responses shall be subject to a protective order that prohibits the KB Developers' counsel in this action from sharing the testimony or responses with the KB Developers' counsel in the Underlying Aldrich Action. The parties shall file a joint stipulated protective order for this Court's approval within 10 days from the date of this order.

**IT IS SO ORDERED.**

Dated: June 2, 2011

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C10-02856 EJD (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Abel Eric Aguilera | eaguilera@bmkalaw.com, krickard@bmkalaw.com, travelers@bmkalaw.com |
| Caroline Elizabeth Siefert | caroline.siefert@ndlf.com |
| Chanmaly Kendie Schlecht | kendie.schlecht@ndlf.com |
| Gary A. Barrera | gary.barrera@ndlf.com, stephanie.cadwallader@ndlf.com |
| Rondi Jan Walsh | rondi.walsh@ndlf.com |

See **General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**

James Stephen Hultz
Newmeyer & Dillion LLP
895 Dove Street, 5th Floor
Newport Beach, CA 92660

Jason Y. Chao
Bohm Matsen Kegel & Aguilera
695 Town Center Drive Suite 700
Costa Mesa, CA 92626

Thomas Lether
Cole, Lether, Wathen, Leid & Hall, P.C.
1000 Second Street
Suite 1300
Seattle, WA 98104-1802

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**