NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:10-cv-02856-EJD<br>JUDGE: Edward J. Davila<br>COURTROOM: 1<br>MAGISTRATE JUDGE: Howard R. Lloyd<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREFOF**<br><br>***[Declaration of C. Kendie Schlecht filed concurrently herewith]***<br><br>**DATE: September 30, 2011**<br>**TIME: 9:00 a.m.**<br>**COURTROOM: 1**<br><br>State Court Action Filed: May 27, 2010<br>Removed to USDC Northern District: June 28, 2010 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 30, 2011, at 9:00 a.m., in Courtroom 1 of the above-captioned court, located at 280 South 1st Street, San Jose, California, Plaintiffs Kaufman & Broad Monterey Bay and KB Home South Bay, Inc. (collectively, "KB Home") will move this Court for partial summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56(a) and



NEWMEYER & DILLION LLP

Northern District of California Civil Local Rules 56-1 and 7-2 that defendant Travelers Property Casualty Company of America ("Travelers") breached its duty to provide KB Home an immediate, full and complete defense in the underlying construction defect action entitled Aldrich, et al. v. KB Home, et al., Monterey County Superior Court Case No. M 94490 ("Aldrich Action"). The issues to be adjudicated are:

**Noticed Issue No. 1:**

The factual allegations in the underlying Complaint and the extrinsic evidence available and known to Travelers evidenced potential coverage triggering Travelers' duty to provide KB Home an immediate and complete defense of the Aldrich Action, from the date of tender, April 1, 2009.

**Noticed Issue No. 2:**

Travelers breached its duty to provide KB Home an immediate and complete defense of the Aldrich Action.

**Noticed Issue No. 3:**

Belated payment of the costs of defense in the Aldrich Action did not cure Travelers' breach of its duty to provide KB Home an immediate and complete defense of the Aldrich Action.

The motion will be based upon this Notice of Motion and Motion for Partial Summary Judgment, the Memorandum of Points and Authorities, the Declaration of C. Kendie Schlecht in support thereof, all evidence filed in support of this motion, all pleadings, documents and records on file herein, and on such other further evidence and argument as may be presented at the time of the hearing of this motion.

Dated: August 26, 2011

NEWMEYER & DILLION LLP

By: ____________________________
C. Kendie Schlecht
Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation

# TABLE OF CONTENTS

**Page**


1. INTRODUCTION .......... 3
2. STATEMENT OF FACTS .......... 5
   - A. The Underlying Construction Defect Matter .......... 5
   - B. The Norcraft Policies .......... 5
   - C. KB Home's Tender Under the Norcraft Policies and Travelers' Initial Acceptance .......... 7
   - D. Travelers' Repeated and Continuous Breaches .......... 7
     - (1) Travelers' Wrongful Withdrawal From KB Home's Defense .......... 7
     - (2) Travelers Refusal To Consider Extrinsic Evidence Confirming Its Duty to Defendant KB Home .......... 9
     - (3) Travelers Still Refuses To Acknowledge Its Duty To Provide KB Home With A Complete Defense From The Date of Tender .......... 10
3. LEGAL ARGUMENT .......... 11
   - A. KB Home Is Entitled Summary Judgment On The Issues Presented .......... 11
   - B. Travelers' Duty To Defend Is Triggered By A Mere Potential For Coverage .......... 12
   - C. The Aldrich Complaint Creates A Potential For Covered Damages Triggering Travelers' Duty To Defend KB Home .......... 13
     - (1) Travelers' Internally Acknowledged That The Aldrich Complaint Asserted A *Likelihood* For Covered Damages .......... 14
     - (2) Travelers Is Defending its Named Insured In The Aldrich Action .......... 15
     - (3) Plaintiffs' Counsel Twice Confirmed That Plaintiffs In The Aldrich Action Allege Covered Damages .......... 15
   - D. Travelers Breached Its Duty To Defend KB Home .......... 15
     - (1) Travelers Refused to Fund Any Portion of KB Home's Defense .......... 16
     - (2) Travelers Improperly Withdrew From KB Home's Defense .......... 16
     - (3) Travelers Refused To Consider Extrinsic Evidence Confirming Its Duty To Defend .......... 17
     - (4) Travelers Continues To Improperly Limit Its Defense Obligations .......... 17




NEWMEYER & DILLION LLP

**TABLE OF CONTENTS**
**(continued)**

**Page**

E. Travelers Did Not Cure Its Breaches By Its Belated Payment For KB Home's Defense ..... 18

4. CONCLUSION ..... 19

NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES

Page

## CASES

Aerojet-General Corp. v. Transport Indemnity Co. ....16
17 Cal. 4th 38, 70, (1997)

Borg v. Transamerica Ins. Co. ....12, 16
47 Cal. App. 4th 448, 455 (1996)

Buss v. Super. Ct. ....3
16 Cal.4th 35, 46 (1997)

Celotex Corp. v. Catrett ....11
477 U.S. 317, 322 (1986)

E.phiphany, Inc. v. St. Paul Fire & Marine Ins. Co. ....11
590 F.Supp.2d 1244, 1247 n.2, 1254 (N.D. Cal. 2008)

Fazio v. City & Cnty. of San Francisco ....11
125 F.3d 1328, 1331 (9th Cir. 1997)

Flinkote Co. v. General Accident Assurance Co. ....13
480 F.Supp.2d 1167, 1172 (N.D. Cal. 2007)

Horace Mann Ins. Co. v. Barbara B. ....15
4 Cal. 4th 1076, 1081 (1993)

Lakeland Vill. Homeowners Assoc. v. Great Am. Ins. Grp. ....11, 12
727 F. Supp. 2d 887, 894 (E.D. Cal. 2010)

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. ....11
457 U.S. 574, 586-87 (1986)

Montrose Chem. Corp. v. Superior Court ....12, 14, 16
6 Cal. 4th 287, 295-96, (1993) ("Montrose I")

Montrose Chemical Corp. v. Admiral Ins. Co. ....14
10 Cal. 4th 645 (1995)

Pardee Constr. Co. v. Ins. Co. of the West ....13
77 Cal. App. 4th 1340, 1350 (2000)

Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., ....4, 18
78 Cal. App. 4th 847, 881 (2000)

## RULES

Fed. Rules Civ.Proc. rule 56(a) ....

Fed. Rules Civ.Proc. rule 56(c) ....

Fed. Rules Civ. Proc. Rule 56(e)(2) ....



NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES
**(continued)**

**Page**

U.S. Dist. Ct. Local Civ. Rules, Northern Dist. Cal., rule 56-1 and 7-2 ..............................



NEWMEYER & DILLION LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION.

It is well settled under California law that the "duty to defend runs to claims that are merely ***potentially covered***, in light of facts alleged or otherwise disclosed." Buss v. Super. Ct., 16 Cal. 4th 35, 46 (1997) (emphasis added).

KB Home is an insured under a series of commercial general liability policies issued by Travelers to KB Home's cabinet subcontractor, Norcraft Companies ("Norcraft"). Accordingly, when KB Home was sued for alleged property damage arising out of a variety of construction defects, specifically including defects arising out of Norcraft's cabinet work, KB Home tendered its defense to Travelers. It is beyond dispute that the underlying Aldrich complaint asserts much more than a potential for covered damages. Indeed, Travelers' own internal claim notes ("Claim Notes") reflect that Travelers' assessment acknowledged this fact:

> Insured [Norcraft] also completed installation and ***cabinet damages are pleaded in the complaint***. Based on those facts, ***it is likely*** some, although minor ***damages resulted from installation***.

(Ex. 1, Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).)

Based on this assessment, Travelers acknowledged that the Aldrich complaint asserted a potential for covered damages and agreed to defend both Norcraft and KB Home. However, when KB Home requested that Travelers actually pay towards the defense and the costs proved to be substantially more than Travelers anticipated, Travelers began to repeatedly and continually breach its duty to defend KB Home.

First, Travelers breached its duty to defend by simply ignoring KB Home's repeated requests for payment.

Then, Travelers took the radical and nearly unprecedented step of withdrawing from KB Home's defense, claiming, contrary to the clear facts and its own internal assessment, that there were *no* allegations that gave rise to a potential for property damage arising out of the work performed by Norcraft. (Ex. 2, E-mail dated 12/10/99 from Patricia Dlugokenski (TRV-000074); Ex. 3, Letter dated 3/9/10 from Patricia Dlugokenski (TRV-000043-45).) Thus, while Travelers



NEWMEYER & DILLION LLP

internally acknowledged that damages were "***likely***," it claimed the exact opposite as to KB Home, i.e., that there was ***not even a potential*** for such damages. Remarkably, Travelers' view as to covered damages for Norcraft's tender, under the same policies, the same facts and the same allegations, did not change.

Travelers further breached its duty to defend KB Home by refusing to consider extrinsic evidence provided by plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact pursuing damages arising out of Norcraft's work. (Ex. 4, E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman.)

As a result of Travelers' breaches, KB Home was forced to initiate the instant coverage litigation while simultaneously defending itself in the Aldrich Action. After several months of expensive coverage litigation, Travelers finally again acknowledged its duty to defend KB Home. However, instead of providing a complete defense as required under California law, Travelers is still in breach of its duty to defend because it continues to place unlawful limitations and restrictions on its defense obligation. In fact, Travelers has sought to file cross-claims against KB Home to recover all amounts it has paid over its wrongfully imposed limitations on the defense.

Travelers believes that it can escape the consequences of all of its breaches because it *eventually* agreed to pay KB Home's defense fees and costs. Such a result would encourage insurers to simply refuse to defend until and unless the insured incurred the tremendous financial burden of suing, at which point the insurer could cure its breaches by simply paying what had been due all along. Fortunately, California law forbids such conduct and expressly states that an insurer cannot simply cure its breaches of the duty to defend without consequence. Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc., 78 Cal. App. 4th 847, 881 (2000).

Accordingly, KB Home moves for partial summary judgment to establish: (1) that the factual allegations in the Aldrich Action and the extrinsic evidence available and known to Travelers evidenced potential coverage triggering Travelers' duty to provide KB Home an immediate and complete defense in the Aldrich Action, from the date of tender of April 1, 2009; (2) that Travelers breached its duty to provide such a defense to KB Home; and (3) that Travelers did not cure its breach with its belated payment of defense fees and costs.

## 2. STATEMENT OF FACTS.

### A. The Underlying Construction Defect Matter.

Between 2003 and 2004, KB Home was involved in the development and construction of residential projects referred to as "The Cove" and "The Bluffs" (the "Projects") located in the City of Seaside, County of Monterey, California. On October 21, 2008, the owners of 43 homes in the Projects filed their construction defect complaint in the underlying Aldrich Action. (Ex. 5, Aldrich Complaint.) In the Aldrich Complaint, the homeowners allege, among other things, that cabinet defects resulted in damage to the homes and their component parts. (Ex. 5, Aldrich Complaint, ¶ 17.)[1]

On April 8, 2009, KB Home filed a cross-complaint against subcontractors whose work was implicated in the Aldrich Action, including Norcraft. KB Home asserted causes of action for equitable and comparative indemnity, breach of contract, express contractual indemnity, breach of contract re insurance, negligence, and declaratory relief. (Ex. 8, KB Cross-Complaint in Aldrich Action.)

### B. The Norcraft Policies.

As is customary in the construction industry, subcontractors who worked on the Projects were required to add KB Home as an insured to their commercial general liability policies. Norcraft provided certificates of insurance, endorsements and/or other documents for the purpose of assuring KB Home it had done so. It is undisputed that Travelers issued at least four policies to Norcraft under which KB Home qualifies as an insured:

| Policy Number(s) | Coverage Period |
|---|---|
| TC2J GLSA 118D0207-TIL-02 | 12/31/02-12/21/03 |
| TC2J GLSA 118D2170-TIL-03 | 10/21/03-10/21/04 |
| TC2J GLSA 118D2170-TIL-04 | 10/21/04-11/1/05 |
| TC2J GLSA 118D2170-TIL-05 | 11/1/05-11/1/06 |

(See Exs. 9-12, 02-03 Policy; 03-04 Policy, 04-05 Policy, and 05-06 Policy, respectively

[1] These particular allegations were unchanged in the subsequently filed First and Second Amended Complaints for Damages. (Ex. 6, Aldrich First Amended Complaint, ¶ 17; Ex. 7, Aldrich Second Amended Complaint, ¶ 17.)

NEWMEYER & DILLION LLP

(collectively, "Norcraft Policies").)

Travelers admits in responses to requests for admission that KB Home is an insured under the Norcraft Policies. (Ex. 13, Second Set of RFAs to Travelers Nos. 55-63; Ex. 14, Travelers' Responses to Second Set of RFAs Nos. 55-63.) Travelers also does not dispute that Norcraft performed work at the homes at issue in the *Aldrich* Action. Indeed, Travelers has been defending Norcraft in the Aldrich Action under the same policies throughout the pendency of the Aldrich Action, without interruption. (Ex. 15, Letter dated 5/26/11 from Travelers' counsel; Ex. 16, E-mail dated 7/16/09 from Deborah Taylor (KB COV 00038).)

At least one of the Norcraft Policies, the 03-04 policy, names KB South Bay its affiliates and subsidiaries as an insured under a Form CG 2010 1185 Additional Insured Endorsement for all operations. That endorsement provides:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

(Ex. 10, Additional Insured Endorsement to 03-04 Policy (TRV-000197).)

The coverage grant in each of the Norcraft Policies is substantially similar and, in relevant part, provides:

> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. . . .

(Ex. 9, 02-03 Policy (TRVC-000571); Ex. 10, 03-04 Policy (TRVC-000015); Ex. 11, 04-05 Policy (TRVC-000219); Ex. 12, 05-06 Policy (TRVC-000400).)



NEWMEYER & DILLION LLP

Thus, the Norcraft Policies provide that Travelers will have the duty to defend the insured against any "suit" seeking damages arising out of "property damage" for which the policies provide coverage. The Norcraft Policies provide coverage for "property damage," which is in turn defined as "Physical injury to tangible property, including all resulting loss of use of that property…or [l]oss of use of tangible property that is not physically injured." (Ex. 9, 02-03 Policy (TRVC-000581); Ex. 10, 03-04 Policy (TRVC-000025); Ex. 11, 04-05 Policy (TRVC-000233); Ex. 12, 05-06 Policy (TRVC-000414).)

**C. KB Home's Tender Under The Norcraft Policies And Travelers' Initial Acceptance.**

On or about April 1, 2009, KB Home tendered its claim and requested that Travelers provide an immediate and full defense of the Aldrich Action. (Exs. 17 and 18, Tender Letter dated 4/1/09 from Mary Kay Glaspy (KB COV 00016-17).) On or about July 6, 2009, Travelers acknowledged that KB Home was an additional insured under the Norcraft Policies and acknowledged a duty to defend KB Home under the policies. (Ex. 19, AI Acceptance Letter dated 7/6/09 from Patricia Dlugokenski (KB COV 00040-47).) A notation in Travelers' Claim Notes made that same day state "Insured [Norcraft] also completed installation and ***cabinet damages are plead [sic] in the complaint***. Based on those facts, it is likely some, although minor damages resulted from installation. Damages to the walls or pulling away from the walls could be attributed to installation" (Ex. 1, Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).)

Travelers also confirmed that it had retained defense counsel to represent Norcraft in the Aldrich Action. (Ex. 16, E-mail dated 7/16/09 from Deborah Taylor (KB COV 00038).)

**D. Travelers' Repeated And Continuous Breaches.**

After Travelers acknowledged its duty to defend, KB Home made several requests that Travelers actually pay towards its defense of the Aldrich Action. However, Travelers refused all such requests.

**(1) Travelers' Wrongful Withdrawal From KB Home's Defense.**

Then, on or about December 10, 2009, without explanation, Travelers announced that it

NEWMEYER & DILLION LLP

would be withdrawing its agreement to defend. (Ex. 2, E-mail dated 12/10/09 from Patricia Dlugokenski (TRV-000074).) On or about March 9, 2010, Travelers issued a formal letter of withdrawal. (Ex. 3, Letter dated 3/9/10 from Patricia Dlugokenski (TRV-000043-45).) Despite its very specific internal notes detailing that "cabinet damages are plead [sic] in the complaint," Travelers claimed that information received by Travelers "reveals an absence of allegations that give rise to a potential for 'property damage' arising out of the product provided or the work performed by Norcraft." (Id.) Remarkably, Travelers continued to defend Norcraft all along. (Ex. 15, Letter dated 5/26/11 from Travelers' counsel; Ex. 16, E-mail dated 7/16/09 from Deborah Taylor (KB COV 00038).)

Travelers conducted no independent investigation and nothing occurred in the Aldrich Action that could have supported Travelers' radical decision to withdraw coverage. Rather, a review of Travelers' Claim Notes reveals that three events solely impacting Travelers assessment of the ***cost*** of KB Home's defense occurred between Travelers' acceptance on July 6, 2009 and Travelers' decision to withdraw on or about December 10, 2009:

1. Travelers set a low defense reserve based on its anticipation that ***at least ten*** insurers would participate in KB Home's defense such that Travelers would only be required to fund 10% of the defense. (Ex. 1, Travelers Claim Notes, Entry of 7/14/09 (TRPD-000756-57));

2. Travelers received its first bills for the Aldrich Action and realized that it was ***the only*** insurer that had acknowledged its duty to defend KB Home. (Ex. 1, Travelers Claim Notes, Entry of 10/20/09 (TRPD-000754)); and

3. Travelers learned that its co-carrier, Safeco, denied KB Home's defense tender (Ex. 1, Travelers Claim Notes, Entry of 10/22/09 (TRPD-000754).)

In addition, the Claim Notes reflect an entry on November 3, 2009 of "recent receipt of AI allocation." (Ex. 1, Travelers Claim Notes, Entry of 11/5/09 (TRPD-000754).) The ***very next*** entry on December 10, 2009 was an unexplained entry that Travelers would be "withdrawing our AI acceptance." (Ex. 1, Travelers Claim Notes, Entry of 12/10/09 (TRPD-000754).)

Left without any other choice, on May 27, 2010, KB Home filed this action in the Monterey County Superior Court for declaratory relief, breach of contract, and breach of the



NEWMEYER & DILLION LLP

covenant of good faith and faith dealing. Travelers removed to the Northern District of California on June 28, 2010 based on the Court's diversity jurisdiction.

**(2) Travelers' Refusal To Consider Extrinsic Evidence Confirming Its Duty To Defend KB Home.**

KB Home continued its informal efforts to persuade Travelers to honor its defense obligations, to no avail, because while Travelers continuously defended its named insured, Norcraft, based on the allegations of the Aldrich complaint, as to KB Home, Travelers demanded more.

Thus, in an extraordinary effort to satisfy Travelers' improper demands and to avoid protracted coverage litigation, KB Home requested that homeowners' counsel in the Aldrich Action confirm whether or not they were seeking damages arising out of Norcraft's work. In a letter dated July 8, 2010, the Aldrich plaintiffs' counsel responded by confirming that the homeowners were indeed "pursuing recovery for damages arising out of the cabinets." (Ex. 4, E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) Yet, Travelers refused to consider this evidence. On July 26, 2010, Travelers inexplicably claimed that the letter was insufficient. (Ex.20, E-mail dated 7/26/10 from Jason Chao.) In contravention of California law requiring an insurer to defend their insured based on the ***mere potential*** for covered damages, Travelers insisted that KB Home ***prove*** the existence of such damages by providing a defect list or expert reports. (Id.)

Still desperate to avoid the irreparable harm that would result from having to simultaneously prosecute a coverage action while defending the Aldrich Action, KB Home tried in vain to fulfill Travelers' unlawful demands. KB Home once again approached plaintiffs' counsel in the Aldrich Action and requested that Plaintiffs satisfy Travelers' demand for a defect list. Plaintiffs' counsel deposited a Preliminary Defect List for cabinets into the document depository and KB Home forwarded a copy to Travelers on August 4, 2010. (Ex. 21, E-mail dated 8/4/10 from C. Kendie Schlecht attaching Aldrich Preliminary Defect List for cabinets.)

KB Home shortly learned that its efforts were futile. Even after Plaintiffs provided the exact defect list it demanded, Travelers still refused to defend KB Home in the Aldrich Action.



NEWMEYER & DILLION LLP

(Declaration of C. Kendie Schlecht ("Schlecht Decl."), ¶ 23.)

In fact, for four more months KB Home continued its strenuous efforts to convince Travelers to honor its obligation to defend it in the Aldrich Action. (Schlecht Decl., ¶ 23.) Yet, Travelers persisted in its tortious refusal. In the meantime, the only other insurer (Hartford) who had by that time acknowledged its duty to defend had likewise stop making payments toward the defense and KB Home was forced to incur the tremendous financial burden of funding the defense of the Aldrich Action going forward.

All the while, Travelers kept defending its named insured without interruption.

**(3) Travelers Still Refuses To Acknowledge Its Duty To Provide KB Home With A Complete Defense From The Date Of Tender.**

Suddenly, on December 3, 2010, Travelers indicated that it would once again acknowledge its duty to defend KB Home under a full reservation of rights. (Schlecht Decl., ¶ 24.) Yet without any explanation, Travelers continued to delay providing the promised letter. At the case management conference on December 15, 2010, Travelers was ordered by the Court to acknowledge its duty to defend no later than December 17, 2010. (Schlecht Decl., ¶ 25.)

On December 17, 2010, nine months after it wrongfully withdrew its agreement to defend KB Home, Travelers acknowledged a duty to partially defend KB Home. Travelers continued to deny that the complaint in the Aldrich Action triggered its duty to defend. Instead, it vaguely claimed that its duty to defend was triggered *no earlier* than August 4, 2010, the date that Travelers received KB Home's Preliminary Defect List for cabinets. (Ex. 22, Letter dated 12/17/10 from Patricia Dlugokenski.) Thus, Travelers still refused to provide KB Home the complete defense required under California law. On January 4, 2011, KB Home objected to the partial defense and advised Travelers that its coverage position was contrary to controlling law and that it continued to be in material breach of the insuring agreements. (Ex. 23, Letter dated 1/4/11 from C. Kendie Schlecht.)

On or about January 28, 2011, ***nearly two years*** after KB Home tendered the Aldrich Action, Travelers issued its very first partial payment towards KB Home's defense fees and costs. (Ex. 24, Check from Travelers dated 1/28/11.) Travelers is now paying all of KB Home's



NEWMEYER & DILLION LLP

defense fees and costs, but still improperly limits its duty to defend by claiming such duty was not triggered until it received the cabinet defect list. Travelers persists in this position although a Claim Notes entry dated January 31, 2011 acknowledge otherwise: "Based on this recent information and our recent acceptance of KB's tender ***we owe defense costs from the date of tender.***" (Ex. 1, Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750) (emphasis added).) Likewise, Travelers' adjuster, Ms. Dlugokenski, testified that based on the preliminary defect list, Travelers owes KB Home a defense from the date of tender. (Ex. 25, Dlugokenski Depo. Transcript at 210:4-8.)

Moreover, based on its improper limitations on the defense duty, Travelers threatened to sue KB Home to recover most of what it has paid toward the defense. Indeed, it has carried through with that threat by seeking leave to file a cross-claim in this matter for reimbursement and "unjust enrichment" against KB Home.

## 3. LEGAL ARGUMENT

### A. KB Home Is Entitled Summary Judgment On The Issues Presented.

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, the nonmoving party "may not rely merely on allegations or denials in its own pleading." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A mere scintilla of evidence is not sufficient to defeat a properly supported motion for summary judgment. Fazio v. City & Cnty. of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997). It is not enough to simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In addition, an insurer's duty to defend, and the breach of that duty, are appropriate issues for partial summary judgment. E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co., 590 F. Supp. 2d 1244, 1247 n.2, 1254 (N.D. Cal. 2008) (granting insured's motion for partial summary judgment on issue of insurer's duty to defend, and breach of its duty to defend); see also Lakeland Vill. Homeowners Assoc. v. Great Am. Ins. Grp., 727 F. Supp. 2d 887, 894 (E.D. Cal. 2010) (granting insured's motion for partial summary judgment on issue of insurer's duty to defend).

In such instances, "an insured moving for summary judgment need only show the existence of a potential for coverage, i.e. that the underlying claim may fall within the policy coverage. Whereas, an insurer moving for summary judgment must establish the absence of any potential for coverage, i.e. that the underlying complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." Lakeland Vill. Homeowners Assoc. v. Great Am. Ins. Grp., 727 F. Supp. 2d at 890 (internal marks and citations omitted). Any doubt as to whether the underlying complaint gives rise to a duty to defend must be resolved in the insured's favor. Id.

**B. An Insurer's Duty To Defend Is Triggered By A Mere Potential For Coverage.**

The duty to defend an insured is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded against the insured. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 299 (1993) ("Montrose I").) As the California Supreme Court explained, the "duty to defend runs to claims that are merely ***potentially covered***, in light of facts alleged or otherwise disclosed." Buss, 16 Cal. 4th at 46 (emphasis added).

The duty to provide an insured with an immediate and complete defense is triggered if a single claim in the complaint is potentially covered by the policy. Montrose I, 6 Cal. 4th at 295-96. ***The defense duty is so broad that an insurer owes a duty to defend its insured in an action even where coverage is in doubt and ultimately does not materialize.*** Montrose I, 6 Cal. 4th at 299.

"[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove that it *cannot*." Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448, 455 (1996). An insurer can escape its duty to defend only when the underlying complaint "*can by no conceivable theory raise a single issue which could bring it within the policy coverage*." Id. at 455 (citing Montrose I, 6 Cal. 4th at 300).) For this reason, where there is any doubt as to whether the duty to defend exists, that doubt must be resolved in favor of the insured and against the insured. Borg, 47 Cal. App. 4th at 455.



NEWMEYER & DILLION LLP

Thus, KB Home must make a prima facie showing that there is a potential for coverage under the policy, i.e., that the claims in the Aldrich Action may ***potentially*** or possibly fall within the terms of the policy. Any doubt as to whether the facts establish the existence of a defense duty ***must be resolved in KB Home's favor***. Travelers, on the other hand, must demonstrate that the claims would not be covered under any conceivable theory. Flinkote Co. v. General Accident Assurance Co., 480 F. Supp. 2d 1167, 1172 (N.D. Cal. 2007).

### C. The Aldrich Complaint Creates A Potential For Covered Damages Triggering Travelers' Duty To Defend KB Home.

The duty to defend must be assessed at the very outset of a case. Pardee Constr. Co. v. Ins. Co. of the West, 77 Cal. App. 4th 1340, 1350 (2000). "The determination whether an insurer owes a duty to defend is made in the first instance by comparing the Policy with the allegations of the complaint." Id.

As discussed above, the Norcraft Policies provide coverage for "property damage," which the policies define as "Physical injury to tangible property, including all resulting loss of use of that property…or [l]oss of use of tangible property that is not physically injured." (Ex. 9, 02-03 Policy (TRVC-000571, TRVC-000581); Ex. 10, 03-04 Policy (TRVC-000015, TRVC-000025); Ex. 11, 04-05 Policy (TRVC-000219, TRVC-000233); Ex. 12, 05-06 Policy (TRVC-000400, TRVC-000414).)

The Aldrich complaint establishes a potential for coverage for such "property damage" arising out of Norcraft's work. Specifically, the complaint alleges, in part:

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following:
>
> . . .
>
> ***cabinet and wood trim defects***
>
> . . .



NEWMEYER & DILLION LLP

> 20. The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.
>
> 21. Because of the defective conditions of the PROPERTY as herein above alleged, Plaintiffs have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:
>
> A) Plaintiffs will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of damages is presently unknown, except that the costs will exceed the sum of $100,000 per home.
>
> . . .

(Ex. 5, Aldrich Complaint, ¶¶ 17, 20, 21) (emphasis added).)

Thus, plaintiffs in the Aldrich Action allege that Norcraft's cabinet work caused property damage to the homes and their component parts which require repair. The complaint is "neutral" in that it does not specify when the property damage occurred, and thereby raises the possibility that such property damage occurred during the term periods of the Norcraft Policies. See, e.g., Montrose I, 6 Cal. 4th at 304; Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal. 4th 645 (1995) (adopting a continuous trigger of coverage in California under third party general liability policies of insurance).

Accordingly, the allegations of Aldrich complaint triggered a potential for coverage, and concomitantly, Travelers' duty to defend KB Home.

**(1) Travelers' Internally Acknowledged That The Aldrich Complaint Asserted A *Likelihood* For Covered Damages.**

Entries in Travelers' Claim Notes expressly acknowledge that the complaint contained allegations sufficient to trigger Traveler's duty to defend KB Home. The entry dated July 6, 2009 states:

> Insured [Norcraft] also completed installation and ***cabinet damages are plead [sic] in the complaint***. Based on those facts, ***it is likely*** some, although minor ***damages resulted from installation***. Damages to the walls or pulling away from the walls could be attributed to installation.

(Ex. 1, Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).)



NEWMEYER & DILLION LLP

Thus, Travelers' own assessment acknowledges that the allegations of the Aldrich complaint not only raise a *potential,* but a *likelihood* for covered damages.

**(2) Travelers Is Defending Its Named Insured In The Aldrich Action.**

Throughout the pendency of this case, Travelers has been defending Norcraft in the very same case that it refuses to defend KB Home. (Ex. 15, Letter dated 5/26/11 from Travelers' counsel; Ex. 16, E-mail dated 7/16/09 from Deborah Taylor.)

Yet, in his ruling granting one of KB Home's discovery motions, Magistrate Judge Howard Lloyd agreed with KB Home that "Travelers's 'obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts.'" Docket No. 70 at 4:24-26. If the Aldrich Action presents a potential for covered damages as to Norcraft, by definition, it must also establish such potential as to KB Home.

**(3) Plaintiffs' Counsel Twice Confirmed That Plaintiffs In The Aldrich Action Allege Covered Damages.**

Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).

Here such extrinsic evidence not only reveals a possibility for such claims, it absolutely confirms it. Specifically, plaintiffs' counsel in the Aldrich Action provided unequivocal confirmation that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. 4, Letter dated 7/8/10 from Fred M. Adelman.) Because Travelers refused to reconsider its position based on this evidence, Plaintiffs again confirmed covered damages by providing a defect list specifically detailing the types of damage arising out of Norcraft's work claimed by the homeowners. (Ex. 21, E-mail dated 8/4/10 from C. Kendie Schlecht attaching Aldrich Preliminary Defect List for cabinets.)

Accordingly, KB Home is entitled to partial summary judgment on the issue of Travelers' obligation to defend KB Home in the Aldrich Action.

**D. Travelers Breached Its Duty To Defend KB Home.**

The insurer must provide an immediate, full and complete defense against an entire



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

lawsuit, even when only one of the claims in a complaint raises a potential for coverage. Aerojet-Gen. Corp. v. Transp. Indem. Co., 17 Cal. 4th 38, 70 (1997); Montrose I, 6 Cal. 4th at 295-96. Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf. Montrose I, 6 Cal.4th at 295. "When a suit against an insured alleges a claim that potentially or even possibly could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the claim *cannot* be covered." Borg, 47 Cal. App. 4th at 455.

Here the undisputed facts establish that Travelers breached its duty to provide KB Home with a complete and immediate defense of the Aldrich Action.

**(1) Travelers Refused to Fund Any Portion of KB Home's Defense**

"By definition, the duty [to defend] entails the rendering of a service, viz., the mounting and funding of a defense." Aerojet-General Corp., 17 Cal. 4th at 58. As discussed above, Travelers initially acknowledged its duty to defend KB Home the Aldrich Action in July 2009. Thereafter, KB Home repeatedly requested payment towards the defense. However, Travelers refused to issue any such payment prior to its decision to withdraw on December 10, 2009.

**(2) Travelers Improperly Withdrew From KB Home's Defense.**

Once triggered, the duty to defend continues until the case is concluded or the insurer conclusively establishes that the underlying complaint "*can by no conceivable theory raise a single issue which could bring it within the policy coverage*." Borg, 47 Cal. App. 4th at 455 (citing Montrose I, 6 Cal. 4th at 300).

Here, Travelers has not and cannot establish either means for extinguishing the duty to defend. Travelers acknowledged its duty to defend in July 2009. Then, without ever issuing payment, Travelers simply announced that it would be withdrawing its agreement to defend on December 10, 2009 and sent a formal withdrawal letter on March 9, 2010. (Ex. 2, E-mail dated 12/10/09 from Patricia Dlugokenski (TRV-000074); Ex. 3, Letter dated 3/9/10 from Patricia Dlugokenski (TRV-000043-45).)

During this time, Travelers conducted no independent investigation and nothing occurred in the Aldrich Action that could have supported Travelers' radical decision to withdraw coverage.

In fact, Travelers' Claim Notes reveal that Travelers' decision to withdraw coverage was based entirely on the fact that it would be responsible for much more of the defense costs than it had initially anticipated. (Ex. 1, Travelers Claim Notes, Entries of 7/14/09, 10/20/09, and 10/22/09 (TRPD-000756-57, TRPD-000754, and TRPD-000754, respectively).)

Travelers cannot meet its burden of proving that no conceivable theory of liability asserted by the plaintiffs in the Aldrich Action could possibly raise an issue that is covered by the Norcraft Policies. Unable to meet this burden, Travelers unequivocally breached its duty to defend when it withdrew its defense of KB Home.

(3) **Travelers Refused To Consider Extrinsic Evidence Confirming Its Duty To Defend.**

As discussed above, not wishing to simultaneously defend the Aldrich Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to defend. KB Home obtained a letter from plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. 4, E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) When Travelers still refused to defend KB Home, KB Home also obtained a defect list for cabinets from Plaintiffs' counsel in the Aldrich Action. (Ex. 21, E-mail dated 8/4/10 from C. Kendie Schlecht attaching Aldrich Preliminary Defect List for cabinets.) Even after the Aldrich plaintiffs gave Travelers the exact defect list it demanded, Travelers continued to breach its duty by refusing to immediately defend KB Home.

(4) **Travelers Continues To Improperly Limit Its Defense Obligations.**

After a lengthy and expensive nine-month delay, Travelers finally claimed to accept its defense obligation on December 17, 2010. Yet, even then, Travelers continued to deny that the complaint in the Aldrich Action triggered its duty to defend. Rather, it stated, its duty to defend was triggered no earlier than August 4, 2010, the date that Travelers received KB Home's Preliminary Defect List for cabinets. (Ex. 22, Letter dated 12/17/10 from Patricia Dlugokenski.) Travelers persists in this position although its own claims adjuster acknowledges otherwise: "Based on this recent information and our recent acceptance of KB's tender we owe defense costs

from the date of tender." (Ex. 1, Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750); Ex. 25, Dlugokenski Depo. Transcript at 210:4-8.)

Further, Travelers is seeking leave to cross-claim against KB Home for amounts it has paid over the unlawful self-imposed limitations on its duty to defend. KB Home, thus, is still left with no choice but to simultaneously defend itself in the Aldrich Action and litigate the coverage issues in this matter.

### E. Travelers Did Not Cure Its Breaches By Its Belated Payment For KB Home's Defense.

An insurer's duty to defend is determined on the basis of facts available to the insurer when the defense is tendered. "If the insurer is obliged to take up the defense of its insured, it must do so as soon as possible, both to protect the interests of the insured, and to limit its own exposure... [T]he duty to defend must be assessed at the outset of the case." Shade Foods, Inc., 78 Cal. App. 4th at 881 (citing CNA Casualty of California v. Seaboard Surety Co., 176 Cal. App. 3d 598, 605). It follows that, if an insurer wrongfully refuses to defend, ***a belated offer to pay the costs of defense will not cure the initial breach of duty.*** Shade Foods, Inc. 78 Cal. App. 4th at 881.

Travelers breached its duty to defend on December 10, 2010, when without warning and without ever paying a penny towards KB Home's defense, it announced that it was withdrawing from KB Home's defense. Travelers would have the Court believe that it can wipe away all of its breaches because it eventually acknowledged KB Home's defense. In Travelers' distorted view, an insurer can freely violate its insurance policy and the law by forcing its insured to bear its own defense. If, and only if, the insured can manage to defend itself in an underlying action and simultaneously pursue coverage litigation, the insurer can simply agree to defend, cure its breach, and face no consequence whatsoever. Fortunately for the insureds of this state, the law prohibits such conduct and a belated payment does not cure the insurer's breach.

Hence, Travelers' duty to defend was triggered upon submission of KB Home's tender letter; Travelers breached its duty to defend when it wrongfully withdrew its agreement to defend KB Home; Travelers breached its duty to defend each time it was provided with additional



NEWMEYER & DILLION LLP

information further establishing its duty to defend; Travelers breached its duty to defend each time it was asked to, and refused to, reconsider its coverage position in light of all the evidence before it; and it remains in breach despite its belated payments for KB Home's defense.

## 4. CONCLUSION.

The underlying Aldrich Action complaint includes allegations of "property damage" arising out of the work of Norcraft that potentially took place during the policy periods of the Norcraft Policies. A potential for coverage exists and Travelers has a duty to defend KB Home in the Aldrich Action under the Norcraft Policies. California law is clear that any doubt as to whether the facts establish the existence of a duty to defend must be resolved in favor of KB Home. By withdrawing its agreement to defend KB Home, Travelers breached its duty to defend and breached its contract of insurance. Travelers remains in breach notwithstanding its sorely belated assumption of KB Home's defense. KB Home is entitled to partial summary judgment, and requests that this Court find that Travelers had a duty to provide an immediate, full and complete defense to KB Home in the Aldrich Action, that the duty was triggered no later than the date that KB Home tendered its claim to Travelers, and that Travelers breached its duty to KB Home.

Dated: August 26, 2011

NEWMEYER & DILLION LLP

By:______________________

C. Kendie Schlecht
Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation