**BOHM, MATSEN, KEGEL & AGUILERA, LLP**
A. Eric Aguilera (SBN 192390)
Kari M. Myron (SBN 158592)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
T: 714-384-6500
F: 714-384-6501
eaguilera@bmkalaw.com
kmyron@bmkalaw.com

**LETHER & ASSOCIATES, P.L.L.C**.
Thomas Lether, Esq. *Pro Hac Vice*
3316 Fuhrman Ave. E., Suite 250
Seattle, WA 98102
T: 206-467-5444
F: 206-467-5544
tlether@letherlaw.com

Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:10-cv-02856-EJD<br>Hon. Judge: Edward J. Davilla<br>Courtroom: 1<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Declarations of Raymond E. Brown, Pat Dlugokenski, Gene Irizarry, Jennifer Marvin, Mike Panish and Debbie Taylor]<br><br>Date: 9/30/2011<br>Time: 9:00 A.M. |

Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers") submits the following points and authorities in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS .......... 2

A. The Norcraft Policies .......... 2

B. The Underlying Subcontracts .......... 4

C. The Aldrich Action .......... 4

D. KB Home's Tenders of the Aldrich Action .......... 5

E. Travelers' Investigation and Coverage Determination .......... 5

F. The Hartford's Response to the Tenders of KB Home .......... 6

G. Travelers Accepted the Tender in July 2009 and Issued a Reservation of Rights .......... 6

H. The March 2010 Withdrawal of Coverage .......... 7

I. KB Home Refused to Cooperate with Travelers' Investigation by Withholding Requested Documentation Supporting Travelers' Withdrawal .......... 8

J. The August 4, 2010, Defect List Is The Only Document That Triggered a Duty to Defend KB Home, And Its Veracity Is In Question .......... 9

**III. THE COURT MUST DENY SUMMARY JUDGMENT WHERE KB HOME HAS FAILED TO CONCLUSIVELY ESTABLISH ALL OF THE ELEMENTS ENTITLING IT TO JUDGMENT IN ITS FAVOR** .......... 9

IV. THE ELEMENTS OF A CLAIM FOR BREACH OF CONTRACT INCLUDE PLAINTIFF'S PERFORMANCE, DEFENDANT'S BREACH AND DAMAGES .......... **10**

V. TRAVELERS DID NOT BREACH THE INSURING AGREEMENT BY WITHDRAWING FROM THE DEFENSE OF KB HOME IN MARCH 2010 .......... **10**

A. An Insured Seeking a Defense has the Initial Burden to Show the Claim May Fall Within the Coverage Provided by the Policy .......... 11

B. KB Home Cannot Establish That Information Available to Travelers at the Time it Withdrew Coverage Showed the Claim Might Fall Within the Policy .......... 11

1. Allegations of Potentially Covered "Property Damage" are Essential to Trigger a Duty to Defend .......... 11

2. Neither the Factual Allegations in the Aldrich Pleadings Nor Extrinsic Evidence Known by Travelers Prior to its March 2010 Withdrawal Showed Allegations of Potentially Covered Property Damage ........ 12

a. The Information Known to Travelers in March 2010 Did Not Include Allegations of Potentially Covered "Property Damage" Arising out of Norcraft's Work ........ 12

b. Speculation as to Facts Will Not Manufacture Coverage ........ 14

c. The Aldrich Homeowners' Attorney Acknowledges that the Complaint Fails to Plead Resulting Damage ........ 15

d. Neither the Opinions of Travelers' Adjusters nor their Independent Decision as to the Tender by Travelers' Named Insured is Relevant to the Determination of Whether KB Home Was Covered ........ 16

3. Travelers' Acceptance of Norcraft's Tender is Irrelevant ........ 17

4. The Lot Files – Although Intentionally Withheld from Travelers – Defeat any Assertion that there is Property Damage to Anything Other Than to the Norcraft Work and Product Itself ........ 18

5. The August 4, 2010, Single Page Defect List was the First Evidence of any Potential for Covered "Property Damage" ........ 19

6. KB Home's Breach of the Cooperation Clause of the Norcraft Policy Constitutes the Failure of a Condition Precedent ........ 20

VI. KB HOME HAS NOT AND CANNOT MEET ITS BURDEN TO PROVE DAMAGES ........ 21

A. KB Home Has Provided No Evidence of Damages and Therefore Cannot Prove Breach of the Duty to Defend ........ 21

B. The Shade Foods Case is Inapplicable to This Matter ........ 22

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.* 90 S.Ct. 1598, 1608 (1970) .......... 10
*Anderson v. Liberty Lobby, Inc.* 106 S.Ct. 2505, 2510 (1986) .......... 10
*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal.App.4th 1 (1996) .......... 6
*Aydin Corp. v. Loral Corp.* 718 F.2d 897, 902 (9th Cir. 1983) .......... 10
*Brandt v. Superior Court*, 37 Cal.3d 813 (1985) .......... 22
*Calderone v. United States* 799 F.2d 254 (6th Cir. 1986) .......... 10
*Ceresino v. Fire Ins. Exchange* 215 Cal.App.3d 814 (1989) .......... 21, 22
*Chatton v. National Union Fire Ins. Co.* 10 Cal. App. 4th 846 (1992) .......... 16
*Crawford v. Weather Shield Mfg., Inc.*, 44 Cal.4th 541 (2008) .......... 18
*Dalrymple v. United Services Auto. Assn.*, 40 Cal.App.4th 497, 511 (1995) .......... 22
*F & H Constr. Co. v. ITT Hartford Ins. Co. of the Midwest*, 118 Cal.App.4th 364 (2004) .......... 12
*Fontenot v. Upjohn Co.* 780 F.2d 1190, 1194 (5th Cir. 1986) .......... 10
*Golden Eagle Ins. Co. v. Insurance Co. of the West*, 99 Cal.App.4th 837 (2002) .......... 18
*Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106 .......... 11, 19
*Houck Construction, Inc. v. Zurich Specialties London Ltd.* 2007 WL 1739711 (U.S. Dist. C.D. Cal.) .......... 21
*Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* 10 Cal. App. 4th 533 (1992) .......... 12, 14
*Insurance Co. State of Pennsylvania v. The Roman Catholic Archbishop of Los Angeles*, 227 Fed.Appx. 643, 644 (9th Cir. 2007). .......... 20
*Jordan v. Allstate Ins. Col.* 116 Cal. App. 4th 1206 (2004) .......... 16
*Lassen Canyon Nursery, Inc. v Royal Ins. Co. of America*, 720 F.2d 1016, 1018 (9th Cir. 1983) .......... 12
*Lipson v. Jordache Enterprises, Inc.* 9 Cal. App. 4th 151 .......... 19
*Masson v. New Yorker Magazine. Inc.* 111 S.Ct. 2419, 2435 (1991) .......... 10
*Md. Casualty Co. v. Reeder*, 221 Cal. App. 3d 961 .......... 11
*Monticello Ins. Co. v. Essex Ins. Co.*, 162 Cal.App.4th 1376 (2008) .......... 12
*Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287 (1993) .......... 11

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc*. 182 F.3d 157, 160 (2nd Cir. 1999)............10
*New Hampshire v. Vieira*, 930 F.2d 696 (9th Cir. 1991) ..................................................................12
*North American Capacity Ins. Co. v. Claremont Liability Ins. Co*., 177 Cal.App.4th 272 (2009)...20
*Reichert v. General Ins. Co*., 68 Cal. 2d 822 (1968)...................................................................10, 21
*Ringler Associates Inc., v. Maryland* 80 Cal.App.4th 1165 (2000) ..................................................21
*San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.* 82 Cal.App.4th 1230 (2000)............21
*Saylin* v. *California Ins. Guarantee Assn*. 179 Cal. App. 3d 256 (1986)..........................................12
*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
78 Cal.App.4th 847 (2000)..........................................................................22, 23, 24, 25
*Tradewinds Escrow, Inc. v. Truck Insurance Exchange* 97 Cal.App.4th 704 (2002) ......................21
*Valladao v. Fireman's Fund Indem. Co*., 13 Cal.2d 322 (1939)......................................................20
*York Golf and Tennis Club v Tudor Ins. Co.*, 845 A.2d 1173 ........................................................16

**Statutes**

Federal Rules of Civil Procedure, Rule 56(c) ..................................................................9, 10

**Treatises**

Croskey, Heeseman, Popik & Imre, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group 2011), §3:158, p. 3-47. ..........................................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

KB Home does not dispute that for a duty to defend to arise an insured must show the underlying claim may fall with the coverage provided in the policy. Rather, KB Home argues it met that obligation when it tendered its defense in April 2009 because the policy covers "property damage" and the underlying complaint alleged damage to "the homes and their component parts," including "cabinet and wood trim defects." KB Home's analysis fails, however, for four reasons.

First, Travelers' policy does not cover damage to its insured's own product. Accordingly, for a duty to defend to arise KB Home had to show allegations in the underlying complaint claiming the cabinet installation caused damage to ***other parts*** of the home. In this case, even the attorney who drafted the underlying complaint conceded that it did not allege such damages.

Second, the initial determination of whether there is a duty to defend is based on ***the allegations in the complaint***. Accordingly, Travelers was not required to speculate about extraneous facts regarding potential liability that might exist and would cause the complaint to fall within coverage. It is the actual operative complaint and not some hypothetical extrinsic evidence on which Travelers was required to make its determination.

Third, KB Home suffered no resulting damages from the claimed breach. Despite the lack of any allegations of covered damages in the complaint, in an abundance of caution Travelers initially accepted KB Home's tender and requested additional information indicating the existence of claims for covered damages. Only after KB Home failed to provide any such information for ***six months*** did Travelers withdraw its defense in March 2010.

In the following five months, KB Home did nothing more than provide two letters from the underlying plaintiff's counsel indicating the plaintiffs were pursuing damages "arising out of the cabinets," but no indication that any plaintiff had any claims to any ***other parts of their homes*** arising from the cabinet installation. Moreover, during that period in breach of the policy's cooperation clause KB Home withheld detailed homeowner Lot Files that specified that in fact the homeowners were <u>***not***</u> claiming any resulting damages from the cabinet installation but rather merely ***minor cosmetic defects in the cabinets themselves***. Thus, the real question is whether this

Court is willing to reward KB Home for this deceitful behavior.

Only a year and a half after the tender did KB Home finally provide a one-page unverified "preliminary defect list" describing claimed damages resulting from the cabinetry work. At that point, Travelers again agreed to provide KB Home with a defense, subject to a reservation of rights, including the right to challenge the veracity of the "preliminary defect list." During the interim, however, KB Home was ***provided with a defense by another insurer***. Moreover, Travelers ***has paid all of KB Home's outstanding defense fees and costs***.

Finally, given the fact that the policy in question gives Travelers the right to control the defense, in December 2010 Travelers attempted to appoint counsel to defend KB Home. In another clear ***breach of the policy's cooperation clause***, however, KB Home refused to accept new counsel and has adamantly forbidden Travelers' chosen counsel from participating in the case.

The essential elements of a cause of action for breach of contract include plaintiff's performance or excuse for nonperformance, defendant's breach, and resulting damages to plaintiff. While, for purposes of this motion, Travelers does not dispute the existence of the Norcraft policies or that KB Home qualifies as an additional insured under those policies, as set forth below, KB Home's motion must be denied because it has not and cannot prove the remaining elements. The undisputed facts show that (1) KB Home breached the duty to cooperate, thereby releasing Travelers from liability under the policies; (2) Travelers did not breach the terms of the policies as the duty to defend was not triggered when Travelers denied coverage; and (3) KB Home has suffered no resulting damage, as its entire defense has been funded.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. <u>The Norcraft Policies</u>

Travelers issued the following commercial general liability policies to Norcraft Companies, L.P., **a cabinet installer**: TC2J GLSA 118D0207-TIL-02 (effective 12/31/02 to 10/21/03); TC2J GLSA 118D2170-TIL-03 (effective 10/21/03 to 10/21/04); TC2J GLSA 118D2170-TIL-04 (effective 10/21/04 to 10/21/05); and TC2J GLSA 118D2170-TIL-05 (effective 10/21/05 to 10/21/06) ("Norcraft policies"). [Dkt. 107: Declaration of Richard J. Carrillo, ¶5, Ex. A-D.] The Norcraft policies provide coverage for "property damage" arising out of an "occurrence" that takes

place "in the coverage territory" and that "occurs during the policy period." [See, Dkt. 107, Carrillo Dec., Ex. A at TRVC-000571, Ex. B at TRVC-000015, Ex. C at TRVC-000219, and Ex. D at TRVC-000400.] Allegations of a defective product or defective or faulty workmanship resulting in damage to the product itself do not constitute allegations of potentially covered 'property damage' for purposes of triggering coverage under the Norcraft policies. The policies define "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[See, Dkt. 107, Carrillo Dec., Ex. A at TRVC-000581, Ex. B at TRVC-000025, Ex. C at TRVC-000233, and Ex. D at TRVC-000414.]

The Norcraft policies unambiguously exclude coverage for damage to the insured's own work or product, expressly excluding "'[p]roperty damage' to 'your product' arising out of it or any part of it" and "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" [See, Dkt. 107, Carrillo Dec., Ex. A at TRVC-000573, Ex. B at TRVC-000017, Ex. C at TRVC-000223, and Ex. D at TRVC-000404.]

The Norcraft policies each contain a blanket additional insured endorsement form (form CG D1 44 01 96), which reads in pertinent part:

> 1. WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization (called "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but:
>
> a. **Only with respect to liability because of "bodily injury" or "property damage" arising out of "your work" for that additional insured performed by you or for you**; and
>
> b. Subject to any limitations in the written contract regarding the scope of the additional insured status. . . [Emphasis added.]

[See, Dkt. 107, Carrillo Dec., Ex. A at TRVC-000615, Ex. B at TRVC-000059, Ex. C at TRVC-000255, and Ex. D at TRVC-000438.]

The Norcraft policies expressly obligate all insureds to "[c]ooperate with [Travelers] in the

investigation or settlement of the claim or defense against the 'suit'" and to "[a]ssist [Travelers], upon [Travelers'] request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply". [See, Dkt. 107, Carrillo Dec., Ex. A at TRVC-000577, TRVC-000620, Ex. B at TRVC-000021, TRVC-000064, Ex. C at TRVC-000228, TRVC-000229, Ex. D at TRVC-000409, TRVC-000410.]

**B. The Underlying Subcontracts**

On or about January 22, 2003, and February 5, 2003, KB Home and Norcraft entered into subcontracts to furnish, deliver and install cabinets at certain homes within two housing developments in Monterey, California. [Dkt. 108: Declaration of Patricia E. Dlugokenski, ¶2, Ex. A & B.] The subcontracts required Norcraft to name KB Home as an additional insured only as to property damage caused by Norcraft's installation. [Dkt. 108: Dlugokenski Dec., ¶2, Ex. A & B.]

**C. The Aldrich Action**

On October 21, 2008, a number of homeowners commenced the Aldrich action against KB Home. [Dkt. 108: Dlugokenski Dec., ¶3, Ex. C.] The Aldrich complaint alleges in pertinent part:

> 17. **At the time of the purchase by Plaintiffs**, the PKOPERTY (sic) was defective and unfit for its intended purposes because Defendants did not construct the PROPERTY in a workmanlike manner **as manifested by**, but not limited to, **numerous defects which have resulted in damage …** The defects include, without limitation … the following: … **cabinet and wood trim defects;** …
>
> 64. Plaintiffs … allege that [KB Home] violated … *Civil Code* section *896*. … [S]aid violations raise (sic) out of, pertain to, or are related to, the original construction of the PROPERTY [and] include, without limitation … : … (3) **The manufactured products** (product that is completely manufactured offsite), **including** but not limited to, … **cabinets**, … at the PROPERTY … **installed so as to interfere with the products' useful life.**

[Dkt. 108: Dlugokenski Dec., Ex. C at ¶17:12-26 and ¶64(g)(3):4-6.]

///

///

///

In response, KB Home filed a cross-complaint against various subcontractors, including Norcraft, alleging among other things that Norcraft is contractually required to defend and indemnify KB Home with regard to the Aldrich action. [Dkt. 108: Dlugokenski Dec., Ex. F.]

**D. <u>KB Home's Tenders of the Aldrich Action</u>**

On April 1, 2009, Glaspy & Glaspy, counsel for KB Home, tendered the defense and indemnity of KB Home as an additional insured under the Norcraft policies. [Dkt. 108: Dlugokenski Dec., ¶6, Ex. D.] The tender did not contain a description of any alleged property damage implicating Norcraft's work. [Dkt. 108: Dlugokenski Dec., Exh. D.]

Similarly, KB Home tendered to The Hartford as additional insureds under CGL insurance policies issued to subcontractor Carey Tankersley, dba Carey Tankersley Floor Coverings, including but not limited to policy No. 57SBAAT2480 (effective from 09/01/03-09/01/04). [Dkt. 110: Declaration of Jason Y. Chao, ¶3, Ex. T.] Documents produced by KB Home in response to a subpoena issued to Glaspy & Glaspy confirm that The Hartford accepted KB Home's tenders of defense on or about February 9, 2010. [Dkt. 110: Chao Dec., ¶4, Ex. U.]

**E. <u>Travelers' Investigation and Coverage Determination</u>**

On April 6, 2009, Patricia E. Dlugokenski, a senior technical specialist for Travelers, acknowledged receipt of the tender and requested additional information including: documentation related to the alleged defects and deficiencies; expert investigation report(s); current pleadings and any CMO or PTO documents filed in Aldrich; the location of any document depository; any notices of completion and related documents for the Projects; any additional insured matrices; and tender letters to any other insurers for the Norcraft companies. [Dkt. 108: Dlugokenski Dec., ¶8, Ex. H.]

For its claims investigations, Travelers utilizes a proprietary computer system called ClaimNet/IMPACT ("ClaimNet"), which documents and describes the investigation on a step-by-step basis. [Dkt. 108: Dlugokenski Dec., ¶9.] Ms. Dlugokenski made numerous ClaimNet entries documenting Travelers' investigation of the claim. [Dkt. 108: Dlugokenski Dec., Ex. I.)

Ms. Dlugokenski thoroughly reviewed the Norcraft policies, the subcontracts and the Aldrich complaint. [Dkt. 108: Dlugokenski Dec., ¶9, Ex. I, pp. 9-11.] In response to Travelers' request for additional information, the only things KB Home's counsel provided were a copy of the

first amended complaint, special master order and a homeowners' matrix in the Aldrich action. [Dkt. 108: Dlugokenski Dec., ¶10, Ex. J.]

### F. The Hartford's Response to the Tenders of KB Home

On February 9, 2010, The Hartford agreed to participate in the defense of KB Home South Bay, Inc. ("KB South") under a reservation of rights. [Declaration of Raymond E. Brown, ¶3, Ex. U.] Like Travelers, The Hartford requested information relative to the allocation of defense fees/costs between other subcontractors and/or vendors, as well as information regarding their insurers who might have an obligation to share in the defense of the KB South. [Brown Dec., ¶4.]

Based upon The Hartford's review of the limited information provided by Glaspy & Glaspy, Inc./KB South, The Hartford issued a payment of $30,000.00 on March 8, 2010, toward the defense of KB Home. [Brown Dec., ¶5, Ex. V.] More than a year later, on April 13, 2011, Mary Kay Glaspy informed The Hartford that the KB Entities made an "Armstrong" election[1] pursuant to *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal.App.4th 1 (1996), to collect 100% of its defense costs solely from Travelers. [Brown Dec., ¶6, Ex. W.]

### G. Travelers Accepted the Tender in July 2009 and Issued a Reservation of Rights

On July 6, 2009, Ms. Dlugokenski, on behalf of Travelers, issued a reservation of rights letter accepting KB Home's tender as additional insureds under the Norcraft policies. [Dkt. 108: Dlugokenski Dec., ¶11, Ex. K.] When questioned as to why she accepted KB Home's tender despite an absence of information showing covered damages, Ms. Dlugokenski explained that in an abundance of caution she gave the insured the benefit of the doubt and the opportunity to show that such damages were being alleged. [Brown Dec., Ex. X, Duglokenski Deposition, 154:17-25.]

Travelers specifically reserved its right to amend its position, however, including the right to issue a declination and/or withdraw from its participation in the defense if it were to determine that coverage does not apply. [Dkt. 108: Dlugokenski Dec., ¶11, Ex. K, p. 7.] In addition, Travelers again requested documentation evidencing allegations of covered property damage caused by its named insured. [Dkt. 108: Dlugokenski Dec., ¶11, Exh. K, p. 6.] Ms. Dlugokenski's July 6, 2009,

---

[1] Travelers has challenged KB Home's election as improper and in violation of the policy.

claim note indicates her intent to "reserve our rights to withdraw if no damages resulted from NI work [as the] Defect list not available yet." [Dkt. 108: Dlugokenski Dec., Ex. I, p. 8.]

After issuing its reservation of rights letter, Travelers continued its investigation regarding the damages being alleged related to Norcraft's work. [Dkt. 108: Dlugokenski Dec., ¶9, Ex. I, p. 6.] As of October 19, 2009, the only documentation received by Travelers indicated that the homeowners were complaining of defects in ***the cabinets themselves*** and that the defects had reduced the value of their homes. [Dkt. 108: Dlugokenski Dec., Ex. I, p. 5.] In that no documentation of resulting damages had been provided, on October 20, 2009, Ms. Dlugokenski sent an e-mail to Gina Bateman of Glaspy & Glaspy again asking KB Home to provide documentation respecting allegations of covered property damage caused by the named insured's work. [Dkt. 108: Dlugokenski Dec., ¶12, Ex. L.]

On November 5, 2009, Tom Frazier, Travelers unit manager, conducted a supervisory review of KB Home's tenders under the Norcraft policies, noting that Travelers still lacked documentation respecting allegations of damage/liability arising out of Norcraft's work. [Dkt: 110: Declaration of Tom Frazier, ¶5; see also Dkt. 108: Dlugokenski Dec., Ex. I, p. 5.]

On December 10, 2009, Ms. Dlugokenski informed KB Home via e-mail that Travelers would be withdrawing its acceptance of KB Home's tender based on KB Home's inability over five months – despite repeated requests – to provide documentation that any alleged damages resulted from the work of the named insured cabinet installer. [Dkt. 108: Dlugokenski Dec., ¶13, Ex. M.]

### H. <u>The March 2010 Withdrawal of Coverage</u>

On March 9, 2010, Ms. Dlugokenski sent a letter to KB Home advising that Travelers was withdrawing its acceptance of KB Home's tender as an additional insured under the Norcraft policies. [Dkt. 108: Dlugokenski Dec., ¶14, Ex. N.] Travelers, having had full opportunity to review the allegations being made against KB Home in the Aldrich action, concluded that the alleged diminution damages claimed did not qualify as covered property damage arising from the work of Norcraft. [Dkt. 108: Dlugokenski Dec., Ex. N.] Furthermore, after eight months of asking (and waiting) for ***any*** documentation evidencing **any potential for property damage arising from**

**the work of Norcraft, KB Home failed to provide any such documents**. [Dkt. 108: Dlugokenski Dec., Ex. N.]

### I. KB Home Refused to Cooperate with Travelers' Investigation by Withholding Requested Documentation Supporting Travelers' Withdrawal

Notwithstanding numerous requests by Travelers for all documents respecting the allegation of diminution, or any other damage caused by the work of Norcraft over an eight-month period, KB Home intentionally withheld the Aldrich homeowner Lot Files that were in its possession at the time of tender. In fact, these files were in KB Home's possession since 2003, almost 7 years prior to its tenders. These files are significant in that they clearly establish that the homeowners who complained of problems with their cabinets prior to the commencement of the Aldrich action only complained of aesthetic and cosmetic issues, and none complained of resulting damage caused by the installation of the cabinets. [Declaration of Jennifer Marvin, ¶¶12-15, Ex. D.]

The gamut of complaints relate to dents, scratches, "off-center" door knobs, damage to the cabinet doors, scratched frames, failed caulking, missing toe kicks, "masking tape" left on the cabinets, mal-aligned drawers, paint drips, loose false fronts, blemishes in the finish and rough edges. KB Home should have known at the time it tendered the claim that none of those complaints are covered by Travelers' policy and that the Lot Files would have supported Travelers' concern about a lack of any alleged covered property damage. The Lot Files were not only created by KB Home but at all times since 2003 were in its possession, custody and control. [Dkt. 108, Dlugokenski Dec., ¶8 (Ex. H), ¶10 (Ex. J, p. 8) ; Marvin Dec., ¶5 (Ex. B).]

KB Home also withheld the Notice of Claim documentation filed in the Aldrich action on July 31, 2009.[2] In each instance where cabinet issues are identified in the Notice of Claim, the sole defect claimed is "useful life reduction." [See deposition testimony of Fred Adelman, Brown Dec., Ex. Y, 18:4-19:7, 23:14-24:12.] Just as it did with the Lot Files, KB Home withheld production of

---

[2] See, Brown Dec., Ex. Y: Deposition of Fred Adelman, Ex. 2 & 3.

the Notice of Claim that indicated none of the damages claimed by the Aldrich plaintiffs were covered by Travelers' policy.

### J. <u>The August 4, 2010, Defect List Is The Only Document That Triggered a Duty to Defend KB Home, And Its Veracity Is In Question</u>

On August 4, 2010, KB Home provided a one-page excerpt to coverage counsel for Travelers entitled "Aldrich, et al. v. KB Home, et al., Preliminary Defect List" described as a defect list related only to cabinet defects. [Dkt. 109: Chao Dec., ¶8, Ex. X.] The defect list, detailing only cabinet-related damages, describes the following damages:

> Base – Damaged edge, surface or wood
> Door - Broken or damaged
> Drawer - Broken or damaged
> Finish – Wearing prematurely

Additionally, the defect list describes resultant damage to the cabinetry work as follows:

> Gouging of drywall and interior painting
> Cracking and separation of drywall and caulking

Subsequent to receipt of this documentation, Travelers agreed to defend KB Home subject to a full reservation of rights based on the new information contained in the defect list. [Dkt. 108: Dlugokenski Dec., ¶15, Ex. O.] Although Travelers questioned the veracity of the document and reserved the right to challenge same at a later date, Travelers has paid over **$214,000** toward the defense of the Aldrich action. [Dlugokenski Dec., ¶3.] This is true notwithstanding that Travelers settled all issues related to cabinets in the underlying action for **$30,000**. [Declaration of Deborah Ann Taylor, ¶3.] Thus, KB Home contends Travelers has breached the subject insurance contract, notwithstanding that it paid more than seven times the settlement amount in defense fees and costs.

## III. THE COURT MUST DENY SUMMARY JUDGMENT WHERE KB HOME HAS FAILED TO CONCLUSIVELY ESTABLISH ALL OF THE ELEMENTS ENTITLING IT TO JUDGMENT IN ITS FAVOR

The party seeking summary judgment has both the initial burden of production and the burden of persuading the court that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

"Where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, a plaintiff moving for summary judgment "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The party seeking summary judgment bears a "heavy burden" because an order granting summary judgment is a "drastic device" cutting off a party's right to a jury trial. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999). The court must therefore view the evidence in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Ibid*.

Summary judgment is improper where any material fact is in genuine dispute. Fed. R. Civ. P. 56(c). A material fact is in dispute whenever reasonable persons could disagree, so that resolution would "require a jury or judge to resolve the parties' differing versions of the truth." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

Moreover, even where the facts themselves are undisputed, summary judgment is improper where reasonable minds could differ as to the inferences to be drawn from those facts. *Adickes v. S.H. Kress & Co.*, 90 S.Ct. 1598, 1608 (1970). Accordingly, where words or conduct may be interpreted in several ways, one supporting the motion and one controverting it, the motion should be denied. *Masson v. New Yorker Magazine. Inc.*, 111 S.Ct. 2419, 2435 (1991).

## IV. THE ELEMENTS OF A CLAIM FOR BREACH OF CONTRACT INCLUDE PLAINTIFF'S PERFORMANCE, DEFENDANT'S BREACH AND DAMAGES

The essential elements of a cause of action for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968).

## V. TRAVELERS DID NOT BREACH THE INSURING AGREEMENT BY WITHDRAWING FROM THE DEFENSE OF KB HOME IN MARCH 2010

**A. <u>An Insured Seeking a Defense has the Initial Burden to Show the Claim May Fall Within the Coverage Provided by the Policy</u>**

It is well established that an insurer has a duty to defend whenever the insurer has information, whether in the complaint or extrinsic to the complaint, showing a potential for coverage. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287 (1993). The burden is on the insured, however, to "show that the underlying claim *may* fall within policy coverage." *Montrose*, *supra.* 6 Cal.4th at 300. Only after making this initial showing is the burden upon the insurer to show that the underlying claim *cannot* fall within policy coverage. *Ibid.* The duty to defend further does not turn upon the ultimate adjudication of coverage but rather upon **those facts available to the insurer at the time of the coverage determination**. *Ibid.*

An insurer may therefore refuse to defend the lawsuit if it has made an informed decision based on the third party complaint and ***the extrinsic facts known to it at the time of tender*** that there are no facts indicating the claim falls within the policy. *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106 (1995).

**B. <u>KB Home Cannot Establish That Information Available to Travelers at the Time it Withdrew Coverage Showed the Claim Might Fall Within the Policy</u>**

**1. Allegations of Potentially Covered "Property Damage" are Essential to Trigger a Duty to Defend**

Commercial general liability policies do not warranty the insured's own work or product but rather provide coverage for consequential damages to other property resulting from the insured's work or product. The Court in *Md. Casualty Co. v. Reeder*, 221 Cal.App.3d 961, 967 (1990), explained the distinction:

> "Generally liability policies, such as the ones in dispute here, are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work cause injury **to property other than the insured's own work or products**." (Emphasis added.)

Nor does incorporation of defective workmanship or materials (e.g., failure to nail drywall properly to an interior wall, or to use enough nails, or a failure to install drywall in attics to prevent fire from spreading) alone constitute covered "property damage" triggering a duty to defend. *F & H Constr. Co. v. ITT Hartford Ins. Co. of the Midwest*, 118 Cal.App.4th 364 (2004), citing, *New Hampshire v. Vieira*, 930 F.2d 696 (9th Cir. 1991) (applying California law). Further, even if repairs to the defective work cause damage to other portions of the structure, the nature of the repairs cannot create coverage where none exists. *Lassen Canyon Nursery, Inc. v Royal Ins. Co. of America*, 720 F.2d 1016, 1018 (9th Cir. 1983).

In *Monticello Ins. Co. v. Essex Ins. Co.*, 162 Cal.App.4th 1376 (2008), the Court held that Essex (insurer of subcontractor Dana Drywall) had no duty to defend Blumenfeld Construction (the general contractor) as an additional insured under the Dana Drywall policy when, upon review of the complaint, the word "drywall" was not even mentioned, nor were there allegations that the "excessive cracking," "premature failure of painted surfaces" or "water damage to structure" in any way related to the work of Dana Drywall or to any drywall installation. Additionally, the Court pointed out that at no time during the pendency of the underlying action was Essex provided with a ***defect list*** attributing any damage to Dana Drywall's work. *Ibid*. Accordingly, Essex was not required to speculate that the alleged damage was related to the Dana Drywall work.

**2. Neither the Factual Allegations in the Aldrich Pleadings Nor Extrinsic Evidence Known by Travelers Prior to its March 2010 Withdrawal Showed Allegations of Potentially Covered Property Damage**

a. <u>The Information Known to Travelers in March 2010 Did Not Include Allegations of Potentially Covered "Property Damage" Arising out of Norcraft's Work</u>

A court must look only at whether the facts **available to the insurer at the time of the tender and subsequent withdrawal** evidence a potential for coverage. See *Hurley Construction Co.* v. *State Farm Fire & Casualty Co.*, 10 Cal.App.4th 533 (1992); *Saylin* v. *California Ins. Guarantee Assn.*, 179 Cal.App.3d 256 (1986).

KB Home's initial tender of its defense included only the complaint in the Aldrich action, KB's cross-complaint and the subcontract between KB and Norcraft. In the 11 months following KB Home's request for defense and indemnity of the Aldrich action, Ms. Duglokowski repeatedly requested supporting documentation including any documentation related to the alleged defects and deficiencies. In response to Travelers' repeated requests, the only documents KB Home's counsel provided between April 2009 and March 2010 were a copy of the first amended complaint, special master order and a homeowners' matrix in the Aldrich action

The Norcraft policies obligate Travelers to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and specifically cautions that Travelers will "have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Pursuant to the express terms of the additional insured endorsement, KB Home is only entitled to coverage with respect to liability because of "bodily injury" or "property damage" arising out of Norcraft's work for KB Home at the projects. Exclusions within the policies further preclude coverage for "property damage" to Norcraft's own work or product. Thus, KB Home is only covered for ***damage to other property*** resulting from Norcraft's work at the projects.

The Aldrich complaint alleges two discrete defects to the cabinets – to the wood trim and to their useful life. The allegations fail to fall within the coverage grant as they do not allege ***resulting*** property damage. As such, no duty to defend was triggered by the original complaint.

The First Amended Complaint[3] generally alleges the existence of cabinet and wood trim defects. Although the homeowner plaintiffs allude generally to "damage" resulting from the "numerous defects," nowhere does it suggest ***property damage*** resulting from the cabinet install. Instead, the complaint only seeks "damages" for costs associated with investigation (to identify the claimed defects), repair costs (to repair the defects), replacement costs (to replace the manufactured

[3] Admittedly the Second Amended Complaint in the Aldrich Action was filed prior to Travelers' March 2010 withdrawal of coverage, but it is of no consequence to this motion, as (1) KB Home never provided the amended pleading to Travelers at any time prior to the March 2010 withdrawal, (2) it is not part of the Travelers' claim file generated and maintained by Ms. Dlugokenski, and (3) but for the inclusion of additional homeowner plaintiffs, the charging allegations remain unchanged.

products), and loss of use expenses (anticipated to be incurred during the repair and replacement process). The First Amended Complaint thus contains no claim for recovery of property damage ***to other property*** resulting from the cabinet installation.

Similarly, neither the special master order nor the homeowners' matrix in the Aldrich action contained information suggesting that the plaintiff homeowners were seeking property damage resulting from the installation of the cabinets.

As of March 2010, it was therefore abundantly clear that the ***only allegations*** of purported "property damage" relating to the Norcraft cabinets were allegations of cosmetic damage to Norcraft's own work and products and/or complaints about how long the cabinets would last.

b. <u>Speculation as to Facts Will Not Manufacture Coverage</u>

"The insured may not speculate about unpled third party claims to manufacture coverage." *Hurley Construction Co.* v. *State Farm Fire & Casualty Co*., 10 Cal.App.4th 533 (1992).

KB Home would have this court read into the complaints in the Aldrich action that simply because there are allegations of **defects with regard to the cabinets**, there is the ***potential*** that such defects could have caused damage to something other than the cabinets. No such allegations of damage attributable to the cabinet installation or manufacture are asserted by the homeowner plaintiffs, however. The Aldrich complaint pleads only wood trim defects and useful life reduction. Both relate solely to the failure of the insured's product to perform.

Furthermore, upon evaluation of the relief sought by the homeowner plaintiffs, it is evident that the homeowners are seeking only repair and replacement costs associated with the cabinet defects. Such forms of relief do not qualify as "property damage" as defined by the Norcraft policies.

Moreover, although KB Home had reported as of April 14, 2009, that the plaintiff homeowners had not issued a defect list, KB failed to produce or disclose the existence of Lot Files and Notices of Claim detailing the homeowners' cabinet complaints. The Lot Files establish a litany of cosmetic complaints – blemishes to the cabinet doors, mis/mal-alignment of drawers, paint "overspray" – none of which qualify as resulting damages much less potentially covered property

damage. [See Marvin Dec., ¶12, Ex. D-R; Declaration of Michael Panish, ¶6; Declaration of Gene Irizarry, ¶10.] Similarly, in each instance where cabinet issues are identified in the Notice of Claim, the sole defect claimed is "useful life reduction." The Lot Files and Notices of Claim establish that not a single homeowner ever reported that the installation of the cabinets resulted in property damage to something other than Norcraft's cabinets.

Travelers agreed to defend subject to reservation, including the right to withdraw, and repeatedly requested information from KB Home – affording KB Home every opportunity to provide evidence that the Norcraft Policies were implicated – evidencing allegations of resulting damages stemming from Norcraft's work. Despite being given more than a year to do so, KB Home failed to provide Travelers with any information supporting any potential for coverage under the Norcraft policies. In fact, the documentation actually articulating the cosmetic damage to the cabinets was wrongly withheld by KB Home in an attempt to manufacture potential coverage. Travelers' withdrawal was therefore proper given the information available to it at the time.

c. The Aldrich Homeowners' Attorney Acknowledges that the Complaint Fails to Plead Resulting Damage

Fred Adelman – attorney for the Aldrich plaintiffs – confirmed in deposition on May 23, 2011, that the **sole allegations** in the Aldrich complaint with respect to the cabinets relate to "useful life reduction" and "cabinet and wood trim defects." [Brown Dec., Ex. Y, Adelman Deposition, 18:4-19:7.] When pressed as to where within the operative complaint the alleged property damage resulting from the "cabinet and wood trim defects" was pled, this exchange followed:

> Q. **Is there anything in the complaint that you read to be an allegation that something in the cabinet installation caused damage to other parts of -- something else in the home?**
> A. Typically if we've got a finish issue or a – an installation issue we've got damage to other finishes. Typically the paint.
> Q. Okay. Is that specific allegation in the complaint?
> **A. I don't see it specified in that manner. We don't normally get that specific in our complaints**.

[Brown Dec., Ex. Y, 29:6-16.]

Given the complete absence of any allegations of potentially covered "property damage" in the Aldrich complaint, a defense duty was not triggered at any time prior to Travelers' withdrawal in March 2010. Inclusion of the catch-all "and such other and further relief" adds nothing to the analysis of a defense duty given that the relief sought by the homeowner plaintiffs did not qualify as covered "property damage."[4]

d. Neither the Opinions of Travelers' Adjusters nor their Independent Decision as to the Tender by Travelers' Named Insured is Relevant to the Determination of Whether KB Home Was Covered

Claim handlers' opinions have no relevance to the determination regarding whether coverage exists under a particular policy, however. See *Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846, 865 (1992) ["It is well settled that the interpretation of an insurance policy is a legal rather than a factual determination. Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract." (Internal cites omitted)]; *see also Jordan v. Allstate Ins. Col.*, 116 Cal.App.4th 1206, 1212 (2004) ["Absent a factual dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law." (Internal cites omitted)].

In support of its motion, KB Home takes the position that Travelers' withdrawal of a defense to KB Home was improper because a claim note by Travelers senior technical specialist Patricia Dlugokenski referred to the likelihood of resulting damages. Ms. Dlugokenski's opinion as to the likelihood of coverage existing is irrelevant, however, to the legal determination as to the application of the facts to Travelers' duty under the policy. Accordingly, even if Ms. Dlugokenski believed the materials showed resulting property damage, it would not somehow create coverage where none exists.

Moreover, when queried in deposition about the note, Ms. Dlugokenski testified as follows:

---

[4] See, e.g., *York Golf and Tennis Club v Tudor Ins. Co.*, 2004 ME 52, 845 A.2d 1173, 1177 n.1 (Me. 2004) ("A request for 'such other and further relief as the court may deem just and proper' … **would not be enough** to establish a duty to defend." (Emphasis added))

> Q. Okay. Let's go to the first two sentences. Insured also completed installation and cabinet damages are plead in the complaint. Based on these facts, it is likely some, although minor damages, result from installation. Can you tell me why you wrote that?
> A. To justify why I was accepting, **giving the insured the benefit of the doubt at this time –** giving KB Homes the benefit of the doubt at this time.
>
> Q. Okay. And when you wrote "based on those facts," are those the facts that you're referring to?
> A. No. **Based on those facts refers to the following -- the previous sentence**.
> Q. **That they completed installation and cabinet damages are pled in the Complaint?**
> **A. Yes.**
>
> Q. Okay. Specifically, I want you to look at the second and third sentences of that paragraph where it starts with, Based on those facts, it is likely some, although minor damages, resulted from installation. Next sentence says, Damage to the walls or pulling away from the walls could be attributed to installation.
> A. Yes
> Q. Okay. At the time you wrote this, had you received any documentation that there was any damage to the walls that could be attributed to any work performed by Norcraft --
> A. No.
> Q. -- on the Aldrich matter?
> A. No.
> Q. So then why did you write that?
> A. **That was just a statement as to what could be possible, but that I had no information or documentation that it had happened in this case.**

[Brown Dec., Ex. X, 154:17-25, 155:6-12, 238:17-239:9 (Emphasis added).]

KB Home's characterization of Ms. Dlugokenski's single entry in the claim notes claim note is therefore erroneous. Ms. Dlugokenski explained at deposition that what she was indicating was simply that she was giving the insured the benefit of the doubt that it would be able to show that the plaintiff homeowners were in fact claiming resulting property damage. She reserved Travelers' right to withdraw, however, when 13 months after the tender KB Home had still failed to produce any facts showing any potential for coverage under the Norcraft policies.

### 3. Travelers' Acceptance of Norcraft's Tender is Irrelevant

"The indemnitee's defense costs are sums the insured is legally obligated to pay as *damages* because of property damage." *Golden Eagle Ins. Co. v. Insurance Co. of the West*, 99

Cal.App.4th 837, 842 (2002). In other words, where the named insured is being sued for defense fees pursuant to *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal.4th 541 (2008), an allegation of resulting property damage arising from the named insured's work is necessarily present. *Golden Eagle Ins. Co.*, *supra*, 99 Cal.App.4th at 852.

By virtue of its cross-complaint, KB Home alleges that Norcraft is contractually obligated to defend and indemnify it in the Aldrich action. The Norcraft policies provide that "for the purposes of liability assumed in an 'insured contract,' reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage'." [Dkt. 107: Carrillo Dec., ¶5, Ex. A-D.] Accordingly, the allegations in KB Home's cross-complaint give rise to an ***independent duty*** to defend Norcraft, which is not in any way dependent on whether the Aldrich homeowners are seeking to recover for property damage caused by Norcraft's work.

Whether or not Travelers had a duty to defend and/or agreed to defend Norcraft is therefore irrelevant to whether or not Travelers had a duty to defend KB Home. Any obligations due and owing to KB Home and the named insured do not arise out of the same complaint or the same damage allegations. Rather, with regard to KB Home's tender, the complaint at issue is the underlying plaintiff's complaint against KB Home, while with regard to Norcraft's tender, the complaint at issue is KB Home's cross-complaint against Norcraft.

**4. The Lot Files – Although Intentionally Withheld from Travelers – Defeat any Assertion that there is Property Damage to Anything Other Than to the Norcraft Work and Product Itself**

Since 2003, KB Homes has been in possession of Lot Files respecting the damage complained of by Aldrich homeowners as respects their cabinets. The documents contained within the KB Home Lot Files for the Projects include (at a minimum) records detailing a two year history of complaints by each homeowner with respect to defects and damages identified after the close of escrow for each residence. [See, generally, Marvin Dec.]

None of those documents were provided to Travelers in connection with KB Home's tenders of defense in the Aldrich Action despite the fact that such information/data was requested

by Travelers [Dkt. 108, Dlugokenski Dec., ¶¶10-14] and pertinent for analyzing the nature and extent of the allegations against Norcraft's work and product that would evidence application of the Norcraft Policies in favor of KB Home in the Aldrich Action. In fact, KB Homes never even advised Travelers that the documents were in existence despite the fact that they were requested. [Dkt. 108: Duglokenski Dec., ¶¶10-14.]

Although the complaint in the Aldrich action alleges that "[a]t the time of the purchase by [p]laintiffs" the residences were "defective and unfit for [] intended purposes" and not constructed in a "workmanlike manner as manifested by … numerous defects" including but not limited to "cabinet and wood trim defects," a review of the Lot Files for each of the plaintiff homeowners clarifies that all of the issues relate to damage to the product (cabinet) itself. [See Marvin Dec., ¶15, Exh. D; Panish Dec., ¶¶6-7.]

As previously set forth, however, CGL policies do not warranty the insured's own work or product but rather provide coverage for consequential damages to other property resulting from the named insured's work or product. Accordingly, the Lot Files establish that the damages sought by the Aldrich plaintiffs are not covered by the policy issued by Travelers to Norcraft.

**5. The August 4, 2010, Single Page Defect List was the First Evidence of any Potential for Covered "Property Damage"**

Sometimes information available at the outset of litigation shows no coverage but later developments show otherwise and thus a duty to defend may arise later. *Lipson v. Jordache Enterprises, Inc.*, 9 Cal. App. 4th 151, 161 (1992). It is the insured's burden to notify the insurer of new facts indicating a potential for coverage and if the insured fails to do so the insurer cannot be liable for refusing a defense. *Gunderson, supra*, 37 Cal. App.4th at 1117.

On August 4, 2010, after Travelers had been requesting such documentation for almost a year and a half, KB Home finally provided a one-page document to coverage counsel for Travelers entitled "Aldrich, et al. v. KB Home, et al., Preliminary Defect List" described as a defect list related only to cabinet defects. That document was the first evidence ever presented by KB Home to Travelers indicating that the plaintiff homeowners in Aldrich were in fact claiming property damage resulting from the cabinet installation.

As a practical matter, the veracity of the document is questionable, to say the least. Not only was the item prepared at the request of KB Home's counsel and is in fact the single page ever deposited in the Aldrich document depository, the document further contradicts the nature of the homeowners' claims as reflected in the Lot Files and the Notices of Claims. Despite the questionable credibility of the document, however, Travelers agreed to provide a defense to KB Home (while reserving the right to challenge that obligation in the future at a later date).

The fact that Travelers changed its position on the withdrawal following receipt of documentation alleging resultant property damage is not evidence of an earlier breach by Travelers (in its withdrawal of coverage). Rather, it is simply an indication that KB Home finally met its burden to show the existence of facts indicating a potential for coverage.

**6. KB Home's Breach of the Cooperation Clause of the Norcraft Policy Constitutes the Failure of a Condition Precedent**

"A condition precedent refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties...." Croskey, Heeseman, Popik & Imre, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group 2011), §3:158, p. 3-47. In general, "conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." *Ibid*., citing *North American Capacity Ins. Co. v. Claremont Liability Ins. Co*., 177 Cal.App.4th 272, 289-290 (2009).

Moreover, California courts have long characterized the insured's duty to cooperate[5] as a condition precedent to coverage, not as a basis on which to assert an independent cause of action. See, e.g., *Valladao v. Fireman's Fund Indem. Co*., 13 Cal.2d 322, 337 (1939) ("[T]he condition of the policy requiring cooperation by the insured is in the nature of a condition precedent to liability on the company's part...."). *Insurance Co. State of Pennsylvania v. The Roman Catholic Archbishop of Los Angeles*, 227 Fed.Appx. 643, 644 (9th Cir. 2007).

---

[5] The policies contain express language providing that the insured ***must*** "cooperate with us in the investigation, settlement or defense of the claim or 'suit'..." [See, Dkt. 107, Carrillo Dec., Ex. A at TRVC-000577.]

In the present case, KB Home failed to turn over Lot Files and Notices of Claim in its possession that were directly relevant to the determination as to whether Travelers owed a duty to defend KB Home against the Aldrich action, notwithstanding Travelers' request for such materials. By doing so, KB Home violated the policy's cooperation clause. That violation constituted the failure of a condition precedent required to be fulfilled in order for KB Home to obtain the coverage provided by the policy. Accordingly, KB Home cannot establish any breach by Travelers.

## VI. KB HOME HAS NOT AND CANNOT MEET ITS BURDEN TO PROVE DAMAGES

Proving damages is an essential element to successfully proving a cause of action for a breach of the duty to defend. *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968); *Bramalea California, Inc. v. Reliable Interiors, Inc.* 119 Cal.App.4th 468, 473 (2004).

### A. KB Home Has Provided No Evidence of Damages and Therefore Cannot Prove Breach of the Duty to Defend

An insured is entitled to only one full defense. See, *San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.* (2000) 82 Cal.App.4th 1230, 1241. An insured fully defended by one insurer does not have damages to assert against a non-defending insurer; rather, it is the defending insurer who maintains the right to sue the non-defending insurers for sharing and/or contribution. *Id.*; see also *Tradewinds Escrow, Inc. v. Truck Insurance Exchange* (2002) 97 Cal.App.4th 704, 712 [where one insurer handles the defense of a lawsuit, the insured has no cause of action against other insurers]. In this regard, where one of several potential insurers provides a defense, another insurer's alleged failure to defend does not damage the insured – the failure to defend does not "enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuit." *Ringler Associates Inc., v. Maryland* (2000) 80 Cal.App.4th 1165, 1188; see also, *Ceresino v. Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 823 [the insured suffered no damages because it was "not faced with an undue financial burden or deprived of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of the lawsuits filed against their insured."]; *Houck Construction, Inc. v. Zurich Specialties London Ltd.* 2007 WL 1739711 (U.S. Dist. C.D. Cal.) [because insured could not provide any evidence that delay in accepting tender resulted in injury, it was unable to maintain a claim for breach of contract or bad

faith based on insurer's failure to timely or adequately defend; in addition, **despite over 12 month delay**, because insurer accepted tender prior to mandatory settlement conference, insured did forfeit right to control settlement]. As such, a failure to defend pursuant to one policy is of no consequence to the insured where a defense is being provided under another policy. *Ceresino, supra*.

In the present case, the only period during which Travelers was not providing a defense to KB Home was from March 2010 to December 2010. The Hartford accepted KB Home's tender of defense on or about February 9, 2010, however. [Dkt. 110: Chao Dec., ¶4, Ex. U.] Accordingly, at all times KB Home was being provided a defense of the Aldrich action.

Moreover, since agreeing in December 2010 to resume the defense of KB Home, Travelers has paid ***all*** of KB Home's outstanding fees and costs in the Aldrich action, totaling over $214,000, notwithstanding that Travelers settled all issues related to cabinets in the underlying action for $30,000. [Declaration of Deborah Ann Taylor, ¶3.]

Accordingly, KB Home was at all times provided with a defense, either by The Hartford, Travelers or both. Even had Travelers not paid any amounts towards KB Home's defense, KB Home therefore could not maintain a claim for damages against Travelers as a non-defending insurer; rather, it is the defending insurer, The Hartford, who would have the right to sue for contribution. Finally, Travelers has in fact paid all of KB Home's outstanding defense fees and costs. KB Home has no recoverable damages as a result of any purported breach of the duty to defend.[6] Since damages are an essential element of a claim for breach of contract, KB Home cannot prevail on that claim.

**B. <u>The Shade Foods Case is Inapplicable to This Matter</u>**

KB Home relies upon *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847 (2000), for the argument that Travelers' payment of KB Home's defense fees and

[6] The only possible damages that KB Home could claim in this matter are its attorneys' fees incurred in the instant coverage litigation, however such fees can only be awarded upon a finding of bad faith, which determination must be made by a jury. See, *Brandt v. Superior Court*, 37 Cal.3d 813 (1985); *Dalrymple v. United Services Auto. Assn.*, 40 Cal.App.4th 497, 511 (1995).

costs did not cure its purported breach of the duty to defend. KB Home is essentially using the *Shade Foods* case to make a backhanded argument that it has suffered damages in this case, without presenting any evidence of damages. KB Home bases its argument upon one single line of dicta, taken completely out of context, and ignores key facts that were essential to the court's ruling in *Shade Foods*. The *Shade Foods* case does not stand for the general proposition that KB Home claims it does and further is readily distinguishable from the instant matter.

In *Shade Foods*, Shade Foods, Inc. ("Shade"), a wholesale food manufacturer, contracted with Innovative Product Sales & Marketing, Inc. ("IPS") for the supply of processed almonds to be used to produce nut clusters that were then supplied to General Mills for the use in boxed cereals. General Mills later discovered wood splinters in the nut clusters, resulting in contamination of the boxed cereals, which led General Mills to present Shade with a claim in excess of $1 million. Both Shade and IPS submitted claims to their respective general liability insurance carriers, and Shade submitted a claim to IPS's insurer as an additional insured. Shade's carrier, Royal Insurance Company of America ("Royal"), appointed counsel to defend Shade but refused to contribute more than 5 to 10 percent of the indemnity claim. IPS's carrier, Northbrook National Insurance Company ("Northbrook"), denied IPS's tender from the outset and refused to reconsider its position, despite being provided with documentation evidencing that a potential for coverage existed. Northbrook also denied coverage to Shade but subsequently entered into negotiations with Shade and made a highly conditional offer of $1 million towards the settlement of the claim. Meanwhile, Shade paid the full amount of the General Mills claim.

Thereafter, Shade brought an action against IPS, Northbrook and Royal. IPS filed a cross-complaint against Northbrook. On the eve of trial, Northbrook agreed to pay for IPS's defense. As a result, IPS did not pursue a claim against Northbrook for defense fees. The matter went to trial, with the jury finding that the insurers had breached the duty of good faith and fair dealing towards their respective insureds. The Court of Appeal upheld the finding that the insurers acted in bad faith. *Shade Foods, supra, 78* Cal.App.4th at 861.

In analyzing IPS's claims of bad faith against Northbrook, the Court of Appeal emphasized that "[a]mong the most critical factors bearing on the insurer's good faith is the adequacy of its

investigation of the claim." *Id.* at 880. The court also stressed that the "insurer's willingness to reconsider its denial of coverage and to continue an investigation into a claim has been held to weigh to favor of its good faith" while "the insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith." *Ibid.* The court further noted that while a "breach of the implied covenant may be predicated on the insurer's breach of its duty to defend … the insurer's conduct in such cases is commonly coupled with the breach of other aspects of the implied covenant, such as the duty to settle … or to investigate." *Id.* at 881 (internal citations omitted).

After setting forth this legal basis for its decision, the court then analyzed Northbrook's conduct, focusing on Northbrook's breach of the duty to properly investigate the claim. *Id.* at 881-883. With regard to Northbrook's failure to investigate, the court specifically noted that Northbrook discontinued its investigation about one month after it began without bothering to investigate the key facts and issues of the case, failed to respond to correspondence from the insured and its agent, and looked the other way when confronted with facts that showed a possibility of coverage. *Id.* at 881-882. After failing to investigate, Northbrook rapidly closed the file, and as a result of the breach of the duty to investigate, it not only refused to fund the defense but also "declined to take any initiative in pursuing settlement negotiations, choosing instead to adopt a no-payment position from which it did not waiver." *Id.* at 883. The court concluded that Northbrook's "consistent and inflexible position" in violation of its duty to investigate, which resulted in a breach of the duty to settle, supported the jury's finding of a breach of the implied covenant of good faith and fair dealing. *Id.* Because Northbrook's failure to investigate led to a failure to settle, the court found that the payment of IPS's defense fees was insufficient to remedy the harm caused by its breach. *Id.* The harm had not been fully remedied due to the fact that IPS suffered more harm than simply having to fund its defense – namely, as a result of Northbrook's breach of its duty to investigate (and resulting breach of its duty to settle), IPS was also faced with significant potential exposure in excess of policy limits, and also incurred substantial loss of business profits due to its inability to pursue certain business opportunities as a result of the existence of the unresolved claim. *Id.* at 889-890. Thus, it was the damage caused by the failure

to settle that could not be remedied by the payment of defense fees, and the court's finding of breach was tied to the fact that the insured had suffered damage.

In contrast to Northbrook, Travelers agreed to defend KB Home from the beginning and continued to investigate, on multiple occasions requesting KB Home to provide documentation evidencing a potential for coverage in the case. Only after KB Home failed to provide this documentation did Travelers withdraw from the defense. Moreover, Travelers was at all times willing to investigate and reconsider its coverage decision and in fact reversed its earlier withdrawal and agreed to defend KB Home as soon as KB Home finally provided Travelers with documentation evidencing a potential for coverage. At that point, Travelers paid all of KB Home's outstanding defense fees and costs – totaling more than $214,000.

Moreover, unlike in *Shade Foods*, where the insurer breached its duties to investigate and settle causing the insured harm that could not be remedied by paying its defense fees, Travelers neither refused to investigate nor prevented settlement. Rather, Travelers agreed to fund KB Home's defense at a point in time early in the litigation, Travelers has been actively participating in settlement negotiations and Travelers agreed to fund a $30,000 settlement agreement with the Aldrich plaintiffs related to the alleged liability arising out of Norcraft's work.

Accordingly, unlike IPS in the *Shade Foods* case, KB Home cannot establish that it has suffered some harm that cannot be remedied through the payment of its defense fees.

Respectfully Submitted,

Dated: September 9, 2011 **BOHM, MATSEN, KEGEL & AGUILERA, LLP**

*/s A. Eric Aguilera*
A. Eric Aguilera
Kari M. Myron,
Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA