NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:10-cv-02856-EJD<br>JUDGE: Edward J. Davila<br>COURTROOM: 1<br>MAGISTRATE JUDGE: Howard R. Lloyd<br><br>**PLAINTIFFS' OPPOSITION TO TRAVELERS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>***[Declarations of David B. Simons and C. Kendie Schlecht filed concurrently herewith]***<br><br>**DATE: September 30, 2011**<br>**TIME: 9:00 a.m.**<br>**COURTROOM: 1**<br><br>State Court Action Filed: May 27, 2010<br>Removed to USDC Northern District: June 28, 2010 |



NEWMEYER & DILLION LLP

## TABLE OF CONTENTS


Page

1. PRELIMINARY STATEMENT ..... 1
2. UNDISPUTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT FOR TRAVELERS ..... 2
3. THE UNDISPUTED FACTS ESTABLISH THAT TRAVELERS BREACHED ITS DUTY TO DEFEND KB HOME ..... 4
   - A. The Parties Agree That Travelers' Duty To Defend Is Triggered By A Mere Potential For Coverage ..... 4
   - B. The Aldrich Complaint Asserted A Potential For Covered Damages Triggering Travelers' Duty To Defend KB Home ..... 4
     - (1) Travelers Internally Acknowledged That The Aldrich Complaint Asserted The Likelihood For Covered Damages ..... 6
   - C. Despite Its Agreement To Defend, Travelers Refused To Issue Any Payment And Then Completely Withdrew From The Defense ..... 6
   - D. Travelers Refused To Consider Extrinsic Evidence Confirming Coverage ..... 7
   - E. Travelers Is Defending Its Named Insured In The Aldrich Action ..... 8
4. TRAVELERS CANNOT ASSERT A BREACH OF THE DUTY TO COOPERATE ..... 8
   - A. Travelers Lost Any Right To Control The Defense or Enforce the Cooperation Clause ..... 9
   - B. Even If It Were Enforceable, The Cooperation Clause Would Not Require KB Home to Accept Defense Counsel With Conflicts ..... 10
     - (1) Parent Corporations And Their Subsidiaries Are Considered One Entity For The Purpose Of Evaluating Conflicts When There Is Sufficient Unity Of Interests ..... 11
     - (2) KB Home And Its Subsidiaries Are Considered One Entity For The Purpose Of Evaluating Conflicts ..... 12
     - (3) Sellar Hazard Is Adverse To KB Home In The Chadha Action ..... 13
   - C. Travelers Was Not Prejudiced By KB Home's Alleged Failure To Cooperate ..... 14
   - D. Travelers Waived Any Alleged Violation Of The Cooperation Clause ..... 15
5. KB HOME HAS SUFFERED DAMAGES FROM TRAVELERS' BREACHES ..... 15
   - A. Travelers Did Not Cure Its Breaches By Its Belated Payment For Defense ..... 16




NEWMEYER & DILLION LLP

## TABLE OF CONTENTS
**(continued)**


**Page**

B. KB Home Has Suffered And Continues To Suffer Damages Due To Travelers' Past And Present Breaches ........ 16

6. TRAVELERS BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING ........ 18

A. The "Genuine Dispute Doctrine" Does Not Absolve Any Of Travelers' Bad Faith Conduct ........ 18

(1) Travelers' Uninterrupted Defense Of Its Named Insured Proves There Is No "Genuine Dispute." ........ 19

(2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To the Assertion Of A "Genuine Dispute." ........ 19

B. Travelers' Promise To Defend KB Home Was Fraudulent At The Time It Was Made ........ 21

C. Travelers Tortiously Refused To Reconsider Its Coverage Position ........ 22

D. Travelers' Conduct In This Litigation Is Further Evidence Of Its Bad Faith ........ 22

7. EVIDENTIARY OBJECTIONS ........ 23

8. CONCLUSION ........ 24




NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

Amadeo v. Principal Mut. Life,
290 F.3d 1152 (9th Cir. 2002) ........ 21

Baxter Diagnostics, Inc. v. AVL Scientific Corp.,
798 F. Supp. 612 , n.3 (C.D. Cal 1992) ........ 13, 14, 15

Columbia Cas. Co. v. Gordon Trucking, Inc.,
758 F. Supp. 2d 909 , n.4 (N.D. Cal. 2010) ........ 10

Estremera v. United,
442 F.3d 580 (7th Cir. 2006) ........ 27

Hubka v. Paul Revere Life Ins. Co.,
215 F. Supp. 2d 1089 (S.D. Cal. 2002) ........ 21

Journal Publishing Co. v. American Home Assur. Co.,
771 F. Supp. 632 (S.D.N.Y. 1991) ........ 25

Rountree v. Fairfax Cnty. Sch. Bd.,
933 F.2d 219 (4th Cir. 1991) ........ 27

Teradyne, Inc. v. Hewlett-Packard Co.,
20 U.S.P.Q.2d 1143 (N.D. Cal. 1991) ........ 13

**State Cases**

Borg v. Transamerica Ins. Co.,
47 Cal.App.4th 448 (1996) ........ 1

Brehm v. 21st Century Insurance Company,
(2008) 166 Cal. App. 4th 1225 ........ 21

Cal. Shoppers, Inc. v. Royal Globe Ins. Co.,
175 Cal. App. 3d 1 (1985) ........ 19

Campbell v. Allstate Ins. Co.,
60 Cal. 2d 303 (1963) ........ 16

Cassim v. Allstate Ins. Co.,
33 Cal. 4th 780 (2004) ........ 20

CNA Cas. of Cal. v. Seaboard Surety Co.,
176 Cal. App. 3d 598 (1986) ........ 17

Drinnon v. Oliver,
24 Cal. App. 3d 571 (1972) ........ 9

Eigner v. Worthington,
57 Cal. App. 4th 188 (1997) ........ 10



NEWMEYER & DILLION LLP

## TABLE OF AUTHORITIES
**(continued)**


**Page**

Gribaldo v. Agrippina Versicherunges A. G., 3 Cal. 3d 434 (1970) .......... 10

Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 (1973) .......... 20

Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076 (1993) .......... 7

Hous. Grp. v. PMA Capital Ins. Co., 193 Cal. App. 4th 1150 (2011) .......... 9, 10

Johnson & Johnson v. Super. Ct., 38 Cal. 2d 243, 254-55 (1985) .......... 9

Kennedy v. Am. Fid. and Cas. Co., 97 Cal. App. 2d 315 (1950) .......... 10

McCoy v. Progressive W. Ins. Co., 171 Cal. App. 4th 785 (2009) .......... 21

Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287 (1993) .......... 1, 4, 5

Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft LLP, 69 Cal. App. 4th 223 (1999) .......... 12, 13, 15

Northwestern Title Security Co. v. Flack, 6 Cal. App. 3d 134 (1970) .......... 16

Oil Base, Inc. v. Transp. Indem. Co., 148 Cal. App. 2d 490 (1957) .......... 19

Pruyn v. Agricultural Ins. Co., 36 Cal. App. 4th 500 (1995) .......... 10

Ritchie v. Anchor Cas. Co., 135 Cal. App. 2d 245 (1955) .......... 10

Shade Foods, Inc., 78 Cal. App. 4th 847 .......... 17, 18, 20, 25

Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App.4th 966 (2000) .......... 9

United Services Auto Ass'n v. Martin, 120 Cal. App. 3d 963 (1981) .......... 16

Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142 (2001) .......... 11




NEWMEYER & DILLION LLP

## TABLE OF AUTHORITIES
**(continued)**

**Page**

White v. Western Title Ins. Co., 40 Cal. 3d 870 (1985) .......... 20, 25

Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713 (2007) .......... 21, 22

**State Statutes**

Cal. Civ. Code § 2860 .......... 9

**Federal Rules**

Fed. R. Evid. 403 and 704 .......... 27

Fed. R. Evid. 602 and 701 .......... 27

Fed. R. Evid. 602, 801 and 802 .......... 27

Fed. R. Evid. 701, 702 and 704 .......... 27

Fed. R. Evid. 801 and 802 .......... 27

Federal Rules of Civil Procedure 56(e) .......... 26

NEWMEYER & DILLION LLP

## 1. PRELIMINARY STATEMENT.

The parties agree that in order to defeat coverage and prevail on its Motion for Summary Judgment, Travelers must prove that the complaint in the Aldrich Action:[1] (1) asserted no potential for covered damages and (2) "*can by no conceivable theory raise a single issue which could bring it within the policy coverage.*" Borg v. Transamerica Ins. Co., 47 Cal.App.4th 448, 455 (1996) (citing Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993)). The parties also agree that any doubt must be resolved in favor of coverage.

Travelers has not, and cannot, meet this heavy burden. In fact, the undisputed facts establish that the Aldrich Complaint not only asserted such a potential, but as Travelers recognized, a *likelihood for such damages*. (Ex. I to Declaration of Patricia Dlugokenski ("Dlugokenski Decl.") (Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757)).)

Because the allegations so clearly trigger coverage, Travelers focuses most of its motion arguing that Kaufman & Broad Monterey Bay and KB Home South Bay, Inc. (collectively "KB Home") breached the "cooperation clause." Specifically, Travelers argues that by *objecting* to counsel with clear and obvious conflicts, KB Home forfeited all coverage under the Policies. However, the undisputed facts establish that Travelers materially and repeatedly breached the insurance contracts long before it attempted to remove KB Home's counsel. California law is clear that by virtue of those breaches, Travelers lost any right it may have had to control the defense or enforce the cooperation clause. Furthermore, even if it were enforceable, the cooperation clause does not, as Travelers contends, grant an insurer unfettered power to impose its will in total disregard of the harm it may cause the insured. California courts long ago established safeguards to prevent insurers from arguing that any minor alleged breach of the cooperation clause resulted in a total forfeiture of coverage. For instance, an insurer must prove that it was prejudiced by the alleged failure before it can disclaim coverage. Here, even if Travelers were not precluded from asserting the cooperation clause, it has not, and cannot, establish any such prejudice. Since the Aldrich Action is ongoing, Travelers cannot argue it

---

[1] The Aldrich Action is the still pending underlying construction defect action entitled Aldrich, et al. v. KB Home, et al., Monterey County Superior Court Case No. M 94490.

would have achieved a better outcome. Travelers also has not, and cannot, complain about the abilities, experience or competence of KB Home's current defense counsel, Glaspy & Glaspy (the "Glaspy firm") because Travelers admits it has used the Glaspy firm as its own panel counsel to defend *more than 100 construction defect cases*. In fact, Travelers sought to appoint the Glaspy firm to defend construction defect cases as recently as April 2011. Accordingly, it would be literally impossible for Travelers to establish prejudice from the alleged failure to cooperate.

Travelers also repeats its "no harm, no foul" mantra, arguing that since it eventually agreed to defend, all of its breaches of the policies, the duty to defend and the covenant of good faith and fair dealing should simply be forgotten. However, California law provides otherwise. KB Home has suffered, and continues to suffer, damages as a result of Travelers' breaches.

Lastly, Travelers argues that all of its bad faith conduct is absolved based on the "genuine dispute doctrine." However, the so-called genuine dispute doctrine precludes summary judgment where, as here, viewing the facts in the light most favorable to the insured, a jury could conclude that the insurer acted unreasonably. A necessary prerequisite for the assertion of a "genuine dispute" is an independent, unbiased and thorough investigation. Here, the undisputed facts establish that the sum and substance of Travelers' "investigation" was the demand that KB Home provide documents that did not exist.

## 2. UNDISPUTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT FOR TRAVELERS.

On August 26, 2011, KB Home filed its own Motion for Partial Summary Judgment ("KB Home's MPSJ") which is set for hearing on the same date as Travelers' Motion for Summary Judgment ("Travelers' MSJ"). In comparing the statement of facts between KB Home's MPSJ and Travelers' MSJ, it becomes apparent that the parties do not dispute many of the essential facts. For instance, the parties do not dispute that:

- Travelers issued four consecutive commercial general liability policies to Norcraft Companies ("Norcraft") effective from December 31, 2002 to November 1, 2006 (the "Norcraft Policies") (see Travelers' MSJ, 2:13-17; KB Home's MPSJ, 5:19-26);
- The terms and conditions of the Norcraft Policies provide coverage for "property

damage" that is not otherwise excluded (see Travelers' MSJ, 2:19 to 4:4; KB Home's MPSJ, 6:17 to 7:7);

- Norcraft entered into subcontract agreements with KB Home to perform cabinetry work for two residential projects developed by KB Home (see Travelers' MSJ, 4:17-24; KB Home's MPSJ, 6:4-8);
- KB Home tendered defense of the Aldrich Action and Travelers acknowledged its duty to defend KB Home on July 6, 2009 (see Travelers' MSJ, 5:23-24 and 7:3-4; KB Homes' MPSJ, 7:10-15);
- When Travelers accepted KB Home's tender of defense, it de facto accepted the Law Firm of Glaspy & Glaspy as KB Home's defense counsel and made no attempt to appoint Travelers' own panel counsel to represent KB Home (see Dlugokenski Decl.), ¶ 9, Ex. K);
- Travelers first informed KB Home of its withdrawal from KB Home's defense via e-mail on December 10, 2009 (see Travelers' MSJ, 7:23-24; KB Home's MPSJ, 7:28 to 8:1);
- Travelers issued a formal letter withdrawing from KB Home's defense on March 9, 2010, stating for the first time, its assertion that the damages claimed in the Aldrich Action did not qualify as covered property damage arising from the work of Norcraft (see Travelers' MSJ, 7:27 to 8:4; KB Home's MPSJ, 8:2-9);
- On July 8, 2010, KB Home sent an email to Travelers, attaching a letter from plaintiffs' counsel in the Aldrich Action confirming that "[t]he plaintiffs in this action are pursuing recovery for damages arising out of the cabinets." (See Travelers' MSJ, 8-23-26.; KB Home's MPSJ, 9:11-14);[2]
- On August 4, 2010, KB Home provided Travelers a Preliminary Defect List for cabinet defects (see Travelers' MSJ, 5-7; KB Home's MPSJ, 9:24-26);
- On December 17, 2010, over four months after Travelers received the Preliminary Defect List, Travelers once again acknowledged a duty to defend KB Home, subject to limitations

---

[2] On July 26, 2010, Travelers inexplicably claimed that the letter was insufficient and demanded a defect list. (Ex. 18 to Declaration of C. Kendie Schlecht ("Schlecht Decl.") (E-mail dated 7/26/10 from Jason Chao).)



NEWMEYER & DILLION LLP

and reservation of rights (see Travelers' MSJ, 9:15-18; KB Home's MPSJ, 10:16-22);[3]

- On December 17, 2010, Travelers for the first time notified KB Home of its intent to appoint its panel counsel, Sellar Hazard Manning Ficenac & Lucia ("Sellar Hazard"), to defend KB Home (see Travelers' MSJ, 9:9-18); and
- On January 4, 2011, KB Home informed Travelers that it had forfeited any right to control KB Home's defense when it breached its duty to defend by improperly withdrawing from KB Home's defense no later than March 7, 2010. At the same time KB Home notified Travelers that its panel counsel, Sellar Hazard, was conflicted because it had represented subcontractors in construction defect lawsuits adverse to KB Home (see Ex. Y to Declaration of Jason Y. Chao ("Chao Decl.").)

However, Travelers continually fails to recognize that the law interprets these facts in favor of coverage for Travelers' insureds and additional insureds. Travelers also omits critical facts that, at minimum, create triable issues of material fact as to each of Travelers' arguments.

## 3. THE UNDISPUTED FACTS ESTABLISH THAT TRAVELERS BREACHED ITS DUTY TO DEFEND KB HOME.

### A. The Parties Agree That Travelers' Duty To Defend Is Triggered By A Mere Potential For Coverage.

Both parties agree that, under applicable law, an insurer's duty to defend is trigged when a complaint asserts a mere potential for covered damages. (See Travelers' MSJ, 15:6-16 (citing Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 299 (1993) ("Montrose I").) The parties also agree that an insurer can only escape its duty to defend if it can introduce undisputed conclusive evidence establishing an absence of coverage. (Id.)

### B. The Aldrich Complaint Asserted A Potential For Covered Damages Triggering Travelers' Duty To Defend KB Home.

At the heart of the parties' dispute is whether the Aldrich Complaint alleged facts creating a potential for covered damages under the Norcraft Policies. The Complaint alleges, *inter alia*:

[3] Since the agreement to defend was subject to Travelers' unlawful limitations, KB Home contends that the agreement remains improper.



NEWMEYER & DILLION LLP

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following:
>
> . . .
>
> ***cabinet and wood trim defects***
>
> . . .
>
> 20. The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.
>
> 21. Because of the defective conditions of the PROPERTY as herein above alleged, Plaintiffs have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:
>
> A) Plaintiffs will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of damages is presently unknown, except that the costs will exceed the sum of $100,000 per home.

(Ex. E to Dlugokenski Decl. (Aldrich First Amended Complaint, ¶¶ 17, 20, 21) (emphasis added).)

Thus, the clear and unambiguous language of the complaint alleges: (1) those who built the plaintiffs' homes did not construct the homes in a "workmanlike manner;" (2) such failure resulted in various defects, specifically including cabinet defects; and (3) those defects caused damage to the homes. These allegations so clearly create a potential for covered damages that Travelers' own claims adjuster with more than 15 years of experience accepted defense on July 6, 2009. (Ex. I to Dlugokenski Decl. (Entry of 7/6/09 (TRPD-000757)).)

Newmeyer & Dillion LLP

**(1) Travelers Internally Acknowledged That The Aldrich Complaint Asserted The *Likelihood* For Covered Damages.**

Travelers' internal Claim Notes expressly acknowledge that the complaint contained allegations sufficient to trigger Traveler's duty to defend KB Home. The entry dated July 6, 2009 states:

> Insured [Norcraft] also completed installation and ***cabinet damages are plead [sic] in the complaint.*** Based on those facts, ***it is likely*** some, although minor ***damages resulted from installation.*** Damages to the walls or pulling away from the walls could be attributed to installation.

(Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added)).) Thus, Travelers' own assessment recognizes that the allegations of the Aldrich Complaint not only raise a *potential,* but a *likelihood* for covered damages.

**C. Despite Its Agreement To Defend, Travelers Refused To Issue Any Payment And Then Completely Withdrew From The Defense.**

Despite acknowledging its duty to defend based on the allegations of the Aldrich Complaint, Travelers refused to actually issue any payment whatsoever. Then, in December 2009, Travelers simply announced that it was completely withdrawing from KB Home's defense.

In contravention of California law requiring an insurer to defend its insured based on the *mere potential* for covered damages, Travelers insisted that KB Home *prove* the existence of such damages by providing a defect list or expert reports. (Chao Decl., ¶ 7.)

Travelers knew that its demand was unlawful in that the documents it was demanding would typically be created in construction defect cases after discovery and investigation, long after the complaint is filed. Moreover, Tom Judge, Travelers' unit manager at the time (who supervised claims handlers such as Ms. Dlugokenski), confirmed that Travelers did not need defect lists in order to acknowledge its duty to defend. (Ex. 12 to Schlecht Decl. (Judge Depo. Transcript, 99:11 to 100:4).) The duty to provide an immediate and complete defense prohibits an insurer from waiting for such documents before it agrees to defend.



NEWMEYER & DILLION LLP

### D. Travelers Refused To Consider Extrinsic Evidence Confirming Coverage.

The parties also agree that "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).

Even though Travelers' demand for proof beyond the allegations of the complaint was unlawful, KB Home sought to avoid having to wage a coverage battle while simultaneously defending the Aldrich Action. Thus, it requested plaintiffs' counsel in the Aldrich Action to confirm whether or not it was seeking property damage arising out of Norcraft's work. Counsel responded by providing unequivocal confirmation that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. 9 to Schlecht Decl. (Letter dated 7/8/10 from Fred M. Adelman).) Yet, Travelers refused to reconsider its position based on this evidence. Travelers again violated the law and the policies by demanding that KB Home provide further *proof* of such damages by submitting a defect list.

Still desperate to avoid irreparable harm from having to simultaneously prosecute a coverage action while defending the Aldrich Action, KB Home tried in vain to fulfill Travelers' unlawful demands. KB Home once again requested that plaintiffs' counsel in the Aldrich Action satisfy Travelers' demand by providing a defect list. Plaintiffs' counsel deposited a Preliminary Defect List for cabinets into the document depository and KB Home forwarded a copy to Travelers on August 4, 2010. (Chao Decl., ¶ 8, Ex. X (E-mail dated 8/4/10 from Kendie Schlecht attaching Preliminary Defect List for cabinets).) KB Home shortly learned that its extraordinary efforts were futile. Even after it received the exact defect list it demanded, Travelers *still* refused to defend KB Home in the Aldrich Action. (Schlecht Decl., ¶ 14.)

Travelers breached California law and the insurance policies by refusing to provide KB Home with an immediate, full and complete defense based on the allegations of the complaint. Although California law requires Travelers to provide an immediate and complete defense based on a *potential* for covered damages, Travelers further breached the insurance policies by demanding that KB Home supply *proof* of covered damages. Travelers again breached by



NEWMEYER & DILLION LLP

refusing to consider such proof on July 8, 2010 and then again upon receipt of the Preliminary Defect List on August 4, 2010.

### E. <u>Travelers Is Defending Its Named Insured In The Aldrich Action.</u>

Throughout the pendency of this case, Travelers has been defending Norcraft in the very same case that it refuses to defend KB Home. (Ex. 7 to Schlecht Decl. (Letter dated 5/26/11 from Travelers' counsel); Ex. 8 to Schlecht Decl. (E-mail dated 7/16/09 from Deborah Taylor).)

In his ruling granting one of KB Home's discovery motions, Magistrate Judge Howard R. Lloyd agreed with KB Home that "Travelers's 'obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts.'" Docket No. 70 at 4:24-26. If the <u>Aldrich</u> Action presents a potential for covered damages as to Norcraft, by definition, it must also establish such potential as to KB Home. As the unit manager initially overseeing the claim testified, the only reason Travelers would agree to defend its named insured and not the additional insured would be if the named insured did not actually work on the project. (Ex. 12 to Schlecht Decl. (Judge Depo. Transcript, 72:9 to 73:7).) Here, there Travelers admits that Norcraft worked on the projects at issue in the <u>Aldrich</u> Action.

Travelers' radically disparate treatment of Norcraft and KB Home further demonstrates the extent of its breaches. Travelers agreed to defend, and has paid for Norcraft's defense, from inception of the <u>Aldrich</u> Action. Travelers never withdrew from Norcraft's defense and never insisted that Norcraft provide extrinsic proof of covered damages beyond the allegations of the <u>Aldrich</u> Complaint.

## 4. <u>TRAVELERS CANNOT ASSERT A BREACH OF THE DUTY TO COOPERATE.</u>

Contrary to Travelers' argument, the cooperation clause does not provide an insurer with unfettered power to impose its will upon its insured. The "cooperation clause" simply states: "You and any other involved insured must ... Cooperate with us in the investigation, settlement or defense of the claim or 'suit.'" (<u>See</u>, <u>e.g.</u>, Ex.11 to Schlecht Decl. (02-03 Policy, Sec. IV, ¶ 2.c.(3)) (TRVC-000577).) Such clauses are merely intended to enable the insurer "to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to its rights, to enable it to decide upon its obligations, and to protect itself

against false claims." Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App.4th 966, 976 (2000) (internal quotes and parentheses omitted).

Travelers attempts to convert this provision into a weapon to strip KB Home of all coverage. For several reasons, Travelers' attempt fails.

### A. Travelers Lost Any Right To Control The Defense or Enforce the Cooperation Clause.

Travelers contends that KB Home forfeited all coverage under the Norcraft Policies when KB Home objected to Travelers' attempt to replace the Glaspy firm, who had been defending the case for nearly two years, with Travelers' choice of counsel, Sellar Hazard. Travelers' argument ignores two critical facts: 1) by virtue of its breaches, Travelers lost any right to control the defense or enforce the cooperation clause; and 2) KB Home never refused the appointment of counsel by Travelers, but only voiced its legitimate objections regarding Sellar Hazard's actual conflict of interest.

It is well settled law in California, and a majority of jurisdictions, that when an insurer wrongfully refuses to defend, an insured is relieved from the duty to cooperate, and is "justified in proceeding on her own account in whatever manner seemed proper to her under the circumstances." Drinnon v. Oliver, 24 Cal. App. 3d 571, 579-80 (1972), overruled on other grounds by Johnson & Johnson v. Super. Ct., 38 Cal. 2d 243, 254-55 (1985); see also The Hous. Grp. v. PMA Capital Ins. Co., 193 Cal. App. 4th 1150, 1157 (2011) (insurer cannot compel arbitration under California Civil Code § 2860 when it had improperly denied its duty to defend), Eigner v. Worthington, 57 Cal. App. 4th 188, 196 (1997) (when an insurer wrongfully refuses to defend, the insured is relieved of any obligation to allow the insurer to manage the litigation), Ritchie v. Anchor Cas. Co., 135 Cal. App. 2d 245, 258 (1955) (insurer's improper refusal to defend deprived it of right to control defense).

Many of the cases cited by Travelers are in accord. See Gribaldo v. Agrippina Versicherunges A. G., 3 Cal. 3d 434, 449 (1970); Pruyn v. Agricultural Ins. Co., 36 Cal. App. 4th 500, 516 (1995); Columbia Cas. Co. v. Gordon Trucking, Inc., 758 F. Supp. 2d 909, 917, n.4 (N.D. Cal. 2010). This is because when an insurer denies coverage it is "renouncing the policy,

as far as the accident is concerned, [and waives] any claim that the [provisions] of the policy had not been complied with." Kennedy v. Am. Fid. and Cas. Co., 97 Cal. App. 2d 315, 316 (1950). A contrary policy would encourage insurers to reject defense obligations. See The Hous. Grp., 193 Cal. App. 4th at 1157.[4]

As discussed above, and as briefed extensively in KB Home's Motion for Partial Summary Judgment, Travelers' duty to defend KB Home in the Aldrich Action was triggered no later than April 1, 2009 when it tendered its claim to Travelers. Travelers breached its duty to defend KB Home under the Norcraft policies by refusing to issue any payment and then, on December 10, 2009, improperly withdrawing from KB Home's defense altogether.

Travelers' attempt to appoint Sellar Hazard came nearly a year and a half later on January 4, 2011. (Travelers' MSJ, 9:21-26.) Thus, by virtue of its breaches, Travelers had lost any right it may have had to control the defense well before KB Home's objection.

### B. Even If It Were Enforceable, The Cooperation Clause Would Not Require KB Home to Accept Defense Counsel With Conflicts.

It is axiomatic that due to the "special relationship" between insurer and insured, an insurer is required to "give at least as much consideration to the welfare of the insured as it gives to its own interests." Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142, 1150 (2001). However, Travelers argues the opposite – that the cooperation clause gives Travelers the right to impose directives with impunity despite the harm that may result to the insured. Worse, Travelers claims any objection by the insured results in a complete and total forfeiture of all policy benefits. Fortunately, the law prevents such abuses.

Here, more than a year and a half after KB Home tendered the matter, Travelers sought to displace the Glaspy firm, who had been defending the case, and appoint Sellar Hazard, despite the fact that Sellar Hazard currently represents a party directly adverse to KB Home in another

[4] Travelers improperly cites to unpublished opinions, including Travelers Property v. Centex Homes, No. 10-02757, 2011 U.S. Dist. LEXIS 36128 (N.D. Cal. 2011). First, the facts of that case were radically different because, *inter alia*, Travelers did not deny Centex's tender of defense as it did in this matter. Second, the cited ruling was the subject of a motion for reconsideration in which United States District Judge Charles R. Breyer ruled that the issue was not ripe because, prior to the motion being heard, Travelers agreed to defend Centex. (Ex. 17 to Schlecht Decl. (Order Denying Motion for Reconsideration).)

construction defect matter, Chadha v. K.B. Home, San Joaquin Superior Court Case No. 39-2009-00232688-CU-BC-STK ("Chadha Action").

(1) **Parent Corporations And Their Subsidiaries Are Considered One Entity For The Purpose Of Evaluating Conflicts When There Is Sufficient Unity Of Interests.**

Travelers seeks to exalt form over substance by arguing that the entities at issue are simply *affiliated*. Travelers argues that suing one KB Home entity has no effect on counsel's ability to defend another. However, it is well settled that a parent and subsidiary should be treated as a single entity for establishing a conflict of interest, if the entities share a sufficient "unity of interest." Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft LLP, 69 Cal. App. 4th 223, 245-54 (1999).

In Morrison Knudsen, the trial court granted a preliminary injunction preventing a law firm from representing a party (the "District") that was adverse to a parent corporation, Morrison Knudsen Corporation or the Parent's wholly owned subsidiary, Centennial Engineering, Inc., concerning a particular project. The court considered whether the trial court could reasonably find that there was a sufficient "unity of interest" between the subsidiary and the parent to treat them as a single entity for purpose of evaluating a conflict of interest. Morrison Knudsen, 69 Cal. App. 4th at 227. The court held that "the principal focus should be the ***practical consequences*** of the attorney's relationship with the corporate family. If that relationship may give the attorney a ***significant practical advantage in a case against an affiliate***, [the conflict is established and] the attorney can be disqualified from taking the case." Id. at 253 (emphasis added).

The appellate court then determined there was sufficient unity of interest based on the following facts: (1) the parent corporation controlled the subsidiary's legal affairs; (2) the law firm would have ongoing communications about litigation matters with the parent corporation's in-house attorneys who would be managing the subsidiary's defense; (3) the law firm had gained "insight into the litigation philosophy of the [the subsidiary];" (4) the parent corporation and the subsidiary had integrated operations and shared management personnel; (5) the parent corporation's personnel administered the subsidiary's contracts; (6) personnel for both the parent



NEWMEYER & DILLION LLP

corporation and the subsidiary worked on both matters, and personnel for the parent corporation could be called as witnesses in the case against the subsidiary; and (7) both projects at issue were covered by a single insurance policy. Id. at 246-47; see also Teradyne, Inc. v. Hewlett-Packard Co., 20 U.S.P.Q.2d 1143, 1146 (N.D. Cal. 1991) (evaluating same factors and concluding that based on the parent corporation's control and supervision of the legal affairs of the subsidiary, the unity of interests were "sufficient for a finding that the two should be treated a single client for the limited purpose [of the alleged conflict of interest]."); Baxter Diagnostics, Inc. v. AVL Scientific Corp., 798 F. Supp. 612, 616, n.3 (C.D. Cal 1992) (applying California law and concluding, "[h]ere, the unity of interests between [the subsidiary] and its parent are sufficient to disregard the separate corporate entities for conflict purposes.")

**(2) KB Home And Its Subsidiaries Are Considered One Entity For The Purpose Of Evaluating Conflicts.**

Here, evaluation of the same factors discussed above leads to the clear conclusion that KB Home and its subsidiaries should be considered as one entity for conflict purposes. KB Home's construction operations are carried out by regional subsidiaries/divisions. Each such subsidiary/division includes the name "KB Home," or, formerly, "Kaufman and Broad," and the region in which the project is located, e.g., "KB Home North Bay" or "Kaufman and Broad Monterey Bay." (Declaration of David B. Simons ("Simons Decl."), ¶ 2, Ex. 1.) These homebuilding subsidiaries enter into contracts using KB Home's unified form Master Subcontract Agreements and related work agreements, including scope of work documents and change orders. (Simons Decl., ¶ 3, Ex. 2.)

KB Home's unified management oversees and manages all litigation involving KB Home and its subsidiaries. (Simons Decl., ¶ 4.) For instance, for all construction defect actions involving KB Home or its subsidiaries, KB Home receives the complaint, selects defense counsel and provides counsel with confidential information and documents as to both KB Home and the involved subsidiaries. (Id.) The law firms receive insight into KB Home's overall litigation philosophy and strategies which apply regardless of the particular entity or subsidiary involved. (Id.) The defense firms regularly interact with KB Home's management to receive



NEWMEYER & DILLION LLP

instructions and to report on cases they handle. (Simons Decl., ¶ 5.) These law firms send their bills to, and are paid by, KB Home, unless another third party is paying the defense fees. (Simons Decl., ¶ 5, Ex. 3.) For example, invoices from KB Home's counsel in the Aldrich Action are addressed to "KB Home" to KB Home's Vice President and Assistant General Counsel, David Simons. (Id.)

In construction defect cases involving KB Home or its subsidiaries, defense counsel is also in regular contact with KB Home regarding settlement strategies and implementation. (Simons Decl., ¶ 6.) KB Home's Assistant General Counsel has authority to settle most construction defect cases on behalf of KB Home and its subsidiaries. (Id.) In cases involving large settlements, such authority is obtained from KB Home's senior management. (Id.) KB Home's Assistant General Counsel reviews and signs any resulting settlement agreements on behalf of KB Home and its subsidiaries. (Id.)

KB Home and its subsidiaries are collectively insured under unified commercial general liability policies issued to KB Home. (Simons Decl., ¶ 7.) Further, pursuant to the Master Subcontract Agreements, subcontractors who work on KB Home projects are required to obtain endorsements adding the relevant subsidiary ***and KB Home*** as insureds to their insurance policies. (Simons Decl., ¶ 7.) Therefore, law firms representing KB Home and its subsidiaries in construction defect matters are in regular contact with KB Home's in-house legal staff regarding insurance matters and they receive confidential information and documentation regarding such issues. (Id.)

Thus, under all of the factors discussed in Morrison, Teradyne and Baxter, there can be no question that sufficient unities of interest exist so that KB Home and its subsidiaries are considered a single entity for the purpose of evaluating the existence of conflicts of interest.

**(3) Sellar Hazard Is Adverse To KB Home In The Chadha Action.**

KB Home is named in the Chadha Action, a construction defect action similar to Aldrich. The Chadha complaint named as defendants KB Home and several subsidiaries (KB Home, KB Home Greater Los Angeles, KB Home Coastal, Inc. fka Kaufman and Broad Coastal, Inc., Kaufman and Broad of Southern California). (Simons Decl., ¶ 8, Ex. 4.) KB

Home, through its subsidiaries (KB Central Valley and KB North Bay) filed a cross-complaint against the subcontractors whose work is at issue in the Chadha Action, including Beutler Heating and Air Conditioning ("Beutler"). (Simons Decl., ¶ 9, Ex. 5.)

Sellar Hazard, the law firm that Travelers belatedly sought to appoint to defend KB Home in the Aldrich Action, currently represents Buetler in the Chadha Action. (Simons Decl., ¶ 10, Ex. 6.) KB Home has been adverse to Sellar Hazard as a firm in many cases. (Simons Decl., ¶ 11.) Sellar Hazard is known to KB Home's management as a firm that regularly and routinely represents subcontractors in construction defect cases. (Id.) In fact, KB Home's management has had interactions with Sellar Hazard attorneys in several construction defect cases where that firm represented subcontractors adverse to KB Home. (Id.)

If Sellar Hazard were to defend KB Home or its subsidiaries in the Aldrich Action, KB Home would have to provide that firm with KB Home's litigation philosophy, litigation strategy, confidential information and confidential documents. (Simons Decl., ¶ 12.) Sellar Hazard could use the information to its advantage against KB Home in the Chadha Action and other construction defect cases.

Accordingly, even assuming that Travelers could assert the cooperation clause, which it cannot, KB Home's legitimate objection to the appointment of Sellar Hazard in no way violates the duty to cooperate.

**C. Travelers Was Not Prejudiced By KB Home's Alleged Failure To Cooperate.**

California courts have imposed safeguards to prevent insurers from arguing that any alleged minor refusal to cooperate results in a complete forfeiture of policy benefits. Thus, for example, an insurer must establish that the insured's alleged failure to cooperate caused actual prejudice before it can disclaim coverage. Campbell v. Allstate Ins. Co., 60 Cal. 2d 303, 305-06 (1963). Other cases have recognized that Campbell established the following ground rules before an insurer can eviscerate coverage based on an alleged violation of the duty to cooperate: "(1) that breach by an insured of a cooperation . . . clause may not be asserted by an insurer unless the insurer was substantially prejudiced thereby; (2) that prejudice is not presumed as a matter of law from such breach; (3) that the burden of proving prejudicial breach is on the insurer; . . ."



NEWMEYER & DILLION LLP

Northwestern Title Security Co. v. Flack, 6 Cal. App. 3d 134, 141 (1970). Further, "the required showing of prejudice ***cannot be made while the main tort action is still pending***, its outcome is uncertain." United Services Auto Ass'n v. Martin, 120 Cal. App. 3d 963, 966 (1981) (emphasis added).

Here, even if Travelers could assert the cooperation clause, it could not assert, much less prove, any prejudice. First, the Aldrich Action is ongoing so it is impossible for Travelers to even claim that its defense counsel would have achieved a different outcome. Second, Travelers cannot complaint about the abilities, experience or competency of the Glaspy firm. Travelers has used the Glaspy firm as its own panel counsel in over 100 construction defect cases in the past. (Ex. 12 to Schlecht Decl. (Tom Judge Depo. Transcript, 77:15 to 79:5).) As recently as April 15, 2011, Travelers sought to appoint the Glaspy firm as developer's defense counsel in another construction defect case. (Ex. 13 to Schlecht Decl. (Letter from Travelers in Garvey v. Centex).) Travelers clearly remains confident in the Glaspy firm's ability to defend construction defect cases. Thus, it cannot to establish the elements of the affirmative defense of lack of cooperation and is not entitled to summary judgment thereon.

### D. Travelers Waived Any Alleged Violation Of The Cooperation Clause.

After KB Home raised legitimate objections to the appointment of Sellar Hazard, Travelers never again raised the issue. Travelers subsequently issued payment toward KB Home's defense fees and costs and never once accused KB Home of failing to cooperate. Nor did Travelers ever give any indication that it disagreed with KB Home's assessment that Sellar Hazard could not defend KB Home based on a conflict of interest.

## 5. KB HOME HAS SUFFERED DAMAGES FROM TRAVELERS' BREACHES.

Travelers would have this Court believe that an insurer can wrongfully deny a defense tender, abandon its insured to defend a lawsuit on its own, force its insured to hire attorneys to pursue the insurer for policy benefits, and then "cure" all its wrongdoings by belatedly paying the defense costs that it owed all along. In making this argument, Travelers not only ignores applicable case law, but also ignores the contrary testimony of KB Home's Vice President and Assistant General Counsel.



NEWMEYER & DILLION LLP

### A. Travelers Did Not Cure Its Breaches By Its Belated Payment For Defense.

An insurer's duty to defend is determined on the basis of facts available to the insurer when the defense is tendered. "'If the insurer is obliged to take up the defense of its insured, it must do so as soon as possible, both to protect the interests of the insured, and to limit its own exposure... [T]he duty to defend must be assessed at the outset of the case.'" Shade Foods, Inc., 78 Cal. App. 4th 847, 881 (citing CNA Cas. of Cal. v. Seaboard Surety Co., 176 Cal. App. 3d 598, 605 (1986)). It follows that, if an insurer wrongfully refuses to defend, ***a belated offer to pay the costs of defense will not cure the initial breach of duty.*** Shade Foods, 78 Cal. App. 4th at 881. In Shade Foods, the carrier rejected a tender of defense but reconsidered its denial nearly a year later, shortly before trial, and paid all of its insured's legal expenses. Id. at 879. In upholding the jury's finding that the carrier's actions were unreasonable, the appellate court noted that the carrier's belated payment for its insured's legal expenses, at most, mitigated its insured's damages. Id. at 881.

Travelers repeatedly and continuously breached its duty to defend by, *inter alia*, refusing to pay a single penny toward KB Home's defense, ultimately withdrawing its agreement to defend, then refusing to consider extrinsic evidence and reverse its withdrawal. Only after KB Home sued Travelers did it belatedly agree to defend – and then with only improper limitations. Travelers cannot wipe away all of its breaches because it eventually agreed to defend KB Home more than a year later. At most, a fact finder is entitled to weigh the evidence to determine to what extent, if any, Travelers' belated payment of the Aldrich defense fees and costs may have mitigated KB Home's damages.

### B. KB Home Has Suffered And Continues To Suffer Damages Due To Travelers' Past And Present Breaches.

Just as Travelers cannot cure its breach by its belated payment, neither can it cure the damage it has caused by its belated payment. KB Home continues to suffer compensable damage due to Travelers' improper limitations on its defense duty. For example, after a lengthy and expensive nine-month delay, Travelers finally claimed to accept its defense obligation on December 17, 2010. Yet, even then, it continued to deny that the Aldrich Complaint triggered its



NEWMEYER & DILLION LLP

duty to defend. Rather, it claimed its duty do defend was triggered no earlier than August 4, 2010, the date Travelers received the Preliminary Defect List for cabinets. (Ex. O to Dlugokenski Decl.) Travelers persists in this position although its own claims adjuster acknowledges otherwise: "Based on this information and our recent acceptance of KB' tender we owe defense costs from the date of tender." (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750)); Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript at 210:3-8).)

In addition, David B. Simons, KB Home's Vice President and Assistant General Counsel, testified that KB Home has suffered damages that include interest on the money paid by KB Home which should have been paid by Travelers at the time of tender, as well as lost capital to KB Home in not being able to put the same money to another business use. (Ex. 15 to Schlecht Decl. (Simons Depo. Transcript, 154:23 to 155:12).) Such damages are recoverable upon an insurer's breach of its insurance policy. See Oil Base, Inc. v. Transp. Indem. Co., 148 Cal. App. 2d 490, 492-93 (1957) (where an insurer wrongfully refuses to defend its insured and is compelled to pay its own defense, the insured is entitled to interest on such amount from the date it incurred the obligation which the insurer was obligated to pay); Cal. Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 33-35 (1985) (affirming $21,963 prejudgment interest for breach of duty to indemnify). In addition, an insured may recover for the decline in the value of funds owed by the insurer from the time they were due "at least as to periods when the rate of inflation exceeds the legal (prejudgment) interest rate. " Cal. Shoppers, 175 Cal. App. 3d at 39.

Further, Travelers has brought a cross-claim against KB Home for amounts it paid over its unlawful self-imposed limitations on its duty to defend. Any ruling denying Travelers' claim for reimbursement, in whole or in part, would be a de facto judgment for damages to KB Home.

Lastly, in light of Travelers' improper limitations on its duty to defend KB Home and its efforts to recover the amounts it has paid, KB Home is forced to continue this coverage action in order to vindicate its rights under the Norcraft Policies. The fees and costs KB Home incurs in order to do so ("Brandt fees") are compensatory damages. See Cassim v. Allstate Ins. Co., 33 Cal. 4th 780, 807 (2004) ("entitlement to attorney fees as compensatory damages is premised on an insured's need to hire an attorney to vindicate his other contractual rights under an insurance



NEWMEYER & DILLION LLP

policy . . . "). To date, KB home has incurred in excess of $390,840.05 in such Brandt fees.

## 6. TRAVELERS BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

"A covenant of good faith and fair dealing is implied in every contract." White v. Western Title Ins. Co., 40 Cal. 3d 870, 885 (1985). "In general, the standard of good faith and fairness calls for consideration of the reasonableness of the insurer's conduct in denying coverage." Shade Foods, 78 Cal. App. 4th at 879. "The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself." Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 575 (1973). Travelers' conduct here breached the implied covenant of good faith and fair dealing.

### A. The "Genuine Dispute Doctrine" Does Not Absolve Any Of Travelers' Bad Faith Conduct.

Travelers claims it gets a pass on its tortious actions because there was a "genuine dispute" over the potential for coverage.[5] As a preliminary matter, under the so called genuine dispute doctrine, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably. "The genuine issue rule . . . allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable – for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. . . . On the other hand, an insurer is not entitled to summary judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." Hubka v. Paul Revere Life Ins. Co., 215 F. Supp. 2d 1089, 1092 (S.D. Cal. 2002) (citing Amadeo v. Principal Mut. Life, 290 F.3d 1152, 1161-1162 (9th Cir. 2002)). In sum, it is nothing more than a

[5] Travelers' attempt to "prove" the genuineness of its coverage dispute by relying on the denial letters of other carriers is absurd. First, this purported evidence is inadmissible hearsay. Second, these carriers issued different policies for different subcontractors, who performed different work at the homes at issue. Third, based on Traveler's flawed logic, the fact that even one carrier acknowledged its duty to defend – here, Travelers and Hartford – proves there is no such dispute.



NEWMEYER & DILLION LLP

factual analysis of the plaintiffs' allegations that the insurer acted unreasonably. California courts have become increasingly loathe to engage in such a fact intensive inquiry which by definition is the provenance of the jury. See, e.g., Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723-26 (2007); Brehm v. 21st Century Insurance Company (2008) 166 Cal. App. 4th 1225, 1237-41.[6]

**(1) Travelers' Uninterrupted Defense Of Its Named Insured Proves There Is No "Genuine Dispute."**

It cannot be ignored that Travelers never raised any question, much less a dispute, over the potential for coverage to its named insured, Norcraft, who it has been defending all along under on the same policies, the same complaint, the same damage allegations, and the same facts.

**(2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To the Assertion Of A "Genuine Dispute."**

Failure to conduct an independent, unbiased and thorough investigation precludes any assertion of "genuine dispute." "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." Wilson v. 21st Century, 42 Cal. 4th at 723.

Here, as Travelers acknowledged, the allegations of the Aldrich Complaint triggered Travelers' duty to defend immediately upon tender. Had Travelers conducted any investigation, it would have confirmed that fact. Instead, the undisputed facts establish that it conducted no independent investigation whatsoever. For example, Travelers' adjuster, Patricia Dlugokenski, testified that she reviewed only the documents provided by KB Home:

- She reviewed the complaint, the Norcraft subcontracts, the Norcraft policies, and the additional insured endorsements to the Norcraft policies (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 66:14 to 67:6));
- She confirmed the NOC (notice of completion) dates for the homes involved (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 66:22-24));

[6] Some courts also no longer include a jury instruction on "genuine issue" because the only relevant question is whether the denial was unreasonable or without proper cause. See McCoy v. Progressive W. Ins. Co., 171 Cal. App. 4th 785, 792-94 (2009).



NEWMEYER & DILLION LLP

- She did not review any other documents before issuing Travelers' acceptance of defense on July 6, 2009 (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 66:14 to 67:11));
- She concluded that Norcraft performed cabinet work at the homes in the Aldrich Action (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 59:7-12 and 60:4-11)); and
- She concluded that the Aldrich Complaint alleged cabinet defects (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 59:17-19)).

As previously discussed, Travelers' Claim Notes on July 6, 2009 document Traveler's decision to accept KB Home's defense tender because of a likelihood of covered damages. (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).)

There is no evidence that Travelers conducted any investigation whatsoever after it accepted defense. For example, Travelers did not contact plaintiffs' counsel in the Aldrich Action to verify if the homeowners were alleging resultant damage in their construction defect lawsuit. (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 76:16-22).) Travelers conducted no factual analysis. It never hired any independent consultant or investigator to investigate KB Home's tender under the Norcraft Policies. (Ex. 14 to Schlecht Decl., (Dlugokenski Depo, Transcript, 82:9-12).) It never sent a representative to visit the properties or attend site inspections. (Ex. 14 to Schlecht Decl. (Dlugokenski Depo. Transcript, 82:13-16).) The undisputed facts establish that the entire sum and substance of Travelers' investigation was its repeated demand that KB Home provide documents ***that it knew did not exist***.

The declarations submitted by Ms. Dlugokenski and her current supervisor, Tom Frazier, in support of Travelers are completely devoid of any discussion of Travelers' supposed investigation. Their declarations only address the "investigation" described above, which led Ms. Dlugokenski to acknowledge Travelers' duty to defend on July 6, 2009. As KB Home's designated expert witness, Charles Miller, points out, Travelers undertook no active investigation to determine whether allegations of resultant damage were present in the Aldrich Action (Ex. 16 to Schlecht Decl. (Miller Depo. Transcript, 114:24 to 115:14)). Mr. Miller also testified that Travelers failed to conduct a thorough and timely investigation in accordance with insurance

NEWMEYER & DILLION LLP

industry claims-handling standards and the standards of the industry by failing to, for instance, meet with the named insured, get information from the plaintiff's counsel, and get documents from the policyholder and the additional insured, within 30 to 60 days (Ex. 16 to Schlecht Decl. (Miller Depo. Transcript, 150:11 to 151:23)).

Based on the above facts, Travelers failed to conduct the investigation required by law.

### B. Travelers' Promise To Defend KB Home Was Fraudulent At The Time It Was Made.

The undisputed facts also show that Travelers never had any intention of providing KB Home an immediate and complete defense as required under California law. In fact, at most, Travelers planned on paying 10% of KB Home's defense. When Travelers realized that it would need to pay more, it scrambled to concoct an excuse to withdraw from the defense. The full extent of Travelers' fraudulent and despicable conduct is revealed by its own Claim Notes. These notes reveal that three events solely impacting Travelers' assessment of the ***cost*** of KB Home's defense occurred between Travelers' acceptance on July 6, 2009 and Travelers' decision to withdraw on or about December 10, 2009: (1) Travelers set a low defense reserve based on its anticipation that ***at least ten*** insurers would participate in KB Home's defense such that Travelers would only be required to fund 10% of the defense. (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 7/14/09 (TRPD-000756-57)); (2) Travelers received its first bills for the Aldrich Action and realized that it was ***the only*** insurer that had acknowledged its duty to defend KB Home. (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 10/20/09 (TRPD-000754)); and (3) Travelers learned that its co-carrier, Safeco, denied KB Home's defense tender (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 10/22/09 (TRPD-000754).)

In addition, the Claim Notes reflect an entry on November 3, 2009 of "recent receipt of AI allocation." (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 11/5/09 (TRPD-000754).) The ***very next*** entry on December 10, 2009 was an unexplained entry that Travelers would be "withdrawing our AI acceptance." (Ex. I to Dlugokenski Decl. (Travelers Claim Notes, Entry of 12/10/09 (TRPD-000754)).

The facts reveal that there was never a "genuine dispute" over whether sufficient



NEWMEYER & DILLION LLP

information existed before July 6, 2009 to trigger Travelers' duty to defend. All facts point to the only proper conclusion, as evidenced in its own Claim Notes, that Travelers owed KB Home a defense. Travelers has not and cannot articulate *any* investigation that it conducted between the time it accepted defense on July 6, 2009 and the time it withdrew its defense on December 10, 2009. That is because it did not perform any additional investigation and has no reasonable explanation to justify its radical and unusual decision to withdraw from KB Home's defense and abandon it to defend itself.

**C. Travelers Tortiously Refused To Reconsider Its Coverage Position.**

"[T]he insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith." Shade Foods, 78 Cal. App. 4th at 880.

As discussed above, Travelers violated California law by insisting on *proof* that plaintiffs in the Aldrich Action were seeking covered damages before it would agree to defend. Further, Travelers refused to consider extrinsic evidence from plaintiffs' counsel in the Aldrich Action who twice provided unequivocal confirmation that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. W to Chao Decl. (Letter dated 7/8/10 from Fred M. Adelman).) To this day, Travelers refuses to reconsider its position based on this evidence. (Chao Decl., ¶ 7.)

**D. Travelers' Conduct In This Litigation Is Further Evidence Of Its Bad Faith.**

"The contractual relationship between the insurer and the insured does not terminate with commencement of litigation." White v. Western Title Ins. Co., 40 Cal. 3d 870, 885 (1985). "Evidence of an insurer's conduct during litigation is admissible to show the insured's breach of the covenant of good faith and fair dealing." Id. at 885-89. Further, an insured may introduce evidence of the insurer's failure to comply with discovery obligations during the coverage litigation to show a continuing practice of attempting to frustrate the policyholder's claim. Journal Publishing Co. v. American Home Assur. Co., 771 F. Supp. 632, 636 (S.D.N.Y. 1991). While by no means the only example of Travelers' discovery abuses, but certainly the most notable, Travelers was in this litigation ordered by Magistrate Howard R. Lloyd to comply with



NEWMEYER & DILLION LLP

KB Home's written discovery requests, and Travelers was ordered to again produce two of its witnesses to answer questions they previously refused to answer. Docket No. 70 (Order Granting Plaintiffs' Motions to Compel Further Deposition Testimony and Further Responses to RFPs and Interrogatories). Travelers was further ordered to pay to KB Home's legal fees and expenses of $18,927.50 in connection with the motions to compel. Docket No. 104 (Order Granting In Part and Denying In Part Plaintiffs' Motion for Reasonable Expenses).

Travelers' discovery abuses and continued efforts to frustrate its insured's claims are further highlighted by the fact that in its four motions to compel, KB Home merely sought to get Travelers to: (1) confirm that Travelers was defending its named insured, Norcraft, at the same time that it refused to defend its additional insured; and (2) determine why Travelers agreed there was a potential for coverage to Norcraft but not to KB Home under the same terms in the same policies of insurance. See Docket 70 at 2:21-25. Travelers refused to answer even those straightforward questions, presumably because it had no reasonable justification for treating its insureds differently.

## 7. EVIDENTIARY OBJECTIONS.

KB Home objects to the following evidence pursuant to Local Rule 7-5, Federal Rules of Civil Procedure 56(e) and the Federal Rules of Evidence specified below.

**Declaration of Jason Y. Chao ¶ 11 and Exhibit AA.**

"In discovery, KB Home produced copies of declination letters received from the various other insurers regarding the tenders made by KB Home to the subcontractors. The absence of any bad faith on the part of Travelers is further supported by the language contained in those declination letters sent by those insurers following their receipt of similar tenders of defense. These insurers cited in their declination letters, among other factors, that the complaint in the Aldrich Action does not contain any allegations sufficient to trigger coverage under their commercial general liability policies. Of the 55 KB Home tenders in the Aldrich Action, only two (2) insurers that [sic] have agreed to participate in the defense of KB Home in the Aldrich Action – Travelers and The Hartford. True and correct copies of a few of the declination letters sent to KB Home are attached hereto as **Exhibit AA** and are incorporated herein by this



NEWMEYER & DILLION LLP

reference."

**Objection.**

Travelers relies on the Declaration of Jason Y. Chao to establish that it did not act in bad faith by refusing to defend and indemnify KB Home in the Aldrich Action. The testimony is solely based on the content of letters from other insurers who issued policies to other subcontractors who performed different work ranging from framing to flooring, responding to KB Home's tender of the Aldrich Action. Mr. Chao's testimony is therefore based on inadmissible hearsay. Exhibit AA is also inadmissible hearsay. Fed. R. Evid. 801 and 802. Mr. Chao also lacks personal knowledge of the purported facts stated in his declaration. Fed. R. Evid. 602, 801 and 802; Rountree v. Fairfax Cnty. Sch. Bd., 933 F.2d 219, 223 (4th Cir. 1991); Estremera v. United 442 F.3d 580, 584-85 (7th Cir. 2006) (attorney's affidavit based upon review of documents is "second-hand knowledge"). Further, Mr. Chao's assertion that the "absence of any bad faith on the part of Travelers is further supported by the language contained in those declination letters" is conclusory and constitutes improper opinion ineptly masquerading as fact. Fed. R. Evid. 602 and 701. The legal conclusion offered by Mr. Chao also constitutes improper expert opinion testimony. Fed. R. Evid. 701, 702 and 704. The danger of prejudice based on Chao's conjectures, based completely on hearsay, substantially outweighs any possible probative value. Paragraph 11 of Chao's declaration and Exhibit AA thereto must be excluded from consideration. Fed. R. Evid. 403 and 704.

**8. CONCLUSION.**

The undisputed facts establish that Travelers breached its duty to defend KB Home when it refused to actually pay towards KB Home's defense, when it improperly withdrew from KB Home's defense on December 10, 2009, and again when it refused to immediately reconsider its coverage position in light of compelling extrinsic evidence raising a potential for coverage. Regardless, Travelers has failed to establish that under no conceivable theory could the Aldrich Complaint have alleged damages that fell within the policy coverage of the Norcraft Policies. Further, KB Home has raised numerous triable issues of material fact which do establish Travelers' unreasonable and fraudulent conduct in breach of the covenant of good faith and fair



NEWMEYER & DILLION LLP

dealing. As such, Travelers' motion for summary judgment or, in the alternative, for partial summary judgment should be denied in its entirety.

Dated: September 9, 2011

NEWMEYER & DILLION LLP

By:__________________________
C. Kendie Schlecht
Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation