NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,

Plaintiffs,

vs.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,

Defendants.

CASE NO.: 5:10-cv-02856-EJD
JUDGE: Edward J. Davila
COURTROOM: 1
MAGISTRATE JUDGE: Howard R. Lloyd

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

*[Declarations of Mary Kay Glaspy and C. Kendie Schlecht filed concurrently herewith]*

**DATE: September 30, 2011**
**TIME: 9:00 a.m.**
**COURTROOM: 1**

State Court Action Filed: May 27, 2010
Removed to USDC Northern District: June 28, 2010



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

# TABLE OF CONTENTS

Page

1. INTRODUCTION ........ 1
2. THE ALLEGATIONS OF THE ALDRICH COMPLAINT TRIGGERED TRAVELERS' DUTY TO DEFEND KB HOME ........ 2
   A. Travelers' Duty To Defend KB Home Was Triggered As Of The Date Of Tender On April 1, 2009 ........ 3
   B. Travelers Repeatedly and Continuously Breached Its Duty To Defend ........ 4
      (1) Travelers Refused To Provide an Immediate and Complete Defense ........ 5
      (2) Travelers Refused To Consider Extrinsic Evidence Confirming Its Duty To Defend ........ 5
   C. Travelers' Other Arguments Are False and Immaterial To This Motion ........ 6
      (1) The Hartford Made A Single Payment and Stopped Paying ........ 6
      (2) Travelers' Argument That KB Home Violated The "Cooperation Clause" Is Another Red Herring ........ 7
      (3) Travelers Mischaracterizes The Testimony Of Plaintiffs' Counsel ........ 9
      (4) Travelers' Own Analysis Determining That the Complaint Alleged Damage From Norcraft's Work is Highly Relevant ........ 10
      (5) Travelers' Duty To Defend Both Norcraft And KB Home Is Predicated On Allegations Of Property Damage ........ 10
3. DAMAGES ARE NOT AT ISSUE IN KB HOME'S MOTION FOR PARTIAL SUMMARY JUDGMENT ........ 13
   A. KB Home Has Suffered, And Continues To Suffer, Damages ........ 13
   B. Travelers Cannot Cure Its Breaches By Its Belated Payment Of Defense Fees ........ 14
4. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

Flinkote Co. v. General Accident Assurance Co., 480 F. Supp. 2d 1167 (N.D. Cal. 2007) .......... 10

Multiven, Inc. v. Cisco Systems, Inc., 725 F. Supp. 2d 887 (N.D. Cal. 2010) .......... 13

**State Cases**

Armstrong World Indus. Inc. v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1 (1996) .......... 7

Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448 .......... 10

Cal. Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1 (1985) .......... 14

Campbell v. Allstate Ins. Co., 60 Cal. 2d 303 (1963) .......... 9

Golden Eagle Ins. Co. v. Ins. Co. of the West, 99 Cal. App. 4th 837 (2002) .......... 12

Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076 (1993) .......... 5

Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617 (1996) .......... 8

Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287 (1993) .......... 1, 3, 4, 10

Oil Base, Inc. v. Transp. Indem. Co., 148 Cal. App. 2d 490 (1957) .......... 14

Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc., 78 Cal. App. 4th 847 (2000) .......... 14

**State Statutes**

California Civil Code sections 895 et seq. .......... 8



NEWMEYER & DILLION LLP

## 1. INTRODUCTION.

The primary issue presented here is simple and straightforward. The parties agree that Travelers' duty to defend KB Home has been triggered, the only question is *when*. The singular dispute at the center of this case is whether the allegations of the Aldrich Complaint asserted *a mere potential* for resultant damages arising out of Norcraft's work. KB Home submits that Paragraph 17 of the Aldrich Complaint does:

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following: . . . ***cabinet and wood trim defects*** . . . .

This paragraph alone alleges: (1) those who worked on the plaintiffs' property (including Norcraft) failed to construct the homes in a workmanlike manner; (2) such failure manifested in defects, including cabinet defects; and (3) those defects *resulted in damages to the homes*.

Reviewing these very allegations in July 2009, Travelers confirmed "***cabinet damages are plead [sic] in the complaint***." (Dkt. No. 114, Ex. 1 to KB Home's Motion for Partial Summary Judgment ("KB's MPSJ"), Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).) Travelers concluded that there was not only a potential for such damages, but that they were ***likely***. (Id.) In fact, Travelers specifically detailed the types of damages potentially at issue. Therefore, Travelers itself conclusively established a potential for coverage and, concomitantly, its duty to defend. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993) ("Montrose I") (noting coverage triggered unless insurer establishes that "*no conceivable theory [can] raise a single issue which could bring it within the policy coverage*.").)

Travelers now claims that its internal analysis was simply a statement of "*what could be possible*." (Dkt. No. 116, Travelers' Opposition to Motion for Partial Summary Judgment ("Travelers Opp."), 17:18-19.) This statement alone irrefutably confirms that the duty to defend was triggered by the complaint. Montrose I, 6 Cal. 4th at 300 ("California courts have used the terms 'possibility' and 'potential' interchangeably, and we see no difference between them.").



NEWMEYER & DILLION LLP

The issue of Travelers' breach is also simple. The parties agree that although Travelers initially agreed to defend KB Home on July 6, 2009, it withdrew from the defense five months later without making a single payment. (Dkt. No.116, Opp., 6:16 through 7:19.) Travelers does not dispute that it refused to consider Plaintiffs' counsel's letter confirming that Plaintiffs were seeking covered.damages. (Dkt. No.114, Ex. 4 to KB's MPSJ, Adelman letter dated 7/8/10.) And Travelers does not dispute that it has limited its duty to defend to the time period starting from August 2010 -- nearly a year and a half after KB Home tendered.

But as the saying goes, "if you can't convince them, confuse them." And so Travelers seeks to muddy the waters with a myriad of duplicative and irrelevant declarations, deliberate misrepresentations and unsupported legal arguments. These can be exposed as red herrings by reference to undisputed facts and law.

The undisputed facts establish the following issues as a matter of law:

- Travelers' duty to defend KB Home was established at the time of tender based on the allegations of the complaint;
- Travelers has repeatedly and continuously breached its duty to defend; and
- Travelers has not cured its breaches.

Thus, KB Home respectfully requests that this Court grant its Motion in its entirety.

## 2. <u>THE ALLEGATIONS OF THE ALDRICH COMPLAINT TRIGGERED TRAVELERS' DUTY TO DEFEND KB HOME.</u>

Travelers agrees that (1) Norcraft worked on the projects at issue[1]; (2) the Norcraft policies cover damages arising out of Norcraft's work[2]; (3) Travelers' duty to defend KB Home is based on a mere potential for coverage[3]; and (4) Travelers owes KB Home a duty to defend the <u>Aldrich</u> Action.[4]

The Parties only dispute *<u>when</u>* Travelers' duty to defend KB Home was triggered.

---

[1] <u>See</u> Dkt. No. 116, Travelers' Opp., 4:7 -11.
[2] <u>See</u> Dkt. No. 116, Travelers' Opp., 2:23 to 4:5
[3] <u>See</u> Dkt. No. 116, Travelers' Opp., 11:3-5.
[4] <u>See</u> Dkt. No. 116, Travelers' Opp., 9:15-17.



NEWMEYER & DILLION LLP

### A. Travelers' Duty To Defend KB Home Was Triggered As Of The Date Of Tender On April 1, 2009.

California law is clear that an insurer's duty to defend is triggered when the allegations of a complaint assert a mere potential for covered damages and that coverage is triggered based on a "conceivable theory [that] raise[s] a single issue which could bring it within the policy coverage." Montrose I, 6 Cal. 4th at 300. Paragraph 17 of the Aldrich Complaint alleges:

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following: . . . ***cabinet and wood trim defects*** . . . .

The paragraph alone states in clear and unambiguous language that construction defects such as cabinet and wood trim defects "have resulted in damage to the homes and their component parts." Thus, it is beyond dispute that plaintiffs' allegations in the Aldrich Action assert a potential for coverage under the Norcraft Policies.

In fact, Travelers confirmed "***cabinet damages are plead [sic] in the complaint***." (Dkt. No. 114, Ex. 1 to KB's MPSJ, Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).) Based on the allegations in the complaint, Travelers also concluded that there was not only a *potential* for such damages, but that they were ***likely***. (Id.) Travelers came to this conclusion based on the following:

- review of the complaint, the Norcraft subcontracts, the Norcraft policies, and the additional insured endorsements to the Norcraft policies (Ex. 30 to Schlecht Decl. (Dlugokenski Depo. Transcript, 66:14 to 67:6));
- confirmation of the notice of completion dates for the homes involved (Ex. 30 to Schlecht Decl. (Dlugokenski Depo. Transcript, 66:22-24));
- confirmation that Norcraft performed cabinet work at the homes in the Aldrich Action (Ex. 30 to Schlecht Decl. (Dlugokenski Depo. Transcript, 59:7-12 and 60:4-11)); and

- confirmation that the Aldrich Complaint alleged cabinet defects (Ex. 30 to Schlecht Decl. (Dlugokenski Depo. Transcript, 59:17-19)).

In fact, Travelers specified the types of damages potentially at issue in the complaint as "Damages to walls or pulling away from the walls could be attributed to installation." (Id.) This statement conclusively establishes "a conceivable theory [that] brings [the complaint] within coverage." Montrose I, 6 Cal. 4th at 300.

Travelers now seeks to distance itself from its own conclusions by claiming it was simply a statement of "*what could be possible.*" (Dkt. No. 116, Travelers' Opposition to Motion for Partial Summary Judgment ("Travelers Opp."), 17:18-19.) This argument only confirms that the duty to defend was triggered in the complaint. As the California Supreme Court instructed Travelers nearly 18 years ago:

> [A] bare "potential" or "possibility" of coverage (is) the trigger of a defense duty. Contrary to Travelers's interpretation, California courts have used the terms "possibility" and "potential" interchangeably, and we see no difference between them."

Montrose I, 6 Cal. 4th at 300.[5]

Based on its own review of the clear allegations of the complaint, Travelers agreed to defend KB Home on July 9, 2009.[6] However, as detailed below, it refused to pay and then dramatically reversed course and contradicted its own internal notes by claiming that the complaint did not assert even a mere potential for coverage.

### B. Travelers Repeatedly and Continuously Breached Its Duty To Defend.

Despite the fact that its own internal review detailed that damages were pled in the

---

[5] In Montrose I, the California Supreme Court rejected Travelers' advocacy of "a reasonable potential standard" to trigger a duty to defend. Id. Thus, Travelers knows full well that its efforts to impose a higher standard on KB Home is contrary to California law.

[6] In addition, Travelers reveals for the first time that, on July 19, 2011, Norcraft and the plaintiff homeowners reached a settlement in the Aldrich Action whereby the plaintiffs agreed to provide an issue release of cabinet claims in exchange for a lump sum payment of $30,000. First, the fact that Travelers has indemnified its named insured under the policies only underscores its recognition that the Aldrich Plaintiffs alleged claims that are covered under the Norcraft Policies. Second, the purported settlement is irrelevant to this Motion or any other proceeding until and unless Norcraft produces the alleged settlement agreement and release. If the plaintiffs do not also release KB Home for any and all claims arising out of Norcraft's work, Travelers' purported settlement will have nothing whatsoever to do with Travelers' duty to defend KB Home.



NEWMEYER & DILLION LLP

complaint, that resultant damages were *likely*, and that specific types of resultant damages "could be attributed to [Norcraft's work.]," Travelers refused to issue any payment towards KB Home's defense from July 2009 through December 2009. Then Travelers completely withdrew from KB Home's defense on December 10, 2009 claiming, contrary to its own internal analysis, that the complaint did not allege even a potential for resultant damage.

(1) **Travelers Refused To Provide an Immediate and Complete Defense.**

However, the undisputed facts show that there had been no change whatsoever to the facts or to the Aldrich Plaintiffs' allegations during this period. Travelers claims that its withdrawal was justified because it did not receive a "defect list." This argument fails for several reasons.

First, the duty to defend is triggered upon a mere potential for coverage. An insurer may not impose a higher standard requiring its insured to *prove* the existence of covered damages.

Second, California law requires that an insurer provide an *immediate* defense. This requirement would be frustrated if an insurer simply sit back and demand proof of covered damages. Indeed, Travelers knows very well that defect lists are not typically produced in construction defect cases until a year or more after the case is filed. (Declaration of Mary Kay Glaspy ("Glaspy Decl."), ¶¶ 3-4.)

Third, Travelers has continued to defend Norcraft based on the allegations of the complaint without ever demanding additional proof or evidence, such as a defect list.

(2) **Travelers Refused To Consider Extrinsic Evidence Confirming Its Duty To Defend.**

Travelers does not dispute that it received a letter dated July 8, 2010 from plaintiffs' counsel, Fred Adelman, which confirmed that the Aldrich Plaintiffs were "pursuing recovery for damages arising out of the cabinets." (Dkt. No.114, Ex. 4 to KB's MPSJ, Adelman letter dated 7/8/10.) This extrinsic evidence reinforced Travelers' duty to defend because it confirmed that the claims alleged by the Aldrich Plaintiffs reveal a possibility that the claims may be covered by the Norcraft Policies. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Yet, Travelers does not dispute that it simply refused to consider this letter as further confirmation of the potential for coverage. (Dkt. No. 114, Ex. 20 to KB's MPSJ, e-mail dated 7/26/10 from Jason



NEWMEYER & DILLION LLP

Chao.) Travelers offers no excuse or justification whatsoever for its refusal to consider this evidence.

Travelers claims that its duty to defend was triggered when KB Home provided the Preliminary Defect List for cabinets on August 4, 2010. (Dkt. No. 116, Travelers' Opp., 19:23-28.) Yet, Travelers still refused to acknowledge its duty to defend KB Home despite KB Home's repeated requests. (Dkt. No. 114, Schlecht Decl. in support of KB's MPSJ, ¶ 23.) Travelers' Claim Notes reveal no activity whatsoever during the intervening time. (Dkt. No. 114, Ex. 1 to KB's MPSJ, Claim Notes.) In fact, Travelers was so derelict in acknowledging its admitted defense obligation that, at the December 15, 2010 case management conference, it was ordered by the former presiding judge, Honorable Lucy H. Koh, to produce the reservation of rights letter to KB Home no later than December 17, 2010. (Dkt No. 114, Schlecht Decl. in support of KB's MPSJ, ¶¶ 23-25.)

Travelers finally acknowledged its duty to again defend KB Home on December 17, 2010, a year and a half after KB Home tendered. Thus, even under Travelers' tortured view of its limited defense duty, Travelers failed to provide KB Home with an immediate and complete defense as required by California law.

Thus, the undisputed facts establish that Travelers has continually breached its duty to defend its insured.

### C. <u>**Travelers' Other Arguments Are False and Immaterial To This Motion.**</u>

In attempt to cloud the issues, Travelers submits several repetitive declarations and focuses much of its Opposition addressing "facts" that are immaterial, misleading, and have no impact upon the issue of Travelers' duty to defend and its breach of that duty.

#### (1) <u>**The Hartford Made A Single Payment and Stopped Paying.**</u>

In a variation of its "no harm, no foul" mantra, Travelers claims that KB Home was never harmed by Travelers' breaches because The Hartford (the insurer for a flooring subcontractor who worked on the Projects) was defending KB Home during the time that Travelers improperly refused to do so. Travelers knows very well that this claim is false.

KB Home previously informed Travelers that while The Hartford did initially agree to



NEWMEYER & DILLION LLP

participate in KB Home's defense, it made only a single defense payment towards the defense fees and costs. The Hartford refused to issue any further payments despite repeated requests.[7] (Glaspy Decl., ¶ 11.)

**(2) <u>Travelers' Argument That KB Home Violated The "Cooperation Clause" Is Another Red Herring.</u>**

In its never-ending attempt to justify its bad faith conduct after the fact, Travelers ***for the first time in the 29 months since the claim was tendered*** now complains that KB Home breached a duty to cooperate by not handing Travelers copies of the lot files and Notices of Claim that *Travelers never once asked to review*. This argument is yet another red herring for several reasons:

First, KB Home, in fact, made the voluminous documents available to Travelers and its appointed counsel in the <u>Aldrich</u> document depository *more than two years ago*. (Glaspy Decl., ¶¶ 6-9.) This is the custom and practice in construction defect cases and a procedure followed by KB Home's defense counsel, who has been retained by Travelers to defend more than 800 construction defect cases since the 1980's. (<u>Id.</u> at ¶5.) Rather, carriers that ask to see the lot files are directed to the document depository established in nearly all construction defect cases. (<u>Id.</u> at ¶¶ 7-10.) In addition, by mid-July 2009, Travelers had retained defense counsel for Norcraft, who also had unfettered access to the document depository and the lot files contained therein. (<u>Id.</u> at ¶ 8, Exs. 27 (7/16/09 e-mail between Glaspy firm and Norcraft counsel) and 28 (7/17/09 e-mail between Glaspy firm and Norcraft counsel).)

Second, the undisputed facts show that the lot files document only "aesthetic and cosmetic issues" (i.e., "punch list" items) that were <u>*repaired*</u> by KB Home and Norcraft nearly <u>*seven years prior*</u> to KB Home's tender. (Dkt. No. 116, Travelers' Opp., 8:12-13.) Thus, the "lot files" are

---

[7] Without citing any evidence, Travelers asserts it has challenged KB Home's <u>Armstrong</u> election under <u>Armstrong World Indus. Inc. v. Aetna Casualty & Surety Co.</u>, 45 Cal. App. 4th 1 (1996). KB Home has never received notice of any "challenge" to the <u>Armstrong</u> election. In fact, Travelers never responded at all to KB Home's letter of February 24, 2011 advising Travelers of its "Armstrong" election.



NEWMEYER & DILLION LLP

irrelevant to the Aldrich Plaintiffs' current claims of damage caused by Norcraft.[8]

Third, this argument proves that Travelers breached its duty to investigate. With even minimal effort, Travelers could have easily obtained the lot files by asking the Glaspy firm, by accessing the document depository, asking the counsel it appointed to defend Norcraft or asking its named insured directly.[9] It did none of these things.

Travelers' allegation with respect to a Notice of Claim is likewise disingenuous. As Travelers well knows, the SB800[10] Notice was the subject of a long and contentious dispute between the Aldrich Plaintiffs and KB Home. The Aldrich Plaintiffs provided a Notice of Claim that was so vague and generic that KB Home contended it failed to satisfy any of SB800's requirements. The Aldrich court agreed and ordered the plaintiffs to provide a notice that provided the detailed information required by statute. Travelers was well aware of this entire sequence of events at the time they occurred. (Dkt., 114, Ex. 1 to KB's MPSJ, Claim Notes (TRPD 000753-54) (noting the bitter dispute on the issue the "defense ruling on SB800 motion").) An attempt to appeal followed, but was ultimately rejected. Plaintiffs finally provided a revised Notice of Claim on November 17, 2010, well after Travelers had withdrawn from the defense.

Neither the lot files nor the Notices of Claim void or supersede the allegations of the Aldrich Complaint which clearly alleges potentially covered property damage arising out of Norcraft's work. Travelers' singular focus on conjuring a basis to defeat coverage is further evidence of its breach and bad faith conduct. Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 1623 (1996).

---

[8] The Declaration of Michael Panish in support of Travelers' Opposition (Docket No. 121) merely states why he believes the lot files contain information which may prove that Travelers has no obligation to indemnify its insureds, Norcraft and KB Home, in a trial on the merits of the homeowners' claims. That opinion has no bearing on Travelers' duty to defend KB Home based upon the allegations of the Aldrich Complaint, which were confirmed by correspondence from plaintiffs' attorneys in the Aldrich Action.

[9] In fact, the lot files indicate that Norcraft addressed many of the punch list items itself. (See e.g., Docket No. 121, Ex. "E," (KB009063, KB009055, KB009047). It is also again worth noting that Travelers has never made any effort to disclaim coverage as to Norcraft based on the information contained in the lot files.

[10] California's Right to Repair Law was enacted as California Civil Code sections 895 et seq. and is still often referred to as "SB800."



NEWMEYER & DILLION LLP

Further, as discussed at length in KB Home's Opposition to Travelers' Motion for Summary Judgment, California courts require an insurer to establish that the insured's alleged failure to cooperate caused actual prejudice before it can disclaim coverage. Campbell v. Allstate Ins. Co., 60 Cal. 2d 303, 305-06 (1963). Here, even assuming *arguendo* that KB Home somehow violated the cooperation clause, Travelers could not have suffered any prejudice. As confirmed by Travelers' own expert, Gene Irizarry, even if Travelers had reviewed these documents sooner, it would have acted *no differently*. (See Dkt. No. 119, Declaration of Gene Irizarry, ¶ 14.)[11] Travelers already refused to pay for KB Home's defense and improperly withdrew from the defense on its own accord.

Furthermore, even after reviewing this information, Travelers claims to have settled the Plaintiffs' cabinet related claims of damage for $30,000. Thus, neither the lot files nor the notice of claim lead Travelers to conclude the claims were not covered.

**(3) Travelers Mischaracterizes The Testimony Of Plaintiffs' Counsel.**

Travelers cites a very brief portion of the testimony of Fred Adelman, attorney for the Aldrich Plaintiffs. Mr. Adelman was asked the very narrow question of whether the plaintiffs alleged damage to other finishes, typically paint, in the Aldrich Complaint. Mr. Adelman answered that they normally do not get that specific as to damage to paint or other finishes in their complaints and normally that is something that is discussed during expert depositions." (Declaration of C. Kendie Schlecht ("Schlecht Decl."), ¶2, Ex. 29, Adelman Depo. Transcript, 29:6-23.) In fact, as Mr. Adelman specifically stated that "[the Aldrich Plaintiffs] were seeking damages arising out of the cabinets, meaning whether -- whether it was the installation of the cabinets or the finish or any other issue relating to cabinets, to the extent they existed, we were making a claim on behalf of our clients for that issue." (Ex. 29 to Schlecht Decl., Adelman Depo. Transcript, 32:19 to 33:12.)

[11] Mr. Irizarry's declaration opines solely that information contained in the lot files did not trigger a duty to defend. KB Home agrees with this statement. As such, Mr. Irizarry's declaration is likewise immaterial for purposes of this motion.



NEWMEYER & DILLION LLP

(4) ***Travelers'* Own Analysis Determining That the Complaint Alleged Damage From Norcraft's Work is Highly Relevant.**

Travelers boldly asserts that it is irrelevant that its own adjuster concluded, "based on these facts" the complaint alleged covered damage and Travelers' duty to defend KB Home under the Norcraft Policies was triggered. Contrary to Travelers' argument, the adjuster was not *interpreting* the insurance policies but simply reviewing the facts as alleged in the Aldrich Complaint. In so doing, she merely confirmed what was clear on the face of the complaint: that plaintiffs alleged resultant damages arising from Norcraft's work.

As set forth in Travelers' internal Claim Notes, the adjuster who has 19 years of claims handling experience, concluded that, "[b]ased on those facts, it is likely that some, although minor damages resulted from installation. Damages to the walls or pulling away from the walls could be attributed to installation." (Docket No. 114, Ex. 1 to KB's MPSJ, Entry of 7/6/09 (TRPD-000757).) This statement conclusively establishes "a conceivable theory" under which coverage would apply. Under California law, such theory conclusively establishes a duty to defend based on the allegations of the complaint. Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448, 455; accord Flinkote Co. v. General Accident Assurance Co., 480 F. Supp. 2d 1167, 1172 (N.D. Cal. 2007).

Further, Travelers' explanation of its analysis as "a statement as to ***what could be possible***" merely confirms Travelers' duty to defend. (Dkt. No. 116, Travelers' Opp., 17:10-19.) As the California Supreme Court instructed Travelers nearly 18 years ago in Montrose I: "a bare 'potential' or 'possibility' of coverage (is) the trigger of a defense duty. Contrary to Travelers's interpretation, California courts have used the terms 'possibility' and 'potential' interchangeably, and we see no difference between them." Montrose I, 6 Cal. 4th at 300.

(5) **Travelers' Duty To Defend Both Norcraft And KB Home Is Predicated On Allegations Of Property Damage.**

Travelers asserts that its disparate treatment in providing its named insured an uninterrupted defense while simultaneously refusing to defend KB Home under the same facts, allegations and policies *is irrelevant*.



NEWMEYER & DILLION LLP

In its desperation to justify this argument Travelers takes the startling position, unheard of in the insurance industry, that its duty to defend under a CGL Policy can be triggered *without any allegation of property damage*. Specifically, Travelers asserts that it has an independent duty to defend Norcraft based solely on KB Home's cross-complaint against Norcraft. (Dkt. No. 116, Travelers' Opp. 17:26 to 18:18.) To support its position, Travelers vaguely cites to a single sentence and references all of the Norcraft Policies collectively and in their entirety for the proposition that attorney's fees equal property damage. (Dkt. No. 116, Travelers' Opp. 18:6-9.) However, the sentence only appears in two of the policies – the 04-05 Policy and the 05-06 Policy – in an exception to an exclusion in which provides that coverage does not apply to:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> ***
>
> (2) Assumed in a contract or agreement that is an 'insured contract', provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party **other than an insured** are deemed to be damages because of "bodily injury" or "property damage," **provided**: [¶] (a) Liability to such party for, or for the costs of that party's defense has also been assumed in the same "insured contract"; and [¶] (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution **proceeding in which damages to which this insurance applies are alleged.**

(See e.g., Dkt. No. 114, Ex. 12 to Schlecht Decl. in support of KB's MPSJ, 05-06 Policy, Sec. I, Para. 2(b)(2), TRVC-000401 (emphasis added).)

First, by its own terms, the exception specifically applies only to attorney's fees incurred by a party *other than an insured*. Here, since Travelers does not dispute that KB Home is an insured under the policy, the provision does not, and cannot, apply to defense fees and costs incurred by KB Home.

Second, in order to fall within the exception, the attorney's fees must be incurred pursuant to an "insured contract." The Norcraft Policies define "Insured Contract" as a contract in which the named insured assumes "tort liability of another party to pay for 'bodily injury' or '***property***



NEWMEYER & DILLION LLP

*damage*' to a third party or organization." (See e.g., Dkt. No. 114, Ex. 12 to Schlecht Decl. in support of KB's MPSJ, 05-06 Policy, Sec. V, Para. 9(f), TRVC-000412 (emphasis added).)

Third, the attorney's fees must be incurred in a proceeding seeking damages to which the Travelers insurance otherwise applies—i.e., bodily injury or ***property damage***. As Travelers repeatedly states throughout its Opposition, property damage is necessary for coverage under the Norcraft policies. (See e.g., Dkt., 116, Travelers' Opp., 2:28 to 3:12; 11:17 to 12:17; 19:12-14.)

The case relied upon by Travelers, Golden Eagle Ins. Co. v. Ins. Co. of the West, 99 Cal. App. 4th 837, 847 (2002) does not support Travelers' contention. Golden Eagle specifically addressed the coverage grant common to CGL policies that provides coverage for "all sums that the insured becomes legally obligated to pay as *damages*." Golden Eagle, 99 Cal. App. 4th at 845 (emphasis added). The court examined whether the word "damages" in the grant of coverage "could be reasonably interpreted to include the indemnitee's costs in defending against third party claims *for covered property damages*." Id. Thus, Golden Eagle simply holds when an indemnitee incurs attorney's fees in defending a claim for property damages, such fees can constitute "damages" referred to in the grant of coverage.

Moreover, Travelers' position is contrary to the undisputed facts. As Travelers unit manager initially overseeing the claim testified, the only reason Travelers would agree to defend its named insured and not the additional insured would be if the named insured did not actually work on the project—which is not the case here. (Ex. 32 to Schlecht Decl., Tom Judge Depo. Transcript, 72:9 to 73:7.) Further, if Travelers were defending Norcraft based solely on KB Home's indemnity claims, Travelers could have simply attached its reservation of rights letter to Norcraft in which it explains the basis for which it was providing such defense. Although Travelers has acknowledged that it has issued such a reservation of rights letter, it has never produced the letter or disclosed its contents. (Dkt. 114, Ex. 15 to Schlecht Decl. in support of KB's MPSJ, Letter dated 5/26/11 from Travelers to Magistrate Lloyd.)

Thus, Travelers' duty to defend both Norcraft and KB Home is predicated upon property damage allegations in the Aldrich Complaint. Travelers' position to the contrary is entirely unsupported by the facts or law. Travelers has been defending Norcraft all along based on the

NEWMEYER & DILLION LLP

allegation of property damage set forth in the Aldrich Complaint while claiming to KB Home that the Aldrich Complaint does not assert such damages. As Judge Lloyd recognized, "Travelers's 'obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts.'" (Docket No. 70 at 4:24-26.)

## 3. DAMAGES ARE NOT AT ISSUE IN KB HOME'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

Although it is not an issue in KB Home's Motion for Partial Summary Judgment, Travelers devotes nearly five pages of its Opposition arguing that KB Home has not suffered damages. KB Home seeks partial summary judgment: (1) that the factual allegations in the Aldrich Complaint and the extrinsic evidence available and known to Travelers evidence potential coverage triggering Travelers' duty to provide KB Home an immediate and complete defense of the Aldrich Action, from the date of tender, April 1, 2009; (2) that Travelers breached its duty to provide KB Home an immediate and complete defense of the Aldrich Action; and (3) that belated payment of the costs of defense in the Aldrich Action did not cure Travelers' breach of its duty to provide KB Home an immediate and complete defense of the Aldrich Action. Whether KB Home suffered damages, and the amount of those damages, does not impact an adjudication that Travelers had a duty to defend KB Home and breached that duty. Multiven, Inc. v. Cisco Systems, Inc., 725 F. Supp. 2d 887, 890 (N.D. Cal. 2010) ("a party may move for summary judgment on the liability issues in a claim, leaving the issue of damages, for example, for trial").

### A. KB Home Has Suffered, And Continues To Suffer, Damages.

Nevertheless, KB Home has suffered, and continues to suffer, compensable damages due to Travelers' breaches and its improper limitations on its defense duty. David B. Simons, KB Home's Vice President and Assistant General Counsel, testified that KB Home has suffered damages including, but not limited to interest on the money paid by KB Home which should have been paid by Travelers at the time of tender, as well as lost capital to KB Home in not being able to put the same money to another business use. (Ex. 31 to Schlecht Decl., Simons Depo. Transcript, 154:23 to 155:12.) Such damages are recoverable upon an insurer's breach of its

insurance policy. See Oil Base, Inc. v. Transp. Indem. Co., 148 Cal. App. 2d 490, 492-93 (1957) (where an insurer wrongfully refuses to defend its insured and is compelled to pay its own defense, the insured is entitled to interest on such amount from the date it incurred the obligation which the insurer was obligated to pay); Cal. Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 33-35 (1985) (affirming $21,963 prejudgment interest for breach of duty to indemnify). In addition, an insured may recover for the decline in the value of funds owed by the insurer from the time they were due "at least as to periods when the rate of inflation exceeds the legal (prejudgment) interest rate." Cal. Shoppers, 175 Cal. App. 3d at 39.

Further, Travelers has brought a cross-claim against KB Home for amounts it paid over its unlawful self-imposed limitations on its duty to defend. Any ruling denying Travelers' claim for reimbursement, in whole or in part, would be, in effect, a judgment for damages to KB Home.

## B. Travelers Cannot Cure Its Breaches By Its Belated Payment Of Defense Fees.

Travelers takes great pains to attempt to distinguish Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc., 78 Cal. App. 4th 847 (2000) from the facts of this case. However, even Travelers' description of Shade Foods reveals that the case closely mirrors the facts here. To quote Travelers' Opposition, "IPS's carrier, Northbrook National Insurance Company ("Northbrook"), denied IPS's tender from the outset and refused to reconsider its position, despite being provided with documentation evidencing that a potential for coverage existed." (Docket No. 116, Travelers' Opp., 23:15-18.) "IPS retained counsel at its own expense to defend the Shade action, but shortly before the originally scheduled trial date of June 1996, Northbrook reconsidered its decision to refuse IPS's defense. At that time, it offered to reimburse IPS for all attorney fees it had paid to date and to pay further legal expenses in the action. IPS accepted the offer of payment, and, accordingly, it did not pursue a claim for attorney fees in its cross-complaint against Northbrook." Shade Foods, 78 Cal. App. 4th at 879. In assessing Northbrook's breach of its duty to defend, the court held that its belated offer to pay the costs of the defense did not cure the initial breach of duty. Id. at 881.

It is also interesting to note that in assessing Northbrook's breach of the covenant of good faith and fair dealing, the court found that the insurer failed to reasonably and thoroughly



NEWMEYER & DILLION LLP

investigate the key facts and issues of the case, failed to respond to correspondence from the insured, and refused to reconsider its coverage position when confronted with facts that showed a possibility of coverage. Id. at 881-82. That same behavior also forms the basis of KB Home's claims against Travelers for breach of the covenant of good faith and fair dealing. However, again, those issues are presently immaterial for purposes of determining KB Home's Motion for Partial Summary Judgment.

## 4. CONCLUSION.

For all the foregoing reasons, KB Home respectfully requests that the Court grant its Motion for Partial Summary Judgment on the following issues: (1) Travelers' duty to provide KB Home an immediate and complete defense of the Aldrich Action, from the date of tender, April 1, 2009; (2) Travelers breached its duty to provide KB Home an immediate and complete defense of the Aldrich Action; and (3) belated payment of the costs of defense in the Aldrich Action did not cure Travelers' breach of its duty to provide KB Home an immediate and complete defense of the Aldrich Action.

Dated: September 16, 2011

NEWMEYER & DILLION LLP

By: ______________________
James S. Hultz
Attorneys for Plaintiffs
KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation