NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs and Counter-Defendants
KAUFMAN & BROAD MONTEREY BAY, a
California corporation; and KB HOME SOUTH
BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:10-cv-02856-EJD<br>Judge: Edward J. Davila<br>Courtroom: 4<br>Magistrate: Hon. Howard R. Lloyd<br><br>**KB HOME'S OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO KB HOME'S EIGHTH, NINTH, FOURTEENTH AND NINETEENTH AFFIRMATIVE DEFENSES**<br><br>Date: September 14, 2012<br>Time: 9:00 a.m.<br><br>State Court Action Filed: May 27, 2010<br>Removed to USDC Northern Dist.: June 28, 2010 |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Counter-Claimant,<br><br>vs.<br><br>KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Counter-Defendants. | |



NEWMEYER & DILLION LLP

## TABLE OF CONTENTS


**Page**

1. SUMMARY OF ARGUMENT .......... 1
2. TRAVELERS HAD ITS OPPORTUNITY TO SEEK SUMMARY JUDGMENT ON KB HOME'S COMPLAINT .......... 3
3. STATEMENT OF FACTS .......... 4
   - A. The Underlying Aldrich Complaint And KB Home's Tender .......... 4
   - B. Travelers' Withdrawal and Re-Acceptance .......... 5
   - C. Travelers' Attempt To Appoint Defense Counsel With Ethical Conflicts .......... 5
4. TRAVELERS CANNOT MEET ITS BURDEN ON SUMMARY JUDGMENT .......... 6
5. TRAVELERS BREACHED THE NORCRAFT POLICIES BY UNREASONABLY DENYING KB HOME ITS POLICY BENEFITS .......... 7
   - A. Travelers Cannot Assert Breach Of The Duty To Cooperate .......... 7
     - (1) Travelers Lost Any Right To Control The Defense Or Enforce The Cooperation Clause .......... 7
     - (2) Even If It Were Enforceable, The Cooperation Clause Would Not Require KB Home to Accept Defense Counsel With Conflicts .......... 9
     - (3) Travelers Was Not Prejudiced .......... 10
   - B. The Aldrich Complaint Triggered Travelers' Duty To Defend, Thus Travelers' Withdrawal Of Defense Breached The Norcraft Policies .......... 10
6. TRAVELERS BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING .......... 12
   - A. Travelers' Promise To Defend KB Home Was Fraudulent When Made .......... 12
   - B. Travelers Wrongfully Withdrew From KB Home's Defense .......... 13
   - C. Travelers Tortiously Refused To Reconsider Its Withdrawal Despite Extrinsic Facts Contradicting Its Coverage Position .......... 14
   - D. Travelers Continues To Wrongfully Limit Its Defense Obligations .......... 16
   - E. Travelers Tortiously Sought To Displace KB Home's Defense Counsel With Panel Counsel Despite Ethical Conflicts .......... 16
   - F. Travelers Wrongfully Withdrew Its Defense A Second Time .......... 16
   - G. Travelers Has Engaged Malicious And Bad Faith Discovery Tactics .......... 17
   - H. Travelers Has Filed A Retaliatory Complaint Against KB Home .......... 19




NEWMEYER & DILLION LLP

**TABLE OF CONTENTS**
**(continued)**

**Page**

I. The "Genuine Dispute Doctrine" Does Not Absolve Travelers Of Its Bad Faith Conduct ..... 20

(1) Travelers' Uninterrupted Defense of Its Named Insured Proves There Is No "Genuine Dispute." ..... 21

(2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To the Assertion Of A "Genuine Dispute." ..... 22

7. KB HOME HAS SUFFERED DAMAGES ..... 23

8. CONCLUSION ..... 24

NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) .......... 7

*Amadeo v. Principal Mut. Life*,
290 F.3d 1152 (9th Cir. 2002) .......... 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 7

*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) .......... 6

*Baxter Diagnostics, Inc. v. AVL Scientific Corp.*,
798 F. Supp. 612 , n.3 (C.D. Cal 1992) .......... 9

*Columbia Cas. Co. v. Gordon Trucking, Inc.*,
758 F. Supp. 2d 909, n.4 (N.D. Cal. 2010) .......... 8

*Hubka v. Paul Revere Life Ins. Co.*,
215 F. Supp. 2d 1089 (S.D. Cal. 2002) .......... 21

*Journal Publishing Co. v. American Home Assur. Co.*,
771 F. Supp. 632 (S.D.N.Y. 1991) .......... 17

*Westlands Water Dist. v. United States*,
337 F.3d 1092 (9th Cir. 2003) .......... 6

## State Cases

*American States Ins. Co. v. Progressive Cas. Ins. Co.*,
180 Cal. App. 4th 18 (2009) .......... 15

*Borg v. Transamerica Ins. Co.*,
47 Cal. App. 4th 448 (1996) .......... 14

*Brehm v. 21st Century Insurance Company*,
166 Cal. App. 4th 1225 (2008) .......... 21

*Campbell v. Allstate Ins. Co.*,
60 Cal. 2d 303 (1963) .......... 10

*Cassim v. Allstate Ins. Co.*,
33 Cal. 4th 780 (2004) .......... 24

*Dalrymple v. United Services Auto. Ass'n*,
40 Cal. App. 4th 497 (1995) .......... 19

*Drinnon v. Oliver*,
24 Cal. App. 3d 571 (1972) .......... 8



NEWMEYER & DILLION LLP

## TABLE OF AUTHORITIES
(continued)

**Page**

*Eigner v. Worthington*,
57 Cal. App. 4th 188 (1997) .......... 8

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) .......... 15, 16

*Gribaldo v. Agrippina Versicherunges A. G.*,
3 Cal. 3d 434 (1970) .......... 8

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*,
176 Cal. App. 4th 172 (2009) .......... 15

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) .......... 15

*Hous. Grp. v. PMA Capital Ins. Co.*,
193 Cal. App. 4th 1150 (2011) .......... 8

*Johnson & Johnson v. Super. Ct.*,
38 Cal. 2d 243, 254-55 (1985) .......... 8

*Kennedy v. Am. Fid. and Cas. Co.*,
97 Cal. App. 2d 315 (1950) .......... 8

*McCoy v. Progressive W. Ins. Co.*,
171 Cal. App. 4th 785 (2009) .......... 21

*Montrose Chemical Corp. v. Super. Ct.*,
6 Cal. 4th 287 (1993) .......... 11, 14-16

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft LLP*,
69 Cal. App. 4th 223 (1999) .......... 9

*Mullen v. Glens Falls Ins. Co.*,
73 Cal. App. 3d 163 (1977) .......... 11

*Northwestern Title Security Co. v. Flack*,
6 Cal. App. 3d 134 (1970) .......... 10

*Pardee Constr. Co. v. Ins. Co. of the West*,
77 Cal. App. 4th 1340 (2000) .......... 11

*Pruyn v. Agricultural Ins. Co.*,
36 Cal. App. 4th 500 (1995) .......... 8

*Ritchie v. Anchor Cas. Co.*,
135 Cal. App. 2d 245 (1955) .......... 8

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*
78 Cal. App. 4th (2000) .......... 14, 23



NEWMEYER & DILLION LLP

**TABLE OF AUTHORITIES**
**(continued)**


**Page**

*Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App.4th 966 (2000) ........ 7

*United Services Auto Ass'n v. Martin*, 120 Cal. App. 3d 963 (1981) ........ 10

*Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142 (2001) ........ 9

*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*, 68 Cal. App. 4th 1030 (1998) ........ 11

*White v. Western Title Ins. Co.*, 40 Cal. 3d 870 (1985) ........ 17

*Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713 (2007) ........ 21, 22

**State Statutes**

California Civil Code § 2860 ........ 8

**Federal Rules**

Fed. R. Civ. P. 56(c) ........ 6

Federal Rules of Civil Procedure, Rule 56(h) ........ 15

**Other Authorities**

Travelers Prop. Cas. Co. of Am. v. Centex Homes, No. 11-3638-SC, 2012 U.S. Dist. LEXIS 65834 (N.D. Cal. May 10, 2012) ........ 1, 8


NEWMEYER & DILLION LLP

## 1. SUMMARY OF ARGUMENT.

Travelers'[1] Motion seeks a ruling that Kaufman & Broad Monterey Bay and KB Home South Bay, Inc. (collectively "KB Home") cannot prevail on its Eighth Affirmative Defense (Travelers breached the Norcraft Policies), Ninth Affirmative Defense (Travelers breached the covenant of good faith and fair dealing), Fourteenth Affirmative Defense (Travelers failed to fulfill its contractual obligations to defend KB Home), and Nineteenth Affirmative Defense (Travelers' failure to defend KB Home has excused KB Home from performing any obligations it did not perform) (collectively "Affirmative Defenses").

It bases its Motion on two arguments: (1) Travelers never breached the Norcraft insurance policies by failing to defend KB Home in the Aldrich Action; and (2) Travelers never breached the covenant of good faith and fair dealing. As the parties have extensively briefed, both in response to Travelers' other three motions for partial summary judgment (Docket Nos. 169-1, 174-1, 182-1) and in response to Travelers' still-pending motion for summary judgment heard on September 30, 2010 (Docket No. 106), numerous and substantial disputed issues of material fact exist to disprove Travelers' arguments and its Motion must be denied.

***Travelers breached the Norcraft Policies***. In a now familiar refrain, Travelers claims that KB Home breached the cooperation clause in the Norcraft Policies by refusing to accept Travelers' conflicted panel counsel. The Court has already ruled in another similar case that where Travelers unreasonably delayed – even for a few months – to provide its insured a full and complete defense, Travelers is divested of the right to control that defense. Travelers Prop. Cas. Co. of Am. v. Centex Homes, No. 11-3638-SC, 2012 U.S. Dist. LEXIS 65834, at * 14 (N.D. Cal. May 10, 2012).

As discussed further below, Travelers' duty to defend was triggered immediately upon tender of the Aldrich Complaint. As such, it breached its duty to defend when it, among other things: (1) wrongfully withdrew from KB Home's defense; (2) unreasonably refused to reconsider its withdrawal; (3) placed improper limitations on its defense obligations; and (4)

[1] Defendant Travelers Property Casualty Company of America is referred to herein as "Travelers."



NEWMEYER & DILLION LLP

insisted upon displacing KB Home's defense counsel with counsel with ethical conflicts. Although Travelers makes much to do about the fact that it has since paid KB Home's defense fees and costs, Travelers' payments are hollow and do not cure its breach of the duty to defend because Travelers still refuses to acknowledge that its defense obligation was triggered by the allegations of the Aldrich Complaint, and it has filed a Counterclaim against KB Home for return of the defense payments it has paid on the same unreasonable and bad faith grounds that it never owed KB Home a duty to defend in the first place.

In support of its Motion, Travelers cites not a single relevant fact that did not exist when it filed its first motion for summary judgment on these same grounds last summer. (Docket No. 106.) For the same reasons, Travelers' arguments fail.

***Travelers breached the covenant of good faith and fair dealing.*** Travelers argues once again that it did not act in bad faith because it did not unreasonably deny KB Home a defense. Again, Travelers' breaches of the policies and bad faith are well documented. Such conduct began when Travelers fraudulently agreed to defend KB Home while its internal documents, and its refusal to actually issue payment, reveal that it never had any intention of providing a full and complete defense. Travelers' bad faith continued when it withdrew from KB Home's defense falsely claiming that the Aldrich Complaint asserted *no potential* for covered damages while internally acknowledging that such damages were *likely* and while it simultaneously defended its named insured based on the very same allegations. Travelers then improperly refused to reconsider its denial despite evidence contradicting its coverage position. After KB Home filed this coverage action, Travelers again agreed to defend KB Home, but it placed improper limitations on its defense obligations and insisted upon displacing KB Home's defense counsel with counsel with ethical conflicts.

Further, Travelers has once again withdrawn from KB Home's defense this time falsely claiming that it had settled all claims against its named insured in the Aldrich Action. Travelers' has also engaged in bad faith discovery tactics ranging from unjustified refusal to provide legitimate discovery to harassing and threatening KB Home's counsel with physical violence. Travelers has recently compounded its previous bad faith by filing a retaliatory action against KB

Home for filing this coverage action.

KB Home has proffered substantial evidence of disputed issues of material fact regarding Travelers' breaches of the Norcraft Policies and its bad faith. As such, KB Home has established that it may prevail on each of its Affirmative Defenses, and Travelers' Motion is improper and must be denied.

## 2. TRAVELERS HAD ITS OPPORTUNITY TO SEEK SUMMARY JUDGMENT ON KB HOME'S COMPLAINT.

On May 27, 2010, KB Home filed the instant coverage action in state court and on June 29, 2010, Travelers removed to federal court. (Docket No. 1.) The case was initially assigned to Judge Koh who set an initial case management order establishing a June 9, 2011 deadline for filing dispositive motions. (Docket No. 19.) On April 25, 2011, the case was transferred to this Court. (Docket No. 47.) On May 21, 2011, this Court entered a stipulation and order setting a September 30, 2011 hearing for dispositive motions on issues pending before the Court at the time. (Docket No. 68.) Pursuant to the order, the parties filed their respective dispositive motions on August 26, 2011. (See Docket Nos. 106 [Travelers] and 113 [KB Home].) Subsequently, with leave from the Court, Travelers filed an amended answer asserting counterclaims on September 16, 2011. (Docket No. 126.) This Court then issued a minute order setting new deadlines, including a summary judgment motion deadline of June 1, 2012, to address the "New Claims" asserted in Travelers' amended answer. (Docket No. 147.) The minute order was clearly not intended to allow the parties a second bite at the apple as to arguments that existed prior to the amended answer. Yet, that is exactly what Travelers has done.

Although Travelers attempts to invoke KB Home's more recently filed Answer to Travelers' Counterclaims by attacking the Affirmative Defenses, the only issues addressed in this Motion is KB Home's claims that Travelers breached the Norcraft Policies and breached the covenant of good faith and fair dealing. Both these issues were extensively briefed in the previous summary judgment motions. (See Docket Nos. 106 [Travelers] and 113 [KB Home].) No new facts have been presented which justify re-filing the same arguments. Travelers does not get another 25 pages of briefing to argue these identical issues. Therefore, Travelers' duplicative

Newmeyer & Dillion LLP

and untimely Motion should be summarily denied on this basis alone.

## 3. STATEMENT OF FACTS.

### A. The Underlying Aldrich Complaint And KB Home's Tender.

Between 2003 and 2004, KB Home developed and constructed residential projects referred to as "The Cove" and "The Bluffs" (the "Projects") located in the City of Seaside, County of Monterey, California. On October 21, 2008, the owners of 43 homes in the Projects filed their construction defect complaint in the underlying Aldrich Action. (Ex. C to Dlugokenski Decl., Aldrich Complaint.) In the Aldrich Complaint, the homeowners allege, among other things, that cabinet defects resulted in damage to the homes and their component parts. (Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶ 17.)

On April 1, 2009, KB Home tendered its claim and requested that Travelers provide an immediate and full defense of the Aldrich Action. (Dlugokenski Decl., ¶ 7 and Ex. E thereto.) On or about July 6, 2009, Travelers acknowledged that KB Home was an additional insured under the Norcraft Policies and acknowledged a duty to defend KB Home under the policies. (Dlugokenski Decl., ¶ 13 and Ex. H thereto, AI Acceptance Letter dated 7/6/09 from Patricia Dlugokenski.) A notation in Travelers' Claim Notes made that same day state "Insured [Norcraft] also completed installation and *cabinet damages are plead* [sic] in the complaint. Based on those facts, it is likely some, although minor damages resulted from installation. *Damages to the walls or pulling away from the walls could be attributed to installation*" (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).) Travelers' named insured adjuster reached the same conclusion and agreed to defend Norcraft. (Ex. 5 to Declaration of C. Kendie Schlecht ("Schlecht Decl."), Norcraft Acceptance Letter dated 6/25/09 from Debbie Taylor.)[2] Conspicuously, while Travelers refused KB Home's repeated requests that Travelers actually fund the defense, it immediately began to pay for Norcraft's defense. (Compare Declaration of Mary Kay Glaspy ("Glaspy Decl."), ¶ 14 with Ex. 7 to

[2] Despite the Court's order compelling discovery (Docket No. 70) and sanctioning Travelers (Docket No. 104), Travelers' still improperly refuses to provide unredacted claim notes or related questioning of the named insured adjuster. These issues remain pending before the assigned discovery magistrate. (Docket Nos. 84, 89, 98, 158, 165-167.)



NEWMEYER & DILLION LLP

Schlecht Decl., Debbie Taylor Deposition Transcript ("Taylor Depo. Transcript"), 123:4-18, 150:24 to 151:8.)

**B. Travelers' Withdrawal and Re-Acceptance.**

Eventually, on December 10, 2009, although it had never paid a single cent towards KB Home's defense, Travelers announced it was completely withdrawing, and sent a formal withdrawal letter on March 9, 2010. (Ex. J to Declaration of Patricia Dlugokenski ("Dlugokenski Decl."), Withdrawal E-mail dated 12/10/09; Ex. K to Dlugokenski Decl., Withdrawal Letter dated 3/9/10.) Not wishing to simultaneously defend the Aldrich Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to defend. KB Home obtained a letter from plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. D to Declaration of Jason Chao ("Chao Decl."), E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) When Travelers still refused to defend KB Home, KB Home also obtained a defect list for cabinets from Plaintiffs' counsel in the Aldrich Action. (Chao Decl., ¶ 8 and Ex. E thereto, E-mail dated 8/4/10 from C. Kendie Schlecht attaching Aldrich Preliminary Defect List for cabinets.)

Although Travelers eventually acknowledged that the cabinet defect list it received on August 4, 2010 "created a potential for indemnification under the policies issued to Norcraft," it did not do so until December 17, 2010. (Ex. L to Dlugokenski Decl., December 17, 2010 reservation of rights letter.) Inexplicably, Travelers unreasonably and in bad faith waited four months – during which time the parties continued to actively litigate this coverage action and even attended private mediation on December 3, 2010 – before informing KB Home that the August 4, 2010 cabinet defect list was sufficient to trigger Travelers' duty to defend subject to a reservation of rights.

**C. Travelers' Attempt To Appoint Defense Counsel With Ethical Conflicts.**

Although the law firm of Glaspy & Glaspy (who has been appointed by Travelers to defend more than 800 construction defect cases since the 1980's) had continuously defended KB Home in the Aldrich Action since early 2009, on December 17, 2010, Travelers for the first time



NEWMEYER & DILLION LLP

notified KB Home of its intent to appoint its panel counsel, Sellar Hazard Manning Ficenac & Lucia ("Sellar Hazard"), to defend KB Home. (Declaration of Mary Kay Glaspy ("Glaspy Decl."), ¶ 2; Declaration of Patricia Dlugokenski ("Dlugokenski Decl."), ¶ 26 and Ex. L thereto, Letter dated December 17, 2010.) On January 4, 2011, KB Home informed Travelers that it had forfeited any right to control KB Home's defense when it breached its duty to defend by improperly withdrawing from KB Home's defense. At the same time, KB Home notified Travelers that its panel counsel, Seller Hazard, was conflicted because it had represented subcontractors in construction defect lawsuits adverse to KB Home. (Ex. H to Declaration of Jason Chao ("Chao Decl."), Letter dated January 4, 2011.)

KB Home's Vice President and Associate General Counsel, David B. Simons, confirmed that Sellar Hazard has regularly and routinely represented subcontractors in construction defect cases, including representing a subcontractor against a KB Home and/or its subsidiaries in a pending action called Chadha v. K.B. Home, San Joaquin Superior Court, Case No. 39-2009-00232688-CU-BC-STK ("Chadha" Action). If Sellar Hazard were to defend KB Home in the Aldrich Action, KB Home would have to provide Sellar Hazard with KB Home's litigation philosophy, litigation strategy, confidential information and confidential documents. Sellar Hazard could then use such information to its advantage against KB Home in the Chadha Action and other cases. (Ex. 12 to Schlecht Decl., Declaration of David Simons dated 9/8/11, ¶¶ 2-12.)

It bears noting that Travelers never once responded to KB Home's concerns regarding Sellar Hazard's conflict of interests addressed in the January 4, 2010 letter. Neither did Travelers ever propose alternative defense counsel who did not have ethical conflicts.

## 4. TRAVELERS CANNOT MEET ITS BURDEN ON SUMMARY JUDGMENT.

Because material disputed facts exist regarding whether Travelers breached the Norcraft Policies and acted in bad faith, Travelers is not entitled to partial summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). "If genuine issues of material fact exist, summary judgment is not proper." Westlands Water Dist. v. United States, 337 F.3d 1092, 1100 (9th Cir. 2003). A material fact is in dispute whenever reasonable persons could differ and resolution would "require a jury or judge to resolve the parties' differing versions of the truth at trial." Aydin Corp. v. Loral



NEWMEYER & DILLION LLP

Corp., 718 F.2d 897, 902 (9th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Even where the facts are undisputed, summary judgment is not appropriate where reasonable minds could differ regarding the inferences which may be drawn from the undisputed facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

## 5. TRAVELERS BREACHED THE NORCRAFT POLICIES BY UNREASONABLY DENYING KB HOME ITS POLICY BENEFITS.

### A. Travelers Cannot Assert Breach Of The Duty To Cooperate.

Contrary to Travelers' argument, the cooperation clause does not provide an insurer with unfettered power to impose its will upon its insured. The "cooperation clause" simply states: "You and any other involved insured must ... Cooperate with us in the investigation, settlement or defense of the claim or 'suit.'" (See, e.g., Ex. A to Declaration of Richard Carrillo, Norcraft 02-03 Policy, § IV, ¶ (2)(c)(3) (TRVC-000577).) Such clauses are merely intended to enable the insurer "to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to its rights, to enable it to decide upon its obligations, and to protect itself against false claims." Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App.4th 966, 976 (2000) (internal quotes and parentheses omitted).

Travelers attempts to convert this provision into a weapon to strip KB Home of all coverage. For several reasons, Travelers' attempt fails.

#### (1) Travelers Lost Any Right To Control The Defense Or Enforce The Cooperation Clause.

Travelers contends that KB Home forfeited all coverage under the Norcraft Policies when KB Home objected to Travelers' attempt to replace the Glaspy firm, who had been defending the case for nearly two years, with Travelers' choice of counsel, Sellar Hazard. Travelers' argument ignores two critical facts: 1) by virtue of its breaches, Travelers lost any right to control the defense or enforce the cooperation clause; and 2) KB Home never refused the appointment of counsel by Travelers, but only voiced its legitimate objections regarding Sellar Hazard's actual conflict of interest.



NEWMEYER & DILLION LLP

It is well settled law in California, and a majority of jurisdictions, that when an insurer wrongfully refuses to defend, an insured is relieved from the duty to cooperate, and is "justified in proceeding on her own account in whatever manner seemed proper to her under the circumstances." Drinnon v. Oliver, 24 Cal. App. 3d 571, 579-80 (1972), overruled on other grounds by Johnson & Johnson v. Super. Ct., 38 Cal. 2d 243, 254-55 (1985); see also The Hous. Grp. v. PMA Capital Ins. Co., 193 Cal. App. 4th 1150, 1157 (2011) (insurer cannot compel arbitration under California Civil Code § 2860 when it had improperly denied its duty to defend), Eigner v. Worthington, 57 Cal. App. 4th 188, 196 (1997) (when an insurer wrongfully refuses to defend, the insured is relieved of any obligation to allow the insurer to manage the litigation), Ritchie v. Anchor Cas. Co., 135 Cal. App. 2d 245, 258 (1955) (insurer's improper refusal to defend deprived it of right to control defense).

Many of the cases cited by Travelers are in accord. See Gribaldo v. Agrippina Versicherunges A. G., 3 Cal. 3d 434, 449 (1970); Pruyn v. Agricultural Ins. Co., 36 Cal. App. 4th 500, 516 (1995); Columbia Cas. Co. v. Gordon Trucking, Inc., 758 F. Supp. 2d 909, 917, n.4 (N.D. Cal. 2010). This is because when an insurer denies coverage it is "renouncing the policy, as far as the accident is concerned, [and waives] any claim that the [provisions] of the policy had not been complied with." Kennedy v. Am. Fid. and Cas. Co., 97 Cal. App. 2d 315, 316 (1950). A contrary policy would encourage insurers to reject defense obligations. See The Hous. Grp., 193 Cal. App. 4th at 1157.

Indeed, Travelers litigated and lost this very argument before this Court in another matter. Travelers Prop. Cas. Co. of Am. v. Centex Homes, No. 11-3638-SC, 2012 U.S. Dist. LEXIS 65834 (N.D. Cal. May 10, 2012). The Centex case addresses the identical legal issues argued in Travelers' Motion under similar factual circumstances, i.e., whether the insured can be found to breach its duty to cooperate with the insurer by objecting to counsel appointed by the insurer after the insurer has delayed in providing its insured with a defense. Specifically, the Court ruled that Travelers lost its right to control Centex's defense in the underlying construction defect lawsuits when it declined to participate in the defense of those actions in late 2010 and early 2011. It was not until April 2011 – after Centex filed suit to enforce the insurance policy – that Travelers



NEWMEYER & DILLION LLP

agreed to provide a defense, subject to a reservation of rights. "As the duty to defense arises immediately upon tender, Travelers' delay in providing Centex with a defense divested it of the right to control that defense." (Id. at * 14.)

The facts of this case are nearly identical. Here, Travelers withdrew from the defense of the underlying construction defect action in March 2010. It was not until December 2010 – after KB Home filed suit to enforce the Norcraft Policies – that Travelers agreed to provide a defense subject to a reservation of rights. Travelers' delay in providing KB Home with a defense divested it of the right to control that defense. As such, KB Home could not have breached any duty to cooperate by objecting to Travelers' attempt to appoint defense counsel for KB Home in the underlying action here, especially since the underlying action had already been in active litigation under the direction of KB's personal defense counsel for over two and a half years.

**(2) Even If It Were Enforceable, The Cooperation Clause Would Not Require KB Home to Accept Defense Counsel With Conflicts.**

It is axiomatic that due to the "special relationship" between insurer and insured, an insurer is required to "give at least as much consideration to the welfare of the insured as it gives to its own interests." Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142, 1150 (2001). However, Travelers argues the opposite – that the cooperation clause gives Travelers the right to impose directives with impunity despite the harm that may result to the insured. Worse, Travelers claims any objection by the insured results in a complete and total forfeiture of all policy benefits. Fortunately, the law prevents such abuses.

Here, as discussed above, Sellar Hazard was prevented by ethical conflicts from defending KB Home in the Aldrich Action. Travelers seeks to exalt form over substance by arguing that the entities at issue in the Chadha Action are simply *affiliated.* Travelers argues that suing one KB Home entity has no effect on counsel's ability to defend another. However, it is well settled that a parent and subsidiary should be treated as a single entity for establishing a conflict of interest, if the entities share a sufficient "unity of interest." Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft LLP, 69 Cal. App. 4th 223, 245-54 (1999); see also Baxter Diagnostics, Inc. v. AVL Scientific Corp., 798 F. Supp. 612, 616, n.3 (C.D. Cal 1992) (applying California law and

NEWMEYER & DILLION LLP

concluding, "[h]ere, the unity of interests between [the subsidiary] and its parent are sufficient to disregard the separate corporate entities for conflict purposes."). As established by the testimony of KB Home's Vice President and Assistant General Counsel, KB Home and its subsidiaries and considered one entity for the purpose of evaluating conflicts. (Ex. 12 to Schlecht Decl., Simons Decl., ¶¶ 2-12.)

**(3) Travelers Was Not Prejudiced.**

California courts have imposed safeguards to prevent insurers from arguing that any alleged minor refusal to cooperate results in a complete forfeiture of policy benefits. Thus, for example, an insurer must establish that the insured's alleged failure to cooperate caused actual prejudice before it can disclaim coverage. Campbell v. Allstate Ins. Co., 60 Cal. 2d 303, 305-06 (1963). Other cases have recognized that Campbell established the following ground rules before an insurer can eviscerate coverage based on an alleged violation of the duty to cooperate: "(1) that breach by an insured of a cooperation . . . clause may not be asserted by an insurer unless the insurer was substantially prejudiced thereby; (2) that prejudice is not presumed as a matter of law from such breach; (3) that the burden of proving prejudicial breach is on the insurer; . . ." Northwestern Title Security Co. v. Flack, 6 Cal. App. 3d 134, 141 (1970). Further, "the required showing of prejudice ***cannot be made while the main tort action is still pending***, its outcome is uncertain." United Services Auto Ass'n v. Martin, 120 Cal. App. 3d 963, 966 (1981) (emphasis added).

Here, even if Travelers could assert the cooperation clause, it has not been prejudiced. First, the Aldrich Action is ongoing so it is impossible for Travelers to even claim that its defense counsel would have achieved a different outcome. Second, Travelers cannot complain about the abilities, experience or competency of the Glaspy firm. It has appointed the Glaspy firm to defend more than 800 construction defect cases since the 1980's. (Glaspy Decl., ¶ 2.)

**B. The Aldrich Complaint Triggered Travelers' Duty To Defend, Thus Travelers' Withdrawal Of Defense Breached The Norcraft Policies.**

It is undisputed that under California law, KB Home is simply required to show that there is a ***bare possibility or potential of coverage*** based on the facts alleged in the Aldrich Complaint



NEWMEYER & DILLION LLP

in order to trigger Travelers' defense obligation. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993) (where coverage of the claim against the insured depends on unresolved factual issues, "a bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty . . . "). The Montrose decision is the most important California decision defining the broad scope of an insurer's duty to defend.

The duty to defend must be assessed at the very outset of a case. Pardee Constr. Co. v. Ins. Co. of the West, 77 Cal. App. 4th 1340, 1350 (2000). "The determination whether an insurer owes a duty to defend is made in the first instance by comparing the Policy with the allegations of the complaint." Id. "[T]he insurer cannot rely on subsequent developments . . . to show absence of potential coverage and hence to justify its refusal to defend." H. Walter Croskey Et. Al., Cal. Prac. Guide Ins. Lit. §7:589 (The Rutter Group 2011) (citing Mullen v. Glens Falls Ins. Co., 73 Cal. App. 3d 163, 173 (1977); Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030, 1044 (1998)).

As acknowledged by Travelers, the Norcraft Policies provide coverage for "property damage," which the policies define as "[p]hysical injury to tangible property, including all resulting loss of use of that property..." (Docket 169-1, Travelers' Motion re Reasonableness of Coverage Position, 4:7-9.) The Aldrich Complaint establishes a potential for coverage for such "property damage" arising out of Norcraft's work. Specifically, the complaint alleges, in part:

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following:
>
> . . .
>
> ***cabinet and wood trim defects***
>
> . . .
>
> 20. The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.



NEWMEYER & DILLION LLP

> 21. Because of the defective conditions of the PROPERTY as herein above alleged, Plaintiffs have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:
>
> A) Plaintiffs will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of damages is presently unknown, except that the costs will exceed the sum of $100,000 per home.
>
> . . .

(Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶¶ 17, 20-21) (emphasis added).)

Thus, the Aldrich complaint alleges that Norcraft's cabinet work caused property damage to the homes and their component parts. Travelers in fact acknowledged that the Aldrich Complaint's allegations triggered Travelers' duty to defend. An entry into Travelers' Claim Notes dated July 6, 2009 states:

> Insured [Norcraft] also completed installation and ***cabinet damages are plead [sic] in the complaint***. Based on those facts, ***it is likely*** some, although minor ***damages resulted from installation***. Damages to the walls or pulling away from the walls could be attributed to installation.

(Dlugokenski Decl., ¶ 11 and Ex. G thereto, Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).)

From the very inception of the case, there has never been any doubt that the Aldrich Complaint asserted a potential for covered damages. Travelers' own assessment acknowledges a *likelihood* for covered damages. Accordingly, Travelers breached the Norcraft Policies when it withdrew from KB Home's defense in December of 2009, and it has continued to breach the Norcraft Policies by denying that its duty to defend was triggered no later than April 1, 2009 when KB Home first tendered its defense, and by seeking reimbursement from KB Home of defense fees and costs it paid, at minimum, between April 1, 2009 and December 17, 2010.

## 6. TRAVELERS BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

The facts of this case are replete with examples of Travelers' bad faith conduct.

### A. Travelers' Promise To Defend KB Home Was Fraudulent When Made.



NEWMEYER & DILLION LLP

Travelers' internal documents show that it never really intended to provide KB Home an immediate and complete defense. In fact, at most, Travelers planned on paying 10% of KB Home's defense. But it never even paid that much. Instead, after receiving its defense bill, Travelers scrambled to concoct an excuse to withdraw. The full extent of Travelers' fraudulent and despicable conduct is revealed by its own Claim Notes. (Ex. G to Dlugokenski Decl.) These notes reveal that three events solely impacting Travelers' assessment of the ***cost*** of KB Home's defense occurred between Travelers' acceptance on July 6, 2009 and Travelers' decision to withdraw on or about December 10, 2009: (1) Travelers set a low defense reserve based on its anticipation that ***at least ten*** insurers would participate in KB Home's defense such that Travelers would only be required to fund 10% of the defense (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/14/09 (TRPD-000756-57)); (2) Travelers received its first bills for the Aldrich Action and realized that it was ***the only*** insurer that had acknowledged its duty to defend KB Home (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 10/20/09 (TRPD-000754)); and (3) Travelers learned that its co-carrier, Safeco, denied KB Home's defense tender (Ex. G to Dlugokenski Decl. (Travelers Claim Notes, Entry of 10/22/09 (TRPD-000754)).

In addition, the Claim Notes reflect an entry on November 3, 2009 of "recent receipt of AI allocation." (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 11/5/09 (TRPD-000754).) The ***very next*** entry on December 10, 2009 was an unexplained entry that Travelers would be "withdrawing our AI acceptance." (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 12/10/09 (TRPD-000754).)

The facts reveal there was never a "genuine dispute" over whether sufficient information existed before July 6, 2009 to trigger the duty to defend. Travelers cannot identify *any* investigation it conducted between July 6, 2009 when it accepted defense and December 10, 2009 when it withdrew defense because no investigation occurred. Travelers cannot justify its tortious decision to withdraw from KB Home's defense and abandon its insured.

**B. Travelers Wrongfully Withdrew From KB Home's Defense.**

Once triggered, the duty to defend continues until the case is concluded or the insurer conclusively establishes that the underlying complaint "*can by no conceivable theory raise a*



NEWMEYER & DILLION LLP

*single issue which could bring it within the policy coverage*." Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448, 455 (1996) (citing Montrose, 6 Cal. 4th at 300).

Travelers cannot establish either means for extinguishing the duty to defend. Travelers acknowledged its duty to defend in July 2009. Then, without ever issuing payment, Travelers simply announced on December 10, 2009 that it would no longer defend KB Home and sent a formal withdrawal letter on March 9, 2010. (Ex. J to Dlugokenski Decl., E-mail dated 12/10/09; Ex. K to Dlugokenski Decl., Letter dated 3/9/10.)

During this time, Travelers conducted no independent investigation and nothing occurred in the Aldrich Action that could have supported Travelers' radical decision to withdraw coverage. In fact, Travelers' Claim Notes reveal that Travelers' decision to withdraw coverage was based entirely on the fact that it would be responsible for much more of the defense costs than it had initially anticipated. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entries of 7/14/09, 10/20/09, and 10/22/09 (TRPD-000756-57, TRPD-000754, and TRPD-000754, respectively).)

### C. Travelers Tortiously Refused To Reconsider Its Withdrawal Despite Extrinsic Facts Contradicting Its Coverage Position.

"[T]he insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith." Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal. App. 4th 847, 880 (2000).

As discussed above, not wishing to simultaneously defend the Aldrich Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to defend. KB Home produced to Travelers a letter from plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. D to Chao Decl., E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) KB Home also produced to Travelers a defect list for cabinets from plaintiffs in the Aldrich Action. (Chao Decl., ¶ 8 and Ex. E thereto, E-mail dated 8/4/10 attaching Aldrich Preliminary Defect List for cabinets.)

Although Travelers eventually acknowledged that the August 4, 2010 cabinet defect list "created a potential for indemnification under the policies issued to Norcraft," it did not do so



NEWMEYER & DILLION LLP

immediately. Travelers waited another four months – while the parties actively litigated the coverage action and even attended private mediation on December 3, 2010 – before informing KB Home that the August 4, 2010 cabinet defect list triggered Travelers' duty to defend. (Ex. L to Dlugokenski Decl., December 17, 2010 reservation of rights letter.)

In this Motion, Travelers for the first time attempts to explain its unreasonable delay by claiming it could not confirm that the August 4, 2010 defect list was deposited in the Aldrich Action document depository until November 11, 2010. (Chao Decl., ¶ 9.) The declaration of Travelers' counsel, Jason Chao, is misleading, inaccurate, and submitted in bad faith to further this Motion.[3] In truth, Travelers received a copy of the August 4, 2010 cabinet defect list directly from homeowners' counsel on August 6, 2010.[4] (Schlecht Decl., ¶ 8 and Ex. 11 thereto.) Contrary to Mr. Chao's testimony, Travelers had confirmation from homeowners' counsel in the Aldrich Action no later than August 6, 2010 that the defect list was in fact a true and genuine document listing the homeowners' claimed damages arising out of cabinet defects.

Further, "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Travelers must consider all facts from any source in determining its duty to defend. Montrose supra, 6 Cal. 4th at 298-99; Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y., 176 Cal. App. 4th 172, 198 (2009); American States Ins. Co. v. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18, 26 (2009). There is no requirement that such facts be in the form of admissible evidence at the time they are submitted.

In addition, a defense is owed as soon as Travelers has knowledge of any facts showing a potential for coverage. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 277 (1966). California courts' rationale for this requirement is that extrinsic facts known to the insurer may generate a duty to

---

[3] Pursuant to Federal Rules of Civil Procedure, Rule 56(h), where a declaration has been submitted in bad faith, the Court, after giving notice and a reasonable time to respond, may order the submitting party to pay the other party's reasonable expenses, including attorneys' fees, incurred as a result, in addition to other appropriate sanctions.

[4] Although Norcraft counsel's letter is dated September 23, 2010, he attached a copy of the cabinet defect list he received from Aldrich plaintiffs' counsel. The fax confirmation stamp at the top of the attachment shows that the cabinet defect list was actually faxed on August 6, 2010 at 3:11 p.m. to counsel for Norcraft, who is Travelers' staff counsel appointed to defend Norcraft.

defend because of: (1) liberal rules allowing for amendment of pleadings; and (2) the third party plaintiff who drafted the complaint cannot be the arbiter of the policy's coverage. (Montrose, 6 Cal. 4th at 295; Gray, 65 Cal. 2d at 275-77; Croskey, supra at ¶ 7:574)

Travelers' unjustified delay between August 2010 and December 2010 in acknowledging its defense obligation is further evidence of its unreasonable behavior toward its insured.

**D. Travelers Continues To Wrongfully Limit Its Defense Obligations.**

Even after Travelers finally claimed to accept its defense obligation on December 17, 2010, it continued to deny that the Aldrich Complaint triggered its duty to defend. Rather, it stated: its duty to defend was triggered no earlier than August 4, 2010, the date that Travelers received the cabinet defect list. (Ex. L to Dlugokenski Decl., Letter dated 12/17/10.) Travelers persists in this position although its own claims adjuster acknowledges otherwise: "Based on this recent information [the cabinet defect list] and our recent acceptance of KB's tender we owe defense costs from the date of tender." (Ex. G, Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750); Ex. 9 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. II, 210:4-8.)

Further, Travelers has now filed a Counterclaim against KB Home for amounts it has paid over the unlawful self-imposed limitations on its duty to defend. (Docket No. 126, Amended Answer to Complaint and Counterclaim.) KB Home, thus, is still left with no choice but to simultaneously defend itself in the Aldrich Action and litigate the coverage issues in this matter.

**E. Travelers Tortiously Sought To Displace KB Home's Defense Counsel With Panel Counsel Despite Ethical Conflicts.**

As discussed above, Travelers attempted to replace KB Home's defense counsel, who had been defending the case for nearly two years, with Travelers' choice of counsel who had a clear conflict of interest. (Ex. 12 to Schlecht Decl., Simons Decl., ¶¶ 4-12.)

**F. Travelers Wrongfully Withdrew Its Defense A Second Time.**

On February 8, 2012, Travelers again withdrew from KB Home's defense in the Aldrich Action falsely claiming:

> The settlement between Norcraft and the plaintiffs resolves all liability relating to Norcraft's work. Therefore, at this time, pursuant to the settlement agreement between Norcraft and all of

Newmeyer & Dillion LLP

> the plaintiffs, and the Court's Order adjudicating the good faith of said settlement, there are no longer any allegations by plaintiffs of damages arising out of Norcraft's work. Because there are no longer any allegations of resulting property damages arising from Norcraft's work, there is no potential for coverage for KB and Travelers is not under a duty to defend KB. Therefore, Travelers is entitled to withdraw from participating in KB's defense in the Aldrich Action.

(Ex. 3 to Glaspy Decl., Letter dated February 8, 2012.) In response to the letter, counsel for KB Home informed Travelers that it did not appear that the Norcraft settlement agreement had been fully executed or completed. Therefore, Travelers' duty to defend KB Home continued. (Ex. 13 to Schlecht Decl., Letter dated March 6, 2012.) Travelers never responded. However, KB Home deposed Travelers' named insured adjuster for Norcraft, Deborah Ann Taylor, who confirmed KB Home's suspicions that the settlement between Norcraft and the Aldrich plaintiffs was not complete and that Travelers was still paying Norcraft's counsel to defend it while the settlement was being completed. (Ex. 7 to Schlecht Decl., Taylor Depo. Transcript, 115:25 to 117:2.)

Travelers committed bad faith yet again when it falsely claimed that the Norcraft settlement was complete in order to cut-off KB Home's defense. Travelers knew full well that the Norcraft settlement was not complete because: (1) it was still paying for Norcraft's defense; and (2) KB Home told Travelers the settlement was not complete. Yet, to this day, Travelers has refused to reconsider its second wrongful withdrawal. (Schlecht Decl., ¶ 11.)

### G. Travelers Has Engaged Malicious And Bad Faith Discovery Tactics.

"Evidence of an insurer's conduct during litigation is admissible to show the insured's breach of the covenant of good faith and fair dealing." White v. Western Title Ins. Co., 40 Cal. 3d 870, 885-89 (1985). Further, an insured may introduce evidence of the insurer's failure to comply with discovery obligations during the coverage litigation to show a continuing practice of attempting to frustrate the policyholder's claim. Journal Publishing Co. v. American Home Assur. Co., 771 F. Supp. 632, 636 (S.D.N.Y. 1991).

On June 2, 2011, in response to four motions to compel filed by KB Home, Magistrate Judge Lloyd found that Travelers had improperly refused to provide discovery based on meritless objections. (Docket No. 70, Discovery Order.) Judge Lloyd ordered Travelers to respond to



NEWMEYER & DILLION LLP

written discovery, again produce two of its witnesses to answer questions they previously refused to answer, and provide a proper privilege log. (Id.) Travelers was further sanctioned in the amount **$18,927.50** for its discovery violations. (Docket No. 104.)

Travelers' discovery abuses and continued efforts to frustrate its insured's claims are further highlighted by the fact that in its four motions to compel, KB Home merely requested that Travelers: (1) confirm that it was defending its named insured, Norcraft, at the same time that it refused to defend its additional insured (KB Home); and (2) state why it agreed there was a potential for coverage to Norcraft but not to KB Home under the same terms in the same policies of insurance. (See Docket 70, Discovery Order, 2:21-25.) Travelers refused to answer those questions, presumably because it had no justification for treating its insureds differently.

Despite being ordered to compel and heavily sanctioned, Travelers remains undeterred in its refusal to provide relevant and legitimate information requested by KB Home. Travelers' bad faith discovery conduct has forced KB Home to file further discovery motions, which are still pending. (See e.g., Docket Nos. 84, 89, 98, 158, 165-167.)

Travelers has also repeatedly sought to disrupt deposition proceedings in this matter. Its conduct has progressed from improper witness coaching to harassing and threatening KB Home's counsel with physical violence. (Hultz Decl., ¶¶ 2-3; Schlecht Decl., ¶ 13.)

Specifically, on April 16, 2012, KB Home deposed Travelers' unit manager, Tom Frazier, who had supervised the handling of KB Home's tender. (Hultz Decl., ¶ 2.) Travelers' *Pro Hac Vice* counsel, Thomas Lether defended the deposition. (Id.) Travelers' in-house counsel, Troy Edwards, also appeared at the deposition. (Id.) Mr. Edwards made numerous speaking objections attempting to coach the witness and generally attempted to disrupt the deposition. (Hultz Decl., ¶ 3 ) At one point during the questioning, suddenly and without provocation, Mr. Edwards violently slammed his fists to the table and began threating KB Home's counsel with physical violence, screaming, "let's take this outside." (Hultz Decl., ¶ 3 and Ex.4 thereto, Tom Frazier Deposition Transcript, 138:6 to 139:10.) When KB Home's counsel asked whether Mr. Edwards intended to threaten physical violence, Mr. Edwards screamed "No, I'm promising." (Hultz Decl., ¶ 3 and Ex.4 thereto, Tom Frazier Deposition Transcript, 139:17-19.)

NEWMEYER & DILLION LLP

Four days later, on April 20, 2012, KB Home deposed its Western Regional Manager, Richard Carrillo. (Schlecht Decl., ¶ 13.) A. Eric Aguilera (Travelers' counsel) defended the deposition and Troy Edwards (Travelers' in-house counsel) also attended. (Id.) Mr. Edwards along with Mr. Aguilera sought to disrupt proceedings by harassing and intimidating KB Home's counsel. For example, Travelers' counsel engaged in the following dialogue on the record directed at KB Home's counsel after she had attempted to discuss a compromise regarding a line of questioning:

> MR. EDWARDS: Do the two of you want to get a room or...
>
> MR. AGUILERA: Hey, look.
>
> MR. EDWARDS: Huh?
>
> MR. AGUILERA: You know, we don't have to, you know, threaten counsel in order to get things done in this world, all right?
>
> MR. EDWARDS: Is that right?
>
> ***
>
> MR. EDWARDS: She's got a very nice smile.
>
> MR. AGUILERA: She's turning a little red, though.
>
> MR. EDWARDS: Well, it's okay. I want the Court to see that I'm flirting with counsel, both of them.

(Ex. 15 to Schlecht Decl., Richard Carrillo Deposition Transcript Vol. 3, 52:6 to 53:8.)

Travelers' extremely inappropriate and personal comments were intended to harass KB Home's counsel. Further, Travelers' counsel comments that he did not need to "threaten counsel in order to get things done" was a direct reference to the previous and very recent events in which Mr. Edwards physically threatened KB Home's counsel.

Travelers' attempts to conceal relevant information, and harass, intimidate and threaten KB Home's counsel reflect its utter disdain and contempt towards its insureds. Travelers' malicious discovery conduct is just another manifestation of its bad faith toward KB Home.

**H. <u>Travelers Has Filed A Retaliatory Complaint Against KB Home.</u>**

On April 30, 2012, Travelers filed a complaint in the Central District of California against KB Home in connection with eleven underlying construction defect lawsuits ("Retaliatory



NEWMEYER & DILLION LLP

Complaint"). (Ex. 1KB Home's Request for Judicial Notice, Ex. 1, Travelers, et al. v. KB Home Coastal, Inc., et al., Central District of California Case No.: 2:12-cv-02473-DSF.) The Retaliatory Complaint involves KB Home's alleged actions and communications in connection with eleven underlying construction defect lawsuits. (Hultz Decl., ¶ 4.) In eight of those eleven underlying actions, KB Home had tendered its defense under the very same policies that Travelers issued to Norcraft that are at issue here. (Id.)

It should be noted that three of the eleven underlying actions listed in the Retaliatory Complaint were brought by the same plaintiffs' law firm and involve *identical* damage allegations as those involved in this matter. In those matters, KB Home tendered its defense as an additional insured to policies that Travelers had issued to the cabinet subcontractor who had worked on the homes at issue, including Norcraft. Travelers agreed to defend KB Home and did not claim that the damage allegations were insufficient. (Declaration of Daniel R. Ryan, ¶¶ 4-7 and Ex. 19 thereto; Declaration of Clayton T. Tanaka, ¶¶ 4-7 and Ex. 20 thereto; Declaration of Jonathan King, ¶¶ 4-7 and Ex. 21 thereto.) Travelers' Retaliatory Complaint further establishes Travelers' bad faith. See Dalrymple v. United Services Auto. Ass'n, 40 Cal. App. 4th 497, 519 (1995).

## I. The "Genuine Dispute Doctrine" Does Not Absolve Travelers Of Its Bad Faith Conduct.

Travelers claims it gets a pass on its tortious actions because there was a "genuine dispute" over the potential for coverage.[5] As a preliminary matter, under the so called genuine dispute doctrine, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

> The genuine issue rule . . . allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the

[5] Travelers' attempt to "prove" the genuineness of its coverage dispute by relying on the denial letters of other carriers is absurd. (See Chao Decl., ¶ 11 and Ex. G thereto). First, this purported evidence is inadmissible hearsay. Second, these carriers issued different policies for different subcontractors, who performed different work at the homes at issue. Third, based on Travelers' flawed logic, the fact that even one carrier acknowledged its duty to defend proves there is no such dispute. Here, two carriers acknowledged a duty to defend, Travelers and Hartford. (See Chao Decl., ¶ 4 and Ex. B thereto, Hartford acceptance letter.)



NEWMEYER & DILLION LLP

> insurer's denial of benefits was reasonable – for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. . . . On the other hand, an insurer is not entitled to summary judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

Hubka v. Paul Revere Life Ins. Co., 215 F. Supp. 2d 1089, 1092 (S.D. Cal. 2002) (citing Amadeo v. Principal Mut. Life, 290 F.3d 1152, 1161-62 (9th Cir. 2002)). In sum, it is nothing more than a factual analysis of the plaintiffs' allegations that the insurer acted unreasonably. California courts have become increasingly loathe to engage in such a fact intensive inquiry which by definition is the provenance of the jury. See e.g., Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723-26 (2007); Brehm v. 21st Century Insurance Company, 166 Cal. App. 4th 1225, 1237-41 (2008).[6]

**(1) Travelers' Uninterrupted Defense of Its Named Insured Proves There Is No "Genuine Dispute."**

It cannot be ignored that Travelers never raised any question, much less a dispute, over the potential for coverage to its named insured, Norcraft, who it has defended continuously under the same policies, the same complaint, the same damage allegations, and the same facts. Judge Lloyd has previously noted that "Travelers' 'obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts.'" (Docket No. 70, Discovery Order, 4:24-26.)

Travelers acknowledged its duty to defend Norcraft on June 25, 2009. (Ex. 5 to Schlecht Decl., Norcraft Acceptance Letter.) Travelers retained counsel to defend Norcraft in the Aldrich Action on June 22, 2009. (Ex. 6 to Schlecht Decl., Declaration of David J. DeMordaunt, ¶ 2.) Travelers has continually defended Norcraft and was the entity that authorized and funded the indemnity settlement between Norcraft and the Aldrich homeowners. (Ex. 7 to Schlecht Decl., Taylor Depo. Transcript, 109:23 to 110:9.) If the Aldrich Action presents a potential for covered damages as to Norcraft, it must also establish such potential as to KB Home. Yet, Travelers'

[6] Some courts also no longer include a jury instruction on "genuine issue" because the only relevant question is whether the denial was unreasonable or without proper cause. See McCoy v. Progressive W. Ins. Co., 171 Cal. App. 4th 785, 792-94 (2009).



NEWMEYER & DILLION LLP

treatment of its additional insured (KB Home) could not be more disparate.

**(2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To the Assertion Of A "Genuine Dispute."**

Failure to conduct an independent, unbiased and thorough investigation precludes any assertion of "genuine dispute." "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." Wilson v. 21st Century, 42 Cal. 4th at 723.

Here, as Travelers acknowledged, the Aldrich Complaint triggered Travelers' duty to defend. Travelers conducted no independent investigation; rather, it reviewed only the documents provided by KB Home. Travelers' adjuster, Patricia Dlugokenski, testified: (1) she reviewed the complaint, the Norcraft subcontracts, the Norcraft policies, and the additional insured endorsements to the Norcraft policies (Ex. 8 to Schlecht Decl. (Dlugokenski Depo. Transcript Vol. I, 66:14 to 67:6)); (2) she confirmed the NOC (notice of completion) dates for the homes involved (Id. at 66:22-24); (3) she did not review any other documents before issuing Travelers' acceptance of defense on July 6, 2009 (Id. at 66:14 to 67:11); (4) she concluded that Norcraft performed cabinet work at the homes in the Aldrich Action (Id. at 59:7-12 and 60:4-11); and (5) she concluded that the Aldrich Complaint alleged cabinet defects (Id. at 59:17-19).

As previously discussed, Travelers' Claim Notes entry on July 6, 2009 document Traveler's decision to accept KB Home's defense tender because of a likelihood of covered damages. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).)

Travelers conducted no investigation whatsoever after it accepted defense. If it had, it would have confirmed Ms. Dlugokenski's initial conclusions. Travelers did not contact plaintiffs' counsel in the Aldrich Action to verify if the homeowners were alleging resultant damage in their construction defect lawsuit. (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol I, 76:16-22).) It never hired any independent consultant or investigator to investigate KB Home's tender under the Norcraft Policies. (Id. at 82:9-12.) It never sent a representative to visit the properties or attend site inspections. (Id. at 82:13-16).) The entire sum



NEWMEYER & DILLION LLP

and substance of Travelers' investigation was its repeated demand that KB Home provide documents ***that it knew did not exist***.

Further, as KB Home's designated expert witness, Charles Miller, points out, Travelers undertook no active investigation to determine whether allegations of resultant damage were present in the Aldrich Action (Ex. 10 to Schlecht Decl., Charles Miller Deposition Transcript ("Miller Depo. Transcript"), 114:24 to 115:14.) Mr. Miller also testified that Travelers failed to conduct a thorough and timely investigation in accordance with insurance industry claims-handling standards and the standards of the industry by failing to, for instance, meet with the named insured, get information from the plaintiff's counsel, and get documents from the policyholder and the additional insured, within 30 to 60 days. (Id. at 150:11 to 151:23.)

Based on the above facts, Travelers failed to conduct the investigation required by law.

**7. KB HOME HAS SUFFERED DAMAGES.**

Just as Travelers cannot cure its breach by its belated payment,[7] neither can it cure the damage it has caused by its belated payment. KB Home continues to suffer compensable damage due to Travelers' improper limitations on its defense duty. For example, after a lengthy and expensive nine-month delay, Travelers finally claimed to accept its defense obligation on December 17, 2010. Yet, even then, it continued to deny that the Aldrich Complaint triggered its duty to defend; instead, it claimed its duty to defend was triggered no earlier than August 4, 2010 when it received the cabinet defect list. (Ex. L to Dlugokenski Decl., Letter dated 12/17/10.) Travelers persists in this position although its own claims adjuster acknowledges otherwise: "Based on this recent information [the cabinet defect list] and our recent acceptance of KB's tender we owe defense costs from the date of tender." (Ex. G, Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750); Ex. 9 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. II, 210:4-8.) Further, Travelers has now filed a Counterclaim for amounts it has paid over the unlawful self-imposed limitations on its duty to defend, including all defense costs paid between April 1, 2009 and December 17, 2010. KB Home, thus, is still left with no choice but to simultaneously

[7] Shade Foods, Inc., 78 Cal. App. 4th 847, 881 (2000) (a carrier's belated payment for its insured's legal expenses does not cure the initial breach of the duty to defend).

defend itself in the Aldrich Action and litigate the coverage issues in this matter.

KB Home has incurred damages and expenses as a result of Travelers' breaches, including but not limited to, attorneys' fees and costs, prejudgment interest, and punitive damages, calculated as follows:

- Attorneys' fees and costs incurred in defense of the Aldrich Action: no less than $298,276.64 with respect fees and costs incurred by Glaspy & Glaspy through Invoice 305776 dated March 14, 2012. The Aldrich Action is ongoing.
- Attorneys' fees and costs incurred to obtain policy benefits in this coverage action (Brandt fees):[8] Due to Travelers' unreasonable, continuous and repeated breaches, KB Home was forced to retain the law firm of Newmeyer & Dillion to vindicate its rights under the Norcraft Policies. KB Home has incurred no less than $534,496.78 in fees and costs through January 5, 2012, as reflected in Newmeyer & Dillion Invoice 206428. This coverage action is ongoing.
- Pre-judgment interest calculated at 10% per annum, or the legally applicable rate of pre-judgment interest.
- Punitive damages to be determined at trial.

(Ex. 18 to Schlecht Decl., Kaufman & Broad Monterey Bay's Supplemental Response to Travelers' Interrogatories, Set Three, 6:19 to 8:3.)

Travelers continues to deny its duty to defend KB Home from the time of tender. It continues to place arbitrarily limits on its duty to defend. It is prosecuting a reimbursement claim against KB Home to reclaim most of the defense costs it has paid. It has forced KB Home to keep fighting for its rights under the policies, and to retain coverage counsel to do so. Accordingly, KB Home has been damaged, at minimum, as described above.

## 8. CONCLUSION.

Travelers may not obtain summary judgment in its favor on KB Home's Eighth, Ninth,

[8] Brandt fees are considered compensatory damages. Cassim v. Allstate Ins. Co., 33 Cal. 4th 780, 807 (2004) ("entitlement to attorney fees as compensatory damages is premised on an insured's need to hire an attorney to vindicate his other contractual rights under an insurance policy . . . ").



NEWMEYER & DILLION LLP

Fourteenth, and Nineteenth Affirmative Defenses because those defenses are predicated on Travelers' breach of the Norcraft Policies, breach of the duty to defend, and breach of the covenant of good faith and fair dealing. Genuine issues of disputed material fact exist as to each of those issues. Travelers' motion for partial summary judgment is denied in its entirety.

Dated: June 15, 2012

NEWMEYER & DILLION LLP

By: ______________________________
C. Kendle Schlecht
Attorneys for Plaintiffs and Counter-Defendants KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation

NEWMEYER & DILLION LLP