NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs and Counter-Defendants
KAUFMAN & BROAD MONTEREY BAY, a
California corporation; and KB HOME SOUTH
BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,

Plaintiffs,

vs.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,

Defendants.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,

Counter-Claimant,

vs.

KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,

Counter-Defendants.

CASE NO.: 5:10-cv-02856-EJD
Judge: Edward J. Davila
Courtroom: 4
Magistrate: Hon. Howard R. Lloyd

**KB HOME'S OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE <u>ARMSTRONG</u> ELECTION**

Date: September 14, 2012
Time: 9:00 a.m.

State Court Action Filed: May 27, 2010
Removed to USDC Northern Dist.: June 28, 2010



NEWMEYER & DILLION LLP

**TABLE OF CONTENTS**


**Page**

1. SUMMARY OF ARGUMENT ..... 1
2. TRAVELERS HAD ITS OPPORTUNITY TO SEEK SUMMARY JUDGMENT ON KB HOME'S COMPLAINT ..... 2
3. STATEMENT OF FACTS ..... 3
   - A. The Underlying Aldrich Complaint And KB Home's Tender ..... 3
   - B. Travelers' Withdrawal and Re-Acceptance ..... 4
   - C. KB Home's Pursuit Of Other Potentially Responsible Insurers ..... 5
   - D. The Armstrong Election ..... 5
4. NOT A SINGLE FACT OR LAW SUPPORTS TRAVELERS' ARGUMENTS IN THIS MOTION ..... 6
5. KB HOME DID NOT BREACH THE DUTY TO COOPERATE BY MAKING AN ARMSTRONG ELECTION ..... 6
   - A. This Court Rejected Travelers' Argument In Another Case ..... 8
   - B. Travelers Owes Its Additional Insureds The Same Defense Obligation As Its Named Insureds ..... 9
6. KB HOME DID NOT BREACH THE DUTY TO COOPERATE BY ALLEGEDLY REFUSING TO SEEK OR ACCEPT A DEFENSE FROM OTHER INSURERS ..... 11
   - A. KB Home Is Not Obligated To Recover Contribution Money For Travelers From Other Insurers ..... 11
   - B. The Norcraft Policies Do Not Support Travelers' Motion ..... 11
   - C. Travelers Has Not Been Prejudiced By KB Home's Actions ..... 12
7. TRAVELERS MAY PURSUE OTHER INSURERS FOR EQUITABLE CONTRIBUTION ..... 14
8. TRAVELERS' "RESERVATION OF RIGHTS" LETTER DOES NOT OBLIGATE KB HOME TO AFFIRMATIVELY SEEK OUT AND COLLECT MONEY FOR TRAVELERS ..... 15
9. CONCLUSION ..... 15




NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ........ 6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 6

*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) ........ 6

*Westlands Water Dist. v. United States*,
337 F.3d 1092 (9th Cir. 2003) ........ 5

## State Cases

*Areojet-General Corporation v. Transport Indemnity Co.*,
17 Cal. 4th 38 (1997) ........ 1, 7

*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*,
45 Cal. App. 4th 1 (1996) ........ 1, 5, 8

*Belz v. Clarendon America Ins. Co.*,
158 Cal. App. 4th 615 (2007) ........ 11

*Centennial Ins. Co. v. United States Fire Ins. Co.*,
88 Cal. App. 4th 105 (2001) ........ 14

*Dart Industries, Inc. v. Commercial Union Insurance Company*,
28 Cal. 4th 1059 (2002) ........ 5, 7

*Fireman's Fund Ins. Co. v. Maryland Casualty Co.*,
65 Cal. App. 4th 1279 (1998) ........ 6, 12, 14

*Ford v. Providence Washington Ins. Co.*,
151 Cal. App. 2d 431 (1957) ........ 13

*OneBeacon American Ins. Co. v. Fireman's Fund Ins. Co.*,
(2009) 175 Cal. App. 4th 183 (2009) ........ 14

*Presley Homes, Inc. v. American States Ins. Co.*,
90 Cal. App. 4th 571 (2001) ........ 1, 7, 10, 15

*State of California v. Pacific Indemnity Co.*,
63 Cal. App. 4th 1535 (1998) ........ 7

*Valladao v. Firemen's Fund Indemnity Co.*,
13 Cal. 2d 322 (1939) ........ 12, 13

*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*,
68 Cal. App. 4th 1030 (1998) ........ 6, 7



NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**State Statutes**

Cal. Civ. Code § 1636 ........ 15

**Federal Rules**

Fed. R. Civ. P. 56(c) ........ 6

**Other Authorities**

Pepsi-Cola Metropolitan Bottling Co., Inc. v. Ins. Co. of North America, Inc., No. CV 10-2696 SVW (MANx), 2010 U.S. Dist. LEXIS 144401, at *26. (C.D. Cal. Dec. 28, 2010) ........ 8

Team Enterprises, Inc. v. Royal Indemnity Co., No. C 03-04443 JSW, 2004 U.S. Dist. LEXIS 24862 (N.D. Cal. Apr. 20, 2004) ........ 2, 8, 15

NEWMEYER & DILLION LLP

## 1. SUMMARY OF ARGUMENT.

Without any legal support, Travelers'[1] Motion seeks a ruling that its duty to defend its insureds, Kaufman & Broad Monterey Bay and KB Home South Bay, Inc. (collectively "KB Home"), is less than 100%. Its argument is unsupported by California law. To the contrary, KB Home, as an additional insured, could require Travelers to provide it with a full and complete defense. First, California law is clear that, even if multiple insurers are on the risk, an insured can select a single insurer to defend it (an "Armstrong election"). Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1, 48-55 (1996). Second, California law is clear that additional insureds are treated the same as named insureds. Presley Homes, Inc. v. American States Ins. Co., 90 Cal. App. 4th 571, 575 (2001). Thus, once selected, Travelers must provide a full and complete defense.

The California Supreme Court has repeatedly held that an insurer must provide a 100% defense to its insured. "[T]o defend meaningfully, it [the insurer] must defend immediately, and to defend immediately, it must defend entirely." Areojet-General Corporation v. Transport Indemnity Co., 17 Cal. 4th 38, 60 (1997). The question of whether another insurer might have a separate obligation to defend KB Home is not relevant; Travelers must provide a full and complete defense of KB Home. Because of Travelers' obligation to provide a 100% defense, KB Home cannot be penalized for enforcing its right to require that Travelers fully and completely defend it. "Where several insurers share the risk, each owes a duty to defend the *entire* action." Croskey, California Practice Guide: Insurance Litigation ¶ 7:631.1 (The Rutter Group 2011) (emphasis in original).

Still, by deliberately omitting appellate authority and a ruling by this Court that is directly on point, Travelers claims that it can limit its 100% duty to defend KB Home to something less. That argument was rejected by California courts at least 11 years ago and this Court eight years ago. See e.g. Team Enterprises, Inc. v. Royal Indemnity Co., No. C 03-04443 JSW, 2004 U.S. Dist. LEXIS 24862 (N.D. Cal. Apr. 20, 2004). Travelers' Motion asks the Court to ignore a

[1] Defendant Travelers Property Casualty Company of America is referred to herein as "Travelers."



NEWMEYER & DILLION LLP

collective decade of California and federal law; it can only be viewed as frivolous and, in fact, sanctionable.

The ruling sought by Travelers will leave KB Home, and other insureds if adopted by courts, without a full and complete defense. It would create a rule in which the insured is only partially- defended and must engage in a multi-front litigation to secure a full and complete defense. It would turn an insurer's duty to defend on its head and provide the insurer a windfall of benefits it never bargained for in the insurance contract. Travelers' Motion must be denied.

## 2. TRAVELERS HAD ITS OPPORTUNITY TO SEEK SUMMARY JUDGMENT ON KB HOME'S COMPLAINT.

On May 27, 2010, KB Home filed the instant coverage action in state court and on June 29, 2010, Travelers removed to federal court. (Docket No. 1.) The case was initially assigned to Judge Koh who set an initial case management order establishing a June 9, 2011 deadline for filing dispositive motions. (Docket No. 19.) On April 25, 2011, the case was transferred to this Court. (Docket No. 47.) On May 21, 2011, this Court entered a stipulation and order setting a September 30, 2011 hearing for dispositive motions on issues pending before the Court at the time. (Docket No. 68.) Pursuant to the order, the parties filed their respective dispositive motions on August 26, 2011. (See Docket Nos. 106 [Travelers] and 113 [KB Home].) Subsequently, with leave from the Court, Travelers filed an amended answer asserting counterclaims on September 16, 2011. (Docket No. 126.) This Court then issued a minute order setting new deadlines, including a summary judgment motion deadline of June 1, 2012, to address the "New Claims" asserted in Travelers' amended answer. (Docket No. 147.) The minute order was clearly not intended to allow the parties a second bite at the apple as to arguments that existed prior to the amended answer. Yet, that is exactly what Travelers has done.

The only issue addressed in this Motion is KB Home's alleged breach of the duty to cooperate. Travelers has already filed a summary judgment motion arguing that KB Home breached the Norcraft Policies by breaching the duty to cooperate. (Docket No. 106). Here, Travelers again claims that KB Home breached the duty to cooperate by: (1) making an Armstrong election as an additional insured; and (2) allegedly refusing to seek or accept a defense

from other insurers. Neither of these arguments were presented in Travelers' previous motion for summary judgment although all the facts upon which Travelers bases its current Motion were established at the time of Travelers' previous motion. It does not get another 25 pages of briefing to argue unconvincingly once again that KB Home breached the duty to cooperate. Therefore, Travelers' duplicative and untimely Motion should be summarily denied on this basis alone.

## 3. STATEMENT OF FACTS.

### A. The Underlying Aldrich Complaint And KB Home's Tender.

Between 2003 and 2004, KB Home developed and constructed residential projects referred to as "The Cove" and "The Bluffs" (the "Projects") located in the City of Seaside, County of Monterey, California. On October 21, 2008, the owners of 43 homes in the Projects filed their construction defect complaint in the underlying Aldrich Action. (Ex. C to Dlugokenski Decl., Aldrich Complaint.) In the Aldrich Complaint, the homeowners allege, among other things, that cabinet defects resulted in damage to the homes and their component parts. (Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶ 17.)

On or about April 1, 2009, KB Home tendered its claim and requested that Travelers provide an immediate and full defense of the Aldrich Action. (Dlugokenski Decl., ¶ 7 and Ex. E thereto.) On or about July 6, 2009, Travelers acknowledged that KB Home was an additional insured under the Norcraft Policies and acknowledged a duty to defend KB Home under the policies. (Dlugokenski Decl., ¶ 13 and Ex. H thereto, AI Acceptance Letter dated 7/6/09 from Patricia Dlugokenski.) A notation in Travelers' Claim Notes made that same day state "Insured [Norcraft] also completed installation and *cabinet damages are plead* [sic] in the complaint. Based on those facts, it is likely some, although minor damages resulted from installation. *Damages to the walls or pulling away from the walls could be attributed to installation*" (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).) Travelers' named insured adjuster reached the same conclusion and agreed to defend Norcraft. (Ex. 5 to Declaration of C. Kendie Schlecht ("Schlecht Decl."), Norcraft Acceptance Letter dated

6/25/09 from Debbie Taylor.)[2] Conspicuously, while Travelers refused KB Home's repeated requests that Travelers actually fund the defense, it immediately began to pay for Norcraft's defense. (Compare Declaration of Mary Kay Glaspy ("Glaspy Decl."), ¶ 14 with Ex. 7 to Schlecht Decl., Debbie Taylor Deposition Transcript ("Taylor Depo. Transcript"), 123:4-18, 150:24 to 151:8.)

**B. Travelers' Withdrawal and Re-Acceptance.**

Eventually, on December 10, 2009, although it had never paid a single cent towards KB Home's defense, Travelers announced it was completely withdrawing, and sent a formal withdrawal letter on March 9, 2010. (Ex. J to Declaration of Patricia Dlugokenski ("Dlugokenski Decl."), Withdrawal E-mail dated 12/10/09; Ex. K to Dlugokenski Decl., Withdrawal Letter dated 3/9/10.) Not wishing to simultaneously defend the Aldrich Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to defend. KB Home obtained a letter from plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. D to Declaration of Jason Chao ("Chao Decl."), E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) When Travelers still refused to defend KB Home, KB Home also obtained a defect list for cabinets from Plaintiffs' counsel in the Aldrich Action. (Chao Decl., ¶ 8 and Ex. E thereto, E-mail dated 8/4/10 from C. Kendie Schlecht attaching Aldrich Preliminary Defect List for cabinets.)

Although Travelers eventually acknowledged that the cabinet defect list it received on August 4, 2010 "created a potential for indemnification under the policies issued to Norcraft," it did not do so until December 17, 2010. (Ex. L to Dlugokenski Decl., December 17, 2010 reservation of rights letter.) Inexplicably, Travelers unreasonably and in bad faith waited four months – during which time the parties continued to actively litigate this coverage action and even attended private mediation on December 3, 2010 – before informing KB Home that the

[2] Despite the Court's order compelling discovery (Docket No. 70) and sanctioning Travelers (Docket No. 104), Travelers' still improperly refuses to provide unredacted claim notes or related questioning of the named insured adjuster. These issues remain pending before the assigned discovery magistrate. (Docket Nos. 84, 89, 98, 158, 165-167.)



NEWMEYER & DILLION LLP

August 4, 2010 cabinet defect list was sufficient to trigger Travelers' duty to defend subject to a reservation of rights.

**C. KB Home's Pursuit Of Other Potentially Responsible Insurers.**

Throughout the Aldrich Action, KB Home has pursued other potentially responsible insurance carriers to defend KB Home. (Glaspy Decl., ¶ 15.) KB Home in fact provided Travelers with a copy of an additional insured matrix identify the insurers to which KB Home tendered a defense, the tender date, the adjuster information, and whether the carrier had accepted or denied. (Ex. 9 to Schlecht Decl., Patricia Dlugokenski Deposition Transcript Vol. II ("Dlugokenski Depo. Transcript Vol. II"), 172:10 to 173:15.) Although one other carrier, Hartford, acknowledged its duty to defend KB Home in the Aldrich Action, it only made a single payment of $30,000 toward the defense expenses in or about March 2010. Despite repeated requests, Hartford refused to make further payments. (Glaspy Decl., ¶ 16.)

**D. The Armstrong Election.**

Even though Hartford had agreed to participate in KB Home's defense, it had made only one payment of defense fees and costs and then stopped paying, essentially dropping out of KB Home's defense. (Glaspy Decl., ¶ 16.) As such, on or about February 24, 2011, KB Home notified Travelers that no one insurer had agree to defend KB Home entirely. (Ex. I to Chao Decl., Armstrong election letter dated 2/24/11.) Further, since Travelers had repeatedly informed the Court and KB Home that it intended to file suit against other carriers to seek contribution toward the Aldrich Action defense fees and costs,[3] KB Home selected Travelers to defend the Aldrich Action in its entirety, as it is entitled to do under California law (an "Armstrong" election). See Dart Industries, Inc. v. Commercial Union Insurance Company, 28 Cal. 4th 1059, 1080 (2002); Armstrong v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1, 105-06 (1996).

[3] Travelers represented to the Court in a Joint Case Management Conference Statement filed on December 8, 2011 that it intended to bring a motion for leave to file a cross-complaint against other potentially responsible insurers for equitable contribution toward the Aldrich Action defense. (Docket No. 23, Joint Case Management Conference Statement, 4:16-19.) Travelers has apparently abandoned that plan in favor of its newly concocted plan to assert that KB Home, its insured, has the sole responsibility to pursue contribution for Travelers' benefit.



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

4. **NOT A SINGLE FACT OR LAW SUPPORTS TRAVELERS' ARGUMENTS IN THIS MOTION.**

At the heart of its Motion, Travelers argues that an additional insured such as KB Home may not make an Armstrong election. Because neither the facts nor the law support Travelers' position, Travelers cannot meet its burden and is not entitled to partial summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). "If genuine issues of material fact exist, summary judgment is not proper." Westlands Water Dist. v. United States, 337 F.3d 1092, 1100 (9th Cir. 2003). A material fact is in dispute whenever reasonable persons could differ and resolution would "require a jury or judge to resolve the parties' differing versions of the truth at trial." Aydin Corp. v. Loral Corp., 718 F.2d 897, 902 (9th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Even where the facts are undisputed, summary judgment is not appropriate where reasonable minds could differ regarding the inferences which may be drawn from the undisputed facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158,159 (1970). Here, there is no factual or legal basis to grant Travelers' Motion. Thus, it must be denied.

5. **KB HOME DID NOT BREACH THE DUTY TO COOPERATE BY MAKING AN ARMSTRONG ELECTION.**

Contrary to California law, Travelers argues that KB Home could not require it to provide a 100% defense. Travelers is wrong. In essence, the duty to defend is a simple yes or no question: it exists or it doesn't. As between the insurer (Travelers) and insured (KB Home), the duty to defend does not exist in degrees or amounts. It is a simple question: must an insurer defend? If yes, then the insurer must provide a 100% defense of the insured.

"Each insurer's duty to defend must be assessed *independently*, since the duty of each is *independent of* whatever duty another might have." Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030, 1033 (1998) (emphasis added); see also Fireman's Fund Ins. Co. v. Maryland Casualty Co., 65 Cal. App. 4th 1279, 1306-07 (1998) (even if multiple insurers are obligated to defend, each insurer has an individualized duty to provide a full and complete defense of the insured); Croskey, supra at ¶ 7:677 ("Where several liability insurers

cover the same risk, each insurer's duty to defend must be assessed independently 'since the duty of each is independent of whatever duty another might have.'"). The duty to defend begins at the moment of tender of the third-party claim and continues until the insurer can establish that there is no possibility for coverage under its insurance policy. Areojet-General Corp. v. Transport Indemnity Co., 17 Cal. 4th 38, 57-59 (1997); see also Wausau, 68 Cal. App. 4th at 1047 (holding that each insurer has an independent duty to fully and completely defend the insured). An insurer is required to defend an entire action, even if only a small portion is potentially covered. State of California v. Pacific Indemnity Co., 63 Cal. App. 4th 1535, 1546 (1998).

The existence of multiple insurers, each with a duty to defend, does not change or reduce the duty on each individual insurer to fully and completely defend the insured. KB Home is entitled to require that a single insurance carrier pay its entire defense. This is commonly referred to as an "Armstrong election," named after Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1 (1996). It is then up to that insurance carrier to seek equitable apportionment from the other insurance carriers also on the risk. Id. at 56-57.

The California Supreme Court explained this concept in Dart Industries, Inc. v. Commercial Union Ins. Co., 28 Cal. 4th 1059 (2002):

> [A]pportionment among multiple insurers must be distinguished from apportionment between an insurer and its insured. When multiple policies are triggered on a single claim, the insurers' liability is apportioned pursuant to the "other insurance" clauses of the policies [citation] or under the equitable doctrine of contribution [citations]. That apportionment, however, has no bearing upon the insurers' obligations to the policyholder. [Citation.] A pro rata allocation among insurers "does not reduce their respective obligations to their insured." [Citation.] The insurers' contractual obligation to the policyholder is to cover the full extent of the policyholder's liability (up to the policy limits).

Id. at 1080 (quoting Armstrong, 45 Cal. App.4th at 105-06). Thus, as a matter of law, KB Home had the right to look solely to Travelers for the entire full and complete defense. It had no obligation whatsoever to seek a defense from other insurance companies for the benefit of Travelers.

Further, the individualized duty on each insurer to fully and completely defend applies to both the named insured and an additional insured. Presley Homes, Inc. v. American States Ins.

Co., 90 Cal. App. 4th 571, 575 (2001). It exists regardless of whether insurers have different obligations to indemnify the insured. Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1, 48-55 (1996). Under California law, KB Home is entitled to require a single carrier to pay its entire defense. "In finding that the duty to defend is an independent and bargained-for benefit under each applicable insurance contract when multiple insurers cover the same risk, California courts have left the battles of allocation of costs to separate contribution suits between liability insurers, rather than subjected the insured to additional litigation." Pepsi-Cola Metropolitan Bottling Co., Inc. v. Ins. Co. of North America, Inc., No. CV 10-2696 SVW (MANx), 2010 U.S. Dist. LEXIS 144401, at *26. (C.D. Cal. Dec. 28, 2010).

If any portion of a third-party plaintiff's complaint alleges the potential for coverage under the Norcraft Policies, then Travelers must defend KB Home fully and completely, even if another insurer also has a separate and independent obligation to defend KB Home. As admitted by Travelers, the Aldrich Complaint established a *likelihood* for covered damages. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).) If legal authority exists supporting Travelers' position that it has less than a 100% defense duty, Travelers would have cited it in its moving papers. It did not. Contrary to Travelers' assertion, KB Home cannot be penalized for exercising its right to be fully and completely defended by Travelers.

**A. This Court Rejected Travelers' Argument In Another Case.**

Travelers' Motion seeks a ruling that directly contradicts this Court's ruling more than eight years ago that each insurer has an individualized duty to provide a 100% defense of the insured, allowing the insured to select which insurer will provide it with a full and complete defense. Travelers' failure to acknowledge directly relevant case law is revealing. See 30-811 Moore's Federal Practice - Civil § 811.02 (2012) (summarizing cases holding that counsel must inform a court of relevant contrary legal authority); see also Model Rules of Prof'l Conduct, Rule 3.3(a)(3) (2002).

In Team Enterprises, Inc. v. Royal Indemnity Co., No. C 03-04443 JSW, 2004 U.S. Dist. LEXIS 24862 (N.D. Cal. Apr. 20, 2004), the insured, Team, was covered by multiple insurance



NEWMEYER & DILLION LLP

policies and tendered a third-party claim to three of its insurers. Id. at *3. While all three insurers initially provided a defense, ultimately, two of the three insurers stopped defending. Id. at *3-5. Eventually, the insured moved for summary judgment on the basis that the lone defending insurer was required to provide it with a 100% defense. Id. Specifically, the insured sought a ruling that the single defending insurer had a "*duty to defend completely* Team in the Underlying Actions and *not* merely by paying a proportionate defense based on the potential availability of other insurers to contribute to Team's defense" Id. at **4-5 (emphasis added).

In finding that the lone defending insurer had to provide a 100% defense, and *not* a proportional defense, the Team Enterprises court stressed that "[u]nder California law, each primary insurer has an *independent legal obligation* to provide its insured with a *complete* defense, regardless of the potential contributions of other insurers." Id. at *7 (emphasis added). Each insurer had a separate and "independent" obligation to defend the insured "regardless of the potential availability of the other insurance." Team Enterprises, at *8.

Among other legal authority, the Team Enterprises court relied on Armstrong, 45 Cal. App. 4th 1 to reach its holding that the insured "is entitled to *select one insurer to pay all defense fees and costs*, leaving the targeted insurer to pursue contribution from the other available carriers." Id. at **8-9 (emphasis added).

That is exactly what KB Home is doing. KB Home can, and did, seek a full and complete defense from Travelers. As between Travelers and KB Home, Travelers must provide a 100% defense until Travelers can conclusively establish that there is no possibility of any coverage under the Norcraft Policies. The obligation of another insurer to defend KB Home does not diminish Travelers' independent duty to fully and completely defend KB Home. In selecting Travelers, KB Home exercised its right to require Travelers to do what it should, provide it with a full, complete, and immediate defense of the Aldrich Action.

**B. Travelers Owes Its Additional Insureds The Same Defense Obligation As Its Named Insureds.**

Travelers incorrectly asserts that it does not have an obligation to provide KB Home with full and complete defense because KB Home is an additional insured. (Travelers' Motion, 7:12.)



NEWMEYER & DILLION LLP

Travelers' emphasis on KB Home's status as an additional insured is a red herring. More than 11 years ago, a California appellate court rejected this argument in Presley Homes, Inc. v. American States Ins. Co., 90 Cal. App. 4th 571 (2001).[4] See also Croskey supra at ¶ 7:631.2 ("[t]he insurer's duty to defend includes persons named as 'additional insureds'" so that "limitations on the insurer's duty to indemnify do not affect its duty to defend").

Tellingly, Travelers also ignored this directly relevant case authority in Motion.

Assuming that a distinction between the named insured and additional insured might be relevant to Travelers' duty to *indemnify*, it is meaningless to Travelers' duty to *defend*.[5] This was the precise holding in Presley. In that case, the insurer argued that its duty to defend was less than 100% because the insured was an additional insured. Presley, 90 Cal. App. 4th at 573. In *rejecting* the insurer's argument, Presley focused on the expansive nature of the duty to defend. Id. at 573-75. Once the third-party's allegation triggered the potential for coverage, the insurer had to immediately, fully, and completely defend the additional insured, just as it would the named insured. Id. at 573-76.

In strikingly similar facts, the insurer in Presley accepted the defense, but then argued that it was only liable for a portion of the insured's defense costs because the insured was an additional insured. Id. at 576. In rejecting that argument, the Presley court held that "by agreeing to pay a share of plaintiff's defense costs, defendant [the insurer] effectively admitted it owed a duty to provide plaintiff [the insured] with a defense." Id. Any delay in the insurer providing a 100% defense "highlight[ed] the very reason the [California] Supreme Court requires an insurer to provide a *complete* defense even where the underlying lawsuit includes both covered and uncovered claims." Id. at 576-77 (emphasis added). Here, when Travelers agreed to defend KB Home, it was obligated to provide KB Home with an immediate, complete, and full defense. As such, it is not a breach of the duty to cooperate for an additional insured to ask its insurer to

[4] While not relevant to this litigation, KB Home's counsel notes that it represented the plaintiff/insured in Presley.

[5] Because Travelers' pending motion does not seek any ruling regarding its duty to indemnify KB Home, that issue is not before this Court. See 11-56 Moore's Federal Practice - Civil § 56.70 (2012) (stating that an issue not presented in the moving party's motion for summary judgment cannot be considered or ruled on). KB Home reserves any and all rights to assert or claim that it is entitled to be fully indemnified by Travelers.



NEWMEYER & DILLION LLP

provide it with the defense to which it is entitled under law.

The terms of the Norcraft Policies also support the fact that, once the defense obligation has been triggered, Travelers must provide its additional insured with an immediate, full, and complete defense. For example, the Norcraft Policies provide that Travelers "will have the right and duty to defend any 'suit' seeking those damages." (Ex. A to Declaration of Richard Carrillo ("Carrillo Decl."), Norcraft 02-03 Policy, § I, ¶ 1(a) (TRVC-000571).) Nothing in the policy terms modifies Travelers' legal obligation to provide its insureds with a full and complete defense once the duty to defend has been triggered.

## 6. KB HOME DID NOT BREACH THE DUTY TO COOPERATE BY ALLEGEDLY REFUSING TO SEEK OR ACCEPT A DEFENSE FROM OTHER INSURERS.

### A. KB Home Is Not Obligated To Recover Contribution Money For Travelers From Other Insurers.

Travelers has cited no law for its argument that the cooperation clause can be transformed from a prohibition into an affirmative obligation requiring KB Home "to tender its defense to any other carriers who might owe a potential duty." (Travelers' Motion, 10:23-24.)

The cooperation clause does not obligate KB Home to initiate, prosecute, and secure money for the sole benefit of Travelers. The cooperation clause simply prohibits the insured from acting in a way which harms its defense against a claim asserted by a third party. See Croskey supra at ¶ 7:419 (The Rutter Group 2011); 2 Witkin Summary of California Law: Insurance, § 312 (2010). For example, the insured will attend trial and appear at deposition. See e.g. Belz v. Clarendon America Ins. Co., 158 Cal. App. 4th 615, 625-26 (2007).

But, under Travelers' interpretation, KB Home must affirmatively expend resources and attorneys' fees to act for Travelers' sole benefit. Not surprisingly, Travelers can find no case law supporting its claim that the cooperation clause imposes an affirmative duty onto KB home to file and prosecute litigation to recover contribution money to reimburse Travelers.

### B. The Norcraft Policies Do Not Support Travelers' Motion.

Also contrary to Travelers' assertion, the policy language itself does not support its Motion.

NEWMEYER & DILLION LLP

First, Travelers' reliance on the cooperation clause at Section IV, ¶ 2(c)(3) is misplaced. (See e.g. Ex. A to Carrillo Decl., Norcraft 02-03 Policy, § IV, ¶ (2)(c)(3) (TRVC-000577).) This clause is intended to obtain KB Home's assistance to defend a suit filed by a third party against KB Home. This is clear by the definition of "suit" which the policy defines as "a civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies are alleged." (See e.g. Ex. A to Carrillo Decl., Norcraft 02-02 Policy, § V, ¶ 16 (TRVC-000581).) According to Travelers, this clause obligates KB Home to affirmatively initiate litigation against other insurers who may be compelled to contribute to KB Home's defense. However, the definition of "suit" envisions a lawsuit being filed against KB Home, not KB Home filing a lawsuit against someone else.

Second, neither Section IV, ¶ 2(c)(4) nor Section IV, ¶ 8 support Travelers' position. (See e.g. Ex. A to Carrillo Decl., Norcraft 02-03 Policy (TRVC-000577.) There is no injury or damage which could trigger KB Home's obligation to file suit against another insurer. The injury or damage envisioned by these sections is limited to indemnity dollars paid by Travelers to KB Home. See Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1291-93. Travelers has not paid any indemnity dollars. Thus, this clause is not relevant.

Collectively, the lack of any supporting policy language highlights Travelers' flawed argument. There is no policy provision obligating KB Home to affirmatively pursue and collect money in order to lessen Travelers' obligation to provide a 100% defense of KB Home.

**C. Travelers Has Not Been Prejudiced By KB Home's Actions.**

Travelers' reliance on Valladao v. Firemen's Fund Indemnity Co., 13 Cal. 2d 322 (1939) is misplaced. That case does not require the insured to undertake an affirmative action to prosecute a right which belongs to the insurer. It stands for the simple proposition that should the insured be sued by a third party, and the insured tendered its defense to the insurer, then the insured cannot provide false information to the insurer. Id. at 330.

////

////

////

NEWMEYER & DILLION LLP

In Valladao, a person posing as the insured submitted a claim to the insurer, falsely representing that he was the insured. Id. at 328-30. Subsequently, the imposter was discovered. Id. Based upon those unique facts, the court concluded that the insurer had been prejudiced. Id. at 330. Travelers' mistaken reliance on Valladao is confirmed by Ford v. Providence Washington Ins. Co., 151 Cal. App. 2d 431 (1957). The Ford court stated that Valladao's holding was "limited to a situation in which the insured willfully misrepresents the facts to the insurer." Id. at 440.

The facts here are radically different. KB Home never presented a false claim to Travelers. KB Home simply tendered its defense to Travelers and Travelers decided that it wanted to provide less than a 100% defense. Further, Travelers does not allege that KB Home interfered with Travelers' ability to defend KB Home against a third party complaint. Any action taken by KB Home to enforce its right to receive a 100% defense from Travelers does not hinder or limit the ability of Travelers to defend KB Home against a third-party claim. KB Home has done nothing to hinder its own defense.

Travelers goes on to falsely assert that KB Home breached the terms of the Norcraft Policies by refusing to seek or accept a defense from its other carriers. (Travelers' Motion, 10:24-26.) First, as discussed above, KB Home has no obligation to make such tenders or accept any defense offered, particularly if an insurer has already offered a defense and represented that it would pursue other insurers for contribution. (Docket No. 23, Joint Case Management Conference Statement, 4:16-19 (Travelers represents to the Court that it will pursue a contribution action against other insurers).) Second, the assertion is false. Although it has no obligation to do so, KB Home has tendered its defense in the Aldrich Action to insurers other than Travelers and has pursued other potentially responsible insurance carriers. (Glaspy Decl., ¶ 15; Ex. 9 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. II, 172:10 to 173:15.)

////

////

////

////

NEWMEYER & DILLION LLP

## 7. TRAVELERS MAY PURSUE OTHER INSURERS FOR EQUITABLE CONTRIBUTION.

Travelers' Motion is based on the faulty premise that it has no remedy for any alleged overpayment of defense fees and costs; therefore, it must force KB Home to affirmatively recover that money for Travelers. Following a now familiar pattern, Travelers simply chooses to ignore the well-developed body of law allowing an insurer to seek equitable contribution from other insurers.[6]

If Travelers truly believes that another insurer owes it money, then it can file suit against any insurer seeking equitable contribution. See Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1289. In fact, Travelers acknowledged as much in its Joint Case Management Conference Statement dated December 8, 2010, but then apparently abandoned its stated plans to pursue equitable contribution from other carriers. (Docket No. 23, Joint Case Management Conference Statement, 4:16-19.)

The significance of the equitable contribution cause of action is twofold. On the one hand, it acknowledges that the insured is entitled to a full and complete defense. When there are multiple insurers, questions regarding the allocation of defense fees and costs are resolved separate from the insured; the insured must receive a 100% defense. OneBeacon American Ins. Co. v. Fireman's Fund Ins. Co., (2009) 175 Cal. App. 4th 183, 199-200 (2009).

On the other hand, the equitable contribution cause of action provides a remedy for an insurer who allegedly paid more than its "fair" share towards the defense of the insured.[7] Id. Through insurer vs. insurer actions for equitable contribution, disputes regarding the amount which any particular insurer should contribute to a defense are resolved based upon equity considerations between the insurers. The insured receives a full defense regardless. Centennial

[6] KB Home does not take any position as to whether Travelers has sufficiently protected its right to pursue an equitable contribution cause of action.

[7] While KB Home takes no position as to the merits of any cause of action for equitable contribution which Travelers might assert, it bears pointing out that there is no fixed legal rule regarding allocation. See One Beacon America Ins. Co., 175 Cal. App. 4th at 199-204; Centennial Ins. Co., 88 Cal. App. 4th at 112-13. A court could conclude that, even if Travelers and another insurer have an obligation to defend KB Home, Travelers should nevertheless pay all of the defense costs and fees.



NEWMEYER & DILLION LLP

Ins. Co. v. United States Fire Ins. Co., 88 Cal. App. 4th 105, 111-14 (2001).

Together, these twin aspects of equitable contribution recognize that each insurer has a separate and independent obligation to fully and completely defend the insured. If an insurer believes that it has overpaid, then it separately pursues the other insurers for contribution. Courts created the equitable remedy of contribution so that as, between the insurers, disputes over alleged overpayment of defense fees and costs can be resolved while guaranteeing that, as between the insurer and insured, each insurer fully and completely defends the insured.

## 8. TRAVELERS' "RESERVATION OF RIGHTS" LETTER DOES NOT OBLIGATE KB HOME TO AFFIRMATIVELY SEEK OUT AND COLLECT MONEY FOR TRAVELERS.

Travelers mistakenly relies on its "reservation of rights" letter to claim that it imposed a new duty upon KB Home to ensure that Travelers' financial liability for KB Home's defense is minimized. (Travelers' Motion, 10:21-26.)

The "reservation of rights" letter cannot create, modify, or insert new terms into the Norcraft Policies. See Cal. Civ. Code § 1636 ("[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting"). Once there is a potential for coverage, Travelers must provide a 100% defense. Again, the fact that another insurer might have a separate and independent obligation to defend KB Home does not change or reduce Travelers' duty to provide a 100% defense of KB Home, as dictated by controlling case law such as Presley and Team Enterprise.

## 9. CONCLUSION.

Travelers' pending motion relies on nothing more than argument and a strategy dependent upon ignoring controlling legal authority. Travelers must provide KB Home with a full and complete defense. First, Travelers' Motion fails because it has a separate and individual legal duty to fully and completely defend KB Home under Presley and Team Enterprise. Second, additional insureds such as KB Home are entitled to receive the same full and complete defense as named insureds. Therefore, KB Home's Armstrong election to Travelers does not constitute a breach of the cooperation clause in the Nocraft Policies. Travelers' Motion for Partial Summary



NEWMEYER & DILLION LLP

Judgment should be denied in its entirety.

Dated: June 15, 2012

NEWMEYER & DILLION LLP

By:____________________________

C. Kendie Schlecht
Attorneys for Plaintiffs and Counter-Defendants KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation