NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs and Counter-Defendants
KAUFMAN & BROAD MONTEREY BAY, a
California corporation; and KB HOME SOUTH
BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,

Plaintiffs,

vs.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,

Defendants.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,

Counter-Claimant,

vs.

KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,

Counter-Defendants.

CASE NO.: 5:10-cv-02856-EJD
JUDGE: Edward J. Davila
COURTROOM: 4
MAGISTRATE JUDGE: Howard R. Lloyd

**KB HOME'S OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE <u>BRANDT</u> FEES**

DATE: September 14, 2012
TIME: 9:00 a.m.

State Court Action Filed: May 27, 2010
Removed to USDC Northern Dist.: June 28, 2010

# TABLE OF CONTENTS

**Page**

1. PRELIMINARY STATEMENT .... 1
2. TRAVELERS HAD ITS OPPORTUNITY TO SEEK SUMMARY JUDGMENT ON KB HOME'S COMPLAINT .... 3
3. STATEMENT OF FACTS .... 3
   - A. The Underlying Aldrich Complaint And KB Home's Tender .... 3
   - B. Travelers' Refusal To Fund KB Home's Defense, Withdrawal And Re-Acceptance .... 4
   - C. KB Home's Fees Incurred Vindicating Policy Rights .... 5
4. TRAVELERS CANNOT MEET ITS BURDEN FOR SUMMARY JUDGMENT .... 6
5. KB HOME IS ENTITLED TO RECOVER FEES INCURRED IN VINDICATING ITS POLICY RIGHTS .... 7
   - A. Travelers Has Repeatedly and Unreasonably Withheld Policy Benefits .... 7
     - (1) The Aldrich Complaint Triggered Travelers' Duty To Defend in the First Instance .... 7
     - (2) Travelers' Promise To Defend KB Home Was Fraudulent When Made .... 9
     - (3) Travelers Wrongfully Refused To Fund, Then Completely Withdrew From KB Home's Defense .... 10
     - (4) Travelers Tortiously Refused To Reconsider Its Withdrawal Despite Extrinsic Facts Contradicting Its Coverage Position .... 11
     - (5) Travelers Continues To Wrongfully Limit Its Defense Obligations .... 13
     - (6) Travelers Tortiously Sought To Displace KB Home's Defense Counsel With Panel Counsel Despite Ethical Conflicts .... 13
     - (7) Travelers Wrongfully Withdrew Its Defense A Second Time .... 13
     - (8) Travelers Has Engaged In Malicious And Bad Faith Discovery Tactics .... 14
     - (9) Travelers Has Filed A Retaliatory Complaint Against KB Home .... 16
   - B. The "Genuine Dispute Doctrine" Does Not Absolve Travelers' Conduct .... 17
     - (1) Travelers' Uninterrupted Defense Of Its Named Insured Proves There Is No "Genuine Dispute." .... 18



NEWMEYER & DILLION LLP

**TABLE OF CONTENTS**
**(continued)**

**Page**

(2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To The Assertion Of A "Genuine Dispute." ........... 19

C. Travelers' "Lot Files And Notices Of Claims" Is Another Red Herring ............ 20

6. TRAVELERS CANNOT ESCAPE BRANDT FEE LIABILITY BY SHIFTING FOCUS TO ANOTHER CARRIER ........ 22

7. KB HOME IS ENTITLED TO BRANDT FEES FOR THE ENTIRETY OF THE COVERAGE ACTION ........ 23

8. THE REASONABLENESS OF BRANDT FEES IS AN ISSUE OF FACT ........ 24

9. CONCLUSION ........ 25

NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .......... 6

*Amadeo v. Principal Mut. Life*, 290 F.3d 1152 (9th Cir. 2002) .......... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 6

*Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir. 1983) .......... 6

*Hubka v. Paul Revere Life Ins. Co.*, 215 F. Supp. 2d 1089 (S.D. Cal. 2002) .......... 18

*Journal Publishing Co. v. American Home Assur. Co.*, 771 F. Supp. 632 (S.D.N.Y. 1991) .......... 14

*Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207 (9th Cir. 1980) .......... 25

*Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546 , n.12 (5th Cir. 2004) .......... 23

*Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240 (9th Cir. 1979) .......... 24

*Westlands Water Dist. v. United States*, 337 F.3d 1092 (9th Cir. 2003) .......... 6

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184 (9th Cir. 2000) .......... 24

## State Cases

*American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18 (2009) .......... 12

*Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th (1996) .......... 10

*Brandt v. Superior Court*, 37 Cal.3d 813 (1985) .......... 1, 7

*Brehm v. 21st Century Insurance Company*, 166 Cal. App. 4th 1225 (2008) .......... 18

*Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303 (1963) .......... 21



NEWMEYER & DILLION LLP

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Cassim v. Allstate Ins. Co.*,
33 Cal. 4th 780 (2004) .......... 7

*Ceresino v. Fire Ins. Exchange*,
215 Cal. App. 3d 814 (1989).......... 22

*Dalrymple v. United Services Auto. Ass'n*,
40 Cal. App. 4th 497 (1995).......... 17

*Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*,
130 Cal. App. 4th 1078 (2005).......... 22

*Essex Ins. Co. v. Five Star Dye House*,
38 Cal. 4th 1252 (2006) .......... 1, 7

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) .......... 12

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*,
176 Cal. App. 4th 172 (2009).......... 12

*Haskel, Inc. v. Super. Ct.*,,
33 Cal. App. 4th 963 (1995).......... 22

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) .......... 12

*Indep. Iron Works, Inc. v. Tulare County*,
207 Cal. App. 2d 164, 24 Cal. Rptr. 361 (1962).......... 25

*Mariscal v. Old Republic Life Ins. Co.*,
42 Cal. App. 4th 1617 (1996).......... 21

*McCoy v. Progressive W. Ins. Co.*,
171 Cal. App. 4th 785 (2009).......... 18

*Montrose Chem. Corp. v. Super. Ct.*,,
6 Cal. 4th 287 (1993) .......... 8, 10, 12

*Mullen v. Glens Falls Ins. Co.*,
73 Cal. App. 3d 163 .......... 8, 10, 12

*Pardee Constr. Co. v. Ins. Co. of the West*,
77 Cal. App. 4th 1340 (2000).......... 8

*Ringler Associates Inc. v. Maryland Cas. Co.*,
80 Cal. App. 4th 1165 (2000).......... 22, 23

*San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.*,
82 Cal. App. 4th 1230 (2000).......... 23



NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*
78 Cal. App. 4th 847 (2000) .......... 11

*Tradewinds Escrow, Inc. v. Truck Ins. Exchange*,
97 Cal. App. 4th 704 (2002) .......... 23

*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*,
68 Cal. App. 4th 1030 (1998) .......... 8

*White v. Western Title Ins. Co.*,
40 Cal. 3d 870 (1985) .......... 14

*Wilson v. 21st Century Ins. Co.*,
42 Cal. 4th 713 (2007) .......... 18, 19

**State Statutes**

Cal. Civ. Code § 895 et seq. .......... 21

California Civil Code section 910 .......... 21

Civil Code section 2860 .......... 23

**Federal Rules**

Fed. R. Civ. P. 56(c) .......... 6

Federal Rules of Civil Procedure, Rule 56(h) .......... 12

**Other Authorities**

Elantech Devices Corp. v. Synaptics, Inc., No. C 06-01839 CRB, 2006 U.S. Dist. LEXIS 48756
(N.D. Cal. Apr. 16, 2008) .......... 24

Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest, No. CV007267NM (JWJx), 2001
U.S. Dist. LEXIS 6901, at *3-4, n. 1 (C.D. Cal. May 15, 2001) .......... 23



NEWMEYER & DILLION LLP

## 1. PRELIMINARY STATEMENT.

Travelers'[1] partial summary judgment motion regarding Brandt fees ("Travelers' Motion") is just another rehash of arguments in its other three motions for partial summary judgment. For the same reasons discussed in KB Home's[2] oppositions, Travelers' Motion must fail.

***KB Home is entitled to attorney fees incurred in vindicating policy rights.*** An insured may recover attorneys' fees incurred for pursuing policy benefits that were unreasonably denied.[3] Brandt v. Superior Court, 37 Cal.3d 813, 817 (1985). The right to Brandt fees is based on the principle that an insured's policy benefits should remain "*undiminished by the expenses incurred* in retaining an attorney to recover under the policy." Essex Ins. Co. v. Five Star Dye House, 38 Cal. 4th 1252, 1264 (2006) (emphasis added; internal quotes omitted).

***Travelers has repeatedly and unreasonably withheld policy benefits.*** Travelers recognizes and agrees with the basic tenants of the law regarding Brandt fees, but argues that it has not withheld policy benefits and/or that it was not unreasonable when it withheld policy benefits. The evidentiary record in this case conclusively establishes otherwise. In fact, as detailed herein, Travelers fraudulently agreed to defend KB Home while its internal documents, and its refusal to actually fund any of the defense, reveal that it never had any intention of providing a full and complete defense. Travelers' bad faith continued when it withdrew from KB Home's defense falsely claiming that the Aldrich Complaint asserted *no potential* for covered damages while internally acknowledging that such damages were *likely* and while it simultaneously defended its named insured based on the very same allegations. Travelers then improperly refused to reconsider its denial despite evidence contradicting its coverage position. After KB Home filed this coverage action, Travelers again agreed to defend KB Home, but placed improper limitations on its defense obligations and insisted upon displacing KB Home's defense counsel with counsel with ethical conflicts.

---

[1] Travelers Property Casualty Company of America is referred to herein as "Travelers."
[2] Kaufman & Broad Monterey Bay and KB Home South Bay, Inc. is collectively referred to herein as "KB Home."
[3] Such fees are referred to herein as "Brandt fees"



NEWMEYER & DILLION LLP

Further, Travelers has once again withdrawn from KB Home's defense this time falsely claiming that it had settled all claims against its named insured in the Aldrich Action. Travelers has also engaged in bad faith discovery tactics ranging from unjustified refusal to provide legitimate discovery to harassing and threatening KB Home's counsel with physical violence. Travelers has recently compounded its previous bad faith by filing a retaliatory action against KB Home for filing this coverage action.

***Travelers cannot excuse its conduct by shifting focus to another carrier.*** Travelers argues that KB Home cannot obtain Brandt fees because another carrier had agreed to defend KB Home in the Aldrich Action. However, as Travelers well knows, that other carrier failed and refused to defend KB Home. (Declaration of Mary Kay Glaspy ("Glaspy Decl."), ¶ 16.) Yet, Travelers asserts the fact that the other carrier agreed to defend, regardless of whether the carrier actually did so, absolves Travelers of any liability. Under Travelers' strained logic, an insured is entitled to Brandt fees if one carrier breaches, but losses the right to such fees if *two* carriers breach. Such an anomalous result would defy decades of California insurance law holding that each insurer has an independent duty to provide its insured with an immediate and complete defense.

***KB Home is entitled to Brandt fees for the entirety of this Coverage Action.*** Travelers advances the alternative argument that it stopped unreasonably withholding policy benefits on December 17, 2010; therefore, Brandt fees should be cut off as of that date. However, once again, Travelers' argument ignores well established facts in this case. For instance, while Travelers nominally agreed to defend KB Home again on December 17, 2010, it did so with improper limitations and restrictions. Travelers is also seeking reimbursement of all defense fees it has paid in excess of its improper self-imposed limitations. Indeed, Travelers has sued KB Home for reimbursement of *all* defense fees it has paid based on false claims that KB breached the Norcraft Policies. Thus, Travelers continues to deny KB Home policy benefits and KB Home is forced to continue this coverage action in order to vindicate its rights under the Norcraft Policies. Further, Travelers has once again withdrawn from KB Home's defense based on a false claim that it had settled with the Aldrich plaintiffs. Because Travelers continues to unreasonably



NEWMEYER & DILLION LLP

withhold policy benefits, KB Home's entitlement to recover Brandt fees continues unabated.

***The reasonableness of Brandt fees is an issue of fact for the jury to determine.*** Lastly, Travelers asks this Court to issue a ruling on the reasonableness of the amount of KB Home's Brandt fees. This is a factual issue is the subject of extensive expert dispute and is an issue for the jury to decide.

## 2. TRAVELERS HAD ITS OPPORTUNITY TO SEEK SUMMARY JUDGMENT ON KB HOME'S COMPLAINT.

An initial case management order established a June 9, 2011 deadline for filing dispositive motions. (Docket No. 19.) On April 25, 2011, the case was transferred to this Court. (Docket No. 47.) On May 21, 2011, this Court entered a stipulation and order setting a September 30, 2011 hearing for dispositive motions on issues pending before the Court at the time. (Docket No. 68.) The parties filed their respective dispositive motions on August 26, 2011. (See Docket Nos. 106 [Travelers] and 113 [KB Home].) Subsequently, with leave from the Court, Travelers filed an amended answer asserting counterclaims on September 16, 2011. (Docket No. 126.) This Court then set new deadlines, including a summary judgment motion deadline of June 1, 2012, to address the "New Claims" asserted in Travelers' amended answer. (Docket No. 147.) The minute order was clearly not intended to allow the parties a second bite at the apple as to arguments that existed prior to the amended answer. Travelers' current Motion is predicated upon the argument that Travelers did not withhold policy benefits and/or that it did not withhold benefits unreasonably. Travelers has already filed a summary judgment motion addressing as to all the claims asserted in KB Home's complaint, including KB Home's bad faith claim (Docket No. 106). Therefore, Travelers' duplicative and untimely motion should be summarily denied on this basis alone.

## 3. STATEMENT OF FACTS.

### A. The Underlying Aldrich Complaint And KB Home's Tender.

Between 2003 and 2004, KB Home developed and constructed residential projects referred to as "The Cove" and "The Bluffs" located in the City of Seaside, County of Monterey, California. On October 21, 2008, the owners of 43 homes in the projects filed their construction

defect complaint in the underlying Aldrich Action. (Ex. C to Dlugokenski Decl., Aldrich Complaint.) The homeowners allege, among other things, that cabinet defects resulted in damage to the homes and their component parts. (Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶ 17.)

On about April 1, 2009, KB Home tendered its claim and requested that Travelers provide an immediate and full defense of the Aldrich Action. (Dlugokenski Decl., ¶ 7 and Ex. E thereto, Tender Letter dated 4/1/09.) On about July 6, 2009, Travelers acknowledged a duty to defend KB Home under the policies. (Dlugokenski Decl., ¶ 13 and Ex. H thereto, AI Acceptance Letter dated 7/6/09.) Travelers' Claim Notes made that same day states, "Insured [Norcraft] also completed installation and *cabinet damages are plead* [sic] in the complaint. Based on those facts, it is likely some, although minor damages resulted from installation. *Damages to the walls or pulling away from the walls could be attributed to installation*" (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).) Travelers' named insured adjuster reached the same conclusion and agreed to defend Norcraft.[4] (Ex. 5 to Schlecht Decl., Norcraft Acceptance Letter dated 6/25/09.) While Travelers refused KB Home's repeated requests to actually fund the defense, it immediately began to pay for Norcraft's defense. (Compare Glaspy Decl., ¶ 14, with Ex. 7 to Schlecht Decl., Debbie Taylor Deposition Transcript ("Taylor Depo. Transcript"), 123:4-18, 150:24 to 151:8.)

### B. Travelers' Refusal To Fund KB Home's Defense, Withdrawal And Re-Acceptance.

Eventually, on December 10, 2009, although it had never paid a single cent towards KB Home's defense, Travelers announced it was completely withdrawing, and sent a formal withdrawal letter on March 9, 2010. (Ex. J to Dlugokenski Decl., Withdrawal E-mail dated 12/10/09; Ex. K to Dlugokenski Decl., Withdrawal Letter dated 3/9/10.) Not wishing to simultaneously defend the Aldrich Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to

---

[4] As explained below, despite the Court's order compelling discovery (Docket No. 70) and sanctioning Travelers (Docket No. 104), Travelers still improperly refuses to provide unredacted claim notes or related questioning of the named insured adjuster. These issues remain pending before Magistrate Judge Lloyd. (Docket Nos. 84, 89, 98, 158, 165-167.)

defend. KB Home obtained a letter from plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. D to Declaration of Jason Chao ("Chao Decl."), E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) When Travelers still refused to defend KB Home, KB Home also obtained a defect list for cabinets from plaintiffs' counsel in the Aldrich Action. (Chao Decl., ¶ 8 and Ex. E thereto, E-mail dated 8/4/10 from C. Kendie Schlecht attaching Aldrich Preliminary Defect List for cabinets.)

Although Travelers eventually acknowledged that the cabinet defect list it received on August 4, 2010 "created a potential for indemnification under the policies issued to Norcraft," it did not do so until December 17, 2010. (Ex. L to Dlugokenski Decl., Re-Acceptance Letter dated 12/17/10.) Inexplicably, Travelers waited four months – during which time the parties continued to actively litigate this coverage action and even attended private mediation on December 3, 2010 – before informing KB Home that the August 4, 2010 cabinet defect list was sufficient to trigger Travelers' duty to defend subject to a reservation of rights.

### C. KB Home's Fees Incurred Vindicating Policy Rights.

KB Home and Travelers have both designated legal auditors as expert witnesses to review the attorneys' fees and costs incurred by Newmeyer & Dillion LLP in this coverage action. KB Home's expert witness, André E. Jardini, has opined that "[t]the Newmeyer & Dillion invoices are sufficiently documented, reasonable and necessary, and in the event of a finding that Travelers has unreasonably denied benefits under its insurance policy to KB Homes, should be compensated." (Ex. 16 to Schlecht Decl., Supplemental Expert Report of André E. Jardini ("Jardini 4/23/12 Report"), p. 8, ¶ 46.) Travelers' expert witness has opined that "the total potentially reasonable fees billed by Newmeyer in the coverage/bad faith case against Travelers is $433,010.94 if not accounting for the *Brandt* cutoff date of acceptance of the tender [on December 17, 2010]."[5] (Ex. 17 to Schlecht Decl., Post Deposition Supplemental Report for

---

[5] Ms. Vinaccia's opinion was based upon her review of Newmeyer & Dillion invoices through Invoice No. 204489 dated November 22, 2011. (Ex. 17 to Schlecht Decl., Vinaccia 3/23/12 Report, p. 2 and attached chart entitled "Newmeyer and Dillion Firm Billing Invoices (Received after 05/26/11 Supplemental Report)".)



NEWMEYER & DILLION LLP

Analysis of Fees and Costs Incurred in the Representation of KB Home by Glaspy and Glaspy, Inc. dated March 23, 2012 ("Vinaccia 3/23/12 Report"), p. 8.) As such, both parties' expert witnesses agreed that, at minimum, $433,010.94 of KB Home's Brandt fees are reasonable and recoverable upon a showing that Travelers unreasonably denied KB Home its policy benefits. Both parties' experts further agree that $4,838.00 of Newmeyer & Dillion's attorneys' fees are attributable to work solely related to bad faith issues, and therefore not recoverable as Brandt fees. (Ex. 16 to Schlecht Decl., Jardini 4/23/12 Report, p. 7 ¶ 42; Ex. 17 to Schlecht Decl., Vinaccia 3/23/12 Report, p. 6.)

However, the parties' respective experts vehemently disagree regarding the reasonableness of certain categories of billing by Newmeyer & Dillion. (See, e.g., Ex. 16 to Schlecht Decl., Jardini 4/23/12 Report, pp. 3-7; Ex. 17 to Schlecht Decl., Vinaccia 3/23/12 Report, pp. 6-8.) Travelers seeks partial summary judgment regarding the reasonableness of these categories of work. However, numerous issues of disputed material fact, including the parties' respective expert opinions, preclude such a ruling.

## 4. TRAVELERS CANNOT MEET ITS BURDEN FOR SUMMARY JUDGMENT.

Because significant and material disputed facts exist regarding whether Travelers acted unreasonably toward its insured, as well as the reasonableness of KB Home's Brandt fees, Travelers cannot meet its burden and is not entitled to partial summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). "If genuine issues of material fact exist, summary judgment is not proper." Westlands Water Dist. v. United States, 337 F.3d 1092, 1100 (9th Cir. 2003). A material fact is in dispute whenever reasonable persons could differ and resolution would "require a jury or judge to resolve the parties' differing versions of the truth at trial." Aydin Corp. v. Loral Corp., 718 F.2d 897, 902 (9th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Even where the facts are undisputed, summary judgment is not appropriate where reasonable minds could differ regarding the inferences which may be drawn from the undisputed facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

**5. KB HOME IS ENTITLED TO RECOVER FEES INCURRED IN VINDICATING ITS POLICY RIGHTS.**

In Brandt, the California Supreme Court ruled that an insured may recover attorneys' fees incurred for pursuing policy benefits that were wrongfully withheld. Those fees are commonly known as Brandt fees:

> When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorneys' fees are an economic loss – damages – proximately caused by the tort. [Citation omitted.] These fees must be distinguished from recovery of attorneys' fees qua attorneys' fees such as those attributed to bringing of the bad faith action itself.

Brandt, 37 Cal. 3d at 817; see also Cassim v. Allstate Ins. Co., 33 Cal. 4th 780, 807 (2004) ("entitlement to attorney fees as compensatory damage is premised on an insured's need to hire an attorney to vindicate his other contractual rights under the insurance policy . . . ").

Brandt entitles the insured to recover all policy benefits unreasonably withheld "*undiminished by the expenses incurred* in retaining an attorney to recover under the policy." Essex Ins. Co. v. Five Star Dye House, 38 Cal. 4th 1252, 1264 (2006) (emphasis added; internal quotes omitted). In short, the insurer's tort has made it necessary for the insured to obtain expert professional services to cure the wrong: "[A]ttorney's fees…are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." Brandt, 37 Cal. 3d at 817.

Travelers cannot and does not dispute that KB Home is entitled to recover Brandt fees for unreasonably withheld policy benefits. Travelers instead argues that it did not withhold policy benefits and/or did not withhold them unreasonably. The record in this matter conclusively establishes otherwise.

**A. Travelers Has Repeatedly and Unreasonably Withheld Policy Benefits.**

**(1) The Aldrich Complaint Triggered Travelers' Duty To Defend in the First Instance.**

It is undisputed that under California law, KB Home is simply required to show that there

is a ***bare possibility or potential of coverage*** based on the facts alleged in the Aldrich Complaint in order to trigger Travelers' defense obligation. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993) (where coverage of the claim against the insured depends on unresolved factual issues, "a bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty . . . "). The Montrose decision is the most important California decision defining the broad scope of an insurer's duty to defend.

The duty to defend must be assessed at the very outset of a case. Pardee Constr. Co. v. Ins. Co. of the West, 77 Cal. App. 4th 1340, 1350 (2000). "The determination whether an insurer owes a duty to defend is made in the first instance by comparing the Policy with the allegations of the complaint." Id. "[T]he insurer cannot rely on subsequent developments . . . to show absence of potential coverage and hence to justify its refusal to defend." H. Walter Croskey Et. Al., Cal. Prac. Guide Ins. Lit. §7:589 (The Rutter Group 2011) (citing Mullen v. Glens Falls Ins. Co., 73 Cal. App. 3d 163, 173; Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030, 1044 (1998)).

As acknowledged by Travelers, the Norcraft Policies provide coverage for "property damage," which the policies define as "[p]hysical injury to tangible property, including all resulting loss of use of that property…" (Docket 169-1, Travelers' Motion re Reasonableness of Coverage Position, 4:7-9.) The Aldrich Complaint establishes a potential for coverage for such "property damage" arising out of Norcraft's work. Specifically, the complaint alleges, in part:

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following:
>
> . . .
>
> ***cabinet and wood trim defects***
>
> . . .
>
> 20. The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.

> 21. Because of the defective conditions of the PROPERTY as herein above alleged, Plaintiffs have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:
>
> A) Plaintiffs will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of damages is presently unknown, except that the costs will exceed the sum of $100,000 per home.
>
> . . .

(Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶¶ 17, 20-21) (emphasis added).)

Thus, the Aldrich Complaint alleges that Norcraft's cabinet work caused property damage to the homes and their component parts. Travelers in fact acknowledged that the Aldrich Complaint's allegations triggered Travelers' duty to defend. An entry into Travelers' Claim Notes dated July 6, 2009 states:

> Insured [Norcraft] also completed installation and ***cabinet damages are plead [sic] in the complaint***. Based on those facts, ***it is likely*** some, although minor ***damages resulted from installation***. Damages to the walls or pulling away from the walls could be attributed to installation.

(Dlugokenski Decl., ¶ 11 and Ex. G thereto, Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).)

From the very inception of the case, there has never been any doubt that the Aldrich Complaint asserted a potential for covered damages. Travelers' own assessment acknowledges a *likelihood* for covered damages. Accordingly, Travelers unreasonably and in bad faith denied its insured the benefits of the Norcraft Policies when it withdrew from KB Home's defense.

**(2) Travelers' Promise To Defend KB Home Was Fraudulent When Made.**

Travelers' internal documents show that it never really intended to provide KB Home an immediate and complete defense. In fact, at most, Travelers planned on paying 10% of KB Home's defense. But it never even paid that much. Instead, after receiving its defense bill, Travelers scrambled to concoct an excuse to withdraw. The full extent of Travelers' fraudulent and despicable conduct is revealed by its own Claim Notes. (Ex. G to Dlugokenski Decl.) These

notes reveal that three events solely impacting Travelers' assessment of the ***cost*** of KB Home's defense occurred between Travelers' acceptance on July 6, 2009 and Travelers' decision to withdraw on or about December 10, 2009: (1) Travelers set a low defense reserve based on its anticipation that ***at least ten*** insurers would participate in KB Home's defense such that Travelers would only be required to fund 10% of the defense (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/14/09 (TRPD-000756-57)); (2) Travelers received its first bills for the Aldrich Action and realized that it was ***the only*** insurer that had acknowledged its duty to defend KB Home (Id., Travelers Claim Notes, Entry of 10/20/09 (TRPD-000754)); and (3) Travelers learned that its co-carrier, Safeco, denied KB Home's defense tender (Id., Travelers Claim Notes, Entry of 10/22/09 (TRPD-000754)).

In addition, the Claim Notes reflect an entry on November 3, 2009 of "recent receipt of AI allocation." (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 11/5/09 (TRPD-000754).) The ***very next*** entry on December 10, 2009 was an unexplained entry that Travelers would be "withdrawing our AI acceptance." (Id., Travelers Claim Notes, Entry of 12/10/09 (TRPD-000754).)

The facts reveal there was never a "genuine dispute" over whether sufficient information existed before July 6, 2009 to trigger the duty to defend. Travelers cannot identify *any* investigation it conducted between July 6, 2009 when it accepted defense and December 10, 2009 when it withdrew defense because no investigation occurred. Travelers cannot justify its tortious decision to withdraw from KB Home's defense and abandon its insured.

**(3) Travelers Wrongfully Refused To Fund, Then Completely Withdrew From KB Home's Defense.**

Once triggered, the duty to defend continues until the case is concluded or the insurer conclusively establishes that the underlying complaint "*can by no conceivable theory raise a single issue which could bring it within the policy coverage*." Borg v. Transamerica Ins. Co., 47 Cal. App. 4th at 455 (1996) (citing Montrose, 6 Cal. 4th at 300).

Travelers cannot establish either means for extinguishing the duty to defend. Travelers acknowledged its duty to defend in July 2009. Then, without ever issuing payment, Travelers



NEWMEYER & DILLION LLP

simply announced on December 10, 2009 that it would no longer defend KB Home and sent a formal withdrawal letter on March 9, 2010. (Ex. J to Dlugokenski Decl., Withdrawal E-mail dated 12/10/09; Ex. K to Dlugokenski Decl., Withdrawal Letter dated 3/9/10.)

During this time, Travelers conducted no independent investigation and nothing occurred in the Aldrich Action that could have supported Travelers' radical decision to withdraw coverage. In fact, Travelers' Claim Notes reveal that Travelers' decision to withdraw coverage was based entirely on the fact that it would be responsible for much more of the defense costs than it had initially anticipated. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entries of 7/14/09, 10/20/09, and 10/22/09 (TRPD-000756-57, TRPD-000754, and TRPD-000754, respectively).)

**(4) Travelers Tortiously Refused To Reconsider Its Withdrawal Despite Extrinsic Facts Contradicting Its Coverage Position.**

"[T]he insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith." Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal. App. 4th 847 at 880 (2000).

As discussed above, not wishing to simultaneously defend the Aldrich Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to defend. KB Home produced to Travelers a letter from plaintiffs' counsel in the Aldrich Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. D to Chao Decl., E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) KB Home also produced to Travelers a defect list for cabinets from plaintiffs in the Aldrich Action. (Chao Decl., ¶ 8 and Ex. E thereto, E-mail dated 8/4/10 attaching Aldrich Preliminary Defect List for cabinets.)

Although Travelers eventually acknowledged that the August 4, 2010 cabinet defect list "created a potential for indemnification under the policies issued to Norcraft," it did not do so immediately. Travelers waited another four months – while the parties actively litigated the coverage action and even attended private mediation on December 3, 2010 – before informing KB Home that the August 4, 2010 cabinet defect list triggered Travelers' duty to defend. (Ex. L to Dlugokenski Decl., Re-Acceptance Letter dated 12/17/10.)



NEWMEYER & DILLION LLP

In this Motion, Travelers for the first time attempts to explain its unreasonable delay by claiming it could not confirm that the August 4, 2010 defect list was deposited in the Aldrich Action document depository until November 11, 2010. (Chao Decl., ¶ 9.) The declaration of Travelers' counsel, Jason Chao, is misleading, inaccurate, and submitted in bad faith to further this Motion.[6] In truth, Travelers received a copy of the August 4, 2010 cabinet defect list directly from homeowners' counsel on August 6, 2010.[7] (Schlecht Decl., ¶ 8 and Ex. 11 thereto.) Contrary to Mr. Chao's testimony, Travelers had confirmation directly from plaintiffs' counsel in the Aldrich Action no later than August 6, 2010 that the defect list was in fact a true and genuine document listing the homeowners' claimed damages arising out of cabinet defects.

Further, "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Travelers must consider all facts from any source in determining its duty to defend. Montrose supra, 6 Cal. 4th at 298-99; Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y., 176 Cal. App. 4th 172, 198 (2009); American States Ins. Co. v. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18, 26 (2009). There is no requirement that such facts be in the form of admissible evidence at the time they are submitted.

In addition, a defense is owed as soon as Travelers has knowledge of any facts showing a potential for coverage. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 277 (1966). California courts' rationale for this requirement is that extrinsic facts known to the insurer may generate a duty to defend because of: (1) liberal rules allowing for amendment of pleadings; and (2) the third party plaintiff who drafted the complaint cannot be the arbiter of the policy's coverage. (Montrose, 6 Cal. 4th at 295; Gray, 65 Cal. 2d at 275-77; Croskey, supra at ¶ 7:574)

Travelers' unjustified delay between August 2010 and December 2010 in acknowledging

[6] Pursuant to Federal Rules of Civil Procedure, Rule 56(h), where a declaration has been submitted in bad faith, the Court, after giving notice and a reasonable time to respond, may order the submitting party to pay the other party's reasonable expenses, including attorneys' fees, incurred as a result, in addition to other appropriate sanctions.

[7] Although Norcraft counsel's letter is dated September 23, 2010, he attached a copy of the cabinet defect list he received from Aldrich plaintiffs' counsel. The fax confirmation stamp at the top of the attachment shows that the cabinet defect list was actually faxed on August 6, 2010 at 3:11 p.m. to counsel for Norcraft, who is Travelers' staff counsel appointed to defend Norcraft. (Schlecht Decl., ¶ 8.)

its defense obligation is further evidence of its unreasonable behavior toward its insured.

**(5) <u>Travelers Continues To Wrongfully Limit Its Defense Obligations.</u>**

Even after Travelers finally claimed to accept its defense obligation on December 17, 2010, it continued to deny that the <u>Aldrich</u> Complaint triggered its duty to defend. Rather, it stated: its duty to defend was triggered no earlier than August 4, 2010, the date that Travelers received the cabinet defect list. (Ex. L to Dlugokenski Decl., Letter dated 12/17/10.) Travelers persists in this position although its own claims adjuster acknowledges otherwise: "Based on this recent information [the cabinet defect list] and our recent acceptance of KB's tender we owe defense costs from the date of tender." (Ex. G, Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750); Ex. 9 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. II, 210:4-8.)

Further, Travelers has now filed a Counterclaim against KB Home for amounts it has paid over the unlawful self-imposed limitations on its duty to defend. (Docket No. 126, Amended Answer to Complaint and Counterclaim.) KB Home, thus, is still left with no choice but to simultaneously defend itself in the <u>Aldrich</u> Action and litigate the coverage issues in this matter.

**(6) <u>Travelers Tortiously Sought To Displace KB Home's Defense Counsel With Panel Counsel Despite Ethical Conflicts.</u>**

Moreover, as extensively briefed in KB Home's Opposition to Travelers motion for summary judgment heard on September 30, 2011, Travelers attempted to replace KB Home's defense counsel, who had been defending the case for nearly two years, with Travelers' choice of counsel who had a clear conflict of interest. (Docket No. 124, 10:22 to 14:18; Ex. 12 to Schlecht Decl., Declaration of David B. Simons, ¶¶ 4-12.) Travelers has taken the position, contrary to controlling California law, that by simply voicing legitimate objections regarding this conflict, it can strip KB Home of all available coverage under the Norcraft Policies. (<u>See</u> <u>e.g.</u>, Docket No. 106, 11:22-23.)

**(7) <u>Travelers Wrongfully Withdrew Its Defense A Second Time.</u>**

On February 8, 2012, Travelers again withdrew from KB Home's defense in the <u>Aldrich</u> Action falsely claiming:



NEWMEYER & DILLION LLP

> The settlement between Norcraft and the plaintiffs resolves all liability relating to Norcraft's work. Therefore, at this time, pursuant to the settlement agreement between Norcraft and all of the plaintiffs, and the Court's Order adjudicating the good faith of said settlement, there are no longer any allegations by plaintiffs of damages arising out of Norcraft's work. Because there are no longer any allegations of resulting property damages arising from Norcraft's work, there is no potential for coverage for KB and Travelers is not under a duty to defend KB. Therefore, Travelers is entitled to withdraw from participating in KB's defense in the Aldrich Action.

(Ex. 3 to Glaspy Decl., Letter dated February 8, 2012.) In response to the letter, counsel for KB Home informed Travelers that it did not appear that the Norcraft settlement agreement had been fully executed or completed. Therefore, Travelers' duty to defend KB Home continued. (Ex. 13 to Schlecht Decl., Letter dated March 6, 2012.) Travelers never responded. However, KB Home deposed Travelers' named insured adjuster for Norcraft, Deborah Ann Taylor, who confirmed KB Home's suspicions that the settlement between Norcraft and the Aldrich plaintiffs was not complete and that Travelers was still paying Norcraft's counsel to defend it while the settlement was being completed. (Ex. 7 to Schlecht Decl., Taylor Depo. Transcript, 115:25 to 117:2.)

Travelers committed bad faith yet again when it falsely claimed that the Norcraft settlement was complete in order to cut-off KB Home's defense. Travelers knew full well that the Norcraft settlement was not complete because: (1) it was still paying for Norcraft's defense; and (2) KB Home told Travelers the settlement was not complete. Yet, to this day, Travelers has refused to reconsider its second wrongful withdrawal. (Schlecht Decl., ¶ 11.)

**(8) Travelers Has Engaged In Malicious And Bad Faith Discovery Tactics.**

"Evidence of an insurer's conduct during litigation is admissible to show the insured's breach of the covenant of good faith and fair dealing." White v. Western Title Ins. Co., 40 Cal. 3d 870, 885-89 (1985). Further, an insured may introduce evidence of the insurer's failure to comply with discovery obligations during the coverage litigation to show a continuing practice of attempting to frustrate the policyholder's claim. Journal Publishing Co. v. American Home Assur. Co., 771 F. Supp. 632, 636 (S.D.N.Y. 1991).

On June 2, 2011, in response to four motions to compel filed by KB Home, Magistrate Judge Lloyd found that Travelers had improperly refused to provide discovery based on meritless

objections. (Docket No. 70, Discovery Order.) Judge Lloyd ordered Travelers to respond to written discovery, again produce two of its witnesses to answer questions they previously refused to answer, and provide a proper privilege log. (Id.) Travelers was further sanctioned in the amount **$18,927.50** for its discovery violations. (Docket No. 104.)

Travelers' discovery abuses and continued efforts to frustrate its insured's claims are further highlighted by the fact that in its four motions to compel, KB Home merely requested that Travelers: (1) confirm that it was defending its named insured, Norcraft, at the same time that it refused to defend its additional insured (KB Home); and (2) state why it agreed there was a potential for coverage to Norcraft but not to KB Home under the same terms in the same policies of insurance. (See Docket 70, Discovery Order, 2:21-25.) Travelers refused to answer those questions, presumably because it had no justification for treating its insureds differently.

Despite being ordered to compel and heavily sanctioned, Travelers remains undeterred in its refusal to provide relevant and legitimate information requested by KB Home. Travelers' bad faith discovery conduct has forced KB Home to file further discovery motions, which are still pending. (See e.g., Docket Nos. 84, 89, 98, 158, 165-167.)

Travelers has also repeatedly sought to disrupt deposition proceedings in this matter. Its conduct has progressed from improper witness coaching to harassing and threatening KB Home's counsel with physical violence. (Hultz Decl., ¶¶ 2-3; Schlecht Decl., ¶ 13.)

Specifically, on April 16, 2012, KB Home deposed Travelers' unit manager, Tom Frazier, who had supervised the handling of KB Home's tender. (Hultz Decl., ¶ 2.) Travelers' *Pro Hac Vice* counsel, Thomas Lether defended the deposition. (Id.) Travelers' in-house counsel, Troy Edwards, also appeared at the deposition. (Id.) Mr. Edwards made numerous speaking objections attempting to coach the witness and generally attempted to disrupt the deposition. (Hultz Decl., ¶ 3 ) At one point during the questioning, suddenly and without provocation, Mr. Edwards violently slammed his fists to the table and began threating KB Home's counsel with physical violence, screaming, "let's take this outside." (Hultz Decl., ¶ 3 and Ex.4 thereto, Tom Frazier Deposition Transcript, 138:6 to 139:10.) When KB Home's counsel asked whether Mr. Edwards intended to threaten physical violence, Mr. Edwards screamed "No, I'm promising."

NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

(Hultz Decl., ¶ 3 and Ex.4 thereto, Tom Frazier Deposition Transcript, 139:17-19.)

Four days later, on April 20, 2012, KB Home deposed its Western Regional Manager, Richard Carrillo. (Schlecht Decl., ¶ 13.) A. Eric Aguilera (Travelers' counsel) defended the deposition and Troy Edwards (Travelers' in-house counsel) also attended. (Id.) Mr. Edwards along with Mr. Aguilera sought to disrupt proceedings by harassing and intimidating KB Home's counsel. For example, Travelers' counsel engaged in the following dialogue on the record directed at KB Home's counsel after she had attempted to discuss a compromise regarding a line of questioning:

> MR. EDWARDS: Do the two of you want to get a room or...
>
> MR. AGUILERA: Hey, look.
>
> MR. EDWARDS: Huh?
>
> MR. AGUILERA: You know, we don't have to, you know, threaten counsel in order to get things done in this world, all right?
>
> MR. EDWARDS: Is that right?
>
> ***
>
> MR. EDWARDS: She's got a very nice smile.
>
> MR. AGUILERA: She's turning a little red, though.
>
> MR. EDWARDS: Well, it's okay. I want the Court to see that I'm flirting with counsel, both of them.

(Ex. 15 to Schlecht Decl., Richard Carrillo Deposition Transcript Vol. 3, 52:6 to 53:8.)

Travelers' extremely inappropriate and personal comments were intended to harass KB Home's counsel. Further, Travelers' counsel comments that he did not need to "threaten counsel in order to get things done" was a direct reference to the previous and very recent events in which Mr. Edwards physically threatened KB Home's counsel. (Schlecht Decl., ¶ 13.)

Travelers' attempts to conceal relevant information, and harass, intimidate and threaten KB Home's counsel reflect its utter disdain and contempt towards its insureds. Travelers' malicious discovery conduct is just another manifestation of its bad faith toward KB Home.

**(9) <u>Travelers Has Filed A Retaliatory Complaint Against KB Home.</u>**

On April 30, 2012, Travelers filed a complaint in the Central District of California against

KB Home in connection with eleven underlying construction defect lawsuits ("Retaliatory Complaint"). (Ex. 1 to KB Home's Request for Judicial Notice, Travelers, et al. v. KB Home Coastal, Inc., et al., Central District of California Case No.: 2:12-cv-02473-DSF.) The Retaliatory Complaint involves KB Home's alleged actions and communications in connection with eleven underlying construction defect lawsuits. (Hultz Decl., ¶ 4.) In eight of those eleven underlying actions, KB Home had tendered its defense under the very same policies that Travelers issued to Norcraft that are at issue here. (Id.)

It should be noted that three of the eleven underlying actions listed in the Retaliatory Complaint were brought by the same plaintiffs' law firm and involve *identical* damage allegations as those involved in this matter. In those matters, KB Home tendered its defense as an additional insured to policies that Travelers had issued to the cabinet subcontractor who had worked on the homes at issue, including Norcraft. Travelers agreed to defend KB Home and did not claim that the damage allegations were insufficient. (Declaration of Daniel R. Ryan, ¶¶ 4-7 and Ex. 19 thereto; Declaration of Clayton T. Tanaka, ¶¶ 4-7 and Ex. 20 thereto; Declaration of Jonathan King, ¶¶ 4-7 and Ex. 21 thereto.) Travelers' Retaliatory Complaint further establishes Travelers' bad faith. See Dalrymple v. United Services Auto. Ass'n, 40 Cal. App. 4th 497, 519 (1995).

**B. The "Genuine Dispute Doctrine" Does Not Absolve Travelers' Conduct.**

Travelers claims it gets a pass on its tortious actions because there was a "genuine dispute" over the potential for coverage.[8] As a preliminary matter, under the so called genuine dispute doctrine, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

> The genuine issue rule . . . allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable – for example, where

---

[8] Travelers' attempt to "prove" the genuineness of its coverage dispute by relying on the denial letters of other carriers is absurd. (See Chao Decl., ¶ 11 and Ex. G thereto). First, this purported evidence is inadmissible hearsay. Second, these carriers issued different policies for different subcontractors, who performed different work at the homes at issue. Third, based on Travelers' flawed logic, the fact that even one carrier acknowledged its duty to defend proves there is no such dispute. Here, two carriers acknowledged a duty to defend, Travelers and Hartford. (See Chao Decl., ¶ 4 and Ex. B thereto, Hartford acceptance letter.)



NEWMEYER & DILLION LLP

> even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. . . . On the other hand, an insurer is not entitled to summary judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

Hubka v. Paul Revere Life Ins. Co., 215 F. Supp. 2d 1089, 1092 (S.D. Cal. 2002) (citing Amadeo v. Principal Mut. Life, 290 F.3d 1152, 1161-62 (9th Cir. 2002)). In sum, it is nothing more than a factual analysis of the plaintiffs' allegations that the insurer acted unreasonably. California courts have become increasingly loathe to engage in such a fact intensive inquiry which by definition is the provenance of the jury. See e.g., Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723-26 (2007); Brehm v. 21st Century Insurance Company, 166 Cal. App. 4th 1225, 1237-41 (2008).[9]

**(1) Travelers' Uninterrupted Defense Of Its Named Insured Proves There Is No "Genuine Dispute."**

It cannot be ignored that Travelers never raised any question, much less a dispute, over the potential for coverage to its named insured, Norcraft, who it has defended continuously under the same policies, the same complaint, the same damage allegations, and the same facts. Judge Lloyd has previously noted that "Travelers' 'obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts.'" (Docket No. 70, Discovery Order, 4:24-26.)

Travelers acknowledged its duty to defend Norcraft on June 25, 2009. (Ex. 5 to Schlecht Decl., Norcraft Acceptance Letter.) Travelers retained counsel to defend Norcraft in the Aldrich Action on June 22, 2009. (Ex. 6 to Schlecht Decl., Declaration of David J. DeMordaunt, ¶ 2.) Travelers has continually defended Norcraft and was the entity that authorized and funded the indemnity settlement between Norcraft and the Aldrich homeowners. (Ex. 7 to Schlecht Decl., Taylor Depo. Transcript, 109:23 to 110:9.) If the Aldrich Action presents a potential for covered damages as to Norcraft, it must also establish such potential as to KB Home. Yet, Travelers' treatment of its additional insured could not be more disparate.

---

[9] Some courts also no longer include a jury instruction on "genuine issue" because the only relevant question is whether the denial was unreasonable or without proper cause. See McCoy v. Progressive W. Ins. Co., 171 Cal. App. 4th 785, 792-94 (2009).



NEWMEYER & DILLION LLP

### (2) <u>An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To The Assertion Of A "Genuine Dispute."</u>

"The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." <u>Wilson v. 21st Century</u>, 42 Cal. 4th at 723.

Here, as Travelers acknowledged, the <u>Aldrich</u> Complaint triggered Travelers' duty to defend. Travelers conducted no independent investigation; rather, it reviewed only the documents provided by KB Home. Travelers' adjuster, Patricia Dlugokenski, testified: (1) she reviewed the complaint, the Norcraft subcontracts, the Norcraft policies, and the additional insured endorsements to the Norcraft policies (Ex. 8 to Schlecht Decl. (Dlugokenski Depo. Transcript Vol. I, 66:14 to 67:6)); (2) she confirmed the NOC (notice of completion) dates for the homes involved (<u>Id.</u> at 66:22-24); (3) she did not review any other documents before issuing Travelers' acceptance of defense on July 6, 2009 (<u>Id.</u> at 66:14 to 67:11); (4) she concluded that Norcraft performed cabinet work at the homes in the <u>Aldrich</u> Action (<u>Id.</u> at 59:7-12 and 60:4-11); and (5) she concluded that the <u>Aldrich</u> Complaint alleged cabinet defects (<u>Id.</u> at 59:17-19).

As previously discussed, Travelers' Claim Notes entry on July 6, 2009 document Travelers' decision to accept KB Home's defense tender because of a likelihood of covered damages. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).)

Travelers conducted no investigation whatsoever after it accepted defense. If it had, it would have confirmed Ms. Dlugokenski's initial conclusions. Travelers did not contact plaintiffs' counsel in the <u>Aldrich</u> Action to verify if the homeowners were alleging resultant damage in their construction defect lawsuit. (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol I, 76:16-22).) It never hired any independent consultant or investigator to investigate KB Home's tender under the Norcraft Policies. (<u>Id.</u> at 82:9-12.) It never sent a representative to visit the properties or attend site inspections. (<u>Id.</u> at 82:13-16).) The entire sum and substance of Travelers' investigation was its repeated demand that KB Home provide documents ***that it knew did not exist.***



NEWMEYER & DILLION LLP

Further, as KB Home's designated expert witness, Charles Miller, points out, Travelers undertook no active investigation to determine whether allegations of resultant damage were present in the Aldrich Action (Ex. 10 to Schlecht Decl., Charles Miller Deposition Transcript, 114:24 to 115:14.) Mr. Miller also testified that Travelers failed to conduct a thorough and timely investigation in accordance with insurance industry claims-handling standards and the standards of the industry by failing to, for instance, meet with the named insured, get information from the plaintiff's counsel, and get documents from the policyholder and the additional insured, within 30 to 60 days. (Id. at 150:11 to 151:23.)

Based on the above facts, Travelers failed to conduct the investigation required by law.

**C. Travelers' "Lot Files And Notices Of Claims" Is Another Red Herring.**

This issue was fully briefed in KB Home's motion for summary judgment heard on September 30, 2011. There, Travelers argued that KB Home refused to cooperate with Travelers' investigation by withholding the lot files and Notices of Claim. (Docket No. 116, Travelers' Opp., 8:5 to 9:2.) This argument is no more availing or convincing than it was six months ago.

First, KB Home, in fact, made the voluminous documents available to Travelers and its appointed counsel in the Aldrich document depository *nearly three years ago*. (Glaspy Decl., ¶¶ 8-9.) This is the custom and practice in construction defect cases and a procedure followed by KB Home's defense counsel, who has been retained by Travelers to defend more than 800 construction defect cases since the 1980's. Carriers that ask to see the lot files are directed to the document depository established in nearly all construction defect cases. (Id. at ¶¶ 2-6.) In addition, by mid-July 2009, Travelers had retained defense counsel for Norcraft, who also had unfettered access to the document depository and the lot files contained therein. (Id. at ¶ 8, Ex. 1, 7/16/09 e-mail, and Ex. 2, 7/17/09 e-mail.)

Second, the lot files document only "aesthetic and cosmetic issues" (i.e., "punch list" items) that were ***repaired*** by KB Home and Norcraft nearly ***seven years prior*** to KB Home's tender. (Docket No. 116, Travelers' Opp., 8:12-13.) Thus, the "lot files" contain information that pre-dates and are irrelevant to the Aldrich plaintiffs' claims of damage caused by Norcraft.

Third, this argument proves that Travelers breached its duty to investigate. With even



NEWMEYER & DILLION LLP

minimal effort, Travelers could have easily obtained the lot files by asking the Glaspy firm, by accessing the document depository, by asking the counsel it appointed to defend Norcraft or by asking its named insured directly. It did none of these things. (Glaspy Decl., ¶ 9.)

Travelers' allegation with respect to a Notice of Claim ("SB800 Notice") is likewise disingenuous. On August 6, 2009, more than ten months after the initial complaint, some of the Aldrich plaintiffs served a SB800 Notice.[10] (Glaspy Decl., ¶ 11.) KB Home inspected the homes in August of 2009 and made a partial offer for repairs on September 23, 2009. (Id.) However, KB Home could not make a full repair offer because the Notice of Claim lacked sufficient detail for KB Home to determine the "nature and location" of each alleged defect as required by California Civil Code section 910. (Id.) Therefore, on November 6, 2009, KB Home filed a motion to enforce that particular provision of the statute. (Id.) On February 1, 2010, the trial court granted KB Home's motion agreeing that the SB800 Notice lacked clarity about exactly what repairs were needed. The trial court stayed the litigation and ordered the plaintiffs to specify their repair needs more specifically. (Id.) The Aldrich plaintiffs filed a writ with the Sixth District Court of Appeal, which was summarily denied. (Glaspy Decl., ¶ 11.) The Aldrich plaintiffs' petition for review by the California Supreme Court was also summarily rejected. (Id.) On November 17, 2010, some of the Aldrich plaintiffs filed a revised Notice of Claim, well after Travelers had withdrawn from the defense. (Id.)

Neither the lot files nor the Notices of Claim void or supersede the allegations of the Aldrich Complaint which clearly alleges potentially covered property damage arising out of Norcraft's work. Travelers' singular focus on conjuring a basis to defeat coverage is further evidence of its breach and bad faith conduct. Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 1623 (1996).

Further, California courts require an insurer to establish that the insured's alleged failure to cooperate caused actual prejudice before it can disclaim coverage. Campbell v. Allstate Ins. Co., 60 Cal. 2d 303, 305-06 (1963). Here, even assuming *arguendo* that KB Home somehow

[10] Under the Right to Repair Law (Cal. Civ. Code § 895 et seq.) homeowners must provide a SB800 Notice with sufficient detail to allow homebuilders to locate, inspect, and offer repairs. In contrast, Travelers' duty to defend is triggered upon a bare possibility or potential of coverage.



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

violated the cooperation clause, Travelers could not have suffered any prejudice. As confirmed by Travelers' own expert, Gene Irizarry, even if Travelers had reviewed these documents sooner, it would have acted *no differently*. (Ex. 14 to Schlecht Decl., Declaration of Gene Irizarry dated 9/8/11, ¶ 14.) Moreover, Travelers has now paid the Aldrich plaintiffs $30,000 to settle their cabinet claims. (Ex. 7 to Schlecht Decl., Taylor Depo. Transcript, 109:23 to 110:9.) Thus, neither the lot files nor the SB800 Notices led Travelers to conclude the claims were not covered.

## 6. TRAVELERS CANNOT ESCAPE BRANDT FEE LIABILITY BY SHIFTING FOCUS TO ANOTHER CARRIER.

Travelers argues that KB Home cannot obtain Brandt fees because another carrier had agreed to defend KB Home in the Aldrich Action. Travelers knows this is not true. The other insurer, the Hartford, paid only $30,000 in defense fees and then refused to make further payments. (Glaspy Decl., ¶ 16.) This does not constitute a full defense. Haskel, Inc. v. Super. Ct., 33 Cal. App. 4th 963, 976, n.9 (1995) (a defense obligation is not satisfied by paying less than the full amount of the incurred defense cost). Yet, Travelers asserts the fact that the other carrier agreed to defend, regardless of whether it actually did so, absolves Travelers of any liability. Under Travelers' strained logic, an insured is entitled to Brandt fees if one carrier breaches, but losses that right if *two* carriers breach. Such an anomalous result would defy decades of California insurance law holding that each insurer has an independent duty to provide its insured with an immediate and complete defense. The cases cited by Travelers are inapposite.

In Ceresino v. Fire Ins. Exchange, 215 Cal. App. 3d 814, 823 (1989), the court held that the insurer's failure to defend was of no consequence to the insured because his defense was provided by another insurer; however, ***if the insured had been forced to finance its own investigation and defense, it would have a failure to defend action against the insurer***. Id. at 823 (citing Mullen v. Glens Falls Ins. Co., 73 Cal. App. 3d 163, 174 (1977) (insured who was forced to fund his own defense had a failure to defend action against insurer)).

Similarly, in Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078 (2005), unlike here, the parties had stipulated that ***defense had been fully paid by another insurer.*** Id. at 1089. In Ringler Associates Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165

(2000), upon which Travelers also relies, the court noted that the insured had not suffered any damages as "***it was fully protected from having to pay any costs of its own defense*** by other insurers who were on the risk.... [and] was adequately protected by other insurers." Ringler, 80 Cal. App. 4th at 1187-88 (emphasis added); see also Primrose Operating Co. v. National American Ins. Co., 382 F.3d 546, 560, n.12 (5th Cir. 2004) (distinguishing Ringler and refusing to hold that insured had not suffered damages because, unlike in Ringler, the insured was not provided a full defense by another insurer). Likewise, in Tradewinds Escrow, Inc. v. Truck Ins. Exchange, 97 Cal. App. 4th 704 (2002), the court held that the insured could not recover damages for the insurer's failure to defend because other insurers had provided a ***full defense*** of the underlying action. Id. at 712. San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co., 82 Cal. App. 4th 1230 (2000) is similarly inapplicable. There, the insurers had all agreed to provide a defense and agreed that the insured was entitled to independent counsel. Id. at 1233. The issue before the court was whether Civil Code section 2860 provided for a single rate limit applicable to those insurers collectively, or required them each potentially to pay up to its own ordinary rate. Id. at 1232.

In this case, Hartford refused to fund KB Home's defense beyond the initial payment of $30,000 in a case where KB Home has incurred hundreds of thousands of dollars in defense costs. No other insurer was paying for KB Home's defense. As such, KB Home was damaged by Travelers' wrongful withdrawal from its defense and could pursue Travelers for its failure to defend. See Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest, No. CV007267NM (JWJx), 2001 U.S. Dist. LEXIS 6901, at *3-4, n. 1 (C.D. Cal. May 15, 2001) (distinguishing San Gabriel and holding that the insured had incurred damages since it was not provided a full defense by another insurer). Travelers cannot escape its liability for unreasonably and in bad faith refusing to defend KB Home because KB Home was never fully defended by the Hartford.

## 7. KB HOME IS ENTITLED TO BRANDT FEES FOR THE ENTIRETY OF THE COVERAGE ACTION.

Travelers advances the alternative argument that it stopped unreasonably withholding policy benefits on December 17, 2010; therefore, Brandt fees should be cut off as of that date.



NEWMEYER & DILLION LLP

However, once again, Travelers' argument ignores well established facts in this case.

As discussed above, even after Travelers nominally agreed to defend KB Home on December 17, 2010, it continued to place improper limitations and restrictions on it duty.[11]

In fact, Travelers has filed an improper action seeking reimbursement of all fees it has paid. For instance, as discussed above, Travelers falsely claims that KB Home refused to produce documents (lot files) it never requested and had full access to.[12] Travelers also falsely claims that when KB Home objected to Travelers' attempt to impose counsel with conflicts, it breached the policies and lost all policy benefits.[13] KB Home, thus, is still left with no choice but to simultaneously defend itself in the Aldrich Action and pursue Travelers for the policy benefits to which it is lawfully entitled.

As also discussed in detail above, Travelers also falsely claims that its defense obligation has terminated because it settled the claims against its named insured, Norcraft.[14]

Travelers continues to deny its duty to defend KB Home from the time of tender, continues to place arbitrary limits on its duty to defend, and continues to claim it owes KB Home no duty to defend whatsoever. Accordingly, KB Home's right to Brandt fees continues unabated.

**8. THE REASONABLENESS OF BRANDT FEES IS AN ISSUE OF FACT.**

A district court may not order summary judgment where there arises a genuine issue of material fact. Scharf v. U.S. Atty. Gen., 597 F.2d 1240, 1242-43 (9th Cir. 1979). If expert testimony is required to resolve the summary judgment motion, conflicting expert testimony can create a genuine issue of material fact, compelling the court to deny the motion. Elantech Devices Corp. v. Synaptics, Inc., No. C 06-01839 CRB, 2006 U.S. Dist. LEXIS 48756 (N.D. Cal. Apr. 16, 2008). Where experts issue conflicting opinions, the weighing the credibility of conflicting expert witness testimony is the province of the jury. Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1192 (9th Cir. 2000).

In a diversity action, the question of the reasonableness of attorneys' fees is governed by

[11] Supra, Section 5.A.(5).
[12] Supra, Section 5.C.
[13] Supra, Section 5.A.(6).
[14] Supra, Section 5.A.(7).



NEWMEYER & DILLION LLP

state law. Kabatoff v. Safeco Ins. Co. of Am., 627 F.2d 207, 210 (9th Cir. 1980). The determination of what is a reasonable [attorneys'] fee is a question of fact that rests within the discretion of the trial court. Indep. Iron Works, Inc. v. Tulare County, 207 Cal. App. 2d 164, 168, 24 Cal. Rptr. 361, 363 (1962).

Here, Travelers' expert witness has opined that certain of the Brandt fees are unreasonable and may not be recovered. (Ex. 17 to Schlecht Decl., Vinaccia 3/23/12 Report, pp. 6-8.) KB Home's expert witness disputes Travelers' deductions and opines that the work performed and time incurred was reasonable. (Ex. 16 to Schlecht Decl., Jardini 4/23/12 Report, pp. 3-7.) The expert disputes involve the very categories of work that Travelers seeks to preclude in its Motion. These disputed issues of material fact regarding the reasonableness of certain Brandt fees cannot be decided in a motion for partial summary judgment.

**9. CONCLUSION.**

The factual record is replete with evidence of Travelers' repeated and unreasonable denial of policy benefits, which continues to this day. KB Home is entitled to pursue Travelers for its unreasonable failure to defend it in the Aldrich Action because it was never fully defended by Hartford or any other insurance carrier. Disputed issues of material fact exist regarding KB Home's entitlement to its Brandt fees in this coverage action. As such, Travelers' Motion should be denied in its entirety.

Dated: June 15, 2012

NEWMEYER & DILLION LLP

By: ______________________
C. Kendie Schlecht
Attorneys for Plaintiffs and Counter-Defendants KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation