NEWMEYER & DILLION LLP
JAMES S. HULTZ, CBN 217623
James.Hultz@ndlf.com
BONNIE T. ROADARMEL, CBN 205275
Bonnie.Roadarmel@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs and Counter-Defendants
KAUFMAN & BROAD MONTEREY BAY, a
California corporation; and KB HOME SOUTH
BAY, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:10-cv-02856-EJD<br>JUDGE: Edward J. Davila<br>COURTROOM: 4<br>MAGISTRATE JUDGE: Howard R. Lloyd<br><br>**KB HOME'S OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE REASONABLENESS OF TRAVELERS' COVERAGE DETERMINATION IN LIGHT OF KB HOME'S POSITION TAKEN IN THE SB800 PROCEEDING** |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Counter-Claimant,<br><br>vs.<br><br>KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Counter-Defendants. | DATE: September 14, 2012<br>TIME: 9:00 a.m.<br><br>State Court Action Filed: May 27, 2010<br>Removed to USDC Northern Dist.: June 28, 2010 |



NEWMEYER & DILLION LLP

# TABLE OF CONTENTS


Page

1. PRELIMINARY STATEMENT ........ 1
2. PROCEDURAL POSTURE ........ 3
   A. Previous Dispositive Motions ........ 3
   B. Discovery Proceedings ........ 4
3. STATEMENT OF FACTS ........ 5
   A. The Underlying Aldrich Complaint And KB Home's Tender ........ 5
   B. The Aldrich SB800 Proceedings ........ 6
4. TRAVELERS CANNOT MEET ITS BURDEN ON SUMMARY JUDGMENT ........ 7
5. TRAVELERS' MOTION IS BASED ON A DEEPLY FLAWED LEGAL PREMISE ........ 7
   A. The Duty To Defend Standard: An Insurer's Duty To Defend Is Triggered Based Upon A Mere Potential For Covered Damages ........ 7
   B. The SB800 Standard: Homeowners Must Specify The "Nature And Location" Of Each Alleged Defect ........ 9
6. TRAVELERS' MOTION IS BASED ON GROSSLY DISTORTED FACTS ........ 10
   A. There Has Never Been Any Question That The Allegations In The Aldrich Complaint Asserted A Potential For Covered Damages ........ 10
   B. Travelers' Withdrawal From KB Home's Defense Has Nothing Whatsoever To Do With The SB800 Notice Or SB800 Motion ........ 12
7. TRAVELERS HAS REPEATEDLY BREACHED THE POLICIES AND THE COVENANT OF GOOD FAITH AND FAIR DEALING ........ 12
   A. The "Genuine Dispute Doctrine" Does Not Absolve Any of Travelers' Bad Faith Conduct ........ 13
      (1) Travelers' Uninterrupted Defense of Its Named Insured Proves There Is No "Genuine Dispute." ........ 14
      (2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To the Assertion Of A "Genuine Dispute." ........ 14
   B. Travelers' Bad Faith is Well Documented ........ 16
      (1) Travelers' Promise To Defend KB Home Was Fraudulent At The Time It Was Made ........ 16
      (2) Travelers Improperly Withdrew From KB Home's Defense ........ 17




NEWMEYER & DILLION LLP

**TABLE OF CONTENTS**
**(continued)**

**Page**

(3) Travelers Tortiously Refused To Reconsider Its Withdrawal Despite Extrinsic Facts Contradicting Its Coverage Position .................. 18

(4) Travelers Continues To Improperly Limit Its Defense Obligations ......... 19

(5) Travelers Improperly Sought To Displace KB Home's Defense Counsel With Panel Counsel Despite Ethical Conflicts .......................... 20

(6) Travelers Improperly Withdrew Its Defense A Second Time Based On Another False Claim.................................................................. 20

(7) Travelers Has Engaged Malicious And Bad Faith Discovery Tactics To Conceal Information From KB Home ............................................... 21

(8) Travelers Has Filed A Lawsuit Against KB Home In Retaliation For This Coverage Action.............................................................. 24

C. Travelers' Motion Would Not Dispose Of Any Issue ....................................... 24

8. CONCLUSION ........................................................................................ 25



NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ........ 7

*Amadeo v. Principal Mut. Life*, 290 F.3d 1152 (9th Cir. 2002) ........ 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 7

*Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir. 1983) ........ 7

*Flinkote Co. v. General Accident Assurance Co.*, 480 F. Supp. 2d 1167 (N.D. Cal. 2007) ........ 9

*Hubka v. Paul Revere Life Ins. Co.*, 215 F. Supp. 2d 1089 (S.D. Cal. 2002) ........ 13

*Journal Publishing Co. v. American Home Assur. Co.*, 771 F. Supp. 632 (S.D.N.Y. 1991) ........ 22

*Westlands Water Dist. v. United States*, 337 F.3d 1092 (9th Cir. 2003) ........ 7

**State Cases**

*American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18 (2009) ........ 19

*Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th 448 (1996) ........ 1, 9, 17

*Brehm v. 21st Century Insurance Company*, 166 Cal. App. 4th 1225 (2008) ........ 13

*Buss v. Super. Ct.*,, 16 Cal.4th 35 (1997) ........ 8

*CNA Casualty of Calif. v. Seaboard Surety Co.*, 176 Cal. App. 3d 598 (1986) ........ 9

*Dalrymple v. United Services Auto. Ass'n*, 40 Cal. App. 4th 497 (1995) ........ 24

*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966) ........ 19

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*, 176 Cal. App. 4th 172 (2009) ........ 19



NEWMEYER & DILLION LLP

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Gruenberg v. Aetna Ins. Co.*,
9 Cal. 3d 566 (1973) ........ 13

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) ........ 8, 19

*McCoy v. Progressive W. Ins. Co.*,
171 Cal. App. 4th 785 (2009) ........ 13

*Montrose Chem. Corp. v. Super. Ct.*,,
6 Cal. 4th 287 (1993) ........ 1, 7, 9, 11, 19, 25

*Montrose Chemical Corp. v. Admiral Ins. Co.*,
10 Cal. 4th 645 (1995) ........ 11, 13

*Mullen v. Glens Falls Ins. Co.*,
73 Cal. App. 3d 163 ........ 10

*N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*,
137 Cal. App. 4th 627 (2006) ........ 8

*Pardee Constr. Co. v. Ins. Co. of the West*,
77 Cal. App. 4th 1340 (2000) ........ 10

*Scottsdale Ins. Co. v. MV Transportation*
36 Cal. 4th 643 (2005) ........ 8

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
78 Cal. App. 4th 847 (1986) ........ 12, 18

*Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*,
68 Cal. App. 4th 1030 (1998) ........ 8, 10

*White v. Western Title Ins. Co.*,
40 Cal. 3d 870 (1985) ........ 12, 21

*Wilson v. 21st Century Ins. Co.*,
42 Cal. 4th 713 (2007) ........ 13, 14, 17

**State Statutes**

Cal. Civ. Code § 910 ........ 1, 6

Cal. Civ. Code § 910(a) ........ 9

Cal. Civ. Code §§ 895 et seq. ........ 1

**Federal Rules**

Fed. R. Civ. P. 56(c) ........ 7



NEWMEYER & DILLION LLP

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Federal Rules of Civil Procedure, Rule 56(h) .......... 19



NEWMEYER & DILLION LLP

## 1. PRELIMINARY STATEMENT.

Travelers'[1] *ex post* attempts to twist fact and law in order to justify its bad faith conduct have reached the point of desperation. For the following reasons, Travelers' efforts to mislead its insureds and this Court should be rejected:

***Travelers' Motion is duplicative and untimely***. On August 26, 2011, the parties filed their dispositive motions concerning issues pending at the time. (See Docket Nos. 106 [Travelers] and 113 [KB Home].) Travelers subsequently filed an amended answer and this Court set deadlines, including dispositive motion deadlines, to address the "New Claims" therein. Travelers' untimely attempt to rehash old arguments regarding its "bad faith" should be summarily denied.

***Travelers' Motion is based on a deeply flawed legal premise***. Travelers argues that the level of specificity to trigger an insurer's duty to defend and to satisfy a homeowner's obligation to identify claims under SB800[2] are equivalent. Nothing could be further from the truth. The duty to defend is triggered based on allegations that establish a *bare possibility* of coverage. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993). In fact, any ambiguity *must be resolved in favor of the insured* and a duty to defend is owed even when coverage is in doubt and ultimately does not materialize. Id. An insurer's refusal to defend can *only* be justified if an insurer conclusively establishes that *no conceivable theory that could raise a single covered issue*. Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448, 455 (1996).

Conversely, SB800 established a statutory process expressly intended to allow builders to repair specific defects and damages identified by homeowners in a detailed Notice of Claim ("SB800 Notice"). See Cal. Civ. Code § 910. Such specificity is required to allow the builder to repair the alleged defects and damage.

Thus, Travelers' argument that KB Home's[3] motion seeking to clarify the Aldrich

---

[1] Defendant Travelers Property Casualty Company of America is referred to herein as "Travelers."

[2] Cal. Civ. Code §§ 895 et seq. often referred to as "the Right to Repair Law" is referred to herein as "SB800."

[3] Plaintiffs Kaufman & Broad Monterey Bay and KB Home South Bay Inc. are collectively referred to herein as "KB Home."



NEWMEYER & DILLION LLP

plaintiffs' SB800 Notice ("SB800 Motion") somehow removed all possibility of coverage, and justified its withdrawal from KB Home's defense, is so flawed as to be frivolous.

***Travelers' Motion is based upon grossly distorted facts***. Travelers' duty to defend was triggered by allegations in the Aldrich Complaint, which have remained constant throughout the Aldrich action before, during, and after the SB800 proceedings. There has never been any question that the allegations asserted a potential for coverage. In fact, Travelers internally acknowledged that the Aldrich Complaint established a *likelihood* for covered damages. (Ex. G to the Declaration of Patricia Dlugokenski ("Dlugokenski Decl."), Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).) Yet, Travelers withdrew from KB Home's defense claiming that the Aldrich Complaint "reveals an absence of allegations that give rise to a potential for 'property damage' arising out of the product provided or the work performed by Norcraft." (Ex. K to Dlugokenski Decl., Withdrawal Letter dated 3/9/10.) Indeed, Travelers suggests it did not know about the SB800 proceedings at the time it withdrew.

The truth is that Travelers' refusal to defend KB Home had nothing whatsoever to do with the SB800 Notice or KB Home's SB800 Motion – documents served more than 10 months after the Aldrich Complaint. Yet, in a transparent bait and switch argument, Travelers asserts that its withdrawal of coverage based on supposedly lacking allegations of the *Aldrich Complaint*, was justified based on KB Home's motion regarding the *SB800 Notice*. Travelers' latest attempt to again justify its bad faith after the fact is simply without merit.

***Travelers' bad faith is well documented***. As previously extensively briefed by the parties in summary judgment motions still under submission, the undisputed facts establish that Travelers has *repeatedly* breached the policies and the covenant of good faith and fair dealing. Such conduct began when Travelers fraudulently agreed to defend KB Home while its internal documents, and its refusal to actually issue payment, reveal that it never had any intention of providing a full and complete defense. Travelers' bad faith continued when it withdrew from KB Home's defense falsely claiming that the Aldrich Complaint asserted *no potential* for covered damages while internally acknowledging that such damages were *likely* and while it simultaneously defended its named insured based on the very same allegations. Travelers then

improperly refused to reconsider its denial despite evidence contradicting its coverage position. After KB Home filed this coverage action, Travelers again agreed to defend KB Home, but it placed improper limitations on its defense obligations and insisted upon displacing KB Home's defense counsel with counsel with ethical conflicts.

Further, Travelers has once again withdrawn from KB Home's defense this time falsely claiming that it had settled all claims against its named insured in the Aldrich Action. Travelers' has also engaged in bad faith discovery tactics ranging from unjustified refusal to provide legitimate discovery to harassing and threatening KB Home's counsel with physical violence. (Declaration of James Hultz ("Hultz Decl."), ¶¶ 2-3 and Ex. 4 thereto; Declaration of C. Kendie Schlecht ("Schlecht Decl."), ¶ 13 and Ex. 15 thereto.)

Travelers has recently compounded its previous bad faith by filing a retaliatory action against KB Home for filing this coverage action. (See Ex. 1 to KB Home's Request for Judicial Notice, Travelers, et al. v. KB Home Coastal, Inc., et al., Central District of California Case No.: 2:12-cv-02473-DSF.)

Each of these facts separately supports a finding that Travelers breached the covenant of good faith and fair dealing. All of these facts, taken together, preclude any possible finding upon summary judgment that Travelers acted reasonably toward its insured.

***Travelers' Motion would not dispose of any issue***. Even assuming, *arguendo*, that the SB800 Motion somehow served as ex post justification for Travelers refusal to defend KB Home as to the homes listed in the SB800 Notice, Travelers would still have owed KB Home a duty to completely defend the Aldrich Action because 14 of the homes at issue in the Aldrich Action did not submit a SB800 Notice. (Declaration of Mary Kay Glaspy ("Glaspy Decl."), ¶ 13.) The Aldrich Complaint contains the only allegations asserted by the owners of those 14 homes and, as discussed above, Travelers acknowledges that such complaint asserted a *likelihood* of covered damages.

## 2. PROCEDURAL POSTURE.

### A. Previous Dispositive Motions.

On May 27, 2010, KB Home filed the instant coverage action in state court and on June



NEWMEYER & DILLION LLP

29, 2010, Travelers removed to federal court. (Docket No. 1.) The case was initially assigned to Judge Koh who set an initial case management order establishing a June 9, 2011 deadline for filing dispositive motions. (Docket No. 19.) On April 25, 2011, the case was transferred to this Court. (Docket No. 47.) On May 21, 2011, this Court entered a stipulation and order setting a September 30, 2011 hearing for dispositive motions on issues pending before the Court at the time. (Docket No. 68.) Pursuant to the order, the parties filed their respective dispositive motions on August 26, 2011. (See Docket Nos. 106 [Travelers] and 113 [KB Home].) Subsequently, with leave from the Court, Travelers filed an amended answer asserting new defenses on September 16, 2011. (Docket No. 126.) This Court then issued a minute order setting new deadlines, including a summary judgment motion deadline of June 1, 2012, to address the "New Claims" asserted in Travelers' amended answer. (Docket No. 147.) The minute order was clearly not intended to allow the parties a second bite at the apple as to arguments that existed prior to the amended answer. Yet, that is exactly what Travelers has done. The only issue addressed in this Motion is KB Home's bad faith claim against Travelers, and Travelers has already filed a summary judgment motion as to all the claims asserted in KB Home's complaint against it (Docket No. 106). Therefore, Travelers' duplicative and untimely motion should be summarily denied on this basis alone.

**B. Discovery Proceedings.**

On June 2, 2011, in response to four motions to compel filed by KB Home, Magistrate Judge Howard R. Lloyd found that Travelers had improperly refused to provide information requested by KB Home based on objections that lacked merit. (Docket No. 70, Order Granting Plaintiffs' Motions to Compel Further Deposition Testimony and Further Responses to RFPs and Interrogatories ("Discovery Order").) Judge Lloyd ordered Travelers to comply with KB Home's discovery requests, produce two witnesses for further questioning on topics they had previously refused to answer, and provide a revised privilege log that supplied sufficient identifying information. (Docket No. 70, Order Granting Plaintiffs' Motions to Compel Further Deposition Testimony and Further Responses to RFPs and Interrogatories ("Discovery Order").) Travelers also sanctioned in the amount of $18,927.50 for its discovery violations. (Docket No. 104.)

NEWMEYER & DILLION LLP

In its supplemental discovery responses, Travelers asserted the very same meritless objections and submitted a "revised" privilege that was nearly identical to that found lacking by Judge Lloyd. (Docket No. 84.) As such, on June 30, 2011, KB Home filed a letter brief as directed by Judge Lloyd. (Docket No. 84 [KB Home's Brief], Docket No. 89 [Travelers' Opposition], Docket No. 98 [KB Home's Reply].) The parties are awaiting Judge Lloyd's ruling.

Most recently, the parties have submitted three additional Discovery Dispute Joint Reports which are still pending before Judge Lloyd. Discovery Dispute Joint Report # 3 relates to Travelers' wholesale redaction of certain additional Claim Notes produced by Travelers on March 16, 2012 which KB Home asserts are not protected by the attorney-client privilege or the attorney work product doctrine. (Docket No. 167.) Discovery Dispute Joint Report #4 relates to the inability of Travelers' adjuster Deborah Ann Taylor to provide testimony regarding her handling of the Norcraft tender in the Aldrich Action because Travelers has redacted her Claim Notes. (Docket No. 166.) Discovery Dispute Joint Report #6 relates to Travelers' refusal to produce documents in response to four document requests for correspondence with Norcraft regarding the Aldrich Action, defense fees and costs paid to defend Norcraft in the Aldrich Action, and documents related to the settlement between Norcraft and the plaintiffs in the Aldrich Action. (Docket No. 165.) The parties are awaiting Judge Lloyd's ruling on these three submissions.

## 3. STATEMENT OF FACTS.

### A. The Underlying Aldrich Complaint And KB Home's Tender.

Between 2003 and 2004, KB Home developed and constructed residential projects referred to as "The Cove" and "The Bluffs" (the "Projects") located in the City of Seaside, County of Monterey, California. On October 21, 2008, the owners of 43 homes in the Projects filed their construction defect complaint in the underlying Aldrich Action. (Ex. C to Dlugokenski Decl., Aldrich Complaint.) In the Aldrich Complaint, the homeowners allege, among other things, that cabinet defects resulted in damage to the homes and their component parts. (Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶ 17.)

On or about April 1, 2009, KB Home tendered its claim and requested that Travelers provide an immediate and full defense of the Aldrich Action. (Dlugokenski Decl., ¶ 7 and Ex. E



NEWMEYER & DILLION LLP

thereto.) On or about July 6, 2009, Travelers acknowledged that KB Home was an additional insured under the Norcraft Policies and acknowledged a duty to defend KB Home under the policies. (Dlugokenski Decl., ¶ 13 and Ex. H thereto, AI Acceptance Letter dated 7/6/09 from Patricia Dlugokenski.) A notation in Travelers' Claim Notes made that same day state "Insured [Norcraft] also completed installation and *cabinet damages are plead* [sic] in the complaint. Based on those facts, it is likely some, although minor damages resulted from installation. *Damages to the walls or pulling away from the walls could be attributed to installation*" (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).) Travelers' named insured adjuster reached the same conclusion and agreed to defend Norcraft. (Ex. 5 to Schlecht Decl., Norcraft Acceptance Letter dated 6/25/09 from Debbie Taylor.)[4]

### B. The Aldrich SB800 Proceedings.

On August 6, 2009, more than ten months after the initial complaint, some of the Aldrich plaintiffs served a Notice of Claim pursuant to the Right to Repair Law. (Glaspy Decl., ¶ 11.) KB Home inspected the homes in August of 2009 and made a partial offer for repairs on September 23, 2009. (Id.) However, KB Home could not make a full repair offer because the Notice of Claim lacked sufficient detail for KB Home to determine the "nature and location" of each alleged defect as required by California Civil Code section 910. (Id.) Therefore, on November 6, 2009, KB Home filed a motion to enforce that particular provision of the statute. (Id.) On February 1, 2010, the trial court granted KB Home's motion agreeing that the SB800 Notice "lack[ed] clarity about exactly what *repairs* were needed," and therefore stayed the litigation ordering "plaintiffs [to] specify their *repair* needs more specifically . . . " (Travelers' Motion, 8:19-28 (emphasis added).) The Aldrich plaintiffs filed a writ with the Sixth District Court of Appeal, which was summarily denied. (Glaspy Decl., ¶ 11.) The Aldrich plaintiffs' petition for review by the California Supreme Court was also summarily rejected. (Id.) On November 17, 2010, some of the Aldrich plaintiffs filed a revised Notice of Claim and the stay

---

[4] As explained below, despite the Court's order compelling discovery (Docket No. 70) and sanctioning Travelers (Docket No. 104), Travelers' still improperly refuses to provide unredacted claim notes or related questioning of the named insured adjuster. These issues remain pending before the assigned discovery magistrate. (Docket Nos. 84, 89, 98, 158, 165-167.)



NEWMEYER & DILLION LLP

expired on December 14, 2010, permitting the plaintiffs to recommence litigation on their complaint. (Id.)

**4. TRAVELERS CANNOT MEET ITS BURDEN ON SUMMARY JUDGMENT.**

Because significant and material disputed facts exist regarding whether Travelers acted unreasonably toward its insured, Travelers cannot meet its burden and is not entitled to partial summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). "If genuine issues of material fact exist, summary judgment is not proper." Westlands Water Dist. v. United States, 337 F.3d 1092, 1100 (9th Cir. 2003). A material fact is in dispute whenever reasonable persons could differ and resolution would "require a jury or judge to resolve the parties' differing versions of the truth at trial." Aydin Corp. v. Loral Corp., 718 F.2d 897, 902 (9th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Even where the facts are undisputed, summary judgment is not appropriate where reasonable minds could differ regarding the inferences which may be drawn from the undisputed facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 159 (1970).

**5. TRAVELERS' MOTION IS BASED ON A DEEPLY FLAWED LEGAL PREMISE.**

Travelers advances an argument that the level of specificity required to trigger its duty to defend and a homeowners' obligation to identify "the nature and location" of alleged defects under SB800 are one and the same. However, as Travelers well knows, the two standards are radically different and reflect their divergent purposes.

**A. The Duty To Defend Standard: An Insurer's Duty To Defend Is Triggered Based Upon A *Mere Potential* For Covered Damages.**

It is undisputed that under California law, KB Home is simply required to show that there is a ***bare possibility or potential of coverage*** based on the facts alleged in the Aldrich Complaint in order to trigger Travelers' defense obligation. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993) (where coverage of the claim against the insured depends on unresolved factual issues, "a bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty ...."). The Montrose decision is the most important California decision defining the broad scope of an



NEWMEYER & DILLION LLP

insurer's duty to defend.

An insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966) (emphasis in original); Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co., 68 Cal. App. 4th 1030, 1036 (1998); N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co., 137 Cal. App. 4th 627, 640 (2006). Where coverage of the claim against the insured depends on unresolved factual issues, "a bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty ... California courts have used the terms 'possibility' and 'potential' interchangeably...." Montrose, 6 Cal. 4th at 29. It need not be shown that coverage is likely or even "reasonably" likely. Id. at 299-300. Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993), Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030, 1035 (1998). In resolving the question of whether a duty to defend exists, the insurer has a higher burden than the insured: "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Montrose, 6 Cal. 4th at 300. As the California Supreme Court explained, the "duty to defend runs to claims that are merely ***potentially covered***, in light of facts alleged or otherwise disclosed." Buss v. Super. Ct., 16 Cal.4th 35, 46 (1997) (emphasis added).

> Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. [citation omitted.] But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. [citation omitted.] Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.

Scottsdale Ins. Co. v. MV Transportation, 36 Cal. 4th 643, 654 (2005) (citing Montrose, 6 Cal. 4th at 295, Gray, 65 Cal. 2d at 275-76 and CNA Casualty of Calif. v. Seaboard Surety Co., 176 Cal. App. 3d 598, 610-11 (1986)).

The duty to provide an insured with an immediate and complete defense is triggered if a single claim in the complaint is potentially covered by the policy. Montrose, 6 Cal. 4th at 295-96. ***The defense duty is so broad that an insurer owes a duty to defend its insured in an action even***



NEWMEYER & DILLION LLP

***where coverage is in doubt and ultimately does not materialize.*** Montrose, 6 Cal. 4th at 299.

> [T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. ... A duty to defend does not exist *only* when the underlying complaint " '... ***can by no conceivable theory raise a single issue which could bring it within the policy coverage.***'" [citation omitted.] For this reason, where there is any doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured and against the insurer.

Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448, 455 (1996) (citing Montrose, 6 Cal.4th at 300).

Thus, KB Home must make a prima facie showing that there is a potential for coverage under the policy, i.e., that the claims in the Aldrich Action may ***potentially*** or possibly fall within the terms of the policy. Any doubt as to whether the facts establish the existence of a defense duty ***must be resolved in KB Home's favor***. Travelers, on the other hand, must demonstrate that the claims would not be covered under any conceivable theory. Flinkote Co. v. General Accident Assurance Co., 480 F. Supp. 2d 1167, 1172 (N.D. Cal. 2007).

### B. The SB800 Standard: Homeowners Must Specify The "Nature And Location" Of Each Alleged Defect.

The Right to Repair Law applies to homes sold after January 1, 2003 and requires that homeowners must initiate the Right to Repair process by providing the builder notice that identifies the nature and location of each alleged defect:

> (a) The claimant or his or her legal representative shall provide written notice . . . to the builder in the manner prescribed in this section, of the claimant's claim that the construction of his or her residence violates any of the standards set forth in Chapter 2 (commencing with Section 896). That notice . . . shall describe the claim in reasonable details sufficient to determine that nature and location, to the extent known, of the claimed violation.

(Cal. Civ. Code § 910(a).)

In order for the SB800 Notice to serve its statutory purpose (i.e., allowing the builder to exercise its "right to repair") it must give specific detail regarding the nature and location of the alleged defects. Specificity is required because a builder cannot repair what it cannot find. Under the statutory framework, a document which alleges, for example, general and non-specific damages arising out of cabinet defects in over 40 homes, cannot provide sufficient information to



NEWMEYER & DILLION LLP

a homebuilder to inspect and repair the homes. For that reason, KB Home challenged the Aldrich homeowners' notice of claims as too vague to allow KB Home to comply with its obligations under the Right to Repair Law. (Glaspy Decl., ¶ 11.)

## 6. TRAVELERS' MOTION IS BASED ON GROSSLY DISTORTED FACTS.

### A. There Has Never Been Any Question That The Allegations In The Aldrich Complaint Asserted A Potential For Covered Damages.

The duty to defend must be assessed at the very outset of a case. Pardee Constr. Co. v. Ins. Co. of the West, 77 Cal. App. 4th 1340, 1350 (2000). "The determination whether an insurer owes a duty to defend is made in the first instance by comparing the Policy with the allegations of the complaint." Id. "[T]he insurer cannot rely on subsequent developments . . . to show absence of potential coverage and hence to justify its refusal to defend." H. Walter Croskey Et. Al., Cal. Prac. Guide Ins. Lit. §7:589 (The Rutter Group 2011) (citing Mullen v. Glens Falls Ins. Co., 73 Cal. App. 3d 163, 173; Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030, 1044 (1998)).

As acknowledged by Travelers, the Norcraft Policies provide coverage for "property damage," which the policies define as "[p]hysical injury to tangible property, including all resulting loss of use of that property…" (Travelers' Motion, 4:7-9.) The Aldrich Complaint establishes a potential for coverage for such "property damage" arising out of Norcraft's work. Specifically, the complaint alleges, in part:

> 17. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for it intended purpose because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects ***which have resulted in damage to the homes and their component parts***. The defects include, without limitation and to various degrees on the plaintiffs' respective residence, the following:
>
> . . .
>
> ***cabinet and wood trim defects***
>
> . . .
>
> 20. The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTY at the time of the purchase. The defects thereafter manifested.



NEWMEYER & DILLION LLP

> 21. Because of the defective conditions of the PROPERTY as herein above alleged, Plaintiffs have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:
>
> A) Plaintiffs will be forced to incur expenses for the restoration and repairs of the PROPERTY to cure the damage, defects and/or deficiencies. The exact amount of damages is presently unknown, except that the costs will exceed the sum of $100,000 per home.
>
> . . .

(Ex. C to Dlugokenski Decl., Aldrich Complaint, ¶¶ 17, 20-21) (emphasis added).)

Thus, plaintiffs in the Aldrich Action allege that Norcraft's cabinet work caused property damage to the homes and their component parts which require repair. The complaint is "neutral" in that it does not specify when the property damage occurred, and thereby raises the possibility that such property damage occurred during the term periods of the Norcraft Policies. See e.g., Montrose, 6 Cal. 4th at 304; Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal. 4th 645 (1995) (adopting a continuous trigger of coverage in California under third party general liability policies of insurance).

Travelers in fact acknowledged that the Aldrich Complaint contained allegations sufficient to trigger Travelers' duty to defend KB Home. An entry into Travelers' Claim Notes dated July 6, 2009 states:

> Insured [Norcraft] also completed installation and ***cabinet damages are plead [sic] in the complaint***. Based on those facts, ***it is likely*** some, although minor ***damages resulted from installation***. Damages to the walls or pulling away from the walls could be attributed to installation.

(Dlugokenski Decl., ¶ 11 and Ex. G thereto, Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757) (emphasis added).)

Throughout the proceedings, these allegations have remained identical. At the conclusion of the SB800 proceedings, the Aldrich plaintiffs lifted the stay and re-commenced litigation based on the very same allegations.

Thus, from the very inception of the case, there has never been any doubt that the Aldrich Complaint asserted a potential for covered damages. In fact, Travelers' own assessment acknowledges a *likelihood* for covered damages. Accordingly, the allegations of Aldrich



NEWMEYER & DILLION LLP

Complaint triggered Travelers' duty to defend KB Home.

**B. <u>Travelers' Withdrawal From KB Home's Defense Has Nothing Whatsoever To Do With The SB800 Notice Or SB800 Motion.</u>**

Travelers conducted an internal review of the <u>Aldrich</u> Complaint and internally acknowledged that it asserted a likelihood for covered damages. (Ex G. to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).) Thus on July 6, 2009, it agreed to defend KB Home. However, Travelers refused KB Home's repeated requests that Travelers actually fund the defense. (Glaspy Decl., ¶ 14.) Eventually, on December 10, 2009, although it had never paid a single cent towards KB Home's defense, Travelers announced it was completely withdrawing. Travelers repeatedly has previously insisted that KB Home was required to confirm the potential for coverage by submitting a defect list and withdrew because the <u>Aldrich</u> plaintiffs had not generated one, although Travelers is aware that defect lists in construction defect actions are routinely not submitted until well into the litigation. (Glaspy Decl., ¶¶ 3-8.)

Travelers now attempts to justify its withdrawal by relying on events it suggests it did not even know about:

> At no time prior to [December 10, 2009] did KB Home advise Travelers of its ongoing dispute with the Plaintiff homeowners with respect to the seriously deficient [SB800 Notice], much less the hearing on its [SB800 Motion] that was scheduled for the following day.

(Travelers' Motion, 9:20-23.) Even this proffered justification is suspect and meritless in that Travelers' appointed staff counsel to defend Norcraft, was well aware of the SB800 proceedings, and filed a joinder to KB Home's SB800 Motion. (Travelers' Motion, 6:11-15; Ex. 6 to Schlecht Decl., Declaration of David J. DeMordaunt, ¶ 2.)

**7. <u>TRAVELERS HAS REPEATEDLY BREACHED THE POLICIES AND THE COVENANT OF GOOD FAITH AND FAIR DEALING.</u>**

"A covenant of good faith and fair dealing is implied in every contract." <u>White v. Western Title Ins. Co.</u>, 40 Cal. 3d 870, 885 (1985). "In general, the standard of good faith and fairness calls for consideration of the reasonableness of the insurer's conduct in denying coverage." <u>Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.</u>, 78 Cal. App. 4th



NEWMEYER & DILLION LLP

847, 879 (1986). "The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself." Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 575 (1973). Travelers' conduct here was unreasonable and breached the implied covenant of good faith and fair dealing.

### A. **The "Genuine Dispute Doctrine" Does Not Absolve Any of Travelers' Bad Faith Conduct.**

Travelers claims it gets a pass on its tortious actions because KB Home's position in the Aldrich SB800 proceeding creates a "genuine dispute" over the potential for coverage.[5] As a preliminary matter, under the so called genuine dispute doctrine, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

> The genuine issue rule . . . allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable – for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. . . . On the other hand, an insurer is not entitled to summary judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

Hubka v. Paul Revere Life Ins. Co., 215 F. Supp. 2d 1089, 1092 (S.D. Cal. 2002) (citing Amadeo v. Principal Mut. Life, 290 F.3d 1152, 1161-62 (9th Cir. 2002)). In sum, it is nothing more than a factual analysis of the plaintiffs' allegations that the insurer acted unreasonably. California courts have become increasingly loathe to engage in such a fact intensive inquiry which by definition is the provenance of the jury. See e.g., Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723-26 (2007); Brehm v. 21st Century Insurance Company, 166 Cal. App. 4th 1225, 1237-41 (2008).[6]

---

[5] Travelers' attempt to "prove" the genuineness of its coverage dispute by relying on the denial letters of other carriers is absurd. (See Chao Decl., ¶ 11 and Ex. G thereto). First, this purported evidence is inadmissible hearsay. Second, these carriers issued different policies for different subcontractors, who performed different work at the homes at issue. Third, based on Traveler's' flawed logic, the fact that even one carrier acknowledged its duty to defend proves there is no such dispute. Here, two carriers acknowledged a duty to defend, Travelers and Hartford. (See Chao Decl., ¶ 4 and Ex. B thereto, Hartford acceptance letter.)

[6] Some courts also no longer include a jury instruction on "genuine issue" because the only relevant question is whether the denial was unreasonable or without proper cause. See McCoy v. Progressive W. Ins. Co., 171 Cal. App. 4th 785, 792-94 (2009).



NEWMEYER & DILLION LLP

**(1) Travelers' Uninterrupted Defense of Its Named Insured Proves There Is No "Genuine Dispute."**

It cannot be ignored that Travelers never raised any question, much less a dispute, over the potential for coverage to its named insured, Norcraft, who it has been defending all along under on the same policies, the same complaint, the same damage allegations, and the same facts. Judge Lloyd has previously noted that "Travelers' 'obligation to defend both of its insureds arose under the same policies, from the same complaint, the same damage allegations, and the same facts.'" (Docket No. 70, Discovery Order, 4:24-26.)

Travelers acknowledged its duty to defend Norcraft on June 25, 2009. (Ex. 5 to Schlecht Decl., Norcraft Acceptance Letter.) Travelers retained counsel to defend Norcraft in the Aldrich Action on June 22, 2009. (Ex. 6 to Schlecht Decl., Declaration of David J. DeMordaunt, ¶ 2.) Travelers has continually defended Norcraft to this date, and was the entity that authorized and funded the indemnity settlement between Norcraft and the Aldrich homeowners. (Ex. 7 to Schlecht Decl., Deborah Ann Taylor Deposition Transcript ("Taylor Depo. Transcript"), 109:23 to 110:9.) If the Aldrich Action presents a potential for covered damages as to Norcraft, by definition, it must also establish such potential as to KB Home. Yet, Travelers' treatment of its additional insured could not be more disparate.

**(2) An Independent, Unbiased And Thorough Investigation Is A Necessary Perquisite To the Assertion Of A "Genuine Dispute."**

Failure to conduct an independent, unbiased and thorough investigation precludes any assertion of "genuine dispute." "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." Wilson v. 21st Century, 42 Cal. 4th at 723.

Here, as Travelers acknowledged, the allegations of the Aldrich Complaint triggered Travelers' duty to defend immediately upon tender. Had Travelers conducted any investigation, it would have confirmed that fact. Instead, the undisputed facts establish that it conducted no independent investigation whatsoever. For example, Travelers' adjuster, Patricia Dlugokenski,



NEWMEYER & DILLION LLP

testified that she reviewed only the documents provided by KB Home:

- She reviewed the complaint, the Norcraft subcontracts, the Norcraft policies, and the additional insured endorsements to the Norcraft policies (Ex. 8 to Schlecht Decl. (Patricia Dlugokenski Deposition Transcript Vol. I ("Dlugokenski Depo. Transcript Vol. I"), 66:14 to 67:6));
- She confirmed the NOC (notice of completion) dates for the homes involved (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol I, 66:22-24);
- She did not review any other documents before issuing Travelers' acceptance of defense on July 6, 2009 (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. I , 66:14 to 67:11);
- She concluded that Norcraft performed cabinet work at the homes in the <u>Aldrich</u> Action (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol I, 59:7-12 and 60:4-11); and
- She concluded that the <u>Aldrich</u> Complaint alleged cabinet defects (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. I, 59:17-19).

As previously discussed, Travelers' Claim Notes on July 6, 2009 document Traveler's decision to accept KB Home's defense tender because of a likelihood of covered damages. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/6/09 (TRPD-000757).)

There is no evidence that Travelers conducted any investigation whatsoever after it accepted defense. For example, Travelers did not contact plaintiffs' counsel in the <u>Aldrich</u> Action to verify if the homeowners were alleging resultant damage in their construction defect lawsuit. (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol I, 76:16-22).) Travelers conducted no factual analysis. It never hired any independent consultant or investigator to investigate KB Home's tender under the Norcraft Policies. (Ex. 8 to Schlecht Decl., Dlugokenski Depo, Transcript Vol. I, 82:9-12.) It never sent a representative to visit the properties or attend site inspections. (Ex. 8 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. I, 82:13-16).) The entire sum and substance of Travelers' investigation was its repeated demand that KB Home provide documents ***that it knew did not exist***.

Further, as KB Home's designated expert witness, Charles Miller, points out, Travelers



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

undertook no active investigation to determine whether allegations of resultant damage were present in the Aldrich Action (Ex. 10 to Schlecht Decl., Charles Miller Deposition Transcript ("Miller Depo. Transcript"), 114:24 to 115:14.) Mr. Miller also testified that Travelers failed to conduct a thorough and timely investigation in accordance with insurance industry claims-handling standards and the standards of the industry by failing to, for instance, meet with the named insured, get information from the plaintiff's counsel, and get documents from the policyholder and the additional insured, within 30 to 60 days. (Ex. 10 to Schlecht Decl., Miller Depo. Transcript, 150:11 to 151:23.)

Based on the above facts, Travelers failed to conduct the investigation required by law.

**B. Travelers' Bad Faith is Well Documented.**

**(1) Travelers' Promise To Defend KB Home Was Fraudulent At The Time It Was Made.**

The facts also show that Travelers never had any intention of providing KB Home an immediate and complete defense as required under California law. In fact, at most, Travelers planned on paying 10% of KB Home's defense. When Travelers realized that it would need to pay more, it scrambled to concoct an excuse to withdraw from the defense. The full extent of Travelers' fraudulent and despicable conduct is revealed by its own Claim Notes. (Ex. G to Dlugokenski Decl.) These notes reveal that three events solely impacting Travelers' assessment of the ***cost*** of KB Home's defense occurred between Travelers' acceptance on July 6, 2009 and Travelers' decision to withdraw on or about December 10, 2009: (1) Travelers set a low defense reserve based on its anticipation that ***at least ten*** insurers would participate in KB Home's defense such that Travelers would only be required to fund 10% of the defense (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 7/14/09 (TRPD-000756-57)); (2) Travelers received its first bills for the Aldrich Action and realized that it was ***the only*** insurer that had acknowledged its duty to defend KB Home (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 10/20/09 (TRPD-000754)); and (3) Travelers learned that its co-carrier, Safeco, denied KB Home's defense tender (Ex. G to Dlugokenski Decl. (Travelers Claim Notes, Entry of 10/22/09 (TRPD-000754)).

In addition, the Claim Notes reflect an entry on November 3, 2009 of "recent receipt of AI allocation." (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 11/5/09 (TRPD-000754).) The ***very next*** entry on December 10, 2009 was an unexplained entry that Travelers would be "withdrawing our AI acceptance." (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entry of 12/10/09 (TRPD-000754).)

The facts reveal that there was never a "genuine dispute" over whether sufficient information existed before July 6, 2009 to trigger Travelers' duty to defend. All facts point to the only proper conclusion, as evidenced in its own Claim Notes, that Travelers owed KB Home a defense. Travelers has not and cannot articulate *any* investigation that it conducted between the time it accepted defense on July 6, 2009 and the time it withdrew its defense on December 10, 2009. That is because it did not perform any additional investigation and has no reasonable explanation to justify its radical and unusual decision to withdraw from KB Home's defense and abandon it to defend itself.

**(2) Travelers Improperly Withdrew From KB Home's Defense.**

Once triggered, the duty to defend continues until the case is concluded or the insurer conclusively establishes that the underlying complaint "*can by no conceivable theory raise a single issue which could bring it within the policy coverage*." Borg, 47 Cal. App. 4th at 455 (citing Montrose, 6 Cal. 4th at 300).

Travelers has not and cannot establish either means for extinguishing the duty to defend. Travelers acknowledged its duty to defend in July 2009. Then, without ever issuing payment, Travelers simply announced that it would be withdrawing its agreement to defend on December 10, 2009 and sent a formal withdrawal letter on March 9, 2010. (Ex. J to Dlugokenski Decl., 2, E-mail dated 12/10/09 from Patricia Dlugokenski; Ex. K to Dlugokenski Decl., Letter dated 3/9/10 from Patricia Dlugokenski.)

During this time, Travelers conducted no independent investigation and nothing occurred in the Aldrich Action that could have supported Travelers' radical decision to withdraw coverage. In fact, Travelers' Claim Notes reveal that Travelers' decision to withdraw coverage was based entirely on the fact that it would be responsible for much more of the defense costs than it had

initially anticipated. (Ex. G to Dlugokenski Decl., Travelers Claim Notes, Entries of 7/14/09, 10/20/09, and 10/22/09 (TRPD-000756-57, TRPD-000754, and TRPD-000754, respectively).)

**(3) <u>Travelers Tortiously Refused To Reconsider Its Withdrawal Despite Extrinsic Facts Contradicting Its Coverage Position.</u>**

"[T]he insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith." <u>Shade Foods</u>, 78 Cal. App. 4th at 880.

Not wishing to simultaneously defend the <u>Aldrich</u> Action and wage protracted coverage litigation with Travelers, KB Home went over and above to obtain extrinsic evidence further confirming Travelers' duty to defend. KB Home obtained a letter from plaintiffs' counsel in the <u>Aldrich</u> Action confirming that the homeowners were in fact "pursuing recovery for damages arising out of the cabinets." (Ex. D to Chao Decl., E-mail dated 7/8/10 from James Hultz attaching letter dated 7/8/10 from Fred M. Adelman).) When Travelers still refused to defend KB Home, KB Home also obtained a defect list for cabinets from Plaintiffs' counsel in the <u>Aldrich</u> Action. (Chao Decl., ¶ 8 and Ex. E thereto, E-mail dated 8/4/10 from C. Kendie Schlecht attaching <u>Aldrich</u> Preliminary Defect List for cabinets.)

Although Travelers eventually acknowledged that the cabinet defect list it received on August 4, 2010 "created a potential for indemnification under the policies issued to Norcraft," it did not do so until December 17, 2010. (Ex. L to Dlugokenski Decl., December 17, 2010 reservation of rights letter.) Inexplicably, Travelers unreasonably and in bad faith waited four months – during which time the parties continued to actively litigate this coverage action and even attended private mediation on December 3, 2010 – before informing KB Home that the August 4, 2010 cabinet defect list was sufficient to trigger Travelers' duty to defend subject to a reservation of rights.

In its current motion, Travelers for the first time attempts to explain away its unreasonable delay by claiming it could not confirm that the August 4, 2010 defect list was deposited in the <u>Aldrich</u> Action document depository until November 11, 2010. (Travelers' Motion, 10:28 to 11:4; Chao Decl., ¶ 9.) The declaration of Travelers' counsel, Jason Chao is both misleading,



NEWMEYER & DILLION LLP

inaccurate, and submitted in bad faith to further this motion.[7] In truth, Travelers received a copy of the August 4, 2010 cabinet defect list directly from homeowners' counsel on August 6, 2010.[8] (Schlecht Decl., ¶ 8 and Ex. 11 thereto.) Travelers had confirmation from homeowners' counsel in the Aldrich Action no later than August 6, 2010 that the defect list was in fact a true and genuine document listing the homeowners' alleged damages arising out of cabinet defects.

Further, "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Travelers must consider all facts from any source in determining its duty to defend. Montrose supra, 6 Cal. 4th at 298-99; Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y., 176 Cal. App. 4th 172, 198 (2009); American States Ins. Co. v. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18, 26 (2009). There is no requirement that such facts be in the form of admissible evidence at the time they are submitted.

In addition, a defense is owed as soon as Travelers has knowledge of any facts showing a potential for coverage. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 277 (1966). California courts' rationale for this requirement is that extrinsic facts known to the insurer may generate a duty to defend because (1) liberal rules allowing for amendment of pleadings and (2) the third party plaintiff who drafted the complaint cannot be the arbiter of the policy's coverage. (Montrose, 6 Cal. 4th at 295; Gray, 65 Cal. 2d at 275-77; Croskey, supra at ¶ 7:574)

At minimum, Travelers' unjustified delay between August 2010 and December 2010 to acknowledge its defense obligation is compelling evidence of its unreasonable behavior toward its insured.

**(4) Travelers Continues To Improperly Limit Its Defense Obligations.**

Even after Travelers finally claimed to accept its defense obligation on December 17,

---

[7] Pursuant to Federal Rules of Civil Procedure, Rule 56(h), where a declaration has been submitted in bad faith, the Court, after giving notice and a reasonable time to respond, may order the submitting party to pay the other party's reasonable expenses, including attorneys' fees, incurred as a result, in addition to other appropriate sanctions.

[8] Although Norcraft counsel's letter is dated September 23, 2010, he attached a copy of the cabinet defect list he received from Aldrich plaintiffs' counsel. The fax confirmation stamp at the top of the attachment shows that the cabinet defect list was actually faxed on August 6, 2010 at 3:11 p.m. to counsel for Norcraft, who is Travelers' staff counsel appointed to defend Norcraft.

2010, it continued to deny that the Aldrich Complaint triggered its duty to defend. Rather, it stated, its duty to defend was triggered no earlier than August 4, 2010, the date that Travelers received the cabinet defect list. (Ex. L to Dlugokenski Decl., Letter dated 12/17/10 from Patricia Dlugokenski.) Travelers persists in this position although its own claims adjuster acknowledges otherwise: "Based on this recent information [the cabinet defect list] and our recent acceptance of KB's tender we owe defense costs from the date of tender." (Ex. G, Travelers Claim Notes, Entry of 1/31/11 (TRPD-000750); Ex. 9 to Schlecht Decl., Dlugokenski Depo. Transcript Vol. II, 210:4-8.)

Further, Travelers has now filed a Counterclaim against KB Home for amounts it has paid over the unlawful self-imposed limitations on its duty to defend. (Docket No. 126, Amended Answer to Complaint and Counterclaim against KB Home.) KB Home, thus, is still left with no choice but to simultaneously defend itself in the Aldrich Action and litigate the coverage issues in this matter.

**(5) Travelers Improperly Sought To Displace KB Home's Defense Counsel With Panel Counsel Despite Ethical Conflicts.**

Moreover, as extensively briefed in KB Home's Opposition to Travelers motion for summary judgment heard on September 30, 2011, Travelers attempted to replace KB Home's defense counsel, who had been defending the case for nearly two years, with Travelers' choice of counsel who had a clear conflict of interest. (Docket No. 124, 10:22 to 14:18; Ex. 12 to Schlecht Decl., Declaration of David B. Simons in support of Opposition to Travelers' Motion for Summary Judgment.) Travelers has taken the position that by simply voicing legitimate objections regarding this conflict, it can strip KB Home of all available coverage under the Norcraft Policies. (See e.g., Docket No. 106, 11:22-23.)

**(6) Travelers Improperly Withdrew Its Defense A Second Time Based On Another False Claim.**

On February 8, 2012, Travelers again withdrew from KB Home's defense in the Aldrich Action falsely claiming:

> The settlement between Norcraft and the plaintiffs resolves all liability relating to Norcraft's work. Therefore, at this time, pursuant to the settlement agreement between Norcraft and all of the plaintiffs, and the Court's Order adjudicating the good faith of said settlement, there are no longer any allegations by plaintiffs of damages arising out of Norcraft's work. Because there are no longer any allegations of resulting property damages arising from Norcraft's work, there is no potential for coverage for KB and Travelers is not under a duty to defend KB. Therefore, Travelers is entitled to withdraw from participating in KB's defense in the Aldrich Action.

(Ex. 3 to Glaspy Decl., Letter dated February 8, 2012 from Patricia Dlugokenski.) In response to Travelers' withdrawal from its defense, counsel for KB Home informed Travelers that it did not appear that the Norcraft settlement agreement had been fully executed or completed. Therefore, Travelers' duty to defend KB Home continued. (Ex. 13 to Schlecht Decl., Letter dated March 6, 2012 from C. Kendie Schlecht.) Travelers never responded to KB Home's letter of March 6, 2012. However, KB Home deposed Travelers' named insured adjuster for Norcraft, Deborah Ann Taylor. She confirmed KB Home's suspicions that the settlement between Norcraft and the Aldrich plaintiffs was not complete and that Travelers was still paying Norcraft's counsel to defend it while the settlement was being completed. (Ex. 7 to Schlecht Decl., Taylor Depo. Transcript, 115:25 to 117:2.)

Travelers committed bad faith yet again when it falsely claimed that the Norcraft settlement with the homeowners was complete in order to cut-off KB Home's defense. Travelers knew full well that the Norcraft settlement was not complete because: (1) it was still paying for Norcraft's defense; and (2) KB Home told Travelers the settlement was not complete. Yet, to this day, Travelers has refused to reconsider its second wrongful withdrawal from KB Home's defense. (Schlecht Decl., ¶ 11.)

**(7) Travelers Has Engaged Malicious And Bad Faith Discovery Tactics To Conceal Information From KB Home.**

"Evidence of an insurer's conduct during litigation is admissible to show the insured's breach of the covenant of good faith and fair dealing." White v. Western Title Ins. Co., 40 Cal. 3d 870, 885-89 (1985). Further, an insured may introduce evidence of the insurer's failure to comply with discovery obligations during the coverage litigation to show a continuing practice of



NEWMEYER & DILLION LLP

attempting to frustrate the policyholder's claim. Journal Publishing Co. v. American Home Assur. Co., 771 F. Supp. 632, 636 (S.D.N.Y. 1991).

Judge Lloyd ordered Travelers to comply with KB Home's written discovery requests, and Travelers was ordered to again produce two of its witnesses to answer questions they previously refused to answer. (Docket No. 70, Discovery Order.) Travelers was further sanctioned in the amount **$18,927.50** in connection with its improper refusal to provide responses to legitimate discovery requests. (Docket No. 104.)

Travelers' discovery abuses and continued efforts to frustrate its insured's claims are further highlighted by the fact that in its four motions to compel, KB Home merely requested that Travelers: (1) confirm that Travelers was defending its named insured, Norcraft, at the same time that it refused to defend its additional insured; and (2) determine why Travelers agreed there was a potential for coverage to Norcraft but not to KB Home under the same terms in the same policies of insurance. (See Docket 70, Discovery Order, 2:21-25.) Travelers refused to answer even those straightforward questions, presumably because it had no reasonable justification for treating its insureds differently.

Despite being ordered to compel and heavily sanctioned, Travelers remains undeterred in its refusal to provide relevant and legitimate information requested by KB Home. Travelers' bad faith discovery conduct has forced KB Home to file further discovery motions, which are still pending. (See e.g., Docket Nos. 84, 89, 98, 158, 165-167.)

Travelers has also repeatedly sought to disrupt deposition proceedings in this matter. Travelers' conduct has progressed from improper witness coaching to harassing and threatening KB Home's counsel with physical violence. (Hultz Decl., ¶¶ 2-3; Schlecht Decl., ¶ 13.)

Specifically, on April 16, 2012, KB Home deposed Travelers' unit manager, Tom Frazier, who had supervised the handling of KB Home's tender. (Hultz Decl., ¶ 2.) Travelers' *Pro Hac Vice* counsel, Thomas Lether defended the deposition. (Id.) Travelers' in-house counsel, Troy Edwards, also appeared at the deposition. (Id.) Mr. Edwards made numerous speaking objections attempting to coach the witness and generally attempted to disrupt the deposition. (Hultz Decl., ¶ 3 ) At one point during the questioning, suddenly and without provocation, Mr.

Edwards violently slammed his fists to the table and began threating KB Home's counsel with physical violence, screaming, "let's take this outside." (Hultz Decl., ¶ 3 and Ex.4 thereto, Tom Frazier Deposition Transcript, 138:6 to 139:10.) When KB Home's counsel asked whether Mr. Edwards intended to threaten physical violence, Mr. Edwards screamed "No, I'm promising." (Hultz Decl., ¶ 3 and Ex.4 thereto, Tom Frazier Deposition Transcript, 139:17-19.)

Four days later, on April 20, 2012, KB Home deposed its Western Regional Manager, Richard Carrillo. (Schlecht Decl., ¶ 13.) Travelers' counsel in this matter, A. Eric Aguilera, defended the deposition and Mr. Edwards again also appeared. (Id.) Mr. Edwards along with Mr. Aguilera sought to disrupt proceedings by harassing and intimidating KB Home's counsel. For example, Travelers' counsel engaged in the following dialogue on the record directed at KB Home's counsel after she had attempted to discuss a compromise regarding a line of questioning:

> MR. EDWARDS: Do the two of you want to get a room or...
>
> MR. AGUILERA: Hey, look.
>
> MR. EDWARDS: Huh?
>
> MR. AGUILERA: You know, we don't have to, you know, threaten counsel in order to get things done in this world, all right?
>
> MR. EDWARDS: Is that right?
>
> ***
>
> MR. EDWARDS: She's got a very nice smile.
>
> MR. AGUILERA: She's turning a little red, though.
>
> MR. EDWARDS: Well, it's okay. I want the Court to see that I'm flirting with counsel, both of them.

(Ex. 15 to Schlecht Decl., Richard Carrillo Deposition Transcript Vol. 3, 52:6 to 53:8.)

Travelers' extremely inappropriate and personal comments were intended to harass KB Home's counsel. Further, Travelers' counsel comments that he did not need to "threaten counsel in order to get things done" was a direct reference to the previous and very recent events in which Mr. Edwards physically threatened KB Home's counsel. These comments clearly intended to intimidate and threaten KB Home's counsel.

Travelers' attempts to conceal relevant information, harass, intimidate and threaten KB

Home's counsel reflect the utter disdain and contempt towards its insureds. Travelers' malicious discovery conduct is just another manifestation of its bad faith toward KB Home.

**(8) Travelers Has Filed A Lawsuit Against KB Home In Retaliation For This Coverage Action.**

On April 30, 2012, Travelers filed a complaint in the Central District of California against KB Home in connection with eleven underlying construction defect lawsuits ("Retaliatory Complaint"). (Ex. 1KB Home's Request for Judicial Notice, Ex. 1, Travelers, et al. v. KB Home Coastal, Inc., et al., Central District of California Case No.: 2:12-cv-02473-DSF.) The Retaliatory Complaint involves KB Home's alleged actions and communications in connection with eleven underlying construction defect lawsuits. (Hultz Decl., ¶ 4.) In eight of those eleven underlying actions, KB Home had tendered its defense under the very same policies that Travelers issued to Norcraft that are at issue here. (Id.)

It should be noted that three of the eleven underlying actions listed in the Retaliatory Complaint were brought by the same plaintiffs' law firm and involve *identical* damage allegations as those involved in this matter. In those matters, KB Home tendered its defense as an additional insured to policies that Travelers had issued to the cabinet subcontractor who had worked on the homes at issue, including Norcraft. Travelers agreed to defend KB Home and did not claim that the damage allegations were insufficient. (Declaration of Daniel R. Ryan, ¶¶ 4-7 and Ex. 19 thereto; Declaration of Clayton T. Tanaka, ¶¶ 4-7 and Ex. 20 thereto; Declaration of Jonathan King, ¶¶ 4-7 and Ex. 21 thereto.)

Travelers' Retaliatory Complaint further establishes Travelers' bad faith. See Dalrymple v. United Services Auto. Ass'n, 40 Cal. App. 4th 497, 519 (1995).

**C. Travelers' Motion Would Not Dispose Of Any Issue.**

Even assuming *arguendo* that the SB800 Motion somehow served as ex post justification for Travelers' refusal to defend KB Home as to the homes listed in the SB800 Notice, Travelers would still have owed KB Home a duty to completely defend the Aldrich Action by virtue of the 14 homes at issue in the Aldrich Action that did not submit a SB800 Notice. (Glaspy Decl., ¶ 13.) The Aldrich Complaint allegations remain the only allegations asserted by the owners of

those homes and, as discussed above, Travelers acknowledged that the Aldrich Complaint asserted a *likelihood* of covered damages.

**8. CONCLUSION.**

KB Home's motion to clarify the Aldrich plaintiffs' SB800 Notice could not possibly serve as justification for Travelers' refusal to defend KB Home. Travelers was required to defend KB Home upon showing of a bare possibility or potential of coverage. Montrose, 6 Cal. 4th at 295. Conversely, SB800 requires a greater level of specificity regarding alleged defects in order to allow a homebuilder to repair the alleged defects.

KB Home has proffered substantial evidence demonstrating Travelers' unreasonable and bad faith behavior from 2009 to the present. The existence of disputed issues of material fact regarding Travelers' unreasonable conduct toward its insured dictates that Travelers' motion for partial summary judgment be denied in its entirety.

Dated: June 15, 2012

NEWMEYER & DILLION LLP

By:____________________
C. Kendie Schlecht
Attorneys for Plaintiffs and Counter-Defendants KAUFMAN & BROAD MONTEREY BAY, a California corporation; and KB HOME SOUTH BAY, INC., a California corporation