**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera (SBN 192390)
Raymond E. Brown (SBN 164819)
Kari M. Myron (SBN 158592)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
T: 714-384-6600
F: 714-384-6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
kmyron@aguileragroup.com

**LETHER & ASSOCIATES, PLLC**
Thomas Lether, Esq., *Pro Hac Vice*
3316 Fuhrman Ave E
Suite 250
Seattle, WA 98102-3800
T: 206-467-5444
tlether@letherlaw.com

Attorneys for Defendant/Counterclaimant,
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTER ACTION. | CASE NO.: 5:10-cv-02856-EJD<br>Hon. Judge: Edward J. Davilla<br>Courtroom: 4<br><br>**TRAVELERS' REPLY TO KB HOME'S OPPOSITION TO TRAVELERS MOTION FOR PARTIAL SUMMARY JUDGMENT RE KB HOME'S EIGHTH, NINTH, FOURTEENTH AND NINETEENTH AFFIRMATIVE DEFENSES**<br><br>Date: September 14, 2012<br>Time: 9:00 a.m.<br>Courtroom: 4<br><br>Trial Date: TBA<br>Date Complaint Filed: May 27, 2010 |

## TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. TRAVELERS' MOTION IS PROPERTY BEFORE THE COURT ........ 2

III. TRAVELERS DID NOT BREACH THE INSURANCE CONTRACTS ........ 2

A. KB Home Failed to Bring Itself Within The Parameters of Coverage ........ 2

B. The Opinions of Travelers' Adjusters are Irrelevant to the Determination of Whether KB Home Was Covered ........ 4

C. When Documentation Establishing Even A Potential For Covered Damages Was Finally Provided, Travelers Provided Coverage ........ 5

D. KB Home's Breach Of The Cooperation Clause Was the Only Breach ........ 6

E. Travelers Never Relinquished its Right to Control the Defense ........ 7

1. KB Home Cannot Establish That Travelers Wrongfully Refused to ........ 8

Provide a Defense ........ 8

2. KB Home Cannot Establish That Travelers Intentionally Relinquished a Known Right ........ 8

3. The Evidence Establishes that Travelers Expressly Reserved the Right to Control KB Home's Defense ........ 9

4. California Law Abhors a Forfeiture and Does Not Permit Such a Finding Absent Facts Showing an Insurer Acted Wrongfully and in Bad Faith ........ 9

F. KB Home's Refusal to Accept Travelers' Choice of Counsel is Inherently Prejudicial ... 11

G. KB Home's Alleged Conflicts With Travelers' Choice of Counsel Have Been Manufactured in Conjunction With its Breach of the Norcraft Policies ........ 12

IV. TRAVELERS HAS AT ALL TIMES ACTED IN GOOD FAITH ........ 13

A. Travelers Neither Withheld Nor Denied KB Home Any Benefits ........ 13

B. Any Delay In Paying Benefits Was Based On A Genuine Dispute Re Coverage ........ 13

V. KB HOME'S DAMAGE CLAIMS ARE SPECIOUS ........ 15

## TABLE OF AUTHORITIES

**Cases**

*Aerojet-General Corporation v. Transport Indemnity Company*
17 Cal.4th 38 (1997) ........ 3

*Billington v. Interinsurance Exch. of So. Cal.*
71 Cal.2d 728 (1969) ........ 11

*Brandt v. Superior Court*
37 Cal.3d 813 (1985) ........ 14

*Brooklyn Navy Yard Cogeneration Partners v. Superior Court*
60 Cal.App.4th 248 (1997) ........ 13

*Buss v. Superior Court*
16 Cal.4th 35 (1997) ........ 3

*Carlton v. St. Paul Mercury Ins. Co.*
30 Cal.App.4th 1450 (1994) ........ 11

*Chase v. Blue Cross of California*
42 Cal.App.4th 1142 (1996) ........ 9, 10

*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*
90 Cal.App.4th 335 (2001) ........ 11

*Chatton v. National Union Fire Ins. Co.*
10 Cal.App.4th 846 (1992) ........ 4

*Dynamic Concepts, Inc. v. Truck Ins. Exch.*
61 Cal.App.4th 999 (1998) ........ 11, 12

*F & H Constr. Co. v. ITT Hartford Ins. Co. of the Midwest*
118 Cal.App.4th 364 (2004) ........ 3

*Gray v. Begley*
182 Cal.App.4th 1509 (2010) ........ 7

*Gunderson v. Fire Ins. Exchange*
37 Cal.App.4th 1106 (1995) ........ 3

*Jade K. v. Viguri*
210 Cal.App.3d 1459 (1989) ........ 7

*Jordan v. Allstate Ins. Col.*
116 Cal.App.4th 1206 (2004) ..... 4

*Montrose Chemical Corp. v. Superior Court*
6 Cal.4th 287 (1993) ..... 3

*New Hampshire v. Vieira*
930 F.2d 696 (9th Cir. 1991) ..... 3

*Petersen v. Hartnell*
40 Cal.3d 102 (1985) ..... 10

*Ringler Associates Inc. v. Maryland*
80 Cal.App.4th 1165 (2000) ..... 15

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*
3:10-CV-02757-CRB (N.D.CA, June, 23, 2010) ..... 11, 12

*Truck Ins. Exch. v. Unigard Ins. Co.*
79 Cal.App.4th 966 (2000) ..... 6, 11

*Valladao v. Fireman's Fund Indem. Co.*
13 Cal.2d 322 (1939) ..... 7

*W.D. O'Morrow v. Board*
27 Cal.2d 794 (1946) ..... 9

*Waller v. Truck Ins. Exchange, Inc.*
11 Cal.4th 1 (1995) ..... 8

**Statutes**

Cal. Civil Code § 1442 ..... 10

Cal. Civ. Code § 3294 ..... 10

Cal. Civ. Code § 3369 ..... 10

Cal. Civ. Code § 1670, 1671 ..... 10

Cal. Civ. Code § 1671 ..... 10

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers") submits the following points and authorities for the consideration of the Court in support of its Motion for Partial Summary Judgment as to KB Home's Eighth, Ninth, Fourteenth and Nineteenth Affirmative Defenses and in reply to the opposition to that motion filed by plaintiffs KAUFMAN & BROAD MONTEREY BAY and KB HOME SOUTH BAY, INC (collectively "KB Home").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Travelers' instant motion for partial summary judgment seeks a ruling that KB Home is precluded from asserting its eighth (Travelers' alleged breach of the Norcraft policies), ninth (Traveler' alleged breach of the covenant of good faith and fair dealing), fourteenth (Travelers' alleged failure to fulfill its contractual obligations) and nineteenth (Travelers' alleged failure to defend KB Home has excused KB from performance of its own obligations) affirmative defenses due to the fact that Travelers never breached the insurance contracts naming KB Home as an additional insured or the implied covenant of good faith and fair dealing.

Despite its consistent attempts to portray itself as a victim, the facts clearly establish that Travelers exceeded industry standards in defending KB Home in the Aldrich action. Travelers picked up KB Home's defense despite a complete lack of allegations or extrinsic evidence showing a potential for covered property damage arising from the work of its insured. Travelers only withdrew coverage after its 11-month investigation into allegations of resulting property damage arising out of the work of its named insured revealed nothing more than damages to the cabinets themselves.[1] When Travelers was finally presented with a single-page defect list suggesting the potential for covered damages, it again agreed to provide a defense. Notwithstanding that Travelers has paid no less than $300,000 to defend KB Home, and $30,000 to settle claims against KB Home; KB Home contends it is entitled, as a matter of law, to ignore its obligations to Travelers.

Moreover, KB Home's opposition only attempts to divert these central issues by arguing facts and issues that are completely irrelevant to the present motion. Notwithstanding its wide-

[1] Travelers would later learn that KB Home knew that the issue was moot as its own Lot Files – intentionally withheld from Travelers – are devoid of any claim for damages arising out of defective cabinets.

ranging collection of irresponsible and misleading statements regarding Travelers' counsel, the facts before the court clearly establish that KB Home's eighth, ninth, fourteenth and nineteenth affirmative defenses cannot survive summary judgment. Travelers did not breach the insurance contracts or the implied covenant of good faith and fair dealing. To the contrary, Travelers provided a defense to KB Home before it had even completed its coverage investigation.

## II. TRAVELERS' MOTION IS PROPERTY BEFORE THE COURT

Contrary to any assertions by KB Home, Travelers' motion is not duplicative of the motion for summary judgment that it filed on August 26, 2011 [Dkt. No. 106], nor is it beyond the scope of this Court's order extending the summary judgment motion deadline to June 1, 2012 [Dkt. No. 147]. First, the Court's December 12, 2011, does not state that the June 1, 2012, deadline for filing dispositive motions only applies to motions related to the "New Claims."

Moreover, Travelers' prior motion challenged KB Home's complaint, arguing that KB Home cannot prevail on its causes of action against Travelers sounding in breach of contract and breach of the implied covenant of good faith and fair dealing. [Dkt. No. 106.] By contrast, the instant summary judgment motion addresses affirmative defenses asserted by KB Home in its September 30, 2011, Answer to Travelers' Counterclaim. Accordingly, the instant motion for summary judgment falls directly under the definition of "New Claims" as ordered by the court in its December 12, 2011 Case Management Order. [Dkt. No. 147.]

Finally, Federal Rule of Civil Procedure 56(a) specifically provides for a party to move for summary judgment as to a claim or defense raised by another party. Any potential similarity in Travelers' arguments is entirely a result of KB Home's unilateral decision to assert affirmative defenses that mirror the allegations in its original complaint. KB Home's belief that this similarity somehow robs Travelers of its statutory right to move for summary judgment is indicative of a fundamental failure to understand the law.

## III. TRAVELERS DID NOT BREACH THE INSURANCE CONTRACTS

### A. KB Home Failed to Bring Itself Within The Parameters of Coverage

Longstanding California case law has established that an insurer's duty to defend does not extend to claims for which there is no potential for liability coverage. See, *Aerojet-General*

*Corporation v. Transport Indemnity Company*, 17 Cal.4th 38 (1997); *Buss v. Superior Court*, 16 Cal.4th 35 (1997). The insured bears the burden to "show that the underlying claim *may* fall within policy coverage." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993). Only after making this initial showing is the burden upon the insurer to show that the underlying claim *cannot* fall within policy coverage. *Ibid.* An insurer may therefore refuse to defend the lawsuit if it has made an informed decision based on the third party complaint and the extrinsic facts known to it at the time of tender that there are no facts indicating the claim falls within the policy. *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106 (1995).

As argued throughout Travelers' motion, commercial general liability policies do not warranty the insured's own work or product but rather provide coverage for consequential damages to other property resulting from the insured's work or product. Likewise, the incorporation of defective workmanship or materials alone does not constitute covered "property damage" triggering a duty to defend. *F & H Constr. Co. v. ITT Hartford Ins. Co. of the Midwest,* 118 Cal.App.4th 364 (2004), citing *New Hampshire v. Vieira*, 930 F.2d 696 (9th Cir. 1991) (applying California law).

KB Home's initial tender of its defense included only the complaint in the Aldrich action, KB Home's cross-complaint against the subcontractors, and the subcontract between KB Home and Norcraft. In the 11-month period following KB Home's tender, Travelers adjuster Patricia Dlugokenski repeatedly requested supporting documentation including any documentation related to the alleged defects and resulting damages attributable to the work of its named insured. The only additional documents supplied by KB Home were the first amended complaint, special master order, and a homeowners' matrix – none of which evidenced a potential for covered property damage arising out of the work of the cabinet installer.

In fact, the Aldrich complaint only alleges two discrete defects to the cabinets – "wood trim" and "useful life." [Dkt. No. 108-2, Ex. C.] Those allegations are insufficient to trigger Travelers' duty to defend under the insurance policies as they do not allege any ***resulting*** property damage. As such, no duty to defend was triggered by the original complaint. The same can be said for the First Amended Complaint. Nowhere does the First Amended Complaint suggest ***property damage*** resulting from the cabinet install. Instead, the homeowners only seek "damages" for costs

associated with investigation (to identify the claimed defects), repair costs (to repair the defects), replacement costs (to replace the manufactured products), and loss of use expenses (anticipated to be incurred during the repair and replacement process). [Dkt. No. 108-2, Ex. E]

As of March 2010, it was abundantly clear that the ***only allegations*** of "damage" relating to the Norcraft cabinets were allegations of cosmetic damage to Norcraft's own work and products and/or complaints about how long the cabinets would last. Such damages are insufficient to qualify as "property damage" as defined in the Norcraft policies as the terms of the policies and the additional insured endorsements provide that KB Home is only covered for ***damage to other property*** resulting from Norcraft's work.

KB Home's continued misinterpretation of facts suggesting that Travelers' duty to defend had been triggered at that point in time is pure fiction made even more egregious when one acknowledges that KB Home failed to produce or disclose the existence of Lot Files and Notices of Claim conclusively establishing that not a single homeowner ever asserted a cabinet-related claim for anything other than damage to the cabinets themselves. It stands to reason that KB Home's refusal to provide those items despite Travelers' repeated requests for them was based on the fact that the documents further confirmed that Travelers had no coverage obligation.

### B. The Opinions of Travelers' Adjusters are Irrelevant to the Determination of Whether KB Home Was Covered

Claim handlers' opinions have no relevance to the determination regarding whether coverage exists under a particular policy. See, *Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846, 865 (1992) ("It is well settled that the interpretation of an insurance policy is a legal rather than a factual determination. Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract.") (Internal cites omitted)]; see also, *Jordan v. Allstate Ins. Col.,* 116 Cal.App.4th 1206, 1212 (2004) ["Absent a factual dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law." (Internal cites omitted)].

In support of its opposition, KB Home clings to a single Travelers' claim note entry made by claim handler, Patrica Dlugokenski, as its only "evidence" that the Aldrich Complaint triggered

Travelers' duty to defend. When queried in deposition about the note, however, Ms. Dlugokenski testified that by accepting she was "giving the insured the benefit of the doubt" and that she had no information or documentation evidencing allegations of resulting damages arising from the cabinets. [Dkt. No. 118, Ex. X, 154:17-25, 155:6-12, 238:17-239:9.] Moreover, Ms. Dlugokenski's opinion as to the likelihood of coverage existing is irrelevant, however, to the legal determination as to the application of the facts to Travelers' duty under the policy. Accordingly, even if Ms. Dlugokenski believed the materials showed resulting property damage, it would not somehow create coverage where none exists.

### C. When Documentation Establishing Even A Potential For Covered Damages Was Finally Provided, Travelers Provided Coverage

On August 4, 2010, after Travelers had been requesting such documentation for almost a year and a half, KB Home finally provided a one-page document to coverage counsel for Travelers entitled "Aldrich, et al. v. KB Home, et al., Preliminary Defect List" described as a defect list related only to cabinet defects. [Dkt. No. 110, Ex. X.] Travelers was not able to authenticate that the document had been submitted to the document depository in the Aldrich action by counsel for the plaintiff homeowners, however, until November 11, 2010.

That document was ***the first document ever presented*** by KB Home to Travelers indicating that the plaintiff homeowners in Aldrich were in fact claiming property damage resulting from the cabinet installation. Inexplicably, KB Home claims that Travelers refused to consider this defect list, despite the fact that, based upon this defect list, Travelers thereafter reversed its prior coverage position and agreed to defend KB Home subject to a full reservation of rights.[2]

As ever, KB Home seeks to obfuscate the true issues in dispute by making statements it knows to be misleading and irrelevant. To that end, KB Home now suggests that because counsel for Norcraft was purportedly provided with a copy of the defect list on August 6, 2010, by the plaintiffs in the Aldrich action, Travelers must have had knowledge of the existence of the document as of that date. That speculation did not trigger Travelers' defense obligation.

As a practical matter, the undisputed evidence before this court establishes that Travelers in

[2] Travelers properly reserved its rights under the policies as it is entitled to do under California law.

fact was not able to authenticate the "Preliminary Defect List" until November 11, 2010. Although counsel for Norcraft has fiduciary obligations to Travelers as part of the tripartite relationship, the client that Norcraft's counsel represents in the Aldrich litigation is Norcraft, not Travelers. Moreover, Norcraft's counsel in the Aldrich matter is not coverage counsel for Travelers, nor is it counsel for Travelers in the present matter. Further, as a matter of course that counsel's primary obligation is the defense of Norcraft in the Aldrich action, not the determination of whether Travelers owes a defense to KB Home pursuant to the additional insured endorsement to the Norcraft policies. As such, it is absurd (not to mention completely contrary to all evidence before this Court) to suggest that Norcraft's counsel reports the contents of every piece of paper produced in litigation to the carrier paying its bills. Further, it should be noted that the named insured file and the additional insured file are kept separate. KB Home has offered no evidence that the additional insured adjuster ever received this document (prior to the date on which KB Home's counsel provided it to Travelers' counsel in the instant litigation. Nor has KB Home even established that the named insured adjuster ever received the document.

The veracity of the defect list is further questionable given its vague and ambiguous nature as well as the suspicious manner of its production – to wit, this single-page document compromised the ***sole defect list*** deposited by Aldrich homeowners in the document depository, despite the laundry list of defects asserted by those same homeowners. The document contradicts the nature of the homeowners' claims as reflected in the Lot Files and the Notices of Claims. Travelers, through its coverage counsel, had every right to seek authentication of the document.

### D. KB Home's Breach Of The Cooperation Clause Was the Only Breach

As a preliminary matter, in arguing that Travelers cannot assert KB Home's breach of the duty to cooperate, KB Home misstates the fundamental purpose of the cooperation clause contained in the Norcraft policies. Citing *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal.App.4th 966, 976 (2000), KB Home asserts that the cooperation clause is "merely intended to enable the insurer 'to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to its rights, to enable it to decide upon its obligation, and to protect itself against false claims.' " This statement is taken entirely out of context.

During its discussion on the purpose of such clauses in insurance contracts, the *Truck Ins. Exch.* court stated that "a condition of a policy requiring the cooperation and assistance of the assured in opposing a claim or an action lodged against him by an injured person is material to the risk and of the utmost importance in a practical sense. ***Without such cooperation and assistance the insurer is severely handicapped and may in some instances be absolutely precluded from advancing any defense.***" (emphasis added) Citing *Valladao v. Fireman's Fund Indem. Co.*, 13 Cal.2d 322, 328-329 (1939). The language provided by the *Truck Ins. Exch.* court clearly demonstrates that the fundamental purpose of the cooperation clause is to enable the insurer to advance a defense.

KB Home's failure to assist Travelers in its coverage investigation by intentionally withholding documents necessary to its coverage determination and its refusal to accept Traveler's choice of counsel despite Travelers' contractual right to control the defense it provides are clear examples of material breaches to the cooperation clause and represent the very behavior that the cooperation clause was created to prevent.

**E. Travelers Never Relinquished its Right to Control the Defense**

It is well settled that an insurer who initially denies a defense but then subsequently provides a defense under a reservation of rights still maintains its right to control the defense. As the Court of Appeal noted in *Gray v. Begley*, 182 Cal.App.4th 1509 (2010), one who ***provides a defense*** under a reservation of rights has ***not*** lost its "right to control the litigation" and retains a direct interest in the case. *Gray v. Begley*, *supra*, 182 Cal.App.4th at 1523-1524, citing *Jade K. v. Viguri*, 210 Cal.App.3d 1459, 1468 (1989).

Although *Gray* ultimately addressed a motion to intervene, the Court's rationale is dispositive of the issues in the present action. Similar to the facts of the insurer in *Gray*, Travelers withdrew from providing a defense to KB Home but later (after the discovery of new facts) reversed its decision prior to trial and offered to provide a defense to its insured. Just like in *Gray*, Travelers' insured allowed the carrier to provide a defense to the tune of $300,000. In fact, the only significant difference is that Travelers agreed to provide a defense at a much earlier stage of the underlying actions than CNA did in *Gray*. Accordingly, following the rationale of the court of appeal in *Gray*,

any claim by KB Home that Travelers "abandoned" its defense is meritless. Instead, Travelers provided KB Home with a defense and has the right to control the defense it provides.

### 1. KB Home Cannot Establish That Travelers Wrongfully Refused to Provide a Defense

KB Home cites several cases seeking to establish that Travelers lost its right to control KB Home's defense in the underlying action when it withdrew coverage. Once again, KB Home misses the point as each and every published case it cites involves an insurer that had been found to have wrongfully or improperly denied its duty to defend. Such law is inapplicable here as Travelers' motion for summary judgment and this reply clearly establish that Travelers' withdrawal from coverage was proper after its investigation revealed that there was no potential for any covered property damages stemming from the underlying action.

### 2. KB Home Cannot Establish That Travelers Intentionally Relinquished a Known Right

Insurance policies are contracts and, as such, are subject to the statutory rules of contract interpretation. *Waller v. Truck Ins. Exchange, Inc*., 11 Cal.4th 1, 18 (1995). In the present case, the policies provide: "We will have the right and duty to defend any 'suit' seeking those damages." By the express terms of the policies, Travelers is therefore vested with the authority to control all aspects of KB Home's defense thereunder.

In *Waller*, the California Supreme Court defined the doctrine of "waiver" for purposes of an insurance contract as follows:

> Case law is clear that "[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver." [Citations.]
>
> ... The waiver may be either express, based on the words of the waiving party; or implied, based on conduct indicating intent to relinquish the right. [Citations.] *Id.* at 31-33.

Accordingly, for an insured to establish ***by clear and convincing evidence*** that the insurer waived its contractual right to control the defense of potentially covered claims, the insured must

establish that Travelers intentionally relinquished that right. KB Home has prevented no evidence whatsoever in support of any such claim, much less clear and convincing evidence.

**3. The Evidence Establishes that Travelers Expressly Reserved the Right to Control KB Home's Defense**

KB Home cannot establish that Travelers intentionally relinquished its right to control KB Home's defense in the Aldrich action. To the contrary, in its March 9, 2010, withdrawal letter to KB Home, Travelers explicitly indicated that it was willing to reconsider the withdrawal in the future and ***reserved*** all of its rights under the policies and expressly indicated it was ***not waiving*** any such rights. The evidence thus clearly establishes Travelers not only never intended to relinquish its right to control KB Home's defense but went so far as to specifically reserve its rights in that regard.

**4. California Law Abhors a Forfeiture and Does Not Permit Such a Finding Absent Facts Showing an Insurer Acted Wrongfully and in Bad Faith**

KB Home's opposition suggests that because Travelers withdrew coverage (under a reservation of rights), Travelers forfeited its rights under the policy and was divested of its right to control the defense. KB Home's position is simply untrue. In *Chase v. Blue Cross of California,* 42 Cal.App.4th 1142 (1996), the California Court of Appeal defined "forfeiture" as follows:

> "A deprivation or destruction of a right in consequence of the non-performance of some obligation or condition. (Black's Law Dict. (6th ed. 1990) p. 650.)

*Chase v. Blue Cross of California,* 42 Cal.App.4th at p. 1149.

"Forfeitures, however, are not favored; hence, a contract and conditions in a contract, will, if possible be construed to avoid forfeiture. (Citations.) This is particularly true of insurance contracts." *W.D. O'Morrow v. Board,* 27 Cal.2d 794, 800 (1946). "A condition involving forfeiture must be strictly interpreted against the party for whose benefit it is created." Cal. Civil Code § 1442.

Courts applying California law have thus avoided imposing the remedy of forfeiture, even when the party in breach has acted willfully. In fact, the California Supreme Court has noted that the preferred remedy is to allow the breaching party to cure such breach. See, e.g., *Petersen v.*

*Hartnell*, 40 Cal.3d 102, 108-109 (1985). "We concluded that the prohibition of punitive damages for breach of contract (Civ. Code section 3294), the strict limitations on the right to provide for liquidated damages (Civ. Code sections 1670, 1671), and the provision that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case ...' (Civ. Code section 3369) together established a ***policy that precludes any forfeiture having no reasonable relation to the damage caused by the vendee's breach even when that breach is willful.*** (citations). As we pointed out in the *Barkis* case, allowing the defaulting vendee to cure his default and perform the contract may often be the fairest solution ...") (Emphasis added.) *Ibid.*

As explained in the *Chase* decision, an insurer loses a contractual right based on the doctrine of forfeiture only when it breaches the duty of good faith and fair dealing by "engaging in bad faith conduct designed to mislead the insured." Absent a showing of bad faith, an insured is not entitled to use the doctrine of forfeiture to eliminate an insurer's rights under an insurance contract. *Chase v. Blue Cross of California, supra*, at p. 1149.

In *Chase,* the Court of Appeal reversed the trial court's order finding that Blue Cross had "waived" its right to enforce an arbitration provision in its policy. The Court of Appeal held that the trial court had, in fact, found that Blue Cross "forfeited" its right of arbitration under the insurance policy. Further, the Court of Appeal determined that the trial court had misinterpreted California law relative to the remedy of forfeiture. In particular, absent a determination that the insurer (Blue Cross) had breached the implied covenant of good faith and fair dealing (i.e., acted in bad faith), the Court's order finding that Blue Cross had "waived" its rights to enforce the arbitration clause in its policy was incorrect. The Court of Appeal also found that whether Blue Cross forfeited its right to invoke the arbitration clause in its policy presented a question of fact which had to be determined by the trier of fact. *Chase v. Blue Cross of California,* 42 Cal.App.4th at p. 1158 ("The question of whether Blue Cross engaged in a course of conduct designed to mislead Chase is a factual one, which we decline to resolve in the first instance").

The mere fact of a delay in or denial of benefits further does not support a claim that an insurer has acted wrongfully. Rather, any delay must be unreasonable. *Dynamic Concepts, Inc. v. Truck Ins. Exch.,* 61 Cal.App.4th 999, 1010 (1998) (insurers are entitled to a reasonable period of

time to analyze a situation regarding a coverage position); *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal.App.4th 1450, 1456-1459 (1994) (delay must be unreasonable to support claim of bad faith); *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, 90 Cal.App.4th 335, 347 (2001) ("before an insurer can be found to have acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted unreasonably or without proper cause").

**F. <u>KB Home's Refusal to Accept Travelers' Choice of Counsel is Inherently Prejudicial</u>**

For an insurer to be excused from its duties to defend and indemnify after an insured's breach of the cooperation clause, the insurer must show that it suffered substantial prejudice from the insured's breach. *Truck Ins. Exch.*, Supra, at 976. Actual prejudice must be shown. *Billington v. Interinsurance Exch. of So. Cal.*, 71 Cal.2d 728, 737 (1969).

KB Home argues that Travelers cannot establish prejudice. (Opposition at 10:20-24.) Yet, KB Home readily acknowledges it challenged Travelers' appointment of counsel to defend it. KB Home's refusal to accept Seller Hazard as its defense counsel created a precarious situation wherein Travelers is financially liable to pay for KB Home's defense and yet completely powerless to ensure the claim is defended properly, hence, Travelers has been prejudiced.

The refusal by an insured to accept the choice of counsel by a carrier is inherently prejudicial. This very court could not have been more clear on this issue in another lawsuit involving Travelers and another developer, Centex Homes – represented in the action by the same counsel that now represents KB Home here. See, *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 3:10-CV-02757-CRB (N.D.CA, June, 23, 2010). Centex Homes presented this identical argument asserting that an insurer must establish that the insured's failure to cooperate by accepting Travelers' choice of counsel to represent Centex in two underlying construction defect actions (the "Allie Action" and "Agles Action") caused actual prejudice before it can disclaim coverage. The Centex court was emphatic in its disagreement with Centex, ruling in pertinent part that:

> … [P]rejudice inherently existed when Defendant refused Plaintiff's choice of counsel. Defendant argues that its conduct does not rise to the level of breach to

> satisfy the substantial prejudice standard. Opp'n at 5-6. However, under these facts, as in *Cybernet* and *Twin City*, Defendant's failure to cooperate "could not have been more stark."... Defendant's breach involved a failure to cooperate and a denial of the Plaintiff's right to defend the underlying actions. Defendant refused to turn over defenses in the Allie and Agles Actions to Plaintiff's appointed counsel, and also prevented those firms from associating into either action...Therefore, Defendant substantially prejudiced Plaintiff, which relieves Plaintiff of its duties to defend and indemnify Defendant in the Allie and Agles Actions. (emphasis added) *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, April 1, 2011, at Page 11, Line 17, Docket No. 162.

The same inherent prejudice exists in this instant action as Travelers finds itself unable to exercise its contractual right under the policy to select counsel for KB Home.

### G. <u>KB Home's Alleged Conflicts With Travelers' Choice of Counsel Have Been Manufactured in Conjunction With its Breach of the Norcraft Policies</u>

A conflict of interest must be "significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal.App.4th 999, 1007 (1998).

A cross-complaint by a contractor seeking indemnification from a subcontractor does not give rise to an actual conflict but rather a "merely theoretical" one, because the contractor's liability to the plaintiff is derivative from the liability of the subcontractors. *Travelers Property v. Centex Homes*, *supra*. As such, both have the same interest in defending against the plaintiffs' general allegations. *Ibid.* The fact that Sellar Hazard represented a subcontractor in a case where KB Home was seeking indemnification thus does ***not*** create a significant actual conflict of interest because the subcontractor and KB Home had the same interest in defending against the plaintiffs' general allegations. Accordingly, KB Home had no grounds to refuse Travelers' chosen counsel.

Moreover, while Travelers does not concede that any conflict exists, even assuming that one did, the Sellar Hazard firm's involvement in the Chada case would not present an actual, significant conflict of interest because the present claim and the claim in Chada involve different KB Home subsidiaries. Affiliated entities are not to be treated as the same entity for conflict purposes. See, *Brooklyn Navy Yard Cogeneration Partners v. Superior Court*, 60 Cal.App.4th 248 (1997), citing Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opinion No. 1989-113. In the Chada action, the Sellar Hazard firm represents Beutler Heating and Air Conditioning ("Beutler").

The parties who filed a cross-complaint against Beutler are KB Home Central Valley, Inc. and KB Home North Bay, Inc. [See, Dkt. 124-1 at Exhibit 5]. By contrast, the entities at issue in the Aldrich action are Kaufman & Broad Monterey Bay and KB Home South Bay, Inc.

KB Home argues that the KB entities in the Chada case and those in the present case should be considered the same entity because a parent corporation and its subsidiary should be treated as one. (Opposition, 9:22-23) Whether or not a parent corporation and its subsidiary should be treated as one entity is irrelevant, however, because the ***entities at issue here are not parent and subsidiary but merely affiliated***. The parent corporation referred to is KB Home, which is neither a party in the present case nor adverse to the parties represented by Seller Hazard in the Chada case. Even a simple reading of KB Home's opposition indicates that it fails to recognize that this distinction is a legal one, not a semantic one. The undisputed facts thus show there never was any conflict, and KB Home's failure to accept Travelers' appointed counsel is therefore a material breach of the contract.

## IV. TRAVELERS HAS AT ALL TIMES ACTED IN GOOD FAITH

### A. Travelers Neither Withheld Nor Denied KB Home Any Benefits

Coverage, if any, is granted pursuant to the terms and conditions of the policy and not otherwise. No benefits due under the policy were ever withheld as Travelers did not owe KB Home any benefits under the policy until the duty to defend was triggered following the production (and authentication) of the defect list on August 4, 2010. Once the duty to defend was triggered, Travelers agreed to defend KB Home and paid the all outstanding defense fees and costs. The undisputed facts thus show that no benefits were ever withheld.

### B. Any Delay In Paying Benefits Was Based On A Genuine Dispute Re Coverage

The standard of good faith and fair dealing calls for consideration of the reasonableness of the insurer's conduct in denying coverage. *Brandt v. Superior Court*, 37 Cal.3d 813, 819 (1985). "'[A]n erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been unreasonable. ...' [Citation.]" *Ibid.*

Travelers conducted a thorough and appropriate investigation, carefully reviewing all documentation provided and requesting any and all additional information potentially bearing upon

the duty to defend. [Dkt. No. 119 at ¶14.] Moreover, after determining that the documentation provided did not evidence a potential for coverage, rather than denying the claim, Travelers actually accepted the defense and then repeatedly requested some documentation evidencing that the plaintiffs in the Aldrich action were alleging resulting damages arising from Norcraft's work. Only after KB Home failed repeatedly to provide any such documentation did Travelers withdraw its defense. Even then, however, Travelers kept an open mind and agreed to pick up coverage again as soon as additional documentation suggesting a potential for covered damages was identified and authenticated. On its face, Travelers has not engaged in any bad faith conduct.

Rather, Travelers' conduct in this action merely evidences the existence of a genuine dispute regarding coverage under the Norcraft policies. Travelers declined to pick up coverage based on the language in the policies, as well as the application of well-settled law establishing that commercial general liability policies do not provide coverage for property damage to the insured's own work. Travelers conducted a thorough investigation, as described above, which revealed the absence of any allegations of covered property damage resulting from Norcraft's work. Moreover, it should be noted that Travelers gave KB Home the benefit of the doubt and initially accepted its tender despite the lack of documentary evidencing establishing a potential for coverage.

In opposition to Travelers' motion, KB Home cites to specific claim note entries made by Travelers in a vain attempt to manufacture a conspiracy whereby Travelers knew the Norcraft Policies had been triggered but sought to escape its contractual obligations. In support of this fiction, KB Home would have the court consider facts that are entirely irrelevant.

It is beyond comprehension how the setting of a "low defense reserve" or Travelers' belief that other insurers would eventually participate in KB Home's defense are at all helpful for the purpose of undermining Travelers' claim that it had a genuine dispute as to the existence of coverage. Those facts offered by KB Home are apropos of nothing. While KB Home may disagree with Travelers' interpretation of the facts that were available at the time of its withdrawal, the withdrawal was based upon a reasonable interpretation of the facts and thus evidences that any potential withholding of benefits was based upon a genuine dispute regarding coverage centered

around a lack of complaint allegations involving the work of the named insured (let alone any resultant damage caused by the work of the named insured).

## V. <u>KB HOME'S DAMAGE CLAIMS ARE SPECIOUS</u>

As set forth in Travelers' moving papers, where one of several potential insurers provides a defense, another insurer's alleged failure to defend does not damage the insured – the failure to defend does not "enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuit." *Ringler Associates Inc. v. Maryland*, 80 Cal.App.4th 1165, 1188 (2000).

As fully briefed in its moving papers, Travelers has paid all of KB Home's defense fees. Travelers has also settled all claims arising from Norcraft's and KB Home's work. KB Home has paid nothing in either respect.

Moreover, KB Home has chosen not to address anywhere in its opposition the fact that another insurer accepted its tender and provided it with a defense for the entirety of Travelers' withdrawal period; a withdrawal caused by KB Home's failure to provide anything suggesting that the underlying plaintiffs were seeking something covered by the subject policies. As noted above, instead of providing this documentation, KB Home was busy hiding the documentation establishing the lack of coverage. The undisputed evidence therefore establishes that ***KB Home was at all times provided with a defense of the Aldrich action, either by The Hartford, Travelers or both.***

KB Home further has failed to offer any evidence that the Glaspy firm stopped defending it at any time or even threatened to do so. Thus, KB Home got exactly what is required by California law: ***a defense.*** In fact, even had Travelers not paid any amounts toward KB Home's defense, KB Home would have no standing to seek damages from Travelers as a non-defending insurer; rather, the defending insurer, The Hartford, would have the sole right to sue for contribution.

Dated: June 22, 2012

Respectfully Submitted,
**THE AGUILERA LAW GROUP, APLC**
<u>*/s Raymond E. Brown*</u>
A. Eric Aguilera
Raymond E. Brown
Kari M. Myron
Attorneys for Defendant/Cross-Claimant
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA