**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera (SBN 192390)
Raymond E. Brown (SBN 164819)
Kari M. Myron (SBN 158592)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
T: 714-384-6600
F: 714-384-6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
kmyron@aguileragroup.com

**LETHER & ASSOCIATES, PLLC**
Thomas Lether, Esq., *Pro Hac Vice*
3316 Fuhrman Ave E
Suite 250
Seattle, WA 98102-3800
T: 206-467-5444
tlether@letherlaw.com

Attorneys for Defendant/Counterclaimant
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants.<br>______________________________<br><br>AND RELATED COUNTER ACTION.<br>______________________________ | CASE NO.: 5:10-cv-02856-EJD<br>Hon. Judge: Edward J. Davilla<br>Courtroom: 4<br><br>**TRAVELERS' REPLY TO PLAINTIFFS' OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE *ARMSTRONG* ELECTION**<br><br>Date: September 14, 2012<br>Time: 9:00 a.m.<br>Courtroom: 4<br><br>Trial Date: TBA<br>Date Complaint Filed: May 27, 2010 |

Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers") submits the following points of authorities in support of its motion for partial summary judgment re Armstrong election and in reply to the opposition to that motion filed by plaintiffs KAUFMAN & BROAD MONTEREY BAY and KB HOME SOUTH BAY, INC. (collectively "KB Home").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Travelers' Motion for Partial Summary Judgment Re: *Armstrong* Election seeks a ruling that KB Home is obligated to seek and accept a defense from other insurance carriers, and that by failing and blatantly refusing to do so KB Home has breached the terms of the applicable policies of insurance. Instead of addressing the merits of Travelers' motion, however, KB Home attempts to divert the issue by arguing facts and issues that are simply not in dispute. Travelers is not seeking a ruling that it owes less than a full and complete duty to defend. Travelers is simply seeking a ruling that KB Home is in breach of ***its*** duties under the policies.

KB Home is not entitled to make a "defense election" (which KB Home incorrectly refers to as an "*Armstrong* election") to Travelers as an additional insured. KB Home's opposition makes clear that it has absolutely no evidence or legal support for its position that it can make such an election. Simply put, the law does not support KB Home's position. Moreover, the explicit policy language is clear that KB Home is required to affirmatively seek and accept a defense from other carriers, including but not limited to issuing tenders and making efforts to recover fees and costs incurred in defense.

In this case, not only has KB Home refused to seek a defense from other carriers, it has actually ***refused*** a defense that was being offered by another carrier. As more fully described below, as well as in Travelers' moving papers, neither California law nor the applicable policies allow KB Home to make its purported "*Armstrong* election."

## II. TRAVELERS' MOTION IS PROPERTY BEFORE THE COURT

Contrary to any assertions by KB Home, Travelers' motion is not duplicative of the motion for summary judgment that it filed on August 26, 2011, nor is it beyond the scope of this Court's

order extending the summary judgment motion deadline to June 1, 2012. First, the Court's December 12, 2011, does not state that the June 1, 2012, deadline for filing dispositive motions only applies to motions related to the "New Claims." (Docket No. 147.) Moreover, the instant motion is in no way similar to the previous motion filed by Travelers.

Travelers' original motion addressed the issues of whether Travelers breached the duty to defend and the implied covenant of good faith and fair dealing as alleged in KB Home's complaint. (Docket No. 106.) While the original motion addressed the issue of KB Home's breach of the duty of cooperation, it did not seek an adjudication with regard to KB Home's breach of contract as alleged in Travelers' counter-claim and could not have possibly sought such an adjudication as Travelers' counter-claim was not filed after the original motion for summary judgment.

Unlike Travelers' original motion for summary judgment, Travelers' instant motion deals with the issue of whether KB Home is entitled to make a so-called "*Armstrong* election" pursuant to *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Company*, (1996) 45 Cal.App.4th 1 ("*Armstrong*") to Travelers and if KB Home's attempt to do so breaches the terms of the insurance contract. Thus, any argument that this motion is duplicative of the prior motion is completely without merit.

## III. KB HOME CANNOT MAKE A SO-CALLED "*ARMSTRONG* ELECTION" TO TRAVELERS AND HAS PROVIDED NO SUPPORT FOR THE PROPOSITION THAT IT CAN

### A. California Law Does Not Allow KB Home To Target One Specific Additional Insurer To Provide A Defense

The entire thrust of Travelers' motion is a legal argument that KB Home may not only target Travelers to defend it and avoid seeking or accepting a defense from other insurers. KB Home, however, fails to even provide any legal analysis in opposition to Travelers' position and instead devotes a significant portion of its opposition to irrelevant attempts to disparage Travelers and its counsel using hyperbole and misplaced invective. At the same time, KB Home chooses to pretend that the issue presented by the motion is not even in dispute, making the blanket assertion that it is

entitled to target Travelers to defend it, thereby making a so-called "*Armstrong* election", and simply citing *Armstrong, supra*, in support. (KB Home's Opposition at p. 7:10-13.)

KB Home's use of the term "*Armstrong* election" is a misnomer, however. What KB Home fails to recognize is that *Armstrong* does not actually hold that an insured can select one insurer to ***defend*** it in an action. See, *Armstrong, supra*. Instead, what *Armstrong* holds is that an insured can select one of multiple insurers, who each insure the same risk, to ***indemnify*** it. *Id.* at 49-50, fn. 15. Thus, an "*Armstrong* election" is not a defense election, but an indemnity election.

Moreover, as set forth in Travelers' motion, the *Armstrong* rule, which allows an insured to select one of multiple insurers who insure the same risk to ***indemnify*** it, does not apply where the carriers are additional insured carriers, each covering a different risk. (See, Travelers' Motion at 7:3-9:23.)

KB Home's failure even to address Travelers' analysis of the *Armstrong* case suggests that KB Home has no counterargument precisely because ***there is no counterargument.*** Further, KB Home's reliance on the unreported decision in *Team Enterprises, Inc. v. Royal Indemnity Co.*, No. C 03-04443 JSW, 2004 U.S. Dist. LEXIS 24862 (N.D. Cal. Apr. 20, 2004) ("*Team Enterprises*") is misplaced. Not only is the case unreported and therefore not controlling or citable as legal precedent (see Section V below), the case is further easily distinguishable.[1]

In *Team Enterprises*, the insurer refused to contribute more than a percentage share of the defense fees after its co-carriers refused to continue contributing to the defense fees and the issue was whether the insurer had therefore breached its duty to defend. *Id.* at *1. In this case, Travelers fully funded KB Home's defense after KB Home wrongfully refused to accept the defense being offered by The Hartford. Thus, the issue in the present matter is not whether Travelers breached its duty to defend but rather whether KB Home breached its obligations under the Norcraft policies.

The *Team Enterprises* case did not address language at all similar to the language in the Norcraft policies, or whether an additional insured can target an additional insurer, particularly in

[1] KB Home's accusation that Travelers improperly failed to cite to relevant contrary legal authority is inappropriate. First, the *Team Enterprises* matter is distinguishable and not relevant. More importantly, as set forth more fully in Section V below, the case is non-citable and thus would have been inappropriate for Travelers to cite in its motion (and is likewise inappropriate for KB Home to have cited).

light of policy language ***specifically prohibiting*** such a targeted tender. Accordingly, *Team Enterprises* is not applicable to the instant matter.

**B. Travelers' Duties Under The Policies Are Irrelevant To Whether KB Home Can Make An "*Armstrong* Election" To Travelers**

Travelers' motion asks this Court to decide a simple issue: whether KB Home is allowed to make a so-called "*Armstrong* election" to Travelers and if by so doing KB Home has breached the terms of the Norcraft policies. Inexplicably, KB Home spends the majority of its opposition arguing that Travelers has a duty to provide it with a full and complete defense. KB Home's argument, however, completely misses the point.

Travelers does not dispute that to the extent that Travelers has a duty to defend KB Home, such duty would be to provide KB Home with a full and complete defense (subject of course to Travelers' right to seek reimbursement of defense-related payments incurred with respect to claims not potentially covered under the policies, pursuant to *Buss v. Superior Court*, (1997) 16 Cal.4th 35). Nowhere in Travelers' motion does Travelers argue that it does not have a duty to provide a full and complete defense. In fact, Travelers ***has provided*** KB Home with a full and complete defense, and fully funded KB Home's defense up until Travelers' defense obligation ceased in the Aldrich action. (See, Declaration of Patricia E. Dlugokenski, ¶¶ 27-31, Exhibits M, N, and O.) It is undisputed that Travelers has paid $307,086.83 in defense of KB Home to date. (See, Declaration of Patricia E. Dlugokenski, ¶¶ 27-31, Exhibits M, N, and O.) KB Home has not paid a dime toward its defense.

Travelers' motion is not about its obligations under the Norcraft policies, because it has fulfilled any such obligations. (See, Declaration of Patricia E. Dlugokenski, ¶¶ 27-31, Exhibits M, N, and O.) Rather, Travelers' motion is about ***KB Home's obligations*** under the policies. The fact that Travelers may have an obligation to provide KB Home with a full and complete defense does not relieve KB Home of its obligations under the policies.

By arguing that KB Home is not entitled to target its defense to one additional insurer, Travelers is not arguing that each insurer does not owe an independent, full and complete defense duty but rather that KB Home cannot ignore its duties under the terms of the policies. Rather,

Travelers is arguing that KB Home is required to seek and accept a defense from other insurance carriers. As such, Travelers' argument that the rule set forth in *Armstrong* has no application to additional insured carriers has nothing to do with whether an additional insurer owes an additional insured a full and complete duty to defend.

KB Home's insistence to focus on an issue that Travelers does not dispute suggests that KB Home is either attempting to divert the focus from the real issue because it does not have any legal support for its so-called "*Armstrong* election" (as evidenced by KB Home's failure to cite any legal authority supporting its position) or it simply does not understand the issue.

### C. KB Home Has Produced No Admissible Evidence to Show That It Has Sought Or Accepted A Defense From Other Carriers

KB Home claims that it has pursued other potentially responsible insurance carriers to defend KB Home in the Aldrich action. (KB Home's Opposition at p. 5:4-5.) In addition, KB Home claims that although the Hartford acknowledged its duty to defend and paid $30,000 towards the defense, the Hartford has refused to make further payments despite repeated requests. (KB Home's Opposition at p. 5:9-12.) Tellingly, however, KB Home provides nothing more than inadmissible hearsay in support of its claim, rather than providing actual documentary evidence. (See, Declaration of Mary Kay Glaspy at ¶¶ 15, 16.) KB Home fails to attach a single tender letter or any correspondence between it and Hartford regarding KB Home's purported attempts to obtain defense contribution. KB Home's unsupported claims are contradicted by the fact that Hartford agreed to defend KB Home pursuant to a reservation of rights and contributed to KB Home's defense up until KB Home decided to make its so-called "*Armstrong* election" to Travelers. (See, Declaration of Jason Chao, ¶4, Exhibit B.)

Moreover, KB Home ***admits*** that it has made a purported "*Armstrong* election," "select[ing] Travelers to defend the Aldrich Action in its entirety." (KB Home's Opposition at p. 5:20-21.) Thus, KB Home has conceded that it is refusing to seek or accept a defense from its other carriers. Moreover, KB Home's February 24, 2011, correspondence makes clear that KB Home is refusing to seek or accept a defense from other carriers and is looking to Travelers to pay 100 percent of its fees and costs for defending the Aldrich action. (See, Declaration of Jason Chao, ¶14, Exhibit I.)

**D. The Norcraft Policies Require KB Home to Seek and Accept A Defense From Other Carriers**

The Norcraft policies require an insured, including an additional insured such as KB Home, not only to "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit' " but also to "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." (Declaration of Richard J. Carrillo, ¶7, Exhibit A.) Thus, the clear language of the policies requires that an insured assist Travelers in enforcing any right that the insured may have to other insurance coverage.

In other words, an insured cannot blatantly refuse to seek and accept a defense from another carrier. Further, the Norcraft policies specifically provide that "[i]f the insured has rights to recover all or part of any payment we have made … those rights are transferred to us … [and a]t our request, the insured will bring 'suit' or transfer those right to us to help us enforce them." (Declaration of Richard J. Carrillo, ¶7, Exhibit A.) Thus, the language of the policy unambiguously provides that the insured must assist Travelers in enforcing any rights it may have to recoveries from other insurance carriers, including bringing suit, if requested by Travelers. In other words, the insured has an affirmative duty under the terms of the policies to seek and secure a defense from other carriers. Moreover, Travelers' reservation of rights letter echoes that requirements set forth in the policies.

Contrary to KB Home's assertions, the above-quoted language contains no indication that it is limited to indemnity payments and does not include defense payments. Nor does *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, (1998) 65 Cal.App.4th 1279 support KB Home's position as it does not even reference the policy language at issue. The policy language at issue here clearly encompasses both defense and indemnity. The language simply refers to rights to recover payments that Travelers has made or rights against any person which may be liable to the insured. KB Home has rights as against other insurance carriers for defense fees incurred in the Aldrich action – defense fees that Travelers has paid. Accordingly, KB Home is required to assist Travelers in enforcing its rights against other carriers and seeking recovery of defense payments that Travelers may have paid.

In this case, not only has KB Home failed to seek a defense from other carriers, it has actually refused the defense that was offered by Hartford, in clear violation of the terms of the policies. KB Home's breach has resulted in harm to Travelers in that Travelers has incurred more fees and costs than it would have otherwise incurred had KB Home properly sought and accepted a defense from other carriers pursuant to its obligations under the terms of the Norcraft policies.

## IV. TRAVELERS' POTENTIAL CONTRIBUTION RIGHTS AS AGAINST OTHER CARRIERS ARE IRRELEVANT TO KB HOME'S DUTIES TO TRAVELERS

Whether or not Travelers can pursue other carriers for equitable contribution has absolutely no bearing on whether or not KB Home can ignore its obligations under the terms of the Norcraft policies. Moreover, the fact that KB Home raises Travelers' potential rights of equitable contribution in its opposition further highlights the fact that KB Home is either attempting to divert focus from the real issues in Travelers' motion or simply does not understand the issues.

In its opposition, KB Home argues that the issue of allocation between multiple insurers is irrelevant to the insurer's obligations towards the insured. (Opposition at 7:17-22.) Then several pages later, quite remarkably, KB Home argues essentially the opposite – that Travelers' potential contribution rights against other insurers somehow absolves KB Home of ***its*** obligations under the policies. (KB Home's Opposition at 14:1-15:7.) KB home cannot have it both ways.

Moreover, it makes sense that, despite an insurer's potential contribution rights, it would include language within its policies obligating an insured to assist the insurer in enforcing its rights against other carriers because the insured is likely to possess greater knowledge regarding the identity of its other carriers as well as which carriers potentially owe it a defense. Thus, the fact that Travelers may potentially pursue other carriers for contribution does not somehow excuse KB Home from its duties as set forth by the clear terms contained within the policies.

## V. KB HOME'S CITATION OF AN UNPUBLISHED DECISION VIOLATES THE RULES OF THIS CIRCUIT AND CONSTITUTES GROUNDS FOR DISCIPLINE

As previously mentioned, KB Home's opposition cites *Team Enterprises, Inc. v. Royal Indemnity Co.*, No. C 03-04443 JSW, 2004 U.S. Dist. LEXIS 24862 (N.D. Cal. Apr. 20, 2004). *Team Enterprises* is an unpublished decision, not reported in the official reporter for District Court

decisions, the Federal Supplement series, although the full text of the decision is available on Westlaw and LEXIS. KB Home further criticizes Travelers for not citing *Team Enterprises* in its moving papers.

Ninth Circuit Rule 36-3[2] provides, "Unpublished dispositions and orders of this Court are not binding precedent . . . [and generally] may not be cited to or by ***the courts of this circuit*** . . . ." (Emphasis added.) The only exception to the prohibition is where the unpublished decision is being cited "for factual purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys' fees, or the existence of a related case." The Ninth Circuit has further expressly made clear that the citation of unpublished dispositions is grounds for the imposition of discipline. See, e.g., *Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001); *Sorchini v. City of Covina*, 250 F.3d 706 (9th Cir. 2001).

To clear up any possible confusion, in 2001 the Ninth Circuit specified that the rule does not permit the citation of an unpublished disposition for the purpose of providing "notice" to the court of the existence or absence of legal precedent. "If precedent were a 'fact' for purposes of the exception, then the exception would swallow up the rule. It would permit an argument such as this: 'I am not citing this unpublished disposition as precedent, but only to inform the court of the fact that a prior panel held precisely what I would like the court to hold in my case.' " *Sorchini v. City of Covina, supra*, 250 F.3d at 708. Instead, the Court noted, "As the list of examples suggests, the factual purposes falling within this exception will almost always involve one or both of the parties to the pending case. A prior disposition might show that the current defendant had been prosecuted for the same crime, or that a prior suit had put the defendant on notice of unsafe conditions on his property." *Ibid.* The court declined to impose sanctions solely due to any possible confusion that might have previously existed, noting: "This excuse is valid only in this case" and "[w]e publish this opinion to avoid such misunderstandings by counsel in future cases." *Id.* at 709 and 709, fn. 2.

Similarly, in *Hart* the Ninth Circuit declined to impose sanctions solely because of the possibility that counsel who cited an unpublished decision might have held a good faith belief that

[2] Rule 36-3 was originally adopted in July 2000 and set to expire in July 2002. The rule was subsequently extended until July 2005 and then extended indefinitely until further notice.

Rule 36-3 might be unconstitutional. The court further implied, however, that such an argument would not allow an attorney to avoid discipline in the future, noting, "We write to lay those speculations to rest." *Hart v. Massanari, supra*, 266 F.3d at 1157.

The *Hart* court analyzed both the necessity for Rule 36-3 and for enforcement of that rule. "Should courts allow parties to cite to these dispositions, however, much of the time gained [by not drafting precedential opinions in each case] would likely vanish. Without comprehensive factual accounts and precisely crafted holdings to guide them, zealous counsel would be tempted to seize upon superficial similarities between their clients' cases and unpublished dispositions. Faced with the prospect of parties citing these dispositions as precedent, conscientious judges would have to pay much closer attention to the way they word their unpublished rulings. Language adequate to inform the parties how their case has been decided might well be inadequate if applied to future cases arising from different facts. And, although three judges might agree on the outcome of the case before them, they might not agree on the precise reasoning or the rule to be applied to future cases. Unpublished concurrences and dissents would become much more common, as individual judges would feel obligated to clarify their differences with the majority, even when those differences had no bearing on the case before them. In short, judges would have to start treating unpublished dispositions – those they write, those written by other judges on their panels, and those written by judges on other panels – as mini-opinions. This new responsibility would cut severely into the time judges need to fulfill their paramount duties: producing well-reasoned published opinions and keeping the law of the circuit consistent through the en banc process. The quality of published opinions would sink as judges were forced to devote less and less time to each opinion." *Hart v. Massanari, supra*, 266 F.3d at 1178.

KB Home's citation of *Team Enterprises* is in direct contravention of the Ninth Circuit's rules. No party to this action was a party to the *Team Enterprises* action, and the case therefore was not cited by plaintiffs for any factual purpose but rather simply to put this Court on notice of what another court has done. The Ninth Circuit has expressly rejected not only the validity of any such argument but further that the wrongful belief in such an argument will constitute an excuse to avoid the imposition of discipline.

Moreover, to the extent that KB Home may argue semantically that the reference in their opposition did not constitute a "citation," such an appeal is unpersuasive. KB Home specifically directed this Court to an unpublished decision by another district court judge and analogized the present dispute to the facts in the unpublished decision for the express purpose of attempting to get this Court to rule in a similar fashion.

Finally, any argument by KB Home that Rule 36-3 does not apply to this Court is completely frivolous. Rule 36-3 specifically refers to "courts of this circuit." The U.S. District Court for the Northern District of California is indisputably a court of the Ninth Circuit. This Court should therefore consider the imposition of discipline for plaintiffs' blatant repeated violation of Ninth Circuit Rule 36-3.

## VI. CONCLUSION

Based on the foregoing as well as on Travelers' moving papers, Travelers respectfully requests that this Court grant the motion for partial summary judgment in favor of Travelers and issue an order that KB Home is not entitled to make a so-called "*Armstrong* election" to Travelers and that by refusing to seek a defense from its other carriers, KB Home has breached the duty to cooperate, thereby relieving Travelers of its duties under the Norcraft policies.

Dated: June 22, 2012

Respectfully Submitted,
**THE AGUILERA LAW GROUP, APLC**

*/s Raymond E. Brown*
A. Eric Aguilera
Raymond E. Brown
Kari M. Myron
Attorneys for Defendant/Cross-Claimant
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA