**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera (SBN 192390)
Raymond E. Brown (SBN 164819)
Kari M. Myron (SBN 158592)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
T: 714-384-6600
F: 714-384-6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
kmyron@aguileragroup.com

**LETHER & ASSOCIATES, PLLC**
Thomas Lether, Esq., *Pro Hac Vice*
3316 Fuhrman Ave E, Suite 250
Seattle, WA 98102-3800
Telephone: 206-467-5444
tlether@letherlaw.com

Attorneys for Defendant/Counter-Claimant,
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTER ACTION. | CASE NO.: 5:10-cv-02856-EJD<br>Hon. Judge: Edward J. Davilla<br>Courtroom: 4<br><br>**TRAVELERS' REPLY TO PLAINTIFFS' OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE REASONABLENESS OF TRAVELERS' COVERAGE DETERMINATION IN LIGHT OF KB HOME'S POSITION TAKEN IN THE SB800 PROCEEDING**<br><br>Date: September 14, 2012<br>Time: 9:00 a.m.<br>Courtroom: 4<br><br>Trial Date: TBA<br>Date Complaint Filed: May 27, 2010 |

Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers") submits the following points and authorities for the consideration of the Court in support of its Motion for Partial Summary Judgment Re Bad Faith and in reply to the opposition to that motion filed by plaintiffs KAUFMAN & BROAD MONTEREY BAY and KB HOME SOUTH BAY, INC. (collectively "KB Home").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Travelers' motion asks this Court to decide a simple issue: Was Travelers' decision to withdraw from KB Home's defense in March 2010 a general dispute regarding factual issues or was the withdrawal unreasonable and in bad faith. Inexplicably, KB Home spends the majority of its opposition arguing that Travelers has a duty to provide it with a full and complete defense and that Travelers' February 2012 withdrawal somehow constituted bad faith. KB Home's arguments, however, completely miss the point. In fact, Travelers expended $300,000 in full defense of KB Home. Travelers defended KB Home until it settled all claims against KB Home in the amount of $30,000. Somehow, this expenditure of money toward alleged liability arising out of cabinets amounts to tortuous conduct. Nonsense.

The legal standard in California with respect to bad faith is clear: If the insurer's actions were objectively reasonable, there is no bad faith. Travelers' act of withdrawing from its defense of KB Home in the Aldrich action in December 2009 was clearly reasonable, and in fact, consistent with the position ***taken by KB Home itself*** in response to the Notice of Claim that purported to set forth the claims being pursued by the plaintiff homeowners. The information contained therein was so bereft of any factual details that KB Home could not meet its obligations under the Right-to-Repair Act to formulate a repair plan. Similarly, the claims asserted against KB Home were so lacking in any suggestion that they concerned damage to other property resulting from the work of Norcraft that Travelers altered its coverage decision. Without allegations of covered property damage arising out of the work of Norcraft, Travelers had no duty to defend KB Home in the Aldrich action. Thus its temporary withdrawal was reasonable and not in bad faith.

///

## II. ARGUMENT

### A. Undisputed Facts

In the present case, the following facts are undisputed:

1. That the plaintiffs in the Aldrich action pled in their complaint "Cabinet and wood trim defects."
2. That based on the mere fact that Travelers' insured "completed installation and cabinet damages are plead (sic) in the complaint," Travelers adjuster Patricia Dlugokenski initially picked up the defense of KB Home because she speculated that some homeowner probably was contending that minor damages resulted from the cabinet installation.
3. That Ms. Dlugokenski later withdrew from the defense of KB Home when KB Home failed to produce any documentation indicating any homeowner was making allegations of damages arising out of the work of Norcraft.
4. That almost two months after filing its bad faith action, KB Home submitted a letter to Travelers from plaintiffs' counsel trying to trigger coverage by stating: "The plaintiffs in this action are pursuing recovery for damages arising out of cabinets."
5. That in furtherance of KB Home's efforts to bring its tender within the confines of the coverage under the Norcraft policies, on August 4, 2010, KB Home produced a single-page defect list related to cabinet defects. The defect list identified the following defects to the cabinets:

   Base – Damaged edge, surface or wood
   Door - Broken or damaged
   Drawer - Broken or damaged
   Finish – Wearing prematurely

   Additionally, the defect list set forth the following alleged resultant damage attributed to the work of Norcraft:

   Gouging of drywall and interior painting
   Cracking and separation of drywall and caulking

6. That KB Home was able to stay the SB 800 process because it successfully argued that plaintiffs' damage claims up to that point were not specific enough for the defendants to address or repair the alleged defects. The Court reasoned, in pertinent part:

> Defendant's failure to strictly follow the repair timeline was in part **due to a lack of clarity about exactly what repairs were needed.** While Cal. Civil Code Section 910(a), does not expressly address the degree of specificity required in a Notice of Claim, defendants have demonstrated the notice at issue here needed clarification of the required repairs to effectuate the purpose of the statutory scheme. Accordingly, plaintiffs shall specify their repair needs more specifically in order to facilitate meaningful repairs.

7. Only two insurers out of 55 insurance companies to which KB Home tendered the Aldrich action accepted KB Home's tender.

**B. The Undisputed Facts Clearly Demonstrate That At The Time Travelers Made Its Coverage Decision There Existed A Genuine Dispute As To Coverage Thereby Precluding A Finding Of Bad Faith**

As mentioned in the moving papers, a breach of the implied covenant of good faith and fair dealing has two elements: "(1) benefits due under the policy must have been withheld; and (2) the reasons for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exchange*, 221 Cal.App.3d. 1136, 1151 (1990) . The genuine dispute doctrine "enables an insurer to obtain summary adjudication of a bad faith cause of action by establishing that its denial of coverage, even if ultimately erroneous and a breach of contract, was due to a genuine dispute with its insured." *Bosetti v. U.S. Life Ins. Co.*, 175 Cal.App.4th 1208, 1237 (2009), citing *Chateau Chamberay,* 90 Cal.App.4th 335, 347 (2001) ; see also, *Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653 (9th Cir. 1994) (holding that the existence of genuine issues of material fact

regarding whether the policy covered the insured entitled the insurer to a ruling as a matter of law that it did not commit bad faith).

As set forth in Travelers' moving papers, the undisputed facts of this case demonstrate that at the time Travelers made its coverage decision there existed a genuine dispute as to coverage, thereby precluding a finding of bad faith against Travelers in the instant action.

First, KB Home completely misses the relevance of the SB 800 motion practice in which it engaged with plaintiffs' counsel. Within its opposition, KB Home's argues that the SB 800 fight occurred six months after Travelers had decided to pick up the defense and therefore it is irrelevant to Travelers' claim investigation. What KB Home fails to recognize is that the SB 800 litigation supports Travelers' contention that there was a genuine dispute as to the damage being alleged by plaintiffs. At the time of the SB 800 dispute, KB Home had the plaintiffs' complaint and its SB 800 disclosures. By comparison, KB Home's initial tender of its defense to Travelers included only the complaint in the Aldrich action, KB's cross-complaint and the subcontract between KB and Norcraft. Accordingly, KB Home had more information regarding the nature of plaintiff's claimed damages than was available to Travelers and yet KB Home too was unable to determine what damages were being alleged by plaintiffs. Moreover, KB Home had even more information than Travelers did as it also had the lot files, and yet was still unable to determine what damages the plaintiffs were alleging.

Moreover, KB Home tendered to 55 other insurance carriers and only two agreed to pick up the defense. That fact clearly illustrates that the 53 other carriers agreed with Travelers' adjuster that there was no evidence of resultant property damages. That fact clearly demonstrates that Travelers' withdrawal of the defense was not malicious in any way but rather the result of a genuine (and common) dispute as to coverage. There can be no bad faith where the insurer's conduct was reasonable or a reasonable insurer would have done the same thing under the same circumstances. See, *Love v. Fire Ins. Exchange, supra.* Thus, Travelers conduct cannot be considered unreasonable given the fact that 53 out of 55 of the insurers denied KB Home's tender in the same case.

///

///

### C. KB Home's Arguments In Opposition To This Motion For Summary Judgment Should Be Ignored As They Are Neither Supported By Fact Or Law

Within its opposition, KB Home argues that Travelers' second withdrawal was in bad faith because: (1) Travelers is still defending Norcraft and (2) because KB Home claims the settlement has not been completed. Nothing could be farther from the truth.

The fact that Travelers is still defending Norcraft is irrelevant because the tenders to Travelers from Norcraft and from KB Home are two completely different tenders and claims. In the underlying case, KB Home tendered the Aldrich plaintiffs' complaint and is seeking a defense for claims made by the Aldrich plaintiffs. As an additional insured, Travelers was only obligated to defend KB Home against third-party claims arising from the work of Norcraft. Travelers fulfilled this obligation by defending KB Home in the Aldrich Action until all claims brought by the Aldrich plaintiffs against KB Home and arising out of Norcraft's work were settled and the good faith motion for settlement was granted by the court on November 18, 2011.

Norcraft, on the other hand, tendered the cross-complaint filed by KB Home against it. Despite the fact that the Aldrich plaintiffs have settled their claims related to Norcraft's scope of work, KB Home has failed to dismiss its cross-complaint against Norcraft, thereby obligating Travelers to continue to defend Norcraft. Following KB Home's argument to its logical conclusion, Travelers would then be forced to defend KB Home for as long as KB Home desired because KB Home controls the prosecution of its cross-complaint and under KB Home's theory, Travelers would be required to defend KB until it decided Travelers' duty was completed. That is not the law nor has it ever been the law in California regarding the duty to defend.

Moreover, KB Home is incorrect in its argument that the settlement of the claims regarding Norcraft's work has not been completed. At the motion for good faith settlement in the Aldrich action, KB Home's defense counsel objected to the motion for good faith settlement based on the same argument – the settlement was not completed because some of the plaintiffs had not executed the settlement agreement. At the hearing on the motion for good faith, the Court granted the motion on behalf of Norcraft. In order to overrule KB Home's objection, the Court had the Aldrich plaintiffs' counsel ***release, on the record, all of the plaintiffs' claims against Norcraft and KB***

***Home arising from Norcraft's work.*** (See Aldridge v. Kaufman & Broad Monterey Bay et al., Monterey Superior Court case No. M94490, November 18, 2011, Good Faith Motion Hearing Transcript at 5:2-9:6). KB Home's claims against Norcraft for contractual indemnity were extinguished, however, which is exactly why Travelers is still defending KB Home. (See Aldridge v. Kaufman & Broad Monterey Bay et al., Monterey Superior Court case No. M94490, November 18, 2011, Good Faith Motion Hearing Transcript at 7:10-8:4).

### D. <u>Any Delay In Paying Benefits Was Based On A Genuine Dispute Regarding Coverage</u>

The standard of good faith and fair dealing calls for consideration of the reasonableness of the insurer's conduct in denying coverage. *Brandt v. Superior Court*, 37 Cal.3d 813, 819 (1985). "'[A]n erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been unreasonable. ...' [Citation.]" *Ibid.*

Travelers conducted a thorough and appropriate investigation, carefully reviewing all documentation provided and requesting any and all additional information potentially bearing upon the duty to defend. [Dkt. No. 119 at ¶14.] Moreover, after determining that the documentation provided did not evidence a potential for coverage, rather than denying the claim, Travelers actually accepted the defense and then repeatedly requested some documentation evidencing that the plaintiffs in the Aldrich action were alleging resulting damages arising from Norcraft's work. Only after KB Home failed repeatedly to provide any such documentation did Travelers withdraw its defense. Even then, however, Travelers kept an open mind and agreed to pick up coverage again as soon as additional documentation suggesting a potential for covered damages was identified and authenticated. On its face, Travelers has not engaged in any bad faith conduct.

Rather, Travelers' conduct in this action merely evidences the existence of a genuine dispute regarding coverage under the Norcraft policies. Travelers initial withdrawal was based on the language in the policies, as well as the application of well-settled law establishing that commercial general liability policies do not provide coverage for property damage to the insured's own work.

Travelers conducted a thorough investigation, as described above, which revealed the absence of any allegations of covered property damage resulting from Norcraft's work.

In opposition to Travelers' motion, KB Home cites to specific claim note entries made by Travelers in a vain attempt to manufacture a conspiracy whereby Travelers knew the Norcraft Policies had been triggered but sought to escape its contractual obligations. In support of this fiction, KB Home would have the court consider facts that are entirely irrelevant.

It is beyond comprehension how the setting of a "low defense reserve" or Travelers' belief that other insurers would eventually participate in KB Home's defense are at all helpful for the purpose of undermining Travelers' claim that it had a genuine dispute as to the existence of coverage. Those facts offered by KB Home are apropos of nothing. While KB Home may disagree with Travelers' interpretation of the facts that were available at the time of its withdrawal, the withdrawal was based upon a reasonable interpretation of the facts and thus evidences that any potential withholding of benefits was based upon a genuine dispute regarding coverage centered around a lack of complaint allegations involving the work of the named insured (let alone any resultant damage caused by the work of the named insured).

### E. KB Home's Alleged Conflicts With Travelers' Choice Of Counsel Have Been Manufactured In Conjunction With Its Breach Of The Norcraft Policies

A conflict of interest must be "significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal.App.4th 999, 1007 (1998).

A cross-complaint by a contractor seeking indemnification from a subcontractor does not give rise to an actual conflict but rather a "merely theoretical" one, because the contractor's liability to the plaintiff is derivative from the liability of the subcontractors. *Travelers Property v. Centex Homes*, *supra*. As such, both have the same interest in defending against the plaintiffs' general allegations. *Ibid.* The fact that Sellar Hazard represented a subcontractor in a case where KB Home was seeking indemnification thus does ***not*** create a significant actual conflict of interest because the subcontractor and KB Home had the same interest in defending against the plaintiffs' general allegations. Accordingly, KB Home had no grounds to refuse Travelers' chosen counsel.

///

Moreover, while Travelers does not concede that any conflict of interest exists, even assuming that one did, the Sellar Hazard firm's involvement in the Chada case would not present an actual, significant conflict of interest because the present claim and the claim in Chada involve different KB Home subsidiaries. Affiliated entities are not to be treated as the same entity for conflict purposes. See, *Brooklyn Navy Yard Cogeneration Partners v. Superior Court*, 60 Cal.App.4th 248 (1997), citing Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opinion No. 1989-113. In the Chada action, the Sellar Hazard firm represents Beutler Heating and Air Conditioning ("Beutler"). The parties who filed a cross-complaint against Beutler are KB Home Central Valley, Inc. and KB Home North Bay, Inc. [See, Dkt. 124-1 at Exhibit 5]. By contrast, the entities at issue in the Aldrich action are Kaufman & Broad Monterey Bay and KB Home South Bay, Inc.

KB Home argues that the KB entities in the Chada case and those in the present case should be considered the same entity because a parent corporation and its subsidiary should be treated as one. (Opposition, 9:22-23) Whether or not a parent corporation and its subsidiary should be treated as one entity is irrelevant, however, because the ***entities at issue here are not parent and subsidiary but merely affiliated***. The parent corporation referred to is KB Home, which is neither a party in the present case nor adverse to the parties represented by Seller Hazard in the Chada case. Even a simple reading of KB Home's opposition indicates that it fails to recognize that this distinction is a legal one, not a semantic one. KB Home has raised this "alleged" conflict issue to conceal its breach of the subject insurance contract. The undisputed facts show, however, that there never was any conflict, and KB Home's failure to accept Travelers' appointed counsel is therefore a material breach of the contract.

///

///

///

///

///

///

## III. CONCLUSION

Based on the foregoing, defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA respectfully requests that this Court issue an order determining as a matter of law that its decision to withdraw from the defense of KB Home was the result of a genuine dispute and therefore not bad faith.

Dated: June 22, 2012

Respectfully Submitted,
**THE AGUILERA LAW GROUP, APLC**

*/s Raymond E. Brown*
A. Eric Aguilera
Raymond E. Brown
Kari M. Myron,
Attorneys for Defendant/Counter-Claimant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA