**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera (SBN 192390)
Raymond E. Brown (SBN 164819)
Kari M. Myron (SBN 158592)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
T: 714-384-6600 / F: 714-384-6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
kmyron@aguileragroup.com

**LETHER & ASSOCIATES, P.L.L.C.**
Thomas Lether, Esq. *Pro Hac Vice*
3316 Fuhrman Ave. E., Suite 250
Seattle, WA 98102
T: 206-467-5444
F: 206-467-5544
tlether@letherlaw.com

Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAUFMAN & BROAD MONTEREY BAY, a California corporation; KB HOME SOUTH BAY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:10-cv-02856-EJD<br>Hon. Judge: Edward J. Davilla<br>Courtroom: 4<br><br>**TRAVELERS' REPLY TO PLAINTIFFS' OPPOSITION TO TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE *BRANDT* FEES**<br><br>Date: September 14, 2012<br>Time: 9:00 a.m.<br>Courtroom: 4<br><br>Trial Date: TBA<br>Date Complaint Filed: May 27, 2010 |
| AND RELATED COUNTER ACTION | |

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. TRAVELERS' MOTION IS PROPERTY BEFORE THE COURT ........ 1

III. THE EVIDENCE IS UNDISPUTED THAT TRAVELERS DID NOT UNREASONABLY WITHHOLD BENEFITS ........ 2

A. The Evidence is Undisputed that Travelers did not Withhold a Defense to KB Home for the Aldrich Action ........ 2

1. KB Home Has the Burden to Establish that Information Available to Travelers at the Time it Withdrew Coverage Showed the Claim included Potentially Covered Property Damage ........ 2

2. Neither the Factual Allegations in the Aldrich Pleadings nor Extrinsic Evidence Known by Travelers Prior to its March 2010 Withdrawal Showed Allegations of Potentially Covered Property Damage ........ 3

a. The Information Known to Travelers in March 2010 Did Not Include Allegations of Potentially Covered Resulting "Property Damage" ........ 3

b. The Opinions of Travelers' Adjusters is Irrelevant to the Determination of Whether KB Homes Was covered ........ 5

3. The August 4, 2010, Single Page Defect List was the First Evidence of any Potential for Covered "Property Damage" ........ 5

4. Travelers' Acceptance of Norcraft's Tender is Irrelevant ........ 6

5. The Lot Files - Although Intentionally Withheld from Travelers - Defeat any Assertion that the Homeowners were Seeking Property Damages to Anything Other than Norcraft's OwnWork and Product ........ 7

B. The Evidence is Undisputed that any Delay in Providing Benefits was Based on a Genuine Dispute Regarding Coverage ........ 7

1. The Reasonableness of Travelers Decision to Withdraw Must Be Determined Based on the Information Known or Reasonably Available to Travelers at the Time of the Withdrawal ........ 8

2. Travelers' Willingness to Keep an Open Mind Evidences the Reasonableness of its Conduct ........ 9

3. Travelers Conducted a Thorough Investigation ........ 9

4. KB Homes Cannot Claim that Travelers Failed to Investigate Properly when KB Homes Intentionally Withheld Requested Information ..... 10

C. KB Home Has Failed to Present Any Evidnece That Travelers' Response to Its Tender Was Ever Unreasonable ..... 10

1. The Evidence Demonstrates that Travelers Provided KB Home with a Full Defense ..... 10

2. The Evidence Demonstrates that Travelers Had the Right to Control KB Home's Defense ..... 11

3. Travelers' Withdrawal on February 8, 2012, was Proper ..... 11

4. Travelers' Conduct in the Instant Litigation is not Evidence of Bad Faith ..... 11

5. Travelers' Declaratory Relief Action is Not Evidence of Bad Faith ..... 12

6. The Evidence Discloses that Travelers had Benevolent Motives ..... 12

IV. KB HOME HAS NOT AND CANNOT MEET ITS BURDEN TO PROVE DAMAGES ..... 13

V. THE EVIDENCE IS UNDISPUTED THAT FEES INCURRED AFTER DECEMBER 17, 2010, DO NOT CONSTITUTE *BRANDT* FEES ..... 15

# TABLE OF AUTHORITIES

CASES


*Atlas Assurance Co., Ltd. V. McCombs Corp.,*
146 Cal.App.3d 135, 150 (1983) .......... 12

*Austero v. National Cas. Co. of Detroit, Mich.*
84 Cal.App.3d 1, 32 (1978) .......... 8, 9

*Behnke v. State Farm General Insurance Company*
196 Cal.App.4th 1443, 1467-1469 (2011) .......... 14

*Blake v. Aetna Life Ins. Co.*
99 Cal.App.3d 901, 919-920 (1979) .......... 9, 10

*Brandt v. Superior Court*
37 Cal.3d 813 (1985) .......... 1

*Chateau Chamberey Homeowners Ass'n v. Associated Int'l Ins. Co.*
90 Cal.App.4th 335, 347 (2001) .......... 2, 8

*Chatton v. National Union Fire Ins. Co.*
10 Cal.App.4th 846, 865 (1992) .......... 5

*Crawford v. Weather Shield Mfg., Inc.*
44 Cal.4th 541 (2008) .......... 6

*F & H Constr. Co. v. ITT Hartford Ins. Co. of the Midwest*
118 Cal.App.4th 364 (2004) .......... 3

*Gunderson v. Fire Ins. Exchange*
37 Cal.App.4th 1106 (1995) .......... 3, 5

*Hanson By & Through Hanson v. Prudential Ins. Co. of America*
783 F.2d 762, 767 (9th Cir. 1985) .......... 13

*Hurley Construction Co.* v. *State Farm Fire & Casualty Co.*
10 Cal.App.4th 533 (1992) .......... 3

*Jordan v. Allstate Ins. Col.*
116 Cal.App.4th 1206, 1212 (2004) .......... 5

*Lassen Canyon Nursery, Inc. v Royal Ins. Co. of America*
720 F.2d 1016, 1018 (9th Cir. 1983) .......... 3

*Lipson v. Jordache Enterprises, Inc.*
9 Cal. App. 4th 151, 161 (1992) ..... 5

*Montrose Chemical Corp. v. Superior Court*
6 Cal.4th 287, 300 ..... 2

*New Hampshire v. Vieira*
930 F.2d 696 (9th Cir. 1991) ..... 3

*Nies v. National Auto. & Cas. Ins. Co.*
199 Cal.App.3d 1192, 1201 (1988) ..... 11, 12

*Old Republic Ins. Co. v. FSR Brokerage, Inc.,*
80 Cal.App.4th 666, 687-688 (2000) ..... 12

*Paulson v. State Farm Mut. Auto. Ins. Co.*
867 F.Supp. 911, 918-919 (CD CA 1994) ..... 8

*Progressive West Ins. Co. v. Sup. Ct. (Preciado)*
135 Cal.App.4th 263, 279 (2005) ..... 12

*Ringler Associates Inc., v. Maryland*
(2000) 80 Cal.App.4th 1165, 1188 ..... 13

*Saylin* v. *California Ins. Guarantee Assn.*
179 Cal.App.3d 256 (1986) ..... 3

*Waller v. Truck Ins. Exchange, Inc.*
11 Cal.4th 1, 36 (1995) ..... 14

STATUTES

Cal. Code Civ. Proc. § 1060 ..... 12

TREATISES

Croskey, Heeseman, Popik & Imre, CAL. PRAC. GUIDE:
INSURANCE LITIGATION (The Rutter Group 2011), § 12:977, p. 12C-59 ..... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As set forth in Travelers' motion, California law only allows an insured to recover attorneys fees and costs pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813 (1985) ("*Brandt* fees") where such fees were **reasonably incurred to compel payment of benefits** due under an insurance policy **only where benefits were tortiously withheld.** Travelers agreed to provide a defense to KB Home in the underlying matter in December 2010. Accordingly, there is absolutely no basis whatsoever for KB Home to recover fees incurred in the present action after that date.

Moreover, defendants' reply shows that it cannot prove that Travelers withheld benefits under the policies at issue unreasonably without proper cause. Travelers' moving papers established that it has demonstrated the utmost good faith in its treatment of KB Home's tender of its defense in the underlying Aldrich action. Travelers has given KB Home every benefit of the doubt, investigated thoroughly at every step of the way, and at all times acted reasonably in the face of a genuine dispute regarding the existence of coverage. Travelers accepted KB Home's tender, paid over $300,000 to fund KB Home's defense in the Aldrich action, and never sought to limit or impose any obligations on the conduct of KB Home's defense. Moreover, Travelers and The Hartford, another insurer, have ***fully funded KB Home's entire defense***. In addition, Travelers has settled and paid all indemnity with respect to the liability arising from the work of Travelers' named insured. Yet KB Home persists in its prosecution of this action.

In its opposition, KB Home has submitted ***no admissible evidence*** that Travelers' response to its tender was in any way improper, that its defense in the Aldrich action was compromised by Travelers' ongoing response to its tender or that it has suffered ***any damages*** whatsoever as a result of Travelers' actions because Travelers and The Hartford ***fully funded KB Home's entire defense***.

## II. TRAVELERS' MOTION IS PROPERLY BEFORE THE COURT

Travelers' motion is not duplicative of the motion for summary judgment that it filed on August 26, 2011 (Dkt. No. 106), nor is it beyond the scope of this Court's order extending the summary judgment motion deadline to June 1, 2012 (Dkt. No. 147). First, the Court's December 12, 2011, does not state that the June 1, 2012, deadline for filing dispositive motions only applies to

motions related to the "New Claims." Moreover, the instant motion is not a rehash of the arguments contained in that prior motion, nor does it seek the same relief. Rather, the present motion seeks an order with respect to KB Home's entitlement to a particular type of damages. Travelers' present motion addresses the issue as to whether KB Home is entitled to recover *Brandt* fees. Thus, any argument that this motion is duplicative of the prior motion is completely without merit.

## III. THE EVIDENCE IS UNDISPUTED THAT TRAVELERS DID NOT UNREASONABLY WITHHOLD BENEFITS

"An erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been unreasonable." *Brandt v. Superior Court,* 37 Cal.3d at 819 (1985). "Unreasonableness" becomes an issue of law where the evidence is undisputed and only one reasonable inference can be drawn from it. *Chateau Chamberey Homeowners Ass'n v. Associated Int'l Ins. Co.,* 90 Cal.App.4th 335, 347 (2001).

In the present case, KB Home does not dispute that the potential policy benefit to it was a defense in and to the Aldrich action. KB Home therefore must establish that Travelers unreasonably withheld a defense to the Aldrich action in order to seek fees pursuant to the *Brandt* case. The evidence before the court in that regard is undisputed and the parties agree on the material facts. KB Home does not dispute the facts recited in Travelers' motion but rather disputes the inferences to be drawn therefrom. However, the inferences must be reasonable and where they are not, summary judgment is warranted. The only *reasonable* inference that can be drawn from the *undisputed admissible evidence* is that Travelers never unreasonably withheld benefits from KB Home and thus KB Home cannot establish its entitlement to *Brandt* fees as a matter of law.

### A. The Evidence is Undisputed that Travelers did not Withhold a Defense to KB Home for the Aldrich Action

#### 1. KB Home Has the Burden to Establish that Information Available to Travelers at the Time it Withdrew Coverage Showed the Claim Included Potentially Covered Property Damage

The burden is on an insured to "show that the underlying claim ***may*** fall within policy coverage." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300. The duty to defend further does not turn upon the ultimate adjudication of coverage but rather upon **those facts**

**available to the insurer at the time of the coverage determination.** *Ibid.* An insurer may therefore refuse to defend the lawsuit if it has made an informed decision based on the third party complaint and ***the extrinsic facts known to it at the time of tender*** that there are no facts indicating the claim falls within the policy. *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106 (1995).

As discussed at length in Travelers' motion, commercial general liability policies do not warranty the insured's own work or product but rather provide coverage for consequential damages to other property resulting from the insured's work or product. Nor does incorporation of defective workmanship or materials alone constitute covered "property damage" triggering a duty to defend. *F & H Constr. Co. v. ITT Hartford Ins. Co. of the Midwest,* 118 Cal.App.4th 364 (2004), citing *New Hampshire v. Vieira*, 930 F.2d 696 (9th Cir. 1991) (applying California law). Further, even if repairs to the defective work cause damage to other portions of the structure, the nature of the repairs cannot create coverage where none exists. *Lassen Canyon Nursery, Inc. v Royal Ins. Co. of America*, 720 F.2d 1016, 1018 (9th Cir. 1983).

**2. Neither the Factual Allegations in the Aldrich Pleadings Nor Extrinsic Evidence Known by Travelers Prior to its March 2010 Withdrawal Showed Allegations of Potentially Covered Property Damage**

a. <u>The Information Known to Travelers in March 2010 Did Not Include Allegations of Potentially Covered Resulting "Property Damage"</u>

A court must look only at whether the facts **available to the insurer at the time of the tender and subsequent withdrawal** evidence a potential for coverage. See *Hurley Construction Co.* v. *State Farm Fire & Casualty Co.*, 10 Cal.App.4th 533 (1992); *Saylin* v. *California Ins. Guarantee Assn.*, 179 Cal.App.3d 256 (1986).

KB Home's initial tender of its defense included only the complaint in the Aldrich action, KB's cross-complaint and the subcontract between KB and Norcraft. In the 11 months following KB Home's tender, Ms. Dlugokenski repeatedly requested supporting documentation including any documentation related to the alleged defects. In response to Travelers' repeated requests, the only documents KB Home's counsel provided between April 2009 and March 2010 were a copy of the first amended complaint, special master order and a homeowners' matrix in the Aldrich action

The Aldrich complaint alleged two discrete defects to the cabinets – to the wood trim and to

their useful life. [See, Dkt. 108, Ex. E.] The allegations failed to fall within the coverage grant as they did not allege ***resulting*** property damage. As such, no duty to defend was triggered by the original complaint. Similarly, nowhere did the First Amended Complaint suggest ***property damage*** resulting from the cabinet install. Instead, the complaint only sought "damages" for costs associated with investigation (to identify the claimed defects), repair costs (to repair the defects), replacement costs (to replace the manufactured products), and loss of use expenses (anticipated to be incurred during the repair and replacement process).

As of March 2010, it was therefore abundantly clear that the ***only allegations*** of purported "property damage" relating to the Norcraft cabinets were allegations of cosmetic damage to Norcraft's own work and products and/or complaints about how long the cabinets would last. Such damages, however, are simply not covered under the Norcraft policies as the terms of the policies and the additional insured endorsements provide that KB Home is only covered for ***damage to other property*** resulting from Norcraft's work at the projects.

Moreover, although KB Home had reported as of April 14, 2009, that the plaintiff homeowners had not issued a defect list, KB failed to produce or disclose the existence of Lot Files and Notices of Claim detailing the homeowners' cabinet complaints. The Lot Files establish a litany of cosmetic complaints – blemishes to the cabinet doors, mis/mal-alignment of drawers, paint "overspray" – none of which qualify as resulting damages much less potentially covered property damage. [See Dkt. 120, ¶12, Ex. D-R; Dkt. 121, ¶6; Dkt. 119, ¶10.] Similarly, in each instance where cabinet issues are identified in the Notices of Claim, the sole defect claimed is "useful life reduction." The Lot Files and Notices of Claim establish that not a single homeowner ever reported that Norcraft's work resulted in property damage to something other than the cabinets themselves.

Travelers agreed to defend subject to a reservation of rights, including the right to withdraw, and repeatedly requested information from KB Home – affording KB Home every opportunity to provide evidence that the Norcraft policies were implicated – evidencing allegations of resulting damages stemming from Norcraft's work. Despite being given more than a year to do so, KB Home failed to provide Travelers with any information supporting any potential for coverage under the Norcraft policies. In fact, the documentation actually articulating the cosmetic damage to the

cabinets was wrongly withheld by KB Home in an attempt to manufacture potential coverage. Travelers' withdrawal was therefore proper given the information available to it at the time.

b. The Opinions of Travelers' Adjusters is Irrelevant to the Determination of Whether KB Home Was Covered

Claim handlers' opinions have no relevance to the determination regarding whether coverage exists under a particular policy. See, *Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846, 865 (1992) ("It is well settled that the interpretation of an insurance policy is a legal rather than a factual determination. Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract.") (Internal cites omitted)]; see also, *Jordan v. Allstate Ins. Col.,* 116 Cal.App.4th 1206, 1212 (2004) ["Absent a factual dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law." (Internal cites omitted)].

In support of its opposition, KB Home misrepresents a claim note by Travelers claim handler Patricia Dlugokenski referring to the likelihood of resulting damages. When queried in deposition about the note, however, Ms. Dlugokenski testified that by accepting she was "giving the insured the benefit of the doubt" and that she had no information or documentation evidencing allegations of resulting damages arising from the cabinets. [Dkt. 118, Ex. X, 154:17-25, 155:6-12, 238:17-239:9.] Moreover, Ms. Dlugokenski's opinion as to the likelihood of coverage existing is irrelevant, however, to the legal determination as to the application of the facts to Travelers' duty under the policy. Accordingly, even if Ms. Dlugokenski believed the materials showed resulting property damage, it would not somehow create coverage where none exists.

**3. The August 4, 2010, Single Page Defect List was the First Evidence of any Potential for Covered "Property Damage"**

Sometimes information available at the outset of litigation shows no coverage but later developments show otherwise and thus a duty to defend may arise later. *Lipson v. Jordache Enterprises, Inc.*, 9 Cal. App. 4th 151, 161 (1992). It is the insured's burden to notify the insurer of new facts indicating a potential for coverage and if the insured fails to do so the insurer cannot be liable for refusing a defense. *Gunderson, supra*, 37 Cal. App.4th at 1117.

On August 4, 2010, after Travelers had been requesting such documentation for almost a

year and a half, KB Home finally provided a one-page document to coverage counsel for Travelers entitled "Aldrich, et al. v. KB Home, et al., Preliminary Defect List" described as a defect list related only to cabinet defects. [Dkt. 110, Ex. X.] That document was the first evidence ever presented by KB Home indicating that the homeowners in Aldrich were in fact claiming property damage resulting from the cabinet installation. As a practical matter, the veracity of the document is questionable, to say the least. Not only was the item prepared at the request of KB Home's counsel and is in fact the only page ever deposited in the Aldrich document depository, the document further contradicts the nature of the homeowners' claims as reflected in the Lot Files and the Notices of Claims. Despite the questionable credibility of the document, however, Travelers agreed to provide a defense to KB Home (while reserving the right to challenge that obligation at a later date).

**4. Travelers' Acceptance of Norcraft's Tender is Irrelevant**

"The indemnitee's defense costs are sums the insured is legally obligated to pay as *damages* because of property damage." *Golden Eagle Ins. Co. v. Insurance Co. of the West*, 99 Cal.App.4th 837, 842 (2002). In other words, where the named insured is being sued for defense fees pursuant to *Crawford v. Weather Shield Mfg., Inc.,* 44 Cal.4th 541 (2008), an allegation of resulting property damage arising from the named insured's work is necessarily present. *Golden Eagle Ins. Co., supra*, 99 Cal.App.4th at 852.

By virtue of its cross-complaint, KB Home alleges that Norcraft is contractually obligated to defend and indemnify it in the Aldrich action. The Norcraft policies provide that "for the purposes of liability assumed in an 'insured contract,' reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage'." [Dkt. 107: Carrillo Dec., ¶5, Ex. A-D.] Accordingly, the allegations in KB Home's cross-complaint in and of themselves give rise to an ***independent duty*** to defend Norcraft, which is not in any way dependent on whether the Aldrich homeowners are seeking to recover for property damage caused by Norcraft's work. KB Home contends that it must be defended because it filed a cross-complaint against Norcraft, which obligated Travelers to defend Norcraft. The idea that KB Home could compel Travelers to "defend" it in response to its ***own*** cross-complaint against Norcraft defies the insurance contract as well as basic common sense.

Whether or not Travelers had a duty to defend and/or agreed to defend Norcraft, its named insured, is therefore irrelevant to whether or not Travelers had a duty to defend KB Home, its additional insured. Any obligations due and owing to KB Home and the named insured do not arise out of the same complaint or the same damage allegations. Rather, with regard to KB Home's tender, the complaint at issue is the underlying plaintiff's complaint against KB Home, while with regard to Norcraft's tender, the complaint at issue is KB Home's cross-complaint against Norcraft.

**5. The Lot Files – Although Intentionally Withheld from Travelers – Defeat any Assertion that the Homeowners were Seeking Property Damages to Anything Other Than Norcraft's Own Work and Product**

Since 2003, KB Home has been in possession of Lot Files regarding the damage complained of by Aldrich homeowners. The documents contained within the KB Home Lot Files for the projects include (at a minimum) records detailing a two-year history of complaints by each homeowner with respect to defects and damages identified after the close of escrow.

Despite repeated requests by Travelers, none of those documents were provided to Travelers in connection with KB Home's tenders of defense in the Aldrich action. [Dkt. 108, Dlugokenski Dec., ¶¶10-14] In fact, KB Home never even advised Travelers that the documents were in existence. [Dkt. 108: Duglokenski Dec., ¶¶10-14.] Although the complaint in the Aldrich action alleges that "[a]t the time of the purchase by [p]laintiffs" the residences were "defective and unfit for [] intended purposes" and not constructed in a "workmanlike manner as manifested by … numerous defects" including but not limited to "cabinet and wood trim defects," a review of the Lot Files clarifies that all of the issues relate to damage to the product (cabinet) itself.

As previously set forth, however, CGL policies do not warranty the insured's own work or product but rather provide coverage for consequential damages to other property resulting from the named insured's work or product. Accordingly, the Lot Files establish that the damages sought by the Aldrich plaintiffs are not covered by the policy issued by Travelers to Norcraft.

**B. <u>The Evidence is Undisputed that any Delay in Providing Benefits was Based on a Genuine Dispute Regarding Coverage</u>**

The genuine dispute doctrine applies to disputes regarding factual issues, including the insured's entitlement to benefits. *Chateau Chamberey Homeowner's Ass'n v. Associated Int'l Ins.*

*Co.*, 90 Cal.App.4th 335, 347 (2001). " '[A]n erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been unreasonable. ...' [Citation.]" *Brandt v. Superior Court*, *supra*, 37 Cal.3d at 819 (1985).

As detailed in the moving papers, Travelers conducted a thorough and appropriate investigation, carefully reviewing all documentation provided and requesting any and all additional information potentially bearing upon the duty to defend. [Dkt. 119 at ¶ 14 and Dkt. 182 at p. 19.] After determining that the documentation provided did not evidence a potential for coverage, rather than denying the claim from the outset, Travelers actually accepted the defense and then repeatedly requested confirmation that the plaintiffs in the Aldrich action were alleging resulting damages arising from Norcraft's work. After KB Home failed to provide any such documentation, because as KB Home admits, such documentation did not exist, Travelers withdrew from the matter.[1]

**1. The Reasonableness of Travelers Decision to Withdraw Must be Determined Based on the Information Known or Reasonably Available to Travelers at the Time of the Withdrawal**

The reasonableness of an insurer's conduct must be measured at the time the insurer was called upon to act or respond. *Austero v. National Cas. Co. of Detroit, Mich.*, 84 Cal.App.3d 1, 32 (1978). Where an insurer acts reasonably in denying a claim based on information then known or reasonably available to it, later-discovered facts do not make the denial unreasonable. *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F.Supp. 911, 918-919 (CD CA 1994) [no bad faith as a matter of law where insurer initially denies claim based on information available to it and later reevaluates and accepts claim based on new information not previously available to it]. Travelers' withdrawal in December 2009 was reasonable based on the information then known and available; specifically, the lack of potentially covered damages. Travelers reconsidered its withdrawal after it was presented with new information in the form of the Defect List. The subsequent preparation of the Defect List and its discovery by Travelers do not make Travelers earlier withdrawal unreasonable.

[1] Not only do the undisputed facts establish that KB Home failed to provide documentation showing a potential for coverage, they also show KB Home withheld documents (i.e., the Lot files and Notice of Claim) evidencing a lack of claims of resulting damages arising from Norcraft's work.

### 2. Travelers' Willingness to Keep an Open Mind Evidences the Reasonableness of its Conduct

The reasonableness of an insurer's actions and hence its *good* faith may be determined by reference to the insurer's willingness to keep an open mind until receipt of the information needed to evaluate the claim. *Blake v. Aetna Life Ins. Co.,* 99 Cal.App.3d 901, 924 (1979). An insurer's willingness to reconsider an earlier denial is evidence of its reasonableness and good faith. *Austero v. National Cas. Co. of Detroit, Mich., supra,* 84 Cal.App.3d at 35.

Travelers' good faith is evidenced by Travelers' willingness to keep an open mind with respect to KB Homes' tender. In that regard, Travelers' adjuster specifically stated that she accepted the tender despite the lack of supporting evidence to give KB Homes the benefit of the doubt. (Dkt. 118.) Further, Travelers' repeated requests for documents supporting the tender demonstrates Travelers' willingness to keep an open mind until KB Home provided Travelers with the documents requested. Even when Travelers withdrew, it advised that it was willing to reconsider its decision. *Ibid.* Finally, the evidence is undisputed that Travelers did reconsider its earlier denial and accepted KB Home's tender once Travelers was presented with evidence that the homeowners were seeking resulting property damage arising from Norcraft's work. Accordingly, the undisputed evidence establishes Travelers' continued good faith in responding to the tender.

### 3. Travelers Conducted a Thorough Investigation

In its opposition, KB Home claims that Travelers failed to investigate the claim and then proceeds to describe Travelers' investigation in detail. [Dkt. 189 at p. 19.] The fact that Travelers reversed its coverage position and agreed to defend KB Home upon receipt of the defect list demonstrates that Travelers was at all times willing to reconsider its position and even reverse its decision when provided with actual evidence (of questionable veracity) demonstrating a potential for coverage. Moreover, Travelers was not the only one that took the position that the complaint did not trigger coverage – other carriers took a similar position to Travelers in responding to KB Home's tender under their various insurance policies. In fact, as previously noted, even the attorney for the Aldrich plaintiffs acknowledged that the complaint failed to plead resulting damages, further evidencing that Travelers' denial was reasonable.

**4. KB Home Cannot Claim that Travelers Failed to Investigate Properly when KB Homes Intentionally Withheld Requested Information**

California courts have held that an insured may be precluded from claiming that an insurer breached its duty to investigate where the insured or its counsel has information essential to resolution of the claim and ignored repeated requests by the insurer for that information. *Blake v. Aetna Life Ins. Co.*, 99 Cal.App.3d 901, 919-920 (1979) [no bad faith as a matter of law where insurance company made repeated requests for documents regarding insured's claim and insured failed to provide same]. In the present case, the undisputed facts establish that KB Home intentionally withheld and refused to provide the Lot Files and Notices of Claims to Travelers. KB Home's actions thus preclude it from claiming Travelers breached its duty to investigate.

**C. <u>KB Home Has Failed to Present Any Evidence That Travelers' Response to Its Tender Was Ever Unreasonable</u>**

In its opposition, KB Home has presented no evidence that Travelers' ongoing response to its tender was in any way unreasonable and/or damaged KB Home in any form. Rather, in an effort to obfuscate the issue and confuse this court, KB Home has proffered wild allegations about Travelers' "motivations" (sans any ***supporting evidence*** and completely at odds with Travelers' actions) and actions in litigation other than the Aldrich action in a desperate attempt to keep Travelers ensnared in the present litigation. What KB Home seems to have forgotten is that it is supposed to proffer evidence of Travelers' alleged bad faith in connection with its tender; it cannot avoid summary judgment with an unrelated, irrelevant and unsupported smear campaign.

**1. The Evidence Demonstrates that Travelers Provided KB Home with a Full Defense**

In its opposition, KB Home alleges that Travelers' promise to defend KB Home was fraudulent when made and that Travelers attempted to limit its defense obligations. Again, KB Home fails to support this allegation with any admissible evidence. Rather, the evidence conclusively demonstrates that Travelers accepted KB Home's tender and provided it with a full defense, without any limits whatsoever. It is undisputed that Travelers paid all of KB Home's defense invoices at least through and including November 2011. It is undisputed that KB Home's defense was not compromised in any way, shape or form by Travelers' response to KB Home's tender. KB Home's unsupported speculation regarding Travelers' alleged mindset is no substitute

for evidence and should not save KB Home from a summary adjudication of its claims.

### 2. The Evidence Demonstrates that Travelers Had the Right to Control KB Home's Defense

KB Home improperly rejected Travelers' appointment of counsel. It is undisputed that the policies at issue provided Travelers with the right to control KB Home's defense in the Aldrich action. This issue has been thoroughly briefed and remains under submission.

### 3. Travelers' Withdrawal on February 8, 2012, was Proper

KB Home again fails to support its allegations with ***admissible evidence***. KB Home does not dispute that Norcraft and the Aldrich plaintiffs settled and the court adjudicated the good faith of that settlement. [(Dkt. No. 189, p. 14.] KB Home does not dispute that its tender to Travelers pursuant to Norcraft's policies of insurance is tied to the Aldrich plaintiffs' allegations against Norcraft. Accordingly, where said allegations are discontinued based on a settlement, KB Home is ***no longer entitled to benefits*** under Norcraft's policies. Whether and to what extent Travelers was paying for Norcraft's defense has no bearing on Travelers' duties, if any, to KB Home.

### 4. Travelers' Conduct in the Instant Litigation is not Evidence of Bad Faith

An insurer does not act in bad faith merely because it defends itself in an action by the insured seeking benefits. California courts do not impose bad faith liability for conduct that is ordinarily a part of the litigation process so as not to unreasonably chill an insurer's right to defend itself. "Insurers will be disabled from conducting a vigorous defense in a bad faith insurance action if their pleadings may be used to prove pre-existing bad faith." *Nies v. National Auto. & Cas. Ins. Co.*, 199 Cal.App.3d 1192, 1201 (1988). "Once litigation has commenced, actions taken in defense are not probative of whether the defendant acted in bad faith before the lawsuit. To impose tort liability upon a defendant for positions asserted in pleadings [or at deposition] would impose an unfair burden on the conduct of the defense." Croskey, Heeseman, Popik & Imre, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group 2011), § 12:977, p. 12C-59.

Travelers' conduct in the instant litigation is not evidence of bad faith. The referenced discovery disputes relate to KB Home's attempt to obtain privileged information related to the named insured and Travelers' attempts to protect its named insured. Travelers has not engaged in

any conduct that would impair KB Home's rights or benefits and in fact agreed to defend KB Home and paid all outstanding fees and costs after KB Home finally provided documentation evidencing a potential for coverage. Rather, it is KB Home's conduct, including its withholding of pertinent documents, and its refusal to dismiss its breach of contract claim after Travelers agreed to defend and paid all outstanding fees and costs, that evidences bad faith.

**5. Travelers' Declaratory Relief Action is Not Evidence of Bad Faith**

Parties have a statutory right to seek declaratory relief to determine their rights and obligations. Cal. Code Civ. Proc. § 1060. "Assuming the insurer has not otherwise abandoned, compromised or rejected the insured's claim, an action seeking declaratory relief does not in any way frustrate the insured's enjoyment of his contract rights." *Atlas Assurance Co., Ltd. V. McCombs Corp.,* 146 Cal.App.3d 135, 150 (1983). See also, *Old Republic Ins. Co. v. FSR Brokerage, Inc.,* 80 Cal.App.4th 666, 687-688 (2000) [the fact that insurer initiates litigation against its insured to recoup benefits is not evidence of bad faith where insurer has paid benefits]; *Nies v. National Auto. & Cas. Ins. Co.,* 199 Cal.App.3d 1192, 1201 (1988) [insurer's cause of action for refund of amounts paid to insured in connection with claim not evidence of bad faith as insurer has right to litigate the correctness of its decisions]; *Progressive West Ins. Co. v. Sup. Ct. (Preciado),* 135 Cal.App.4th 263, 279 (2005) [insurer's reimbursement action did not constitute bad faith because insurer had paid all benefits due under policy].

Travelers has a statutory right to seek declaratory relief regarding its rights and obligations under its policies. The mere fact that Travelers filed a declaratory relief action against KB Home thus does not constitute evidence in this action supporting KB Home's claim for bad faith. Travelers paid all of KB Home's defense fees in the Aldrich action through at least November 22, 2011 (the date on which Travelers' defense obligation to KB Home ceased as a result of the finding of good faith settlement of the claims against KB Home arising out of Norcraft's work) and thus its declaratory relief action did not frustrate KB Home's enjoyment of its contract rights (if any).

**6. The Evidence Discloses that Travelers had Benevolent Motives**

A court may consider evidence of the insurer's purpose and attitude in withholding payment of benefits. See, *Hanson By & Through Hanson v. Prudential Ins. Co. of America,* 783 F.2d 762,

767 (9th Cir. 1985) [insurer's conduct withholding payment of benefits held reasonable; court found "most persuasive" evidence that the insurer tried to find a basis for paying some part of insured's claim even though it believed there was no coverage].

The evidence establishes that Travelers adjuster Patricia Dlugokenski initially accepted KB Home's tender subject to a reservation of rights despite the lack of documentation supporting coverage to give KB Home the benefit of the doubt. Further, Travelers repeatedly requested documentation of resulting property damage and went so far as to clearly advise KB Home as to exactly what it was looking for – so much so that KB Home was able to have the Aldrich plaintiffs' attorney create a specific document, thereby creating coverage for KB Home. Travelers specifically advised KB Home of its willingness to reconsider its decisions at any time and in fact, when KB Home *finally* presented the requested supporting documentation, Travelers accepted KB Home's tender and paid all of its outstanding defense fees, totaling more than $300,000.

## IV. KB HOME HAS NOT AND CANNOT MEET ITS BURDEN TO PROVE DAMAGES

As set forth in Travelers' moving papers, where one of several potential insurers provides a defense, another insurer's alleged failure to defend does not damage the insured – the failure to defend does not "enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuit." *Ringler Associates Inc., v. Maryland*, 80 Cal.App.4th 1165, 1188 (2000).

In the present action, KB Home admits that another insurer, The Hartford, provided it with a defense and contributed $30,000 towards KB Homes' representation in the Aldrich action. [Dkt. No. 189 at p. 22; Dkt. No. 192 at p. 4.] The only period during which Travelers withdrew its defense of KB Home was from March 2010 to December 2010. KB Home does not dispute that The Hartford accepted KB Home's tender of defense on or about February 9, 2010, prior to Travelers' withdrawal. KB Home does not dispute that The Hartford never withdrew its acceptance of KB Home's tender. KB Home does not dispute that The Hartford contributed $30,000 towards KB Home's representation in March 2010.

Instead, KB Home simply ***argues*** that The Hartford refused to contribute further but offers no ***admissible evidence*** in support of that assertion. KB Home has failed to offer any *admissible evidence* with respect to 1) its requests for further payment to The Hartford, 2) The Hartford's

responses to said requests, 3) the effect such alleged actions had on KB Home's representation in the Aldrich action, 4) whether KB Home was thereafter invoiced for any attorney fees or costs in connection with its representation in the Aldrich action, 5) whether KB Home ever paid for any attorney fees or costs in connection with its representation in the Aldrich action as a result of The Hartford's alleged position; or 6) how and to what extent KB Home suffered any damages or detriment from March 2010 to December 2010. KB Home further has failed to offer any evidence the Glaspy firm stopped defending it at any time or even threatened to do so.

Rather, the undisputed ***evidence*** establishes that KB Home at all times received exactly what it is entitled to receive by California law: ***a defense***. KB Home is not entitled to receive payment at a specified time. If the insurer pays all benefits due under the policy, even if there is a delay in payment, there are no damages to the insured. See, *Behnke v. State Farm General Insurance Company*, 196 Cal.App.4th 1443, 1467-1469 (2011). In *Benke*, Behnke claimed that State Farm stopped paying his defense fees and costs in September 2003 and failed to make any payments for more than a year thereafter and claimed "various uncompensated damages" caused by State Farm's failure to make payments for more than a year.

In affirming the trial court's award of summary judgment in favor of State Farm, the *Behnke* court held that "the undisputed material facts establish that Behnke has no viable claim for breach of contract damages because State Farm paid all policy benefits Behnke was entitled to receive." *Behnke, supra*, 196 Cal.App.4th at 1468. The court further noted that in the absence of contract damages, Behnke's "claim for bad faith denial of insurance benefits fails as a matter of law." *Id.* at 1470, citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36 (1995).

Accordingly, KB Home has failed to meet its burden of proof that it has damages to assert against Travelers. KB Home's citation to the *Concept Enterprises* case (Dkt. No. 189 at p. 23) is inapposite because KB Home has not provided any ***admissible evidence*** in support of its claim that The Hartford failed to provide it with a full defense to the Aldrich action during the period in which Travelers withdrew its defense. Moreover, Travelers has paid all outstanding fees and costs due to KB Home. Thus, KB Home has suffered no damages as the result of any alleged breach.

## V. THE EVIDENCE IS UNDISPUTED THAT FEES INCURRED AFTER DECEMBER 17, 2010, DO NOT CONSTITUTE *BRANDT* FEES

In its opposition, KB Home does not dispute that *Brandt* fees are only recoverable insofar as the fees represent the insured's efforts to obtain policy benefits and not to prove bad faith. KB Home does not dispute that the potential policy benefit at issue is a defense to the Aldrich action. KB Home does not dispute that Travelers accepted KB Home's tender with respect to its defense in the Aldrich action on December 17, 2010. KB Home does not dispute that Travelers paid all defense invoices submitted to it, not only for the period of time through and including December 17, 2010, but further paid all invoices submitted to it through November 22, 2011, over $300,000.

While KB Home concludes that Travelers did not provide a "full" defense, KB Home has failed to submit ***any*** evidence that its defense in the Aldrich action was in any way compromised or negatively impacted by Travelers' response to KB Home's tender. KB Home has failed to provide a single piece of evidence that is has paid anything toward its defense or has been damaged in some way. In fact, not only did Travelers provide KB Home with a full and complete defense, but another carrier, Hartford also agreed to defend KB Home. (See, Chao Declaration, ¶4, Exh. B.) KB Home has produced no admissible evidence that Hartford withdrew from the defense or otherwise refused to defend KB Home. Of note, while KB Home submitted a declaration by its attorney in the Aldrich action, the declaration fails to state any facts as to how her representation of KB Home was negatively impacted by Travelers' handling of KB Home's tender. Instead, the facts are undisputed that KB Home received policy benefits from Travelers no later than December 17, 2010. As such, even if KB Home had produced any evidence supporting its claim that it is entitled to *Brandt* fees, the most it could possibly recover would be fees incurred prior to December 17, 2010, reflecting KB Home's efforts to obtain a defense.

Dated: June 22, 2012

Respectfully Submitted,
**THE AGUILERA LAW GROUP, APLC**

*/s Raymond E. Brown*
A. Eric Aguilera
Raymond E. Brown
Kari M. Myron
Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA